UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALI MOORE,                                    :
                              Plaintiff,      :
                                              :        22 Civ. 10957 (LGS)
                  -against-                   :
                                              :        **OPINION & ORDER**
CITY OF NEW YORK, et al.,                     :
                              Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Pro se Plaintiff Ali Moore brings this action against various Defendants based on his

arrests and involuntary transports to New York City hospitals for emergency mental health

treatment.  Plaintiff was represented when the case was filed but is now pro se.  Named

Defendants in the Fourth Amended Complaint (the "Complaint"), the operative complaint,

include New York City Health + Hospitals ("NYCH+H"), Harlem Hospital and four of its

physicians, Dr. Nurur Rahman (s/h/a Dr. Nurur Raham), Dr. Kalu Agwu, Dr. Ryan H. Hashem

(s/h/a Dr. Ryan H. Hashe) and Dr. Gautam Balasubramania Pandian.  (NYCH+H, Harlem

Hospital, the four named physicians and John Doe NYCH+H Defendants are referred to

collectively as the "NYCH+H Defendants.")  Named Defendants also include the City of New

York (the "City"); New York City Police Department (the "NYPD"); and five NYPD officers,

who are David Castro, Nilsa Patricio (now Nilsa Nivar), Sanjay Bajnauth, Antonio Castelluccio

and David Maldonado; as well as one Fire Department of the City of New York (the "FDNY")

emergency medical technician ("EMT"), Kevin Rosas.  (The City, NYPD, five named officers,

FDNY EMT Rosas and John Doe City Defendants are referred to collectively as the "City

Defendants.")

        The remaining named Defendants not listed above either have been served but have not

yet responded to the Complaint, or have not yet been served.  The Complaint also includes as

Defendants certain John Doe NYPD officers, FDNY members and NYCH+H police officers.

The NYCH+H Defendants and the City Defendants move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, the motions are granted in part and denied in part.

## I.      BACKGROUND

The following facts are taken from the Complaint.  The Complaint's allegations are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

The Complaint describes incidents that took place on two dates.  The Complaint alleges that on or about October 1, 2021, employees from Defendant Morningside Heights Housing Corporations contacted Defendant NYPD because Plaintiff was causing a disturbance outside of his residence, when in reality Plaintiff was attempting only to file a complaint with management employees.  Defendant NYPD officers Castelluccio, Maldonado and unidentified NYPD officers John Does #1-10 arrived at the residence and, upon confirming Plaintiff's identity, forcibly grabbed him.  The Complaint alleges that these officers placed Plaintiff in handcuffs and purposely overtightened them, leaving marks and injuries on Plaintiff's wrists.  When Plaintiff requested that the police officers loosen the handcuffs, they tightened them further instead.  The police officers then called an ambulance.  Defendant FDNY EMT Rosas and unidentified FDNY members John Does #11-20 arrived on the scene.  These events were witnessed by Plaintiff's neighbors, to his embarrassment and humiliation.  The Complaint alleges that, at all relevant times, Plaintiff neither displayed any weapons nor threatened use of a weapon or force.  While waiting for the ambulance, Defendants Castelluccio, Maldonado and Does #1-10 searched Plaintiff's personal belongings without his consent.  When the ambulance arrived, these Defendants dragged Plaintiff to the ambulance by his handcuffs.  Defendants Castelluccio,

Maldonado, Rosas and Does #1-10 and #21-30 transported Plaintiff to Harlem Hospital.

At Harlem Hospital, Plaintiff was held for a psychiatric evaluation against his will. Unidentified NYCH+H police officers John Does #31-40 and Harlem Hospital staff Does #41-50 told Plaintiff he was not permitted to leave. The Complaint alleges that Does #31-40 dragged Plaintiff to the emergency psychiatric department and pinned him against the floor despite his cooperation. Defendant physicians Rahman, Agwu, Hashem and Balasubramania Pandian conducted evaluations of Plaintiff which resulted in Plaintiff's continued confinement at Harlem Hospital. Plaintiff spent one night in the hospital before leaving to stay with his father and receive a second opinion from co-Defendant Mount Sinai St. Luke's Hospital. When Plaintiff returned to Harlem Hospital to retrieve his belongings, his clothes and bag could not be located and Plaintiff received only his cell phone and keys.

The Complaint alleges that on or about October 5, 2021, after Plaintiff returned to his residence, Defendant Morningside Heights Housing Corporations called emergency services again. This time, Plaintiff was inside his apartment. Defendant NYPD officers Castro and Patricio, as well as Does #1-10 and #21-30, entered Plaintiff's apartment without his permission, most likely searched his property and told him they would not leave unless Plaintiff accompanied them. The Complaint alleges that Plaintiff left his apartment with these Defendants out of fear for his life and a desire not to escalate the situation. Plaintiff was taken to co-Defendant Mount Sinai St. Luke's Hospital and discharged within an hour.

## II.   PRELIMINARY MATTERS: CONVERSION OF MOTION AND QUALIFIED IMMUNITY

### A.  Conversion of Motion to Dismiss to Motion for Summary Judgment

Movants' request to convert their motions to dismiss to motions for summary judgment is denied because discovery from Plaintiff will be important in deciding whether there is an issue of fact about what occurred during the alleged incidents.  Whether to convert a motion to dismiss to one for summary judgment is within the discretion of the district court.  *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60-61 (2d Cir. 1998); *accord Peterson v. Wells Fargo Bank, N.A.*, No. 22-1343-CV, 2023 WL 4363239, at *2 (2d Cir. July 6, 2023) (summary order).

In the alternative, movants have asked the Court to consider information outside of the pleadings.  The NYCH+H Defendants have attached Plaintiff's Harlem Hospital records, and the City Defendants have attached NYPD's Intergraph Computer Aided Dispatch Summaries and Aided Reports to support their arguments on issues such as probable cause and qualified immunity.  However, these documents are not properly considered on this motion.  "In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" as well as any document that is "integral to the complaint."  *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).[1]  "[A] document may be considered 'integral' to the complaint . . . where the plaintiff relies heavily on the document's terms and effect in pleading his claims and there is no serious dispute as to the document's authenticity[, for example] a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls."  *United*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021).  Neither the proffered hospital records nor the police records are attached to, referenced in, or integral to the complaint. *See, e.g.*, *Hamilton v. Westchester Dep't of Corr.*, No. 19 Civ. 3838, 2020 WL 4271709, at *3 (S.D.N.Y. July 23, 2020) (at motion to dismiss stage, declining to consider medical records proffered by defendant when plaintiff alleged deliberate indifference to medical needs).

### B.  Qualified Immunity

The Court declines to adjudicate the assertions of qualified immunity by the NYCH+H Defendants and City Defendants at this stage.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 45 (2d Cir. 2018).  Again, further factual development, including at least Plaintiff's deposition, will be important to decide what happened and whether, under those circumstances, Defendants are entitled to qualified immunity.  *See Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (at motion to dismiss stage, declining to dismiss case on qualified immunity grounds because "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed").

### III.    LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

A pro se litigant's papers must be construed liberally "to raise the strongest arguments they suggest." *Green v. Dep't of Educ. of N.Y.C.*, 16 F.4th 1070, 1074 (2d Cir. 2021).  Pro se litigants are accorded "special solicitude to protect them from inadvertent forfeiture of important rights because of their lack of legal training." *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021).  Nonetheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *accord Scalercio-Isenberg v. Port Auth. of N.Y. & N.J.*, 487 F. Supp. 3d 190, 200 (S.D.N.Y. 2020).

## IV.   DISCUSSION

Construed liberally, the Complaint asserts claims under 42 U.S.C. §§ 1983 and 1985 for violations of Plaintiff's Fourth and Fourteenth Amendment rights by the NYCH+H Defendants and City Defendants, in addition to state law and other claims arising from the incidents described above.  All of the claims are dismissed except the false arrest claims against the relevant individual City Defendants; the excessive force, search or seizure, failure to intervene, due process, assault and battery claims against the relevant individual City Defendants and

6

NYCH+H Defendants; and the respondeat superior claim against the City related to Plaintiff's state law assault, battery and false arrest claims.

### A. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a § 1983 claim, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

Neither the NYCH+H Defendants nor the City Defendants contest they were acting under color of state law during the relevant incidents. Each of the possible § 1983 claims is addressed below.

### 1. False Arrest

The Complaint adequately pleads a false arrest claim against individual City Defendants Castelluccio, Maldonado, Castro, Patricio and Does #1-10. "A mental health false arrest claim arises from both the Fourth Amendment's protection against unreasonable mental health seizures and the Fourteenth Amendment's due process protections." *Guan v. City of New York*, 37 F.4th 797, 807 (2d Cir. 2022). "In analyzing § 1983 false arrest claims, we look to the law of the state in which the arrest occurred. In New York, to prevail on a false arrest claim, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.* at 804. "An arrest is privileged if it is based on probable cause,

for probable cause is a complete defense to a false arrest claim." *Id.* "[T]o make a mental health arrest, police officers must consider whether probable cause exists to believe the individual is a danger to herself or others, that is, whether there is a substantial risk of serious physical harm to herself or others." *Id.* at 807.

Probable cause is an affirmative defense. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). "Where an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Id.* Because a complaint is not required to plead facts to negate an affirmative defense, a complaint need not plead facts showing that the arresting officers lacked probable cause. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses."); *Young v. Lugo*, No. 18 Civ. 4216, 2021 WL 5989106, at *5 (E.D.N.Y. Dec. 17, 2021) (allowing false arrest claim in amended complaint because plaintiff was not required to plead lack of probable cause for warrantless arrest). A false arrest claim can be dismissed based on probable cause only if it is evident from the facts alleged in the complaint that the officers had probable cause. *See Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) (summary order); *accord Swanhart v. Jackson*, No. 20 Civ. 6819, 2023 WL 4534638, at *7 (S.D.N.Y. July 13, 2023).

Here, the only disputed element of Plaintiff's false arrest claim is whether his arrests were privileged. Although discovery may reveal that the events happened differently, nothing on the face of the Complaint shows that the officers had probable cause to believe Plaintiff was a danger to himself or others. *See Swanhart*, 2023 WL 4534638, at *7 (declining to dismiss false arrest claim when it was "ultimately not evident that probable cause existed from the face of the Amended Complaint"); *Vett v. City of New York*, No. 20 Civ. 2945, 2022 WL 47231, at *9

(S.D.N.Y. Jan. 5, 2022) (same).  The Complaint alleges that on October 1, 2021, Plaintiff was trying only to file a complaint with the management employees of his residential building.  There are no facts to suggest that Plaintiff was armed or otherwise at substantial risk of causing serious physical harm to anyone.  Similarly, the Complaint alleges that Plaintiff was inside his residence and not a danger to anyone on October 5, 2021, when Defendants Castro, Patricio and others entered Plaintiff's apartment without his permission and forced Plaintiff to leave with them.  The City Defendants' only arguments regarding probable cause rely on documents outside of the pleadings that cannot be considered at this stage.

The City Defendants' argument that the Complaint relies on improper group pleading against the individual Defendants for this and other claims is unavailing except as to Defendants Sanjay Bajnauth and Police Officer 718.  To establish a defendant's individual liability in a § 1983 suit, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023).  While the Complaint does refer to a group of twelve individuals who participated in the arrest on October 1, 2021, and a group of twenty-three individuals who participated in the arrest on October 5, 2021, drawing all inferences in Plaintiff's favor, the Complaint need not identify which officer took which specific action under the circumstances of his arrests. *See Messina v. Mazzeo*, 854 F. Supp. 116, 126 (E.D.N.Y. 1994) (declining to dismiss excessive force claim for lack of specificity because "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officers played in an alleged instance of police brutality").

The Complaint furnishes adequate notice for initial pleading purposes of each of Plaintiff's claims.  With the exception of Defendants Bajnauth and Police Officer 718, who do not appear in any of the factual allegations, the Complaint places the individual City Defendants

on notice of the nature of the allegations against them -- as evidenced by the specificity of the

City Defendants' other arguments to dismiss the Complaint on the merits.  *See, e.g.*, *Rodriguez v.*

*Burnett*, No. 22 Civ. 10056, 2024 WL 1466880, at *3 (S.D.N.Y. Apr. 4, 2024) (rejecting

defendants' group pleading argument in pro se § 1983 case); *Arias v. East Hartford*, No. 20 Civ.

895, 2021 WL 3268846, at *4 (D. Conn. July 30, 2021) (collecting cases).  The claims against

only Defendants Bajnauth and Police Officer 718 are dismissed for failure to state a claim, but

may be repleaded in an amended complaint with a specific description of misconduct by

Defendants Bajnauth and Police Officer 718.

### 2.  Excessive Force

The Complaint adequately pleads an excessive force claim against individual City

Defendants Castelluccio, Maldonado and Does #1-10.  "Under *Graham v. Connor*, 490 U.S. 386

(1989), we review a plaintiff's excessive force claim under the Fourth Amendment standard of

objective reasonableness to assess whether an officer's conduct was appropriate in light of the

facts and circumstances confronting him."  *Cugini v. City of New York*, 941 F.3d 604, 608 (2d

Cir. 2019).  "To determine whether the amount of force an officer used was reasonable, we

balance an individual's Fourth Amendment interests against countervailing governmental

interests, including the severity of the crime and whether the suspect poses a safety or flight risk

or resists arrest."  *Id.*  "A plaintiff must also demonstrate that the officer was made reasonably

aware that the force used was excessive."  *Id.*  In the Second Circuit, "an officer's use of

excessive force during handcuffing could give rise to a Fourth Amendment claim for excessive

force."  *Id.* at 616.  Factors to consider in evaluating the reasonableness of a handcuffing include

whether "(1) the arrestee's handcuffs were unreasonably tight; (2) the defendants ignored the

arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the arrestee's

wrists."  *Id.* at 612.

Here, the Complaint alleges that Plaintiff did not pose a safety risk.  The Complaint alleges that Defendants Castelluccio, Maldonado and others nevertheless placed Plaintiff in handcuffs and purposely overtightened them, even after Plaintiff requested that they loosen the handcuffs, leaving marks and injuries on Plaintiff's wrists.  On these facts, the excessive force claims against Defendants Castelluccio, Maldonado and Does #1-10 are sufficiently pleaded.

For similar reasons, the Complaint adequately pleads an excessive force claim against the unidentified NYCH+H police officers John Does #31-40.  Once Plaintiff arrived at Harlem Hospital, the Complaint alleges that at least three Does #31-40 dragged Plaintiff, with his head towards the floor, to the hospital's emergency psychiatric department.  Upon entering the department, Does #31-40 dropped Plaintiff to the floor and pinned him against the floor by pulling his arms behind his back, causing him to be choked.  Given the Complaint's allegations that Plaintiff was cooperative and not a danger to anyone, the Complaint states a plausible claim of excessive force against these NYCH+H Defendants.

### 3.  Unlawful Search or Seizure

The Complaint sufficiently pleads a claim of unreasonable search or seizure against the individual City Defendants and NYCH+H Defendants.  "A Section 1983 action based on involuntary civil commitment for a psychiatric evaluation implicates both the Fourth Amendment's prohibition on unreasonable seizures and the Fourteenth Amendment's Due Process Clause."  *Aouatif v. City of New York*, No. 7 Civ. 1302, 2019 WL 2410450, at *6 (E.D.N.Y. May 31, 2019), *aff'd*, 811 F. App'x 711 (2d Cir. 2020).  "The Fourth Amendment protects against unreasonable searches and seizures whether the seizure is for purposes of law enforcement or due to an individual's mental illness.  Courts have found that involuntary confinement to a hospital is 'tantamount to the infringement of being arrested,' and thus amounts to a seizure within the meaning of the Fourth Amendment."  *Id.* at *9 (quoting *Glass v. Mayas*,

984 F.2d 55, 58 (2d Cir. 1993)).  "Involuntary transport to a hospital may also constitute a seizure for purposes of the Fourth Amendment.  Such a seizure does not violate the Fourth Amendment, however, if there is probable cause for it, meaning that there existed 'reasonable grounds for believing that the person seized' is dangerous to herself or to others."  *Id.* (quoting *Glass*, 984 F.2d at 58).  "For a mental health seizure, the law requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior.  To determine whether probable cause existed to justify a mental health seizure, courts must look to the specific observations and information available at the time of the seizure."  *Id.*

As discussed above, probable cause is an affirmative defense, meaning that Plaintiff's claims can be dismissed on this ground only if it is evident from the face of the Complaint that probable cause existed.  The pleaded facts do not show that the City Defendants had probable cause to transport Plaintiff to Harlem Hospital and St. Luke's Hospital or that the NYCH+H Defendants had probable cause to confine Plaintiff at Harlem Hospital.  For the same reasons described in the false arrest section, the Complaint does not allege any facts that suggest Plaintiff required an emergency psychiatric evaluation.  The NYCH+H Defendants' arguments to the contrary fail because they rely on records outside of what may be considered on these motions to dismiss.

For similar reasons, the Complaint sufficiently pleads an unreasonable search claim against Defendants Castelluccio, Maldonado and Does #1-10 for searching Plaintiff's belongings without his consent on October 1, 2021, and against Defendants Castro, Patricio and Does #1-10 and #21-30 for entering Plaintiff's apartment on October 5, 2021, without his consent.  *See Thompson v. Clark*, No. 23-900-CV, 2024 WL 2720230, at *3 n.3 (2d Cir. May 28, 2024) (summary order) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.").  The "emergency aid"

exception, under which "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury," does not apply as the Complaint does not suggest anyone was at risk of imminent injury.  *See Kentucky v. King*, 563 U.S. 452, 460 (2011); *accord Thomas v. Town of Lloyd*, No. 21 Civ. 1358, 2024 WL 118939, at *7 (N.D.N.Y. Jan. 11, 2024) (plaintiff plausibly alleged unreasonable search of his home when police officers entered without his consent and there were no allegations plaintiff was "in imminent danger of self-harm").

### 4.  Familial Association

The Complaint suggests, but fails to state, a plausible familial association claim.  "The Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association . . . ."  *Gorman*, 910 F.3d at 47.  "A claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  *Id.* In addition, "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship."  *Id.* at 48.  "[C]ognizable claims for familial association appear to require truly egregious conduct, for example: when the state separates family members during a critical and traumatic moment, when the state disseminates false information to family members that causes them to believe that plaintiff murdered his mother and sister, or when a school subjected plaintiffs' children to religious indoctrination which resulted in the children alienating their parents."  *Ekeland v. Binns*, No. 22 Civ. 3485, 2023 WL 3997124, at *5 (E.D.N.Y. June 14, 2023).  Here, the Complaint fails to allege such "shocking" conduct or that "state action was specifically intended to interfere with the family relationship."  *See Gorman*, 910 F.3d at 47-48. The familial association claim is therefore dismissed.

### 5.  Fourteenth Amendment Due Process

Apart from the familial association claim, the Complaint otherwise adequately states a Fourteenth Amendment due process claim against the individual NYCH+H Defendants and City Defendants based on Plaintiff's involuntary hospitalization for the same reasons discussed above regarding Plaintiff's seizure claims.  *See Lurch v. Chaput*, No. 22-798-PR, 2023 WL 2469943, at *1 (2d Cir. Mar. 13, 2023) (summary order) ("Involuntary hospitalization by state actors implicates Fourteenth Amendment rights to substantive and procedural due process and Fourth Amendment rights against unreasonable seizure.").  To the extent the Fourteenth Amendment due process and Fourth Amendment seizure claims are duplicative, they are construed as alternative claims at this stage.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").  *But see Barkai v. Mendez*, 629 F. Supp. 3d 166, 202-03 (S.D.N.Y. 2022) (noting "some conflict within the Second Circuit as to whether substantive due process claims can coexist with Fourth Amendment claims in the context of involuntary hospitalizations," and concluding "that substantive due process claims cannot be brought against law enforcement officers who bring a person into a hospital in the civil confinement context.").

### 6.  Failure to Intervene

The Complaint adequately states a claim of failure of intervene against the individual law enforcement City Defendants and unidentified NYCH+H police officers Does #31-40.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019); *see, e.g., Thorpe v. City of New York*, 19 Civ. 5995, 2021 WL 3811238 at *11-12 (S.D.N.Y. Aug. 25, 2021) (declining to dismiss failure to intervene claim against NYCH+H police officer who may have

14

been present during alleged attack on plaintiff by another NYCH+H police officer).  "Whether the officer had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Sloley*, 945 F.3d at 47.

Here, "at the motion to dismiss stage, courts allow causes of action for direct participation and failure to intervene to be pled in the alternative where a plaintiff has sufficiently pled a constitutional violation, with the caveat that the plaintiff later specify which defendants he seeks to hold liable for the direct constitutional violation versus which he seeks to hold liable for failure to intervene."  *Leckie v. City of New York*, Nos. 19 Civ. 6719, 21 Civ. 7212, 2023 WL 3168699, at *15 (S.D.N.Y. May 1, 2023).  In light of Plaintiff's pro se status and the sufficiently pleaded claims for the constitutional violations discussed above, Plaintiff's failure to intervene claims are construed as claims in the alternative.  However, Plaintiff's failure to intervene claims are dismissed against all Defendants who are not law enforcement officials.  *See Sloley*, 945 F.3d at 46 ("all *law enforcement officials* have an affirmative duty to intervene" (emphasis added)).

### 7. **Municipal Liability**

The Complaint fails to state a plausible claim of municipal liability against either the City or NYCH+H under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Because "[t]he NYPD, as a city agency, is not a suable entity," the claims against the NYPD are construed as claims against the City.  *See Paige-El v. Herbert*, 735 F. App'x 753, 755 (2d Cir. 2018) (summary order).  Similarly, "courts of this circuit have concluded that operating divisions of [NYCH+H] are not . . . separate entities from [NYCH+H] and should not be independently subject to suit." *Thorpe*, 2021 WL 3811238, at *5.  Accordingly, the claims against Harlem Hospital are construed as claims against NYCH+H.

A municipal entity cannot be held liable under § 1983 on a respondeat superior theory.

*Monell*, 436 U.S. at 691; *accord Aouatif*, 2019 WL 2410450, at *13.  To establish a claim against a local government, the plaintiff must show: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023).  "To satisfy the policy-or-custom requirement, a plaintiff may challenge an express rule or regulation, or the plaintiff may allege that the challenged practice was so persistent or widespread as to constitute a custom or usage with the force of law or that the facts imply the constructive acquiescence of senior policy-making officials."  *Green*, 16 F.4th at 1077.  "However, a general and conclusory allegation of a municipal policy or custom fails to state a plausible claim."  *Id.*

The claims against the City and NYCH+H are dismissed because the Complaint does not allege "a municipal policy or custom" that deprived Plaintiff of a constitutional right, as required to establish municipal liability.  *See Friend*, 61 F.4th at 93.  The Complaint alleges that NYCH+H and the City had a de facto policy of using excessive force against Black individuals and that their failures to hire and train employees amounted to deliberate indifference.  While the Complaint adequately pleads an excessive force claim, nothing in the Complaint's description of the challenged conduct suggests that the City or NYCH+H was motivated by racial animus or that there was any widespread policy or custom.  Instead, the Complaint makes only "general and conclusory allegation[s] of a municipal policy or custom," which are insufficient to survive a motion to dismiss.  *See Green*, 16 F.4th at 1077.  The § 1983 claims against the City, the NYPD, NYCH+H and Harlem Hospital are dismissed.

### B.  42 U.S.C. § 1985 Claims

The Complaint does not adequately plead a conspiracy claim under 42 U.S.C. § 1985(3) against the City Defendants or NYCH+H Defendants.  The Complaint asserts that the City Defendants and NYCH+H Defendants conspired to deprive him of his constitutional rights in

violation of § 1985.  "In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff

must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is

either injured in his person or property or deprived of any right or privilege of a citizen of the

United States."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *accord*

*Jallow v. Geffner*, No. 23 Civ. 3969, 2024 WL 37073, at *7 (S.D.N.Y. Jan. 2, 2024).  "A

§ 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based,

invidious discriminatory animus behind the conspirators' action."  *Cine SK8, Inc.*, 507 F.3d at

791.  "In order to maintain an action under Section 1985, a plaintiff must provide some factual

basis supporting a meeting of the minds, such that defendants entered into an agreement, express

or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *accord*

*Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (summary order).

     The Complaint provides no factual basis to support the inference that any Defendants

agreed with each other to deprive Plaintiff or a class of persons their equal protection rights.  The

Complaint makes only conclusory allegations that the City Defendants and NYCH+H

Defendants conspired to violate his rights with the goals of exploiting individuals for insurance

purposes and suppressing individuals with dissenting political views.  The § 1985 claims are

dismissed.

### C.  42 U.S.C. § 1981 Claims

     The Complaint fails to plead a claim under 42 U.S.C. § 1981 against the City Defendants

or NYCH+H Defendants because such a racial discrimination claim can be brought against only

private actors and not state actors like the City Defendants and NYCH+H Defendants.  *See*

*Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018) ("42 U.S.C. § 1983 provides the

sole cause of action available against state actors alleged to have violated § 1981."); *accord Gill v. Dawkins*, No. 16 Civ. 1398, 2020 WL 7042647, at *3 (E.D.N.Y. Nov. 30, 2020).

### D.  Civil Rights Act of 1964

Even liberally construed as a Title VI claim, the cause of action based on the Civil Rights Act of 1964 is dismissed.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Under Title VI, "the plaintiff must show, *inter alia,* that the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001); *accord Elliott v. City of New York*, No. 23 Civ. 352, 2024 WL 1119275, at *11 (S.D.N.Y. Mar. 14, 2024).  On these allegations, the Complaint fails to plead facts suggesting that race was a motivating factor in any of the described incidents on October 1, 2021, and October 5, 2021.

### E.  Civil Rights Act of 1968

Even construed as a Fair Housing Act ("FHA") claim, the cause of action based on the Civil Rights Act of 1968 is dismissed against the City and NYCH+H.  "To state a claim under the FHA, a plaintiff must plausibly allege that: (1) he was a member of a class protected by the FHA, and (2) he suffered an adverse housing action because of his membership in that protected class." *Jallow*, 2024 WL 37073, at *15.  The Complaint fails to plead any adverse housing action caused by his race.  As stated above, the Complaint fails to plead facts suggesting that race was a motivating factor in any of the described events.

### F.  State Law Claims

The Complaint's claims under the New York State Constitution are dismissed as

18

duplicative of the federal claims.  *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 20 Civ. 4553, 2022 WL 4134718, at *9 (S.D.N.Y. Sept. 12, 2022) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.").

The assault and battery claims against individual City Defendants Castelluccio, Maldonado and Does #1-10 and individual NYCH+H Defendants Does #31-40 survive for the reasons discussed above for excessive force.  *See Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, 830 F. App'x 46, 48-49 (2d Cir. 2020) (summary order) (considering assault and battery claims and excessive force claim together).  The assault and battery claims are dismissed against Defendants Drs. Rahman, Agwu, Hashem and Balasubramania Pandian because the Complaint fails to allege they had any physical contact with Plaintiff or placed him in imminent fear of offensive contact.  *See Rivera v. State*, 142 N.E.3d 641, 644-45 (N.Y. 2019) ("Battery is the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive; assault involves putting a person in fear of a battery.").

The false arrest claim survives against individual City Defendants Castelluccio, Maldonado and Does #1-10 for arresting Plaintiff on October 1, 2021, and against individual City Defendants Castro, Patricio and Does #1-10 and #21-30 for arresting Plaintiff on October 5, 2021, for the reasons discussed above for false arrest under 42 U.S.C. § 1983.  *See Adams v. City of Syracuse*, No. 21 Civ. 650, 2022 WL 685286, at *5 (N.D.N.Y. Mar. 8, 2022) (treating state law false arrest claim "as synonymous" with federal law false arrest claim and declining to dismiss state law false arrest claim as duplicative).

The intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress claims are dismissed as duplicative because the underlying conduct is

actionable as assault and battery.  *See Fleischer v. NYP Holdings, Inc.*, 961 N.Y.S.2d 393, 395 (1st Dep't 2013) (dismissing IIED claim as duplicative when the underlying allegations fell "within the ambit of other traditional tort liability, namely, plaintiff's cause of action sounding in defamation"); *Vivar v. City of New York*, No. 18 Civ. 5987, 2020 WL 1505654, at *16 (S.D.N.Y. Mar. 30, 2020) (stating that "all four New York State Appellate Division courts have held that [intentional and negligent infliction of emotional distress] claims may never be brought when the challenged conduct falls well within the ambit of other traditional tort liability.").

The Complaint adequately pleads a limited respondeat superior claim against the City. "Under the common-law doctrine of respondeat superior, an employer -- including the State -- may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment."  *Rivera*, 142 N.E.3d at 645; *Lepore v. Town of Greenburgh*, 992 N.Y.S.2d 329, 332 (2d Dep't 2014) ("[M]unicipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees.").  "The employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment.  Liability attaches for the tortious acts of . . . employees only if those acts were committed in furtherance of the employer's business and within the scope of employment."  *Rivera*, 142 N.E.3d at 645.  "Whether an employee acted within the scope of employment is a fact-based inquiry."  *Id.*  "We have long recognized that, in cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment."  *Id.* at 646.  Here, the Complaint sufficiently pleads assault, battery and false arrest claims against the individual City Defendants described above and that the allegedly tortious conduct occurred within the scope of employment.

The negligent hiring claim is dismissed against the City and NYCH+H, as such a claim can be based only on "acts outside the scope of the individual defendants' employment." *See Lindsay-Thompson v. Montefiore Med. Ctr.*, 49 N.Y.S.3d 98, 99 (1st Dep't 2017). Here, the Complaint alleges that the individual Defendants acted within the scope of their employment.

### G. *Valentin* Order

Under *Valentin v. Dinkins*, a pro se litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d 72, 76 (2d Cir. 1997). Accordingly, the City Defendants and NYCH+H Defendants shall ascertain the identity of each Doe Defendant who remains in this action as set forth above and with whom they are affiliated, respectively. By **August 12, 2024**, the City Defendants and NYCH+H Defendants shall provide to Plaintiff and the Court the name and address where each such Doe Defendant may be served, if the City and NYCH+H do not accept service on the Defendant's behalf. By **August 12, 2024**, the City Defendants and NYCH+H Defendants shall file a joint letter updating the Court on their efforts to comply with the *Valentin* order and any service or representation updates.

### H. Leave to Replead

Because Plaintiff is pro se, he may seek leave to replead certain dismissed claims if he has additional facts that would support these claims and cure the deficiencies outlined above. Alternatively, Plaintiff may elect not to replead and proceed on the claims that have survived. More claims do not necessarily mean more recovery because the harm or damage Plaintiff sustained may be duplicative.

Plaintiff may seek to replead any or all (or none) of the following dismissed claims if he can provide the necessary additional facts: (1) municipal liability under 42 U.S.C. § 1983 against the City and NYCH+H, (2) conspiracy under 42 U.S.C. § 1985, (3) Civil Rights Act of 1964 (Title VI) claims and (4) Civil Rights Act of 1968 (FHA) claims. Plaintiff is encouraged to

review carefully the relevant sections of this Opinion, which are Sections IV.A.7 (§ 1983 municipal liability), IV.B (§ 1985 conspiracy claims), IV.D (Civil Rights Act of 1964) and IV.E (Civil Rights Act of 1968) to determine what additional facts are necessary to be pleaded.

Plaintiff may also seek leave to replead claims against Defendants Bajnauth and Police Officer 718 but must allege specific facts regarding their involvement in the October 1, 2021, or October 5, 2021, incidents.

If Plaintiff believes that he can cure the deficiencies identified in this Opinion with respect to the above claims, by **September 12, 2024**, he may seek leave to replead by filing a proposed amended complaint as an attachment to a letter explaining how the amended complaint addresses the deficiencies identified in this Opinion. The proposed amended complaint shall also include the named John Doe Defendants identified by the City Defendants and NYCH+H Defendants, and explain how each of them engaged in any misconduct. If possible, the proposed amended complaint shall be marked to show changes from the current complaint.

For the remaining claims, leave to replead against the City Defendants and NYCH+H Defendants is denied as futile because the issues with those claims are substantive and cannot be cured with better pleading.

## V.   CONCLUSION

For the foregoing reasons, the NYCH+H and City Defendants' motions to dismiss the Complaint are **DENIED** in part and **GRANTED** in part. The claims against Harlem Hospital are deemed claims against NYCH+H, which is dismissed along with Sanjay Bajnauth and Police Officer 718. The claims against the NYPD are deemed claims against the City, and the federal claims against the City are dismissed. The following claims against all NYCH+H Defendants and City Defendants are dismissed: the due process claim for interference with familial association; claims under 42 U.S.C. § 1985, 42 U.S.C. § 1981, the Civil Rights Act of 1964 (Title

VI), the Civil Rights Act of 1968 (FHA), and the New York State Constitution; and common law claims for IIED and negligent infliction of emotional distress.

For clarity, the surviving claims against the NYH+H Defendants, the City Defendants, and related John Doe Defendants are:

- Claims under 42 U.S.C. § 1983 for:

  - False arrest against Defendants Castelluccio, Maldonado and Does #1-10 for arresting Plaintiff on October 1, 2021; and against Defendants Castro, Patricio and Does #1-10 and #21-30 for arresting Plaintiff on October 5, 2021;

  - Excessive force against Defendants Castelluccio, Maldonado and Does #1-10 for the manner of handcuffing Plaintiff on October 1, 2021; and Does #31-40, for their conduct toward Plaintiff on October 1, 2021, at Harlem Hospital;

  - Unlawful seizure against Defendants Castelluccio, Maldonado, Rosas and Does #1-10 and #21-30 for transporting Plaintiff to Harlem Hospital on October 1, 2021; against Defendants Castro, Patricio and Does #1-10 and #21-30 for transporting Plaintiff to St. Luke's Hospital on October 5, 2021; and against Defendants Drs. Rahman, Agwu, Hashem, Balasubramania Pandian and Does #31-40 and 41-50 for confining Plaintiff at Harlem Hospital;

  - Unlawful search against Defendants Castelluccio, Maldonado and Does #1-10 for searching Plaintiff's belongings without his consent on October 1, 2021; and against Defendants Castro, Patricio and Does #1-10 and #21-30 for entering Plaintiff's apartment on October 5, 2021, without his consent;

  - Fourteenth Amendment due process violation against Defendants Castelluccio, Maldonado, Rosas, Does #1-10 and #21-30, Drs. Rahman, Agwu, Hashem, Balasubramania Pandian and Does #31-40 and 41-50 based

23

on Plaintiff's involuntary hospitalization at Harlem Hospital;

- o Failure to intervene against Defendants Castelluccio, Maldonado, Castro, Patricio and Does #31-40, pleaded in the alternative to the direct participation claims above that are alleged against individual City Defendants and individual NYCH+H Defendants who are identified as hospital police;

- Claims under state law:

  - o Assault and battery against Defendants Castelluccio, Maldonado, Does #1-10 and the City (respondeat superior) for the manner of handcuffing Plaintiff on October 1, 2021; and Does #31-40, for their conduct toward Plaintiff on October 1, 2021, at Harlem Hospital;

  - o False arrest against Defendants Castelluccio, Maldonado, Does #1-10 and the City (respondeat superior) for arresting Plaintiff on October 1, 2021; and against Defendants Castro, Patricio, Does #1-10 and #21-30 and the City (respondeat superior) for arresting Plaintiff on October 5, 2021.

The NYH+H Defendants and City Defendants shall provide information about the Doe Defendants by **August 12, 2024**, as set forth above.  By **September 12, 2024**, Plaintiff may, but is not required to, seek to replead as set forth above.

The Clerk of Court is respectfully directed to close the motions at Dkts. 95 and 100 and to mail a copy of this Opinion to pro se Plaintiff.

Dated: July 10, 2024
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE