UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
ALI MOORE,

Plaintiff,

-against

**DOCKET NO.: 22-CV-10957**

CITY OF NEW YORK, NEW YORK, NEW YORK POLICE DEPARTMENT POLICE OFFICER ANTONIO CASTELLUCCIO, in a collective capacity, NEW YORK CITY POLICE OFFICER SANJAY BAJNAUTH, in a collective capacity, NEW YORK CITY POLICE SGT. DAVID S. MALDONADO, in a collective capacity, NEW YORK CITY POLICE OFFICER DAVID CASTRO, in a collective capacity, NEW YORK CITY POLICE OFFICER NILSA PATRICIO, in a collective capacity, NEW YORK CITY POLICE OFFICER JOHN DOES #1-10 (fictitiously named), in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679, in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ, in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMS/EMT JOHN DOES #21-30 (fictitiously named), in a collective capacity, NEW YORK CITY HEALTH + HOSPITALS, NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, Mount Sinai st Lukes , Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur, NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS ,#2679,, EMT/EMS VASQUEZ, OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH, NEW YORK CITY POLICE SGT. DAVID S. MALDONADO, OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES

Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN),Crystal Channel Allman (RN), Equagie Ehimwenma (RN),Chang Young Cho (NP), Officer Francis Senaiour, NYCH+H/ New York City Hospital Police , OFFICER Georaida Germonse, OFFICER Francis Senajou, OFFICER Terrence Pemberto, OFFICER Captain David Lopez- , OFFICER Ser. Jocl Rivera, NEW YORK CITY HEALTH +

POLICE Sergeant Joseph Angelone, NYPD Lieutenant Salvatore Ronzino HOSPITALS JOHN DOES #31-40 (fictitiously NYPD Officer Gabriela Flores Tapia, named), in a collective capacity, DOCTOR NURUR RAHAM, in a collective capacity, DOCTOR KALU AGWU, in a collective capacity, DOCTOR RYAN H. HASHE, in a collective capacity, DOCTOR GAUTAM BALASUBRAMANIA, in a collective capacity, HARLEM HOSPITAL, and KAREN EUBANKS HARLEM HOSPITAL JOHN DOES #41-50 (fictitiously named), in a collective capacityMORNINGSIDE HEIGHTS HOUSING CORPORATIONS, and JOHN DOES, FIRSTSERVICE RESIDENTIAL, and JOHN DOES, MOUNT SINAI ST LUKE'S HOSPITAL, and JOHN DOES, MOUNT SINAI HEALTH SYSTEM, and JOHN DOES,

NYPD OFFICER CHRISTOPHER TORTURO NYPD OFFICER DAVID FRANKLIN NEW YORK CITY POLICE SERGEANT PERRIER NEW YORK CITY POLICE STAMFORD CENTRAL INTELLIGENCE AGENCY, WILLIAM J. BURNS. JOE BIDEN, KAMALA HARRAS, BARACK OBAMA, COLUMBIA UNIVERSITY, KAREN EUBANKS, EARL MOORE ,KARINE

JEAN-PIERRE 18957 and 3eRW LAMDs AARONSON , EMT Robert Kraft. Badge No. 3502, FDNY Lieutenant Alexander Gomez. Badge No. 0303. Sergeant Brian Stanton, Jill Biden , Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York,

**FIRST AMENDED FOURTH AMENDED FOURTEENTH AMENDED EIGHT AMENDED, FIFTH AMENDED 3rd amend ,COMPLAINT DRAFT Example copy still working on it took longer then expected will need do corrections**

**BENCH TRIAL DEMANDED**

**FEDERAL QUESTION/DIVERSITY CITIZ**

Defendants.

-------------------------------------------------------

-------------- X

 **(LGS)**

Plaintiff, ALI MOORE being a Party of Defendant CITY OF NEW YORK, NEW YORK CITY

DEPARTMENT AND POLICE OFFICER

1

ANTONIO CASTELLUCCIO, in a collective capacity, NEW YORK CITY POLICE OFFICER SANJAY BAJNAUTH, in a collective capacity, NEW YORK CITY POLICE SGT. DAVID S. MALDONADO, in a collective capacity, NEW YORK CITY POLICE OFFICER DAVID CASTRO, in a collective capacity, NEW YORK CITY POLICE OFFICER NILSA PATRICIO, in a collective capacity,

NEW YORK CITY POLICE OFFICER JOHN DOES #1-10 (fictitiously named), in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679, in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ, in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMS/EMT JOHN DOES #21-30 (fictitiously named), in a collective capacity, NEW YORK CITY HEALTH + HOSPITALS, NEW YORK CITY HEALTH + HOSPITALS JOHN DOES #31-40 (fictitiously named), in a collective capacity, DOCTOR NURUR RAHAM, in a collective capacity, DOCTOR KALU AGWU, in a collective capacity, DOCTOR RYAN H. HASHE, in a collective capacity, DOCTOR GAUTAM BALASUBRAMANIA, in a collective capacity, HARLEM HOSPITAL, and HARLEM HOSPITAL JOHN DOES #41-50 (fictitiously named), in a collective capacity, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff, ALI MOORE ("MOORE" or "Plaintiff") seeks relief from Defendants CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER ANTONIO CASTELLUCCIO, in a collective capacity, NEW YORK CITY POLICE OFFICER SANJAY BAJNAUTH, in a collective capacity, NEW YORK CITY POLICE SGT. DAVID S.

NEW YORK CITY POLICE OFFICER DAVID CASTRO, in a collective capacity, NEW YORK CITY POLICE OFFICER NILSA PATRICIO, in her collective capacity NEW YORK CITY POLICE OFFICER JOHN DOES #1-10 (fictitiously named), in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679, in a collective capacity, NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ, in his collective capacity, NEW YORK CITY FIRE DEPARTMENT EMS/EMT JOHN DOES #21-30 (fictitiously named), in a collective capacity, NEW YORK CITY HEALTH + HOSPITALS, NEW YORK CITY HEALTH + HOSPITALS JOHN DOES #31-40 (fictitiously named), in a collective capacity, DOCTOR NURUR RAHAM, in a collective capacity DOCTOR KALU AGWU, in his collective capacity, DOCTOR RYAN H. HASHE, in his collective capacity, DOCTOR GAUTAM BALASUBRAMANIA, in a collective capacity, HARLEM HOSPITAL, and HARLEM HOSPITAL JOHN DOES #41-50 (fictitiously named), in a collective capacity, (hereinafter, collectively referred to as "Defendants"), for committing acts violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 , The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law acts under color of law and depriving Plaintiff of rights secured under 42 USC § 1983 grounded in rights secured to him under the Fourth and Fourteenth Amendments to the Constitution of the United States.

2. Plaintiff alleges that Defendants engaged in unlawful conduct including assault, battery, false arrest, abuse of process, excessive force, intentional infliction of emotional distress, and negligent infliction of emotional distress. All acts were committed under the color of law and

deprived Plaintiff of rights secured to him under the Fourth and Fourteenth Amendments of the

Constitution of the United State and the State of New York.

3

3. Plaintiff alleges that Defendants failed to address either the assault or the abuses that

arose from the same that Plaintiff suffered at the hands of Defendants. Plaintiff was wrongfully

arrested, seized, harassed, threatened, assaulted and battered, detained, abused, set out to public

ridicule, and made to suffer injury to his good name, his personage, and his mental state of mind,

without reason, legal basis, or justification by Defendants.

4. Defendants NEW YORK CITY POLICE OFFICER ANTONIO CASTELLUCCIO,

NEW YORK CITY POLICE OFFICER SANJAY BAJNAUTH, NEW YORK CITY POLICE

SGT. DAVID S. MALDONADO, NEW YORK CITY POLICE OFFICER DAVID CASTRO,

NEW YORK CITY POLICE OFFICER NILSA PATRICIO, NEW YORK CITY POLICE

OFFICER JOHN DOES #1-10, NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS

#2679, NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ, NEW YORK CITY

FIRE DEPARTMENT EMS/EMT JOHN DOES #21-30, NEW YORK CITY HEALTH +

HOSPITALS JOHN DOES #31-40, DOCTOR NURUR RAHAM, DOCTOR KALU AGWU,

DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, and HARLEM

HOSPITAL JOHN DOES #41-50, without justification or any reason except an intent to deprive

Plaintiff of his rights and knowledge that their conduct had the tacit authorization of CITY OF

NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY FIRE

DEPARTMENT, NEW YORK CITY HEALTH + HOSPITALS, and HARLEM HOSPITAL,

wrongfully arrested, seized, harassed, threatened, assaulted and battered, detained and abused

Plaintiff's use of excessive force. Conduct upon Plaintiff and depriving civil and Constitutional rights.

5. Plaintiff seeks damages, both compensatory and punitive, award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and equitable.

4

Case 1:22-cv-10957-LGS Document 25 Filed 03/29/23 Page 5 of 37

## JURISDICTION

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned constitutional provisions. Including The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964, The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment for a second time

## VENUE

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the City of New York; the actual place of employment of all of the individual Does is the City of New York in the Southern District of New York; and the City of New York is within the jurisdiction of the Southern District of New York. The events surrounding this lawsuit occurred in the City of New York, in the Southern District of New York.

## THE PARTIES

8. Plaintiff is a resident of the United States who lives in the City of Baltimore, State of Maryland.

11.Upon information and belief, at all relevant times described herein Central Intelligence

Agency( CIA) and Does are being sued in collective capacity for violating The Civil Rights Act

of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights

Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868,

The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law,

8th amendment, within the scope of their employment: **CIA Headquarters**

George Bush Center for Intelligence 1000 Colonial Farm Road McLean, VA 22101 Let me

know if you need additional details!

The address for the **Central Intelligence Agency (CIA)** headquarters is:

**Central Intelligence Agency** Office of Public Affairs Washington, D.C. 20505

Upon information and belief, at all relevant times described herein KARINE JEAN-PIERRE(

white house secretary) and Does are being sued in collective capacity for violating The Civil

Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The

Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution:

Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under

color of state law, 8th amendment, within the scope of their employment: **The White House**

1600 Pennsylvania Avenue NW Washington, D.C. 20500 USA or New York State Democratic

Committee 8th Floor 150 State Street Albany, NY 12207

Upon information and belief, at all relevant times described herein Jill Biden ( white house secretary) and Does are being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment, within the scope of their employment: **The White House**

1600 Pennsylvania Avenue NW Washington, D.C. 20500 USA or New York State Democratic Committee 8th Floor 150 State Street Albany, NY 12207

Audrey Strauss **U.S. Attorney** for the Southern District of New York. She held this position from **June 2020 to October 2021,** is being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment, within the scope of their employment Address:  One St. Andrew's Plaza, New York, NY 10007

Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, , is being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth

The Civil Rights Act of 1968. and acting under color of state law, 8th amendment, within the scope of their employment Address: 271 Cadman Plaza East, Brooklyn, NY 11201

.Upon information and belief, at all relevant times described herein  Sergeant Pierrier is being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment, within the scope of their employment Address: **NYPD Headquarters**

 One Police Plaza ,New York, NY 10038 USA,  520 W 126th St, New York, NY 10027

11.Upon information and belief, at all relevant times described herein William J. Burns and Does

Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The

Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth

Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment,

within the scope of their employment: **CIA Headquarters** George Bush Center for Intelligence

1000 Colonial Farm Road McLean, VA 22101 Let me know if you need additional details!

The address for the **Central Intelligence Agency (CIA)** headquarters is:

**Central Intelligence Agency** Office of Public Affairs Washington, D.C. 20505

10.Upon information and belief, at all relevant times described herein Joe Biden is

being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights

Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The

Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth

Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th

amendment, within the scope of their employment New York State Democratic Committee 8th

Floor 150 State Street Albany, NY 12207 or **The White House** 1600 Pennsylvania Avenue

NW Washington, D.C. 20500 USA

12. Upon information and belief, at all relevant times described herein Kamala Harras is being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment, within the scope of their employment. New York State Democratic Committee 8th Floor 150 State Street Albany, NY 12207 or **The White House** 1600 Pennsylvania Avenue NW Washington, D.C. 20500 USA

16. Upon information and belief, at all relevant times described herein,Barack Obama is being sued in collective capacity for violating the The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment within the scope of their employment, New York State Democratic Committee 8th Floor 150 State Street Albany, NY 12207 or **The White House** 1600 Pennsylvania Avenue NW Washington, D.C. 20500 USA

15. Upon information and belief, at all relevant times described herein,Columbia University is

because Columbia University violated The Civil Rights 1/27/4866 The Civil Rights

Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The

Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth

Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment

within the scope of their employment. Columbia University in the City of New York 2960

Broadway New York, NY 10027 USA

7. Upon information and belief, at all relevant times described herein United States Armed

Forces and Does are being sued in collective capacity for violating The Civil Rights Act of 1866,

The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of

1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The

Fourteenth Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th

amendment, within the scope of their employment. The headquarters of the United States Armed

Forces is located at: The Pentagon 1400 Defense Pentagon Washington, DC 20301-1400 United

States

11.Upon information and belief, at all relevant times described herein Federal strike force and

Does are being sued in collective capacity for violating The Civil Rights Act of 1866, The Civil

Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and

The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth

Amendments, The Civil Rights Act of 1968. and acting under color of state law, 8th amendment,

within the scope of their employment: **CIA Headquarters** George Bush Center for Intelligence

1000 Colonial Farm Road McLean, VA 22101 Let me know if you need additional details!

The address for the **Central Intelligence Agency (CIA)** headquarters is:

## Plaintiff's Allegations and Legal Claims

**1. Plaintiff's Residency**

The Plaintiff is a resident of the United States, domiciled in the City of Baltimore, State of Maryland.

**2. Allegations Against Earl Moore**

Earl Moore allegedly violated the following:

- **Civil Rights Act of 1866**

- **Civil Rights Act of 1871** (Ku Klux Klan Act)

- **Civil Rights Act of 1964**

- **Fourteenth Amendment** to the U.S. Constitution (ratified in 1868)

- **Fourth Amendment**

- **Eighth Amendment**

    Moore is further accused of acting under the color of state law. Additionally, Moore has refused to provide his address.2560 Flatbush Ave, Brooklyn, NY 11234, Raymour & Flanigan Furniture and Mattress Store

**3. Allegations Against James Aaronson**

James Aaronson is accused of violating:

- **Civil Rights Act of 1866**

- **Civil Rights Act of 1871** (Ku Klux Klan Act)

- **Civil Rights Act of 1968**

- **Fourteenth Amendment**

- **Fourth Amendment**

- **Eighth Amendment**

Aaronson has similarly withheld his address.

**4. Allegations Against Ralph St. John**

Ralph St. John is alleged to have committed violations identical to those outlined above. The Plaintiff notes concerns regarding St. John's credibility as a witness, suggesting he may provide false or misleading testimony. St. John has also refused to disclose his address.

**5. Defendants: City of New York and Mount Sinai St. Luke's Hospital**

- The **City of New York** (hereinafter referred to as "CITY") is a municipal corporation established under the laws of the State of New York.

- Mount Sinai St. Luke's Hospital (MSSLH), a subdivision of the CITY, is located at **1111 Amsterdam Avenue, New York, NY 10025, United States.**

- Hospital staff, referred to as **John Does**, are accused of collective violations under:
  - **Civil Rights Act of 1866**
  - **Civil Rights Act of 1871** (Ku Klux Klan Act)
  - **Civil Rights Act of 1964**
  - **Civil Rights Act of 1968**
  - **Fourteenth Amendment**
  - **Fourth Amendment**
  - **Eighth Amendment**

The 1957 alleged that Defendant CO of stated by Defendant their possession of pages.

## 6. Allegations Against Morningside Heights Housing Corporation and FirstService Residential Manges

- Morningside Heights Housing Corporation, located at **80 LaSalle Street, New York City, NY**, is accused of violating civil rights statutes and constitutional amendments, as outlined above.

- FirstService Residential Manges, located at **2950 N 28th Terrace, Hollywood, FL 33020**, is similarly accused of violations under federal civil rights laws.

## 7. Allegations Against Karen Eubanks

Karen Eubanks, Plaintiff's mother, residing at **70 LaSalle Street, Apt. 10D, New York, NY**, is accused of violating the following:

- **Civil Rights Act of 1866**
- **Civil Rights Act of 1964**
- **Civil Rights Act of 1968**
- **Fourteenth Amendment**
- **Fourth Amendment**
- **Eighth Amendment**

## 8. Allegations Against the New York City Police Department (NYPD)

- The NYPD, a subdivision of the CITY, operates at **One Police Plaza, New York, NY 10038.**

- Named officers (e.g., Officer Antonio Castelluccio, Officer Sanjay Bajnauth, Sergeant David S. Maldonado, Officer David Castro, and Officer Nilsa Patricio) are accused of violating civil rights statutes and constitutional amendments while acting within the scope

**9. Allegations Against the New York City Fire Department (FDNY)**

- FDNY operates at **9 Metrotech Center, Brooklyn, NY 11201.**

- EMT/EMS personnel (e.g., Rosas #2679, Vasquez, and John Does #21-30) are accused of collective violations under civil rights statutes and constitutional amendments while acting within the scope of their duties.

**10. Allegations Against New York City Health + Hospitals (NYCHH)**

- NYCHH operates at **50 Water Street, New York, NY 10004.**

- Accused employees include doctors (e.g., Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan H. Hashe, Dr. Gautam Balasubramania) and other staff who allegedly committed civil rights violations under the color of state law.

Upon information and belief, at all relevant times described herein, Defendant CITY OF NEW YORK (hereinafter, referred to as "CITY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the Mount Sinai St Lukes, including all Hospital staff.

Upon information and belief, at all relevant times described herein, Mount Sinai St Luke's (hereinafter, referred to as "MSSLH") is a subdivision and/or agency of Defendant CITY and has an office at 1111 Amsterdam Avenue New York, NY 10025 United States

Upon information and belief, at all relevant times described herein, Defendant Mount Sinai St Lukes and John Does ) is hospital staff and doctors who are being sued in a collective capacity and is an employees of Defendants CITY and Mount Sinai St Lukes. At all relevant times described herein, John Does was Violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments and acting under color of state law within the scope of their employment as a Hospital staff employed by Defendants CITY and Mount Sinai St Lukes, and works under the supervision, direction, and/or control of there supervisors in Mount Sinai St Lukes.

Upon information and belief, at all relevant times described herein, Defendant CITY OF NEW YORK (hereinafter, referred to as "CITY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the Mount Sinai Health System, including all Hospital staff.

Upon information and belief, at all relevant times described herein, Mount Sinai St Luke's (hereinafter, referred to as "MSHS") is a subdivision and/or agency of Defendant CITY and has an office at Mount Sinai Health System 150 East 42nd Street New York, NY 10017

Upon information and belief, at all relevant times described herein, Defendant Mount Sinai Health System and John Does ) is hospital staff and doctors who are being sued in a collective capacity and is an employees of Defendants CITY and Mount Sinai Health System. At all relevant times described herein, John Does was Violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments and under color of state law within the scope of their employment as a Hospital staff employed by Defendants CITY and Mount Sinai Health System, and works under the supervision, direction, and/or control of their supervisors in Mount Sinai Health System.

Morningside heights housing corporations and John Does Violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments and under color of state law

Morningside Heights Housing corporations located 80 Lasalle St New York City, New York

Firstservice residential Manges Morningside Heights and I am suing them and John Does for Violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku

States Constitution: Ratified in 1868, The Fourteenth Amendments and under color of state law

Firstservice residential Manges Morningside Heights Housing Corporations and they are located at 2950 N 28th Terrace, Hollywood, FL 33020

Karen Eubanks is being sued for Violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendments and under color of state law.

Karen Eubanks is a resident who lives there at 70 Lasalle st apt 10D New York, New York 9. Upon information and belief, at all relevant times described herein, Defendant CITY OF NEW YORK (hereinafter, referred to as "CITY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York. 10. Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the NEW YORK CITY POLICE DEPARTMENT, including all police officers thereof.

15. Upon information and belief, at all relevant times herein mentioned, the following parties are collectively being sued for violations of the Civil Rights Act of 1866, the Civil Rights Act of 1871 (Ku Klux Klan Act), the Civil Rights Act of 1964, the Fourteenth Amendment to the United States Constitution (ratified in 1868), and the Civil Rights Act of 1968. These violations are alleged to have been committed while acting under color of state law and include breaches of the

**1. Mount Sinai St. Luke's** Mount Sinai St. Luke's is being sued for violating the aforementioned statutes and constitutional provisions. Further investigation into their specific violations is ongoing.

FDNY Lieutenant Alexander Gomez.: FDNY Bureau of Legal Affairs, located at 9 MetroTech Center, Brooklyn, New York 11201

EMT Robert Kraft. Badge No. 3502 : FDNY Bureau of Legal Affairs, located at 9 MetroTech Center, Brooklyn. New York I1201

Sergeant Brian Stanton Shield no 5571, who is currently assigned to the 20% Precinct, and may be served at 120 West 821 Streat New York. New York, 10024.

**2. Officer Sergeant Jocl Rivera** Officer Sergeant Jocl Rivera is implicated in this suit for violations of the Civil Rights Acts and the Eighth Amendment, while acting within the color of state law. His employment status and service location are currently being verified.

Bellevue Hospital 462 18 Avenue, New York, New York 10016

**3. Officer Captain David Lopez** Officer Captain David Lopez is alleged to have violated the Civil Rights Acts and the Eighth Amendment. His employment status and service location are under verification. 1180 Anderson Avenue, Bronx, New York 10452

**4. Terrence Pemberton** Terrence Pemberton is being sued in a collective capacity for violations of the Civil Rights Acts and the Eighth Amendment. His employment status and service address are still being verified. 1460 Arnow Avenue Bronx, New York 10469

**5. Officer Francis Senajou** Officer Francis Senajou is accused of violating the Civil Rights Acts and the Eighth Amendment. He is no longer employed, and his last known address is 45 West 139th Street, Apt. #15M, New York, NY 10037.

**6. Officer Georaida Germonsen** Officer Georaida Germonsen, now no longer employed, is being sued for violations of the Civil Rights Acts and the Eighth Amendment. Her last known address is 2866 Miles Avenue, Bronx, NY 10465.

**7. Officer David Franklin** Officer David Franklin, currently assigned to the NYPD Criminal Intelligence Section, is alleged to have committed violations under the Civil Rights Acts and the Eighth Amendment. He may be served at the NYPD Intelligence Bureau, 1 Police Plaza, New York, NY 10038.

**8. Officer Christopher Torturo** Officer Christopher Torturo, assigned to the 26th Precinct (Shield No. 2377), is implicated in this lawsuit for violating the Civil Rights Acts and the Eighth Amendment. He may be served at 520 West 126th Street, New York, NY 10027.

**9. Officer Gabriela Flores Tapia** Officer Gabriela Flores Tapia, currently assigned to the 26th Precinct (Shield No. 16056), is being sued for similar violations. She may also be served at 520  West 126th Street, New York, NY 10027.

10. **Lieutenant Salvatore Ronzino** Lieutenant Salvatore Ronzino, currently assigned to the NYPD Behavioral Health Division, is a named defendant for violating the Civil Rights Acts and the Eighth Amendment. The City requires additional time to confirm Lt. Ronzino's service address. 235 East 20% Street, 8$ Floor, New York, New York 10003.

11. **Sergeant Joseph Angelone** Sergeant Joseph Angelone (Shield No. 718), currently assigned to
the NYPD Health and Wellness Section, is alleged to have violated the aforementioned laws.

He may be served at 90 Church Street, New York, NY 10007.

Officer Francis Senaiour, 45 West 139th Street, Apt. #15M
New York, New York 10037

Chang Young Cho (NP), Bellevue Hospital
482 1" Avenue, New York, New York 10016

Equagie Ehimwenma (RN) ,Bellevue Hospital
462 1" Avenue, New York, New York 10018

Crystal Channel Allman (RN) Bellevue Hospital
482 1" Avenue, New York, New York 10016

Emilia G. Okoroma (RN) Bellevue Hospital
462 1a Avenue, New York, New York 10016

Kemp Thane Herzberg (RN) Bellevue Hospital
462 1M Avenue, New York, New York 10016

This structured format maintains clarity and hierarchy, ensuring that each defendant's details are clearly delineated while incorporating more formal legal language.

5
Case 1:22-cv-10957-LGS Document 25 Filed 03/29/23 Page 6 of 37

11. Upon information and belief, at all relevant times described herein, NEW YORK CITY POLICE DEPARTMENT (hereinafter, referred to as "NYPD") is a subdivision and/or agency of Defendant CITY and has an office at One Police Plaza, New York, New York 10038. 12. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER ANTONIO CASTELLUCCIO ("CATELLUCCIO") is a police officer who is being sued in a collective capacity and is an employee of Defendants CITY and NYPD. At all relevant times described herein, CASTELLUCCIO was violating The Civil Rights Act of 1866, civil Rights Act of 1871 (also known as the Ku Klux Klan Act), Civil Rights Act of 1964 , The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment, and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and NYPD, and works under the supervision, direction, and/or control of his supervisors in the NYPD.

13. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER SANJAY BAJNAUTH ("BAJNAUTH") is a police officer who is being sued in a collective capacity and is an employee of Defendants CITY and NYPD. At all relevant times described herein, BAJNAUTH was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 , The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY

and NYPD, and works under the supervision, direction, and/or control of his supervisors in the NYPD.

14. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE NEW YORK CITY POLICE SGT. DAVID S. MALDONADO ("MALDONADO") is a sergeant who is being sued in a collective capacity and is an employee of Defendants CITY and NYPD. At all relevant times described herein, MALDONADO was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 ,The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a

6

sergeant employed by Defendants CITY and NYPD, and works under the supervision, direction, and/or control of his supervisors in the NYPD.

15. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER DAVID CASTRO ("CASTRO") is a police officer who is being sued in a collective capacity and is an employee of Defendants CITY and NYPD. At all relevant times described herein, CASTRO was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 ,The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and NYPD, and works under the supervision, direction, and/or control of his supervisors in the NYPD.

16. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER NILSA PATRICIO ("PATRICIO") is a police officer who is being sued in a collective capacity and is an employee of Defendants CITY and NYPD. At all relevant times described herein, CASTRO was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964, The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and NYPD, and works under the supervision, direction, and/or control of his supervisors in the NYPD.

17. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY POLICE OFFICER JOHN DOES ("DOES ") (fictitiously named), are employees of CITY with an actual place of employment within the City of New York, State of New York.

18. Upon information and belief, at all relevant times described herein, Defendant DOES #1-10 were acting within the scope of their employment as City of New York Police Officers. Defendant DOES #1-10 are being sued in a collective capacity.

19. Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the NEW YORK CITY FIRE DEPARTMENT, including all EMT/EMS personnel thereof.

20. Upon information and belief, at all relevant times described herein, Defendant NEW YORK

of Defendant CITY and has an office at 9 Metrotech Center, Brooklyn, New York 11201.

20. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679 ("ROSAS") is an EMS/EMT who is being sued in a collective capacity and is an employee of Defendants CITY and FDNY. At all relevant times described herein, ROSAS was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and FDNY, and works under the supervision, direction, and/or control of his supervisors in the FDNY.

21. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ ("VASQUEZ") is an EMS/EMT who is being sued in a collective capacity and is an employee of Defendants CITY and FDNY. At all relevant times described herein, ROSAS was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a police officer employed by Defendants CITY and FDNY, and works under the supervision, direction, and/or control of his supervisors in the FDNY.

22. Upon information and belief, at all relevant times described herein, Defendant NEW YORK CITY FIRE DEPARTMENT EMT/EMS VASQUEZ, NEW YORK CITY FIRE

DEPARTMENT EMS/EMT JOHN DOES ("DOES ) (fictitiously named), are employees of CITY

23. Upon information and belief, at all relevant times described herein, Defendant DOES #21-30 were acting within the scope of their employment as FDNY members. Defendant DOES #21-30 are being sued in a collective capacity.

24. Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the NEW YORK CITY HEALTH + HOSPITALS ("NYCHH"), including all employees thereof.

25. Upon information and belief, at all relevant times described herein, Defendant NYCHH is a subdivision and/or agency of Defendant CITY and has an office at 50 Water Street, New York, New York 10004.

26. Upon information and belief, at all relevant times described herein, NEW YORK CITY HEALTH + HOSPITALS JOHN DOES ("DOES ) (fictitiously named), are employees of CITY with an actual place of employment within the City of New York, State of New York.

27. Upon information and belief, at all relevant times described herein, Defendant DOES #31-40 were acting within the scope of their employment as NYCHH employees. Defendant DOES #31-40 are being sued in a collective capacity.

28. Upon information and belief, at all relevant times described herein, Defendant DOCTOR NURUR RAHAM ("RAHAM") is a doctor who is being sued in a collective capacity and is an employee of Defendants CITY and NYCHH and HARLEM HOSPITAL ("HARLEM"). At all relevant times described herein, RAHAM was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state

9

law within the scope of his employment as a doctor employed by Defendants CITY and NYCHH and HARLEM, and works under the supervision, direction, and/or control of his supervisors in the NYCHH and HARLEM.

29. Upon information and belief, at all relevant times described herein, Defendant DOCTOR KALU AGWU ("AGWU") is a doctor who is being sued in a collective capacity and is an employee of Defendants CITY and NYCHH and HARLEM. At all relevant times described herein, AGWU was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a doctor employed by Defendants CITY and NYCHH and HARLEM, and works under the supervision, direction, and/or control of his supervisors in the NYCHH and HARLEM.

30. Upon information and belief, at all relevant times described herein, Defendant DOCTOR RYAN H. HASHE ("HASHE") is a doctor who is being sued in a collective capacity and is an employee of Defendants CITY and NYCHH and HARLEM. At all relevant times described herein, HASHE was violating The Civil Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a doctor employed by Defendants CITY and NYCHH and HARLEM, and works under the supervision, direction, and/or control of his supervisors in the NYCHH and HARLEM.

31. Upon information and belief, at all relevant times described herein, Defendant DOCTOR GAUTAM BALASUBRAMANIA ("BALASUBRAMANIA") is a doctor who is being sued in a collective capacity and is an employee of Defendants CITY and NYCHH and

Rights Act of 1866, The Civil Rights Act of 1871 (also known as the Ku Klux Klan Act), The Civil Rights Act of 1964 and The Fourteenth Amendment to the United States Constitution: Ratified in 1868, The Fourteenth Amendment and acting under color of state law within the scope of his employment as a doctor employed by Defendants CITY

and NYCHH and HARLEM, and works under the supervision, direction, and/or control of his supervisors in the NYCHH and HARLEM.

32. Upon information and belief, at all relevant times described herein, Defendant CITY and/or NYCHH, by its agents and/or employees, operated, maintained, and controlled HARLEM, including all employees thereof.

33. Upon information and belief, at all relevant times described herein, Defendant HARLEM is a subdivision and/or agency of Defendant CITY and/or NYCHH and has an office at 506 Lenox Avenue, New York, New York 10037.

34. Upon information and belief, at all relevant times described herein, Defendant DOES #41-50 (fictitiously named), are employees of CITY and/or NYCHH with an actual place of employment within the City of New York, State of New York.

35. Upon information and belief, at all relevant times described herein, Defendant DOES #41-50 were acting within the scope of their employment as NYCHH and/or HARLEM employees. Defendants DOES are being sued in a collective capacity.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW** 36.

events giving rise to his claims.

37. On June 10, 2022, MOORE appeared for an examination pursuant to §50-h of the New York General Municipal Law.

38. More than thirty days have elapsed since Plaintiff served his Notice of Claim and the CITY has not offered adjustment or payment thereof.

39. Plaintiff served a Notice of Claim upon NYCHH and HARLEM on December 28, 2021, within ninety days of the events giving rise to his claims.

40. On February 24, 2022, MOORE appeared for an examination pursuant to §50-h of the New York General Municipal Law. The 50Hs are off and they did not include everything and my former attorney did not go over them with me i like i asked him and more

41. More than thirty days have elapsed since Plaintiff served his Notice of Claim and the CITY has not offered adjustment or payment thereof

## **FACTUAL ALLEGATIONS**

42. Plaintiff MOORE was 28 years old at the time of incident. Plaintiff MOORE has been Misdiagnosed with bipolar disorder. I was falsely admitted on October 6 2015 at Harlem hospital, close to the same time as Ms Kam Brock who was misdiagnosed of having bipolar disorder. who came out publicly on Pix 11 and was sexly assaulted by hospital staff too. I was falsely imprisoned in the month of July 2018 at New York Presbyterian Hospital and Mount Sinai St Saint Luke's Hospital on February, 11, 2020. Mount Sinai St Lukes discharged me with know problems but I believe they changed my records recently. 43. Prior to the underlying incident

#41-50 (hereinafter, collectively referred to as "Defendant DOES") had previously responded to calls involving Plaintiff and were aware of the Misdiagnosed from October 6, 2015 at Harlem Hospital because of my Medical records where on my bed . When NYPD False arrested me on February 11, 2020 in my Room and took me to Mount Sinai St Lukes.

**Claim of Constitutional and Legal Violations**

The following individuals and entities have been accused of violating constitutional rights and federal laws:

- Federal Strike Forces

- United States Armed Forces

- Columbia University

- Barack Obama

- Kamala Harris

- Joe Biden

- William J. Burns

- Karine Jean-Pierre

- Sergeant Perrie

- Central Intelligence Agency (CIA)

- Audrey Strauss, U.S. Attorney for the Southern District of New York

- Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York

**Alleged Constitutional Violations**:

1. **First Amendment**

2. **Fourth Amendment**

Eighth Amendment

4. **Fourteenth Amendment**

5. **Possibly 5th Amendment**

**Alleged Federal Law Violations**:

1. **Civil Rights Act of 1866**

2. **Civil Rights Act of 1871 (Ku Klux Klan Act)**

3. **Civil Rights Act of 1964**

4. **Racketeer Influenced and Corrupt Organizations Act (RICO)**

5. **42 U.S.C. § 1983 / 42 U.S.C. § 1985**

   ○ Violations of First and Eighth Amendment Rights

   ○ Violations of Fourth and Fourteenth Amendment Rights

   ○ Failure to Intervene

6. **Municipal Liability** under 42 U.S.C. § 1983 / 42 U.S.C. § 1985

**Additional Allegations**:

- Violations of the New York State Constitution

- False Claims

- Intentional Infliction of Emotional Distress

- Respondeat Superior

- Negligent Hiring

- Application of Title I of the Americans with Disabilities Act (ADA) and the Rehabilitation Act

- Assault and Battery

---

This concise summary highlights the claims and alleged violations. If further clarification or details

4o

Joe Biden played a significant role in helping President Barack Obama with policies related to healthcare during Obama's administration. One of the most notable examples is Biden's involvement in the passage of the Affordable Care Act (ACA), also known as Obamacare.

As Vice President, Biden worked closely with President Obama and congressional leaders to advocate for the passage of the ACA, which aimed to expand access to healthcare coverage, improve the quality of care, and reduce healthcare costs. Biden played a key role in rallying support for the legislation, negotiating with lawmakers to address concerns and secure votes, and serving as a spokesperson for the administration's healthcare priorities.

Biden's efforts were instrumental in garnering support for the ACA among Democrats in Congress and helping to shepherd the landmark healthcare reform legislation through the legislative process. The ACA was signed into law by President Obama in March 2010, marking a major achievement for the Obama-Biden administration and a significant milestone in healthcare policy in the United States.

In addition to the ACA, Biden also contributed to other healthcare-related initiatives and policies during the Obama administration, including efforts to expand access to mental health services, improve healthcare quality and patient safety, and address public health challenges such as the opioid epidemic.

98. I am implicating Columbia University in this context due to its pervasive involvement in shared monopolies with nearly all entities mentioned in the lawsuit or complaint. Columbia University has established business partnerships with MorningSide Heights Housing

Obama during his tenure as a student at Columbia University. Furthermore, it appears likely that Columbia University is a significant contributor to the Democratic Party, given its extensive property ownership, effectively monopolizing a substantial portion of Manhattan. This assertion is reinforced by its association with the College Democrats (CU Dems), aligning with the Democratic Party's interests. Notably, New York City serves as the headquarters for the Democratic Party, further underscoring the interconnectedness of these entities. That qualifies as 42 USC 1985, **Section 1985(3):** Often referred to as Section 1985(3), this part of the statute is commonly invoked. It allows individuals to bring a cause of action when there is a conspiracy to deprive any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.

99. Columbia University has been engaged in what appears to be a shared monopoly or business partnerships with various entities, including Harlem Hospital, MorningSide Heights Housing Corporations, and Mount Sinai St Lukes. This collaboration seems to have persisted during the time when even Ms. Kam Brock gained media coverage on PIX 11 during 2014. Notably, Columbia University holds a significant stake in the real estate of Harlem and Upper Manhattan.

100. My mother, a former alumna of Columbia University, and my grandfather, Joseph Eubanks, a World War II veteran who deliberately left the area to escape what he perceived as a socially and economically oppressive environment rooted in systematic white supremacy (white-collar crime), would likely express displeasure with the current situation if he were still alive.

111. Having once been employed as a temporary worker at Columbia University, I observed a conspicuous lack of heterosexual Black Freemen/African American males on campus, reflective

of a break-in, and loss of my property over the past years. This decrease in my presence is not coincidental but rather appears to be premeditated. The university's substantial real estate holdings, coupled with a discernible decrease in the presence of individuals like myself, suggest intentional actions that contribute to a broader issue.

112. This intentional decrease in the demographic presence of Heterosexual Black Freemen/African American males, coupled with my perception of organized professional child

abuse within the community, paints a troubling picture. It seems to resemble a large-scale plantation, perpetuated by Columbia University and families aligned with maintaining the social status quo rather than promoting equal justice.

113. Columbia University appears to be actively involved in shaping, molding, and structuring an entire social environment, implementing a form of social engineering with the intent of fostering a matriarchal culture reminiscent of the Easter part of Rome. The institution seems to be conditioning its college alumni to identify primarily with manufactured cultural groups—defined by factors such as gender, generation, or sexual preference—in today's economy. This cultivation tends to align with a pro-social status quo orientation, prioritizing adherence to societal hierarchies rather than advocating for equal justice.

114. Individuals affiliated with these manufactured cultural groups, in turn, may become complicit in discriminatory practices and collaborate with white-collar crime, often associated with the overarching concept of white supremacy, emanating from various states. The historical backdrop of states within the United States engaging in violations of constitutional and civil

rights, particularly regarding White subjugation and marginalization of Black Americans, is a pertinent aspect of this narrative.

115 Within the social status quo, an individual's household median income becomes a determinant factor, and racial-ethnic groups are subjected to a hierarchical ranking system. Privileges and benefits within a racial-ethnic group are distributed unevenly, with certain subgroups enjoying more advantages due to their association with specific manufactured cultural groups, such as women, different generations, the LGBT community, and individuals of immigrant backgrounds.

116. Columbia University, in its selection of private citizens with backgrounds aligning with these manufactured cultural groups, seems to be wielding these groups as instruments to engage in white-collar crime in collaboration with state entities or various government sectors. This utilization occurs through educational channels, particularly through Ivy League schools, despite the historical association of many Ivy League institutions with founders who were slaveholders and viewed Black Freemen as property.

117. An illustrative example is Karen Eubanks, who identifies primarily as a woman and aligns with feminist ideologies. As a graduate of Teachers College at Columbia University, she has allegedly played a role in perpetuating a dynamic that has, over the past 6-7 years, led to the transformation of the narrator into a semi-slave. This transformation is purportedly facilitated with the assistance of state agencies operating within the vicinity of Columbia University and state facilities, including Harlem Hospital and Mount Sinai St Lukes, which historically and contemporarily maintain business partnerships with Columbia University, including MorningSide Heights Housing Corporation

118. Over the past six to seven years, I have found myself in a disconcerting position, being figuratively characterized as a "Semi Slave" and subjected to emulation by resources affiliated with the state of New York. This unsettling circumstance prompts contemplation, particularly given the city's status as the headquarters of the Democratic Party. The historical backdrop is noteworthy, as the Democratic Party, historically influential in New York and nationwide, had an adverse stance toward the emancipation of Black Freemen and Freewomen from Antebellum slavery in 1865—the very ancestors from whom I trace my lineage.

119. The deleterious impact on my life can be linked to policies and laws enacted during the administrations of Barack Obama, who, notably, belonged to the Democratic Party. The convergence of these circumstances raises questions about the implications of party politics on the individual, particularly in the context of historical positions and their resonance in contemporary policy outcomes.


Karine jean-pierre endorsed the Affordable Care Act (ACA), which was created by Mr Barack Obama and I think she is related to Sergeant Pierre, including another gentleman from Sean John Combs' case name Pierre. I think since I filed a complaint against sergeant Pierrer they retaliated against me by violating the civil rights act of 1964. Using the federal strike forces(CIA) to harm me on august 28th 2021 and other dates mentioned. Including possibly exploiting me and probably had me misidentified as a terrorist. Also something tells me they and other people in the community knew about the false imprisonment for years - thinking i was an easy target, very wrong try that again. The Women name Cooper who falsely called the cops on a Black Men name cooper to surprisingly in columbia era by central park. They called her Karen, my mothers name, doesnt law enforcement have a history of calling things after Black Freemen women - there is a big history on it. Also Karine jean-pierre has ties to the Columbia University program she graduated from. Including I quote: "

Jean-Pierre is a lesbian and was in a relationship with former CNN correspondent Suzanne Malveaux until September 2023." Suzanne Malveaux is a columbia graduate and harvard graduate which is interesting because few other people in the building complex have ties to harvard.

Elijah Muhammad son who lives in the building complex has ties to Harvard University too just like few other people in the building. Reason why I brought him up is because he's been a ghost for quite some time. Your neighbor up with like your next door neighbors where of known help for years as NYPD law enforcement deprived me of federal and state conditional rights. It was a good thing I distanced myself from morning side gardens years ago - I just lived there.

Note to self my family is the only family in the building complex that has ties to the military going back to world war 1 and world war 2. Grandpa Joe( Mr Joseph Eubanks) a real man, a real soldier who lost his ability to sleep after world war 2. served in world war 2 and lost his whole neighborhood from Oakland California. Also my grandmother's brothers Tommy Ben Belford who served in world war 2 and William Bernie Belford who served in the military- 1 of them was a far star army general or might have been Rooster, my grandmother's oldest brother. Also I come from a mason family background from east bloomburg Texas currently going back to even semi slavery in America. Their father was Mason. I heard that every president in the United States is forced to join the Mason brotherhood when they become president. The federal strike forces (CIA) didn't look like a brotherhood on august 28th 2021 and other days i mentioned. neither. I heard the white mason lodges are on some suspective white supremist racist nonsense - that is not looking like no brotherhood.

I see the people in the building complex practices Hinduism and Islam that makes me question whether this attack on world war 2 veterans children or descendants. I'm not an integrationist or segregationist but a Aggrationist. Remember a lot of Nazi ran to South America looking to hide out when my grandfather and grand uncles went on a killing parade because of what they did to their friends who were black and white. In the

offensive to say Jew's, it prejudices towards jewish people and gypsies. If you didn't know Black freemen from America adopted Ryland Children from Germany after world war 2.

**"George Lincoln Rockwell**, the founder of the American Nazi Party, publicly expressed admiration for the Nation of Islam's stance on racial separation. He viewed it as aligning with his own belief in the separation of races.

In 1961, Rockwell attended a Nation of Islam rally in Washington, D.C., where he referred to Elijah Muhammad as the "Adolf Hitler of the Black man." Despite the provocative statement, Rockwell donated $20 to the NOI as a symbolic gesture of support for racial separation.

**Louis Farrakhan**, then a rising figure within the NOI, played a more visible role in these interactions, hosting events where Rockwell or other ANP members were present.

 **Motivations:**

These interactions were not based on ideological agreement but rather a shared interest in racial separation. The ANP supported segregation to maintain white supremacy, while the NOI sought self-determination and independence for African Americans.

The relationship was superficial and highly controversial, criticized by both white and Black communities."

That's why I put Farackon in the documents for cases 23cv01300, I have trust issues. Also he had to know about the 21 century eugenics movement in Japan and yet never bothered to look at Obama's policies with .The 21st Century Cures Act (2016): , Task Force on 21st Century Policing (2014): and (ACA) affordable health care act . These were eugenics policies rapped and discized to feed to the masses. Also because he said black women rock and yes they do but he followed mainstream media on that when that was a pro agenda. Also I need to get his attention and bees in the beehive. Yeah yah should've been doing this years ago.

Note self the US government got the ideal for Project of Barack Obama because of Farrakhan, not to beat up on Farrakhan. Also, I was very disappointed with some of the attorneys who I spoke to affiliated with the nation - Beta males. Also, listening to the nation of islam  made me more tolerant to being disrespected back home, not saying my people are super villains, they just use the system to get their way and they are intelligent enough to turn on it  later on just like anybody who plays the game. I just have a soul so I don't mess with the system but it bothered me and I wanted you to know who I really was.  I'm not a notolerate person even more than Farrakhan. I'm not the talking type, I'm reactionary, miss me with the attention.

Oh wait where are all these pro Black women at, nowhere to be found insight for years not surprising  it sept calling black men sellouts  while  kissing up to immigrant Black men and white american  men- classism.


Let's talk about Dark Alliance's RIP to Gary Webb  and the preface or beginning of the book: Drugs are weapons against us. Talked about how jimi hendrix's drug dealer was a CIA agent whose job was to get jimi hendrix hooked on drugs.

Now let's take a look at Obama's policies for LGBTQ community and 21st Century Policing (2014), The 21st Century Cures Act (2016) and the Affordable health care act (ACA). Also lets remember that  kamala harris said she can't do anything only for black freemen community oh  excuse me the democratic party you mean - she was speaking on behalf of them.

Oh but wait the democratic party did things exclusively  for Native Americans that maintained the institutions of slavery with almost all of its Indian treats including creating term scalping for killing runaway slaves and  got paid 20 dollars per each scalp. Lets not forget the 5 civilized tribes  fought for confederacy which was dem 2 - also im of native american league to parently to.

You did things perfectly for native americans but not black freemen, the race that built this country from scratch which  was the only race that went through chattel slavery .  oh you

are - who you reclassified in 1700s  parently.  French literature from french scholars will tell what you did with Black native americans such as reclassifying them.  The democratic party under Obama's administration  passed  20 policies exclusively for native Americans which was the  right thing to do, but you tell Black freemen we can't do anything exclusively   for you my people - my race.  Also you have people concerned about  reclassification going on again because it happened before with Black freemen/ Native Americans who had an afro phenotype whose names were taken off the dawes rolls  if i remember correctly.  There is a whole history of  the American government reclassifying Black Freemen with native american lingues or native Americans with afro  phenotype.

During Obama administrations  who Obama is a spokesperson for democratic party and yes he take blame but he doesn't take all the blame past 18 policies exclusively for the LGBT group( manufactured cultural group and  for over last 10 years only 3% of populations rate was openly gay and mainstream media kept marketing LGBT material and immigrant material when only 2%  of the population is immigrants - those were obviously agenda's. Remember what Edward Snowden said about the government violating 3rd amendment rights of American citizens -  invasion of privacy.

I remember speaking to a friend a while back asking what the CIA was up to now.  We now know what they were doing after looking at policies that Obama passed or excuse me,  The Democrats (CIA) during Obama's first administration and second administration . My Racial ethnic group birth rate went down by 2% because of LGBT policies.. Other countries record the numbers from their census  and the USA  did a new census recently to cover up facts - Eugenics. Take a look at the policies that were passed under Obama's administration which are Democrats(CIA) .  21st Century Policing (2014) , The 21st Century Cures Act (2016) and  (ACA ) affordable health care act.  They have the word 21st century in the word people -  similar to the 20 century eugenics movement in Japan.  These policies were made during Obama administrations such as 21st Century Policing (2014) , The 21st Century Cures Act (2016) and  (ACA ) affordable healthcare act are 21st century eugenics movements, a recap of 20 century eugenics movements. Similar laws like in Japan, The United States and Germany from 1948-1996 just started giving compensations to the victims  in 2019.

"The Eugenics Protection Law  was in effect in Japan from 1948-1996 to prevent the birth of

about how the Eugenics movement has a pattern of using women to implement their agenda . the Feminist movement and planned parenthood with Margaret Sanger for instance, road vs wade  the beginning of the 1970s and she publicly  came out in an interview in the 1980s saying she lied.  The Us government just left that law sitting there  for era's not years, which had a triple  down effect.

 21st Century Policing (2014) , The 21st Century Cures Act (2016) and  (ACA ) affordable health care act. All play an intricate role in organizing community people to participate in subjugating and marginalizing their own people based on their manufacturer cultural group. In my community it was older women , older men , young women  and people of immigrant backgrounds participating in this deprivation of  the 1 amendment , 4th amendment , 8th amendment , 14 amendment and violation of civil rights with State employees like law enforcement , nurses, EMTs  and Doctors  -  21st Century Policing (2014) ,

 21st Century Policing (2014)   six main pillars:

Building Trust and Legitimacy - building trust with manufacturer cultural groups to dog out their own racial ethnic group. Educating them on how to use state resources to deprive civil rights, state and federal constitutional laws for  undesirables in the community or family members  . Mostly organized people who are colonized to attack people who are not assimilating with mainstream society. Like the Covic vaccination shots, 1 group was acceptable to  propaganda through mainstream media and the other wasn't acceptable. Colonized mindset got vaccinated and Non - Colonized mindset did not get vaccinated with Covic vaccination shot.  Our government or should i say central intelligence agencies view Non- Colonized mindsets as mentally ill - undesirables.

Policy and Oversight - Law enforcement using or revamping  the driver system from anti-slavery and keeping tabs on people who are  not colonized or undesirables. Like during semi slavery during late 1800s during time of reconstruction and early 1900s it was illegal(criminalized); for a certain number of Black Freemen to be in a group with each other because of the black codes(jim crow policies- which is black code law).

Technology and Social Media - utilizing social media influencers to cause deviations and cause separations based off of ideology. The colonized specify as manufacturer cultural groups and non colonized specify as their cultural intelligences.  Non colonized specify as Im my racial ethnic group first. Colonized Mind i specify as my sex, generation, sexual preferences or religion first.   The problem really is are you  pro equal justice (anti slavery)or pro social status quo (pro slavery). The  problem is most people who specify as manufactured cultural groups(colonized) are pro slavery. The driver system comes into play  from the women locally in the community. Slandering people after they've been admitted - violation of 1st, 4th, 8th and 14 amendment rights.

Community Policing and Crime Reduction - collaboration between private citizens working with law enforcement to come up with a way to enforce social status quo.  Organizing people of manufactured cultural groups to target mostly young Black Freemen in my community and throughout the country.  Law enforcement like I  said earlier trains and educates colonized people to target and subjugate and marginalize their heterosexual male offspring until they are gay - but breaking.   It happens to other racial ethnic group within  social construct like white , asian, hispanic , but mostly disportionately Black Freemen because our government intentionally keeps us at the bottom of social status quo. Vladimir Vladimirovich Putin  explained this a little bit with Tucker if  i'm correct or its very self explanatory that CIA doesn't want black freemen to elevate themself within the social status quo.  This stuff that the government is saying is  russian box some of  it  might actually be factually true and calling out corruption with the government. You're not enforcing conditional law for private citizens or not all of your private citizens - especially those like myself at the bottom of the social economic ladder.    To be honest you're not enforcing laws for mostly all americans. Its limited based on a person's social status within the social status quo or their socioeconomic background too

Training and Education -  Recommending comprehensive training programs, including de-escalation techniques, mental health crisis intervention, and cultural sensitivity.

Encouraging higher education and continuous learning for law enforcement officers.

Educating local  residents in subjecting and marginalizing their own love 1s.  There are hits

In order 2 day review of human zoos. it there has been a rejection of all these forms of subjugation and marginalization during semi slavery in democratic states like New york City than modern day human zoos  because of the Columbia era and Columbia university  history and its alumni.

This happened since back in October 6, 2015 , july,  August 18, 2018 and february 11, 2020

ice President Kamala Harris has been a strong advocate for the Affordable Care Act (ACA), commonly known as Obamacare. Throughout her political career, she has consistently supported and worked to expand the ACA's provisions.

As a U.S. Senator, Harris co-sponsored several pieces of legislation aimed at enhancing healthcare access and affordability. In April 2018, she was one of ten senators to sponsor the Choose Medicare Act, which proposed an expanded public option for health insurance and increased subsidies under the ACA.

Wikipedia

In her role as Vice President, Harris has continued to champion the ACA. She has advocated for policies to reduce healthcare costs, expand coverage, and strengthen the act's provisions. During the 2024 presidential campaign, Harris emphasized her commitment to maintaining and growing the ACA, focusing on making healthcare more affordable and accessible for all Americans.

ACA Times

Harris's dedication to the ACA reflects her broader commitment to healthcare reform, aiming to build upon the foundation established during President Obama's administration to ensure comprehensive coverage for all citizens.

For a more detailed understanding of Harris's stance on the ACA, you can watch her discuss her plans to expand the act in the following video:

Biden-Harris Administration announced a comprehensive strategy to combat gun violence and violent crime. This plan included the deployment of federal strike forces to address illegal firearms trafficking across state lines.

[White House](White House)

While Vice President Kamala Harris supported this initiative as part of the administration's efforts to enhance public safety

Her role during this period primarily encompassed broader responsibilities, such as addressing the root causes of migration from Central America.

[Time](Time)

Therefore, while Vice President Harris endorsed the administration's strategy to deploy federal strike forces to combat gun violence, there is no detailed public record of her direct actions related to these strike forces during the specified months.

Joe Biden, as Vice President during Barack Obama's administration, was a strong supporter of the Affordable Care Act (ACA). He played a significant role in advocating for the legislation and working with Congress to ensure its passage. The ACA, signed into law by President Obama in March 2010, was one of the administration's landmark achievements. Biden has continued to

120.**The 21st Century Cures Act (2016):** While not exclusively focused on law enforcement, this legislation included provisions to improve mental health services and resources for law enforcement officers.

121. **Task Force on 21st Century Policing (2014):** President Obama established the Task Force on 21st Century Policing to identify best practices and make recommendations to improve community policing. The resulting report included recommendations on building trust and legitimacy, policy and oversight, technology and social media, community policing, and officer training and education.

122.**Violence Against Women Act (VAWA) Reauthorization**: President Obama signed the reauthorization of the Violence Against Women Act in 2013, which strengthened protections and support services for victims of domestic violence, sexual assault, dating violence, and stalking. The reauthorization included provisions to enhance protections for immigrant women, LGBTQ individuals, and Native American women. Sargent Pierre is in charge of the domestic violence unit in percinit 26. On october 6 2015 kare utilized life net crisis unit to if remember right name correct.

**Global Women's Empowerment Initiatives**: The Obama administration launched various global initiatives to promote women's empowerment and gender equality, such as the Let Girls Learn initiative, which aimed to expand access to education for adolescent girls around the world, and the U.S. National Action Plan on Women, Peace, and Security, which focused on promoting

These policies entrenched the manufactured cultural paradigm, perpetuating both the driver system and prison leasing arrangements. These mechanisms effectively serve as a conduit for the creation of a new manufactured cultural cohort, for which Obama implemented policies and redirected funding, essentially positioning them as a buffer group. This conflation of sexism and ageism, compounded by governmental neglect (systemic white supremacy/white-collar crime), engenders the emergence of a novel manufactured cultural entity, predicated upon governmental neglect and the pervasive influence of the socio-economic milieu. Exploiting this situation, there is a strategic exploitation of sexuality and profiteering through racketeering.

The initiation of this process can be traced back to the Democratic Party's initiatives under Barack Obama, while Republicans during the Trump administration sought to obfuscate these actions, particularly evident in the efforts spearheaded by Governor DeSantis. I, personally, do not align with either the Democratic or Republican ideologies; rather, I adhere to independent thinking. Both parties are suspect in their conduct, having perpetuated a state akin to semi-slavery. It is an irrefutable fact that once an individual surpasses the age of 35, they are entrenched in a proclivity towards white-collar crime, maintaining a steadfast allegiance to white supremacist ideologies.

The enduring legacy of these policies harkens back to antebellum slavery, where the prison leasing system during the Reconstruction era subjected my ancestors to untold suffering. The era of semi-slavery, marked by the implementation of Black Codes and Jim Crow policies, persisted for a staggering century, though in truth, it endured for a century and a half, owing to the egregious failure to uphold federal and state conditional laws, as well as civil rights legislation such as the Civil Rights Act of 1866, persisting even to this day. These assertions are not conjecture; rather, they are grounded in indisputable facts, exemplified by Joe Biden's Anti-Crime

beyond the purview of debate.

123. In my firsthand observations, it becomes apparent that law enforcement, rather than strictly adhering to legal statutes, often prioritizes the enforcement of societal norms or the prevailing social order—commonly referred to as the social construct or social status quo. This subjective interpretation is grounded in my personal experiences and perceptions.

124. A notable shift in the landscape occurred during the tenure of President Barack Obama. It is discernible that the Driver system and prison leasing underwent a comprehensive overhaul during his administration, concurrently reinstating them through the implementation of new law enforcement policies and laws, as well as healthcare policies and laws. These changes, emanating from the highest echelons of executive authority, have contributed to reshaping the dynamics of law enforcement practices and penal institutions.

125. It is noteworthy that Barack Obama, a Columbia University alum, played a central role in shaping these policies. Columbia University, located in New York, is intricately connected to various entities, forming a shared or municipal monopoly with Morningside Heights Housing Corporation, Mount Sinai St Lukes, and Harlem Hospital. This interconnection raises questions about the potential influence of institutional affiliations on policy decisions and their implications for law enforcement practices and healthcare policies.

126. The legislative landscape that has adversely impacted certain aspects involves key enactments, notably the 21st Century Cures Act of 2016, the Task Force on 21st Century Policing established in 2014, and the Affordable Care Act (ACA). While each of these policies bears distinct implications, the ACA, in particular, has introduced unfavorable consequences. By extending healthcare coverage, it

inadvertently exposed individuals in low-income households to potential exploitation within the insurance framework.

## Events on september 12, 2021

I saw an interesting person in LA for my first time in La. for some reason she happened to be in the city of Los Angeles. Also Barack Obama knows the same people as her.

## Incident on april 29, 2021

I repeatedly observed two men engaging in a consistent action, repeatedly stating, "Don't forget," while holding out two dollars in a manner that seemed to emphasize its importance. Their gestures and demeanor suggested there might be a deeper meaning, though it wasn't immediately clear to me.

One moment stood out vividly: as I prepared to take a photograph, one of the men's expressions shifted dramatically. His gaze became intense, almost fervent—reminiscent of the conviction seen in followers of deeply influential movements, such as those associated with Jonestown. This brought to mind a thought: New York City and Los Angeles, in their complexities, sometimes feel like modern analogs to such environments—perhaps not "Jonestown," but something like a metaphorical "Jonesland."

One of the men, who appeared to be of Hispanic or possibly Afro-Latino descent, bore a resemblance to someone I recall being named Segment Pierrer. Their behavior evoked an uncanny sense of parallel to moments of vulnerability or exposure, akin to individuals grappling with

held deeper implications as I attempted to take a picture or record.

Recently, I've also observed a subtle but noticeable presence of what seemed to be a federal strike force or perhaps agents linked to intelligence agencies like the CIA. Their behavior in public spaces struck me as peculiar. On certain occasions, when I attempted to document these occurrences, I noticed an atmosphere that carried a distinct tension, a palpable sound of agitation—an almost otherworldly intensity. These experiences blurred the line between the ordinary and the enigmatic, leaving me reflecting on the interplay of reality and perception.

**Incident on april 21, 2023**

I met a woman in front of a military base in Maryland studying at Howard university, the number 1 recruiting ground for the CIA during the cold war. It's now Maryland state university.

Her car was sitting there by the drive through as 3 other cars were behind waiting for like 19 minutes. She was a 50 year old woman driving a van and said her husband was a former black panther. Things looked off and she did not change colleges whatsoever. .

August 28, 2021

On August 28, 2021 I woke in a paralyze state where couldnt move my body and when I woke I got a call from Mr Walker . My body was in pain for some reason, it was really bad for about 2 to

people acting real hostile, i found my bathroom vent unscrewed which is off.

## Constitutional Violations and Legal Claims in Moore's Case

**1.** This case involves allegations of widespread constitutional violations, misconduct by law enforcement, medical staff, and EMTs, and systemic failures by organizations, including **Morningside Gardens Housing Corporation**, **First Services Residential**, **New York City Police Department (NYPD)**, **Harlem Hospital/NYC Health + Hospitals**, and **Mount Sinai St. Luke's**. Moore asserts violations of his **1st, 4th, 8th, and 14th Amendment rights**, alongside claims under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, as well as New York State laws. The allegations include **false imprisonment, excessive force, retaliation, fabrication of evidence, and emotional distress**.

### Constitutional Violations

#### 1st Amendment – Retaliation and Denial of Redress

● **Defendants**: Officers Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, Nilsa Patricio, Sgt. Joseph Angelone, Lieutenant Salvatore Ronzino, Sgt. Perrier, and others. ●
**Allegations**:

- Moore was **denied the right to file complaints** against officers who mistreated him.

- Law enforcement **retaliated against him** by detaining him and enlisting others to fabricate evidence.

**4th Amendment – Unlawful Search and Seizure**

- **Defendants**: NYPD Officers, EMT/EMS personnel (Rosas #2679, Vasquez, and others), Harlem Hospital staff (Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan H. Hashe, Dr. Gautam Balasubramania), and Mount Sinai staff.

- **Allegations**:

  ○ Moore was subjected to **unlawful detention and forced psychiatric evaluations** without probable cause or valid justification.

  ○ Medical professionals and EMTs acted on behalf of law enforcement to fabricate diagnoses and justify his seizure.

**8th Amendment – Cruel and Unusual Punishment**

- **Defendants**: NYPD Officers and hospital staff, including Drs. Raham, Agwu, Hashe, Balasubramania, Steven Carbonaro, Jonathan Deassis, Benjamin Wyler, and Jayenth Mayur.

- **Allegations**:

  ○ Moore was **restrained, forcibly stripped, and confined** under conditions that caused physical and emotional harm.

  ○ The treatment inflicted **unnecessary suffering** and was disproportionate to any perceived threat or condition.

**14th Amendment – Due Process and Equal Protection**

- **Defendants**: All named individuals and entities.

- **Allegations**:

  ○ Moore was denied **due process** when detained and subjected to fabricated medical diagnoses without evidence or legal procedure.

  ○ His treatment was **discriminatory**, based on biases regarding his mental health,

## Federal Legal Claims

### 42 U.S.C. § 1983 – Civil Rights Violations

● **Claims**:

○ Defendants acted **under color of law** to violate Moore's constitutional rights, including unlawful detention, excessive force, and suppression of complaints. ○ Medical and EMT personnel **colluded with law enforcement** to fabricate evidence and deprive Moore of his civil liberties.

● **Key Acts**:

○ **False diagnoses** to justify detention.

○ **Excessive force** during detention and medical evaluation.

○ **Suppression of complaints** to avoid accountability.

### 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights

● **Claims**:

○ Defendants conspired to **cover up misconduct** by fabricating medical records and obstructing Moore's ability to seek justice.

○ The coordinated actions of law enforcement, medical staff, and housing employees demonstrate a **systemic conspiracy**.

### Failure to Intervene

● **Defendants**: All law enforcement and hospital staff who were present during violations.

● **Claims**:

○ Individuals who witnessed constitutional violations failed to intervene, making

## State Law Claims

### Violations of the New York State Constitution

- Similar violations under state constitutional protections mirroring the **4th, 8th, and 14th Amendments**.

### False Imprisonment

- **Defendants**: NYPD, hospital staff, EMTs.
- **Allegations**:
  - Moore's detention and confinement were without lawful basis, amounting to **false imprisonment**.

### Intentional Infliction of Emotional Distress (IIED)

- **Defendants**: All named individuals and entities.
- **Allegations**:
  - The deliberate actions, including **fabrication of diagnoses, public humiliation, and unlawful detention**, caused severe emotional distress.

### Negligent Hiring, Training, and Supervision

- **Defendants**: NYPD, Harlem Hospital, Mount Sinai St. Luke's, Morningside Gardens Housing Corporation, and First Services Residential.
- **Allegations**:
  - Failure to properly train and supervise personnel led to systemic violations of Moore's rights.

**Respondeat Superior**

- **Defendants**: Municipal entities (NYPD, Harlem Hospital, Mount Sinai St. Luke's).

- **Claims**:

  ○ Employers are liable for the actions of their employees under the principle of

    **vicarious liability**.

## Key Allegations Against Defendants

1. **NYPD Officers**:

   ○ Unlawfully detained Moore without probable cause.

   ○ Prevented Moore from filing complaints and retaliated against him. ○

Used excessive force and treated Moore in a discriminatory manner. 2.

**Hospital Staff (Harlem and Mount Sinai)**:

   ○ Doctors, nurses, and staff fabricated psychiatric diagnoses to justify detention. ○

Medical professionals collaborated with law enforcement to cover up violations. ○

Restraint and forced treatment inflicted physical and emotional harm. 3. **EMTs (Rosas,**

**Vasquez, and John Does)**:

   ○ Acted as agents of law enforcement, assisting in Moore's unlawful detention.

○ Failed to provide appropriate care and engaged in discriminatory practices. 4.

**Housing Staff**:

   ○ Morningside Gardens Housing Corporation and First Services Residential

     contributed to discriminatory actions that led to Moore's mistreatment.

### Conclusion

The allegations demonstrate systemic violations of Moore's **constitutional rights** and protections

- **4th Amendment**: Unlawful detention and unreasonable seizure.

- **8th Amendment**: Inhumane treatment and excessive force.

- **14th Amendment**: Denial of due process and equal protection.

- **1st Amendment**: Retaliation and suppression of complaints.

- **42 U.S.C. § 1983 and § 1985**: Civil rights violations and conspiracy to interfere with justice.

- **State Law Violations**: False imprisonment, IIED, and negligent hiring/training.

These acts reflect **institutional negligence** and **coordinated misconduct**, warranting accountability and justice for Moore.

## 2. Summary of Allegations

**Defendants**:

- **NYPD Officers**: Antonio Castelluccio, Sanjay Bajnauth, David S. Maldonado, David Castro, Nilsa Patricio, Gabriela Flores Tapia, Christopher Torturo, David Franklin, Joseph Angelone, Salvatore Ronzino, Perrier, Stamford, and others (John Does).

- **Housing Corporation**: Morningside Gardens Housing Corporation/First Services Residential.

- **Hospital Staff**: Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania, Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur, nurses, and other hospital staff from Harlem Hospital and Mount Sinai St. Luke's. ● **Hospital Police**: Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sergeant Jocl Rivera.

- **New York City Fire Department EMTs**: Rosas (#2679), Vasquez, and other unnamed

## Alleged Violations of Rights and Laws

**Constitutional Rights Violations**

1. **Fourth Amendment (Unreasonable Search and Seizure):**

   ○ Defendants allegedly entered your home without permission or probable cause on October 5, 2021, conducting unlawful searches and seizures.

   ○ Excessive use of force, including dragging you by your pants, pinning you down, and unjustly detaining you.

2. **Eighth Amendment (Cruel and Unusual Punishment):**

   ○ Overtightened handcuffs, physical abuse, and unnecessary psychiatric confinement at Harlem Hospital.

   ○ Deliberate infliction of physical and emotional harm without justification.

3. **Fourteenth Amendment (Equal Protection and Due Process):**

   ○ Discriminatory treatment based on race, as Black individuals are often disproportionately subjected to excessive force and unjustified confinement. ○ Deprivation of liberty through false psychiatric diagnoses intended to justify the actions of law enforcement.

4. **First Amendment (Free Speech and Right to Petition):**

   ○ Denial of your right to file complaints about the misconduct of law enforcement and hospital staff, effectively silencing you.

**Federal Law Violations**
1. **Civil Rights Acts (1866, 1964, 1968):**

   ○ Racial discrimination under color of law by police, hospital staff, and housing

contracts and hold property).

2. **42 U.S.C. § 1983**:

   ○ Defendants acted under color of state law to violate your constitutional rights, including unlawful detention, abuse, and discrimination.

3. **42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights)**:

   ○ Allegations that police, housing corporations, hospital staff, and EMTs conspired to deprive you of your rights through false diagnoses, excessive force, and other misconduct.

4. **Civil Rights Act of 1871 (Ku Klux Klan Act)**:

   ○ Defendants allegedly engaged in a conspiracy to deny you equal protection under the law and due process.

5. **Racketeer Influenced and Corrupt Organizations Act (RICO)**: ○ Defendants, including police and hospital staff, acted in a coordinated manner to cover up misconduct, constituting a potential pattern of racketeering activity. 6. **Americans with Disabilities Act (ADA) and Rehabilitation Act**: ○ False psychiatric diagnoses may constitute disability discrimination by labeling you as mentally ill without justification.

7. **Health Insurance Portability and Accountability Act (HIPAA)**: ○ Sharing or using your medical information to justify false diagnoses or unlawful detention violates federal privacy protections.

8. **State Torts (Assault and Battery)**:

   ○ Physical harm caused by police, hospital staff, and EMTs during detention and transport constitutes assault and battery under state law.

## Organized Summary of Events

1. **October 2-5, 2021**:

○ Encounters with NYPD officers led to alleged unlawful detention and physical abuse.

○ Harlem Hospital staff, acting on behalf of law enforcement, provided false psychiatric diagnoses to justify detention.

2. **Housing Corporation Involvement**:

○ Employees of Morningside Gardens allegedly escalated the situation unnecessarily and coordinated with law enforcement to violate your rights.

3. **Hospital Police and EMT Participation**:

○ NYCH+H hospital police and FDNY EMTs allegedly acted as agents of law enforcement, assisting in your unlawful confinement and covering up misconduct. 4. **Mount Sinai St. Luke's Staff**:

○ Additional false diagnoses provided to further justify detention and conceal police misconduct.

## Conclusion

The actions of the named defendants collectively violated your Fourth, Eighth, Fourteenth, and First Amendment rights, as well as federal civil rights statutes. These violations include unlawful searches and seizures, excessive force, cruel and unusual punishment, denial of due process, and racial discrimination. Furthermore, the alleged conspiracy between law enforcement, hospital staff, housing corporations, and EMTs constitutes a coordinated effort to deprive you of your constitutional rights and cover up misconduct.

## Defendants and Alleged Violations

**Federal Strike Forces**

● **Allegations**: Participated in actions and policies violating the **First Amendment**, **Fourth**

- **Federal Law Violations**:
  - Civil Rights Act of 1866, 1871, and 1964
  - Racketeer Influenced and Corrupt Organizations Act (RICO)
  - 42 U.S.C. § 1983 / § 1985: Violations of constitutional rights, failure to intervene, and municipal liability
  - Negligent hiring and respondeat superior
  - Intentional infliction of emotional distress
  - Gross Negligence Claim

**United States Armed Forces**

- **Allegations**: Engaged in actions endorsing and implementing pro-eugenic policies in violation of constitutional rights, including the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including application of Title I of the ADA and Rehabilitation Act.Gross Negligence Claim

**Columbia University**

- **Allegations**: Participated in  pro-eugenic activities, violating the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including violations of the New York State Constitution.Gross Negligence Claim

**Barack Obama**

- **Allegations**: As a policymaker, violated the **First, Fourth, Eighth, and Fourteenth Amendments** by endorsing and promoting pro-eugenic policies.
- **Federal Law Violations**: Same as above, including direct liability under 42 U.S.C. § 1983 / § 1985.Gross Negligence Claim

**Kamala Harris**

- **Allegations**: Supported or endorsed policies and actions infringing upon constitutional rights under the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including intentional infliction of emotional distress.Gross Negligence Claim

**Joe Biden**

- **Allegations**: As a policymaker, endorsed and supported pro-eugenic policies, violating the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including municipal liability and failure to intervene.Gross Negligence Claim

**William J. Burns (CIA)**

- **Allegations**: Authorized or oversaw actions violating the **First, Fourth, Eighth, and Fourteenth Amendments Through** pro-eugenic policies and federal strike force operations.
- **Federal Law Violations**: Same as above, including false claims and negligent hiring.Gross Negligence Claim

- **Allegations**: Endorsed or facilitated actions and policies violating the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including intentional infliction of emotional distress and respondeat superior. Gross Negligence Claim

**Sergeant Pierrier**

- **Allegations**: Directly involved in actions infringing upon the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including assault and battery.

**Central Intelligence Agency (CIA)**

- **Allegations**: Implemented operations and policies violating the **First, Fourth, Eighth, and Fourteenth Amendments** and endorsing pro-eugenic practices.
- **Federal Law Violations**: Same as above, including RICO violations and municipal liability.

**Audrey Strauss, U.S. Attorney for the Southern District of New York**

- **Allegations**: Failed to intervene or address violations of the **First, Fourth, Eighth, and Fourteenth Amendments And** allowed pro-eugenic policies.
- **Federal Law Violations**: Same as above, including failure to intervene and municipal liability.

**Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York**

- **Allegations**: Failed to address or prevent actions violating the **First, Fourth, Eighth, and Fourteenth Amendments**.
- **Federal Law Violations**: Same as above, including negligent hiring and respondeat superior.

## Summary of Claims

The listed defendants are alleged to have:

1. Violated constitutional rights under the **First, Fourth, Eighth, and Fourteenth Amendments**.
2. Violated federal laws, including:
   - Civil Rights Acts of 1866, 1871, and 1964
   - Racketeer Influenced and Corrupt Organizations Act (RICO)
   - 42 U.S.C. § 1983 / § 1985 (municipal liability, failure to intervene, and constitutional violations)
3. Violated state laws, including:
   - Assault and battery
   - Intentional infliction of emotional distress
   - False claims
4. Engaged in pro-eugenic policies infringing upon constitutional and statutory protections.

This format is clear, organized, and directly addresses each individual/entity with the alleged

**Civil Rights Act of 1866**
Barack Obama, as a policymaker, is alleged to have violated the **Civil Rights Act of 1866** by endorsing or allowing discriminatory policies that adversely affected individuals' rights, specifically targeting marginalized communities. These actions are seen as infringing upon the rights of citizens to enjoy equal protection under the law. His endorsement of pro-eugenic policies further exacerbated these violations, denying equal rights to individuals based on race or other protected statuses.

**Civil Rights Act of 1871 (Ku Klux Klan Act)**
Under the **Civil Rights Act of 1871**, Obama is accused of failing to prevent the infringement of civil rights by his administration, particularly in instances of state or federal action that may have led to violations of constitutional protections. His policies, especially those linked to pro-eugenic ideologies, are alleged to have fostered an environment where civil rights abuses were allowed or ignored, contributing to harm and discrimination.

**Civil Rights Act of 1964**
Barack Obama's actions are alleged to have violated the **Civil Rights Act of 1964**, which prohibits discrimination based on race, color, religion, sex, or national origin. The endorsement of pro-eugenic policies within his administration is seen as discriminatory and contrary to the principles of equal opportunity and justice for all, leading to systemic harm against vulnerable communities.

**Racketeer Influenced and Corrupt Organizations Act (RICO)**
Obama is accused of facilitating a pattern of illegal activities under the **RICO Act**, by allegedly supporting a series of policies and actions that promoted and perpetuated systemic discrimination. His administration is believed to have indirectly or directly contributed to organized efforts that disproportionately harmed certain groups, violating the principles set forth in RICO regarding the prevention of corrupt organizations.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights**
Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, Obama is accused of violating the **First and Eighth Amendments** by promoting policies that suppress free speech and religious freedoms, while also contributing to conditions that led to cruel and unusual punishment. His pro-eugenic policies allegedly led to a systemic dehumanization of marginalized individuals, further infringing upon their constitutional rights.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights**
Obama is alleged to have violated the **Fourth** and **Fourteenth Amendments** by endorsing policies that led to unlawful searches, seizures, and a lack of due process for certain individuals. His failure to intervene in or address discriminatory practices within the government is viewed as a violation of equal protection and procedural due process rights guaranteed by the Constitution.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability**
Obama is charged with failure to intervene under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, allowing discriminatory actions to persist under his administration. This inaction is seen as contributing to the municipal liability for constitutional violations, particularly in relation to

## Violations of New York State Constitution

In addition to federal law violations, Obama is accused of violating the **New York State Constitution**, which protects individuals' civil rights within the state. His administration's endorsement of harmful policies is believed to have contributed to a violation of state-level protections against discrimination and inequality.

## False Claim

Obama is accused of making **false claims** related to the implementation of policies that were marketed as beneficial but were allegedly designed to promote harmful, pro-eugenic ideologies. These claims misled the public and violated trust in government actions, especially regarding public health and civil rights protections.

## Intentional Infliction of Emotional Distress

Obama is accused of **intentional infliction of emotional distress** by promoting policies that caused significant harm and psychological damage to marginalized communities. The pro-eugenic practices supported by his administration are seen as directly contributing to the emotional trauma suffered by individuals subjected to discriminatory actions.

## Respondeat Superior, Negligent Hiring

Under the doctrine of **respondeat superior**, Obama is alleged to be responsible for the actions of his subordinates who implemented discriminary and harmful policies. Additionally, the **negligent hiring** of individuals who perpetuated these policies is seen as contributing to the systemic harm and constitutional violations that occurred under his leadership.

## Application of Title I of the ADA and the Rehabilitation Act

Obama's administration is accused of failing to apply the protections guaranteed under **Title I of the ADA and the Rehabilitation Act**, which safeguard individuals with disabilities from discrimination. By endorsing pro-eugenic policies, Obama's administration is alleged to have contributed to the marginalization and disenfranchisement of individuals with disabilities.

## Assault and Battery

Finally, Obama is accused of indirectly endorsing or allowing **assault and battery** through policies that dehumanized individuals and facilitated physical or psychological harm. These actions are viewed as a direct violation of personal rights and bodily integrity, especially in cases where individuals were subjected to coercive or discriminatory treatment.

---

## Civil Rights Act of 1866

Kamala Harris is accused of violating the **Civil Rights Act of 1866** by supporting or endorsing policies that denied individuals the right to equality, particularly for marginalized groups. Her actions are believed to have perpetuated racial discrimination, preventing certain communities from enjoying the equal protection guaranteed by the law. This violation undermines the core principles of the Act, which ensures civil rights regardless of race or background.

## Civil Rights Act of 1871 (Ku Klux Klan Act)

Under the **Civil Rights Act of 1871**, Kamala Harris is alleged to have failed to prevent civil rights abuses that disproportionately targeted racial minorities. Her support for policies that may have violated the rights of marginalized individuals contributes to systemic discrimination, perpetuating the type of conduct the Act was designed to combat. This failure to intervene in such abuses

## Civil Rights Act of 1964

Harris is accused of endorsing discriminatory policies that violate the **Civil Rights Act of 1964**, which prohibits discrimination based on race, color, religion, sex, or national origin. By supporting practices that marginalized vulnerable communities, her actions are seen as contributing to an environment where equal treatment under the law was denied. This is especially concerning given the broad protections the Act offers to ensure equality in employment, education, and public accommodations.

## Racketeer Influenced and Corrupt Organization Act (RICO)

Kamala Harris is alleged to have violated the **Racketeer Influenced and Corrupt Organizations (RICO) Act** by supporting policies that contributed to systemic corruption and harm. Her endorsement of discriminatory practices is seen as fostering a pattern of behavior that led to ongoing civil rights abuses. This organized conduct, as described under RICO, is accused of perpetuating discriminatory systems and policies across various institutions.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights

Harris is accused of violating **First and Eighth Amendment** rights under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, by endorsing policies that suppressed free speech and religion, while contributing to cruel or unusual punishment. Her actions are believed to have supported a system that discriminated against and harmed individuals, leading to violations of their basic rights and freedoms guaranteed by the Constitution.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights

Harris is accused of violating the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by endorsing policies that led to unlawful searches, seizures, and a lack of due process. Her failure to address these violations contributed to a systemic pattern of discrimination and inequality, infringing upon the rights to privacy, equal protection, and due process guaranteed by the Constitution.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability

Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, Harris is accused of failing to intervene in or prevent discriminatory actions by public authorities. Her inaction is seen as contributing to a failure to ensure the protection of constitutional rights, leading to municipal liability for the harm caused by such systemic failures. This reflects negligence and failure to uphold her duty to intervene when rights were violated.

## Violations of New York State Constitution

Harris is accused of violating the **New York State Constitution** by supporting actions that led to discrimination and unequal treatment under the law. Her policies are seen as contributing to practices that breached state-level protections against discrimination, affecting the rights of individuals within New York. These violations are seen as a breach of the civil rights protections guaranteed by the state constitution.

## False Claim

Kamala Harris is alleged to have made **false claims** by endorsing or facilitating policies that were framed as promoting equality but actually led to discriminatory outcomes. These claims misrepresented the true impact of the policies, misleading the public and contributing to widespread harm, especially for marginalized communities.

## Intentional Infliction of Emotional Distress

Harris is accused of **intentional infliction of emotional distress** by promoting policies that caused

practices, particularly those with eugenic undertones, is believed to have contributed to widespread distress and trauma, especially within vulnerable communities.

### Respondeat Superior, Negligent Hiring

Under the principle of **respondeat superior**, Harris is held responsible for the actions of her subordinates who implemented harmful policies. Additionally, her failure in **negligent hiring** is believed to have allowed individuals who perpetuated discriminatory practices to remain in positions of power, further exacerbating the harm done to affected individuals and groups.

### Application of Title I of the ADA and the Rehabilitation Act

Harris is accused of failing to apply the protections of **Title I of the ADA and the Rehabilitation Act**, which protect individuals with disabilities from discrimination. Her support for policies that may have undermined these protections is seen as directly contributing to the marginalization of individuals with disabilities, violating their rights to equal treatment under the law.

### Assault and Battery

Kamala Harris is alleged to have indirectly supported or facilitated **assault and battery** through policies that dehumanized individuals and led to physical or psychological harm. These actions are viewed as direct violations of personal rights and bodily integrity, especially in cases where individuals were subjected to discriminatory or harmful treatment by authorities.

---

### Civil Rights Act of 1866

Joe Biden, as a policymaker, is alleged to have violated the **Civil Rights Act of 1866** by endorsing pro-eugenic policies that discriminated against marginalized groups, particularly racial minorities. His actions are believed to have denied individuals the right to equal protection under the law. This conduct undermines the core principle of the Act, which guarantees civil rights for all individuals, regardless of race or background.

### Civil Rights Act of 1871 (Ku Klux Klan Act)

Under the **Civil Rights Act of 1871**, Biden is accused of failing to intervene in and prevent civil rights violations that disproportionately targeted vulnerable communities. His support for pro-eugenic policies is seen as contributing to a system that ignored the rights and protections guaranteed by the Act. This failure to act allowed discriminatory actions to persist without adequate legal recourse.

### Civil Rights Act of 1964

Biden is accused of violating the **Civil Rights Act of 1964** by promoting policies that discriminated against individuals based on race, color, or other protected characteristics. His support for pro-eugenic practices is seen as fostering a discriminatory environment, undermining the law's guarantee of equal treatment in employment, public accommodations, and education. This failure to uphold the law's protections for marginalized communities constitutes a breach of civil rights.

### Racketeer Influenced and Corrupt Organization Act (RICO)

Biden is alleged to have violated the **Racketeer Influenced and Corrupt Organizations (RICO) Act** by promoting policies that perpetuated systemic corruption and civil rights abuses. His actions, particularly in endorsing eugenic policies, are seen as fostering a network of discrimination and exploitation that affected vulnerable communities. This pattern of behavior is

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights**
Biden is accused of violating the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, by supporting policies that suppressed free speech, religion, and expression, while also contributing to cruel or unusual punishment for marginalized individuals. His endorsement of pro-eugenic policies is seen as violating fundamental rights, fostering an environment where discrimination and mistreatment were widespread.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights**
Biden is alleged to have violated the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by supporting policies that led to unlawful searches, seizures, and violations of due process. His failure to prevent such violations is seen as a failure to ensure the protection of rights guaranteed by the Constitution, including equal protection and procedural fairness for all citizens.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability**
Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, Biden is accused of failing to intervene in or prevent actions that violated individuals' constitutional rights. His inaction in addressing harmful policies contributes to **municipal liability** for the systemic discrimination that occurred. This failure to act allowed these civil rights violations to persist, exacerbating harm to vulnerable communities.

**Violations of New York State Constitution**
Biden is accused of violating the **New York State Constitution** by endorsing policies that led to discrimination and inequality under state law. His actions are seen as contributing to a climate in which state protections against civil rights violations were disregarded, affecting individuals' ability to seek redress for such violations.

**False Claim**
Biden is alleged to have made **false claims** regarding the intent and impact of his policies, particularly those related to eugenics. His promotion of such policies under the guise of public benefit misrepresented their harmful impact on vulnerable communities, misleading the public and violating trust in government actions.

**Intentional Infliction of Emotional Distress**
Biden is accused of **intentional infliction of emotional distress** by supporting policies that caused significant psychological harm to individuals subjected to discriminatory practices. His endorsement of pro-eugenic policies is believed to have caused severe emotional trauma for marginalized communities, further exacerbating the harm done to them.

**Respondeat Superior, Negligent Hiring**
Under the principle of **respondeat superior**, Biden is responsible for the actions of individuals within his administration who implemented harmful policies. Additionally, he is accused of **negligent hiring**, allowing individuals who supported or perpetuated discriminatory actions to hold positions of power, further enabling civil rights violations.

**Application of Title I of the ADA and the Rehabilitation Act**
Biden is accused of failing to uphold protections under **Title I of the ADA and the Rehabilitation Act**, which prohibit discrimination against individuals with disabilities. His endorsement of pro-eugenic policies is seen as contributing to the marginalization of people with disabilities, violating their rights to equal treatment and access.

Biden is alleged to have indirectly supported policies that led to **assault and battery** against individuals, particularly those from marginalized communities. His actions, including endorsing harmful pro-eugenic practices, are seen as contributing to a system where individuals' bodily integrity was violated, either through physical harm or coercive practices.

**Civil Rights Act of 1866**
William J. Burns, in his role as CIA Director, is accused of violating the **Civil Rights Act of 1866** by overseeing actions that discriminated against individuals based on race or other protected statuses. His involvement in pro-eugenic policies and federal strike force operations is seen as enabling practices that denied individuals equal protection under the law. This conduct is seen as preventing equal access to civil rights for marginalized communities.

**Civil Rights Act of 1871 (Ku Klux Klan Act)**
Burns is accused of violating the **Civil Rights Act of 1871** by either authorizing or failing to intervene in actions that led to civil rights abuses through federal operations. His failure to prevent discrimination and unlawful conduct, especially in the context of pro-eugenic policies, perpetuated a system that allowed these abuses to continue unchecked. This conduct violated the protections the Act was designed to uphold.

**Civil Rights Act of 1964**
Burns is alleged to have violated the **Civil Rights Act of 1964** by supporting policies or actions that led to discrimination in employment, education, and public accommodations, particularly under pro-eugenic policies. His oversight of federal strike force operations is seen as directly contributing to the systemic discrimination faced by marginalized groups. This breach of the Act's provisions reflects his role in enabling practices that violated the equal rights of individuals.

**Racketeer Influenced and Corrupt Organization Act (RICO)**
Burns is accused of violating the **Racketeer Influenced and Corrupt Organizations (RICO) Act** by supporting or overseeing federal strike force operations and pro-eugenic policies that contributed to a pattern of corruption and civil rights abuses. His role in facilitating these systemic violations, particularly those tied to discrimination and unethical conduct, is seen as a violation of the RICO Act, which targets organized criminal conduct and corrupt behavior.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights**
Burns is alleged to have violated the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by authorizing or failing to prevent policies that suppressed free speech and religious expression, while contributing to cruel and unusual punishment, particularly in marginalized communities. His actions in endorsing or allowing pro-eugenic policies are seen as infringing upon fundamental rights, fostering an environment of discrimination and harm.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights**
Burns is accused of violating the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by overseeing or condoning federal actions that involved unlawful searches, seizures, and the denial of due process. His involvement in pro-eugenic policies and federal strike force operations is viewed as enabling a systemic failure to protect individuals' constitutional rights, including equal protection under the law.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability**
Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, Burns is accused of failing to intervene in or prevent violations of individuals' constitutional rights by his subordinates in the CIA and federal

structural accountability and adds to the systematic lack of municipal liability for the harm caused to vulnerable communities, allowing the continuation of discriminatory actions without adequate legal consequences.

## Violations of New York State Constitution

Burns is accused of violating the **New York State Constitution** by failing to intervene in actions that led to civil rights abuses in New York, particularly through discriminatory federal operations. His oversight of federal strike forces and support for pro-eugenic policies is seen as contributing to a systemic failure to uphold protections under the state constitution, especially those related to equal rights and justice.

## False Claim

Burns is alleged to have made **false claims** regarding the impact of his policies or the effectiveness of federal operations under his watch. His promotion of pro-eugenic policies is believed to have been framed as beneficial or neutral, despite their discriminatory and harmful effects on marginalized groups. This misrepresentation is seen as a violation of public trust and legal transparency.

## Intentional Infliction of Emotional Distress

Burns is accused of **intentional infliction of emotional distress** by supporting or overseeing policies that caused significant emotional and psychological harm to individuals, particularly those affected by pro-eugenic practices and federal operations. His role in enabling these harmful policies contributed to widespread distress, especially within vulnerable communities.

## Respondeat Superior, Negligent Hiring

Under the principle of **respondeat superior**, Burns is held responsible for the actions of CIA personnel who implemented harmful policies or participated in discriminatory operations. Additionally, he is accused of **negligent hiring** for failing to ensure that individuals within the agency were qualified or held accountable for discriminatory actions, further enabling violations of constitutional rights.

## Application of Title I of the ADA and the Rehabilitation Act

Burns is accused of failing to uphold protections under **Title I of the ADA and the Rehabilitation Act**, which prohibit discrimination against individuals with disabilities. His support for pro-eugenic policies and oversight of federal operations is seen as contributing to the marginalization and harm of individuals with disabilities, violating their rights to equal treatment under the law.

## Assault and Battery

Burns is alleged to have indirectly supported policies that led to **assault and battery** through federal strike force operations or the implementation of pro-eugenic practices. His actions are believed to have contributed to the physical harm or unlawful restraint of individuals, violating their basic rights to bodily integrity and safety.

## Civil Rights Act of 1866

Karine Jean-Pierre is accused of violating the **Civil Rights Act of 1866** by endorsing or facilitating actions and policies that discriminated against individuals, particularly in relation to race or protected statuses. Her support for these policies is seen as enabling a systemic denial of equal protection under the law, particularly when it comes to marginalized communities. This violation is linked to her involvement in upholding policies that undermine civil rights.

## Civil Rights Act of 1871 (Ku Klux Klan Act)

Jean-Pierre is alleged to have violated the **Civil Rights Act of 1871** by endorsing or facilitating

actions that allow corrupt practices and discrimination to continue. By her passive role in failing to address policies that infringe upon constitutional rights, she is seen as complicit in enabling unlawful conduct, especially those tied to race-based discrimination and civil rights abuses.

## Civil Rights Act of 1964

Jean-Pierre is accused of violating the **Civil Rights Act of 1964** by supporting or facilitating policies that led to discrimination based on race, color, sex, religion, or national origin. Her actions, particularly in promoting pro-eugenic or discriminatory policies, are seen as fostering an environment of unequal access to employment, education, and public accommodations, violating the principles of the Civil Rights Act.

## Racketeer Influenced and Corrupt Organization Act (RICO)

Jean-Pierre is accused of violating the **Racketeer Influenced and Corrupt Organization (RICO) Act** by endorsing and facilitating policies that promoted a pattern of corruption, discrimination, and civil rights violations. Her support for actions that perpetuated eugenic practices and federal strike force operations is seen as part of a broader scheme to continue these systemic violations, leading to a violation of the RICO Act.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights

Jean-Pierre is alleged to have violated the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by supporting or facilitating policies that suppressed freedom of speech, religion, and expression, while also contributing to cruel and unusual punishment. Her involvement in promoting pro-eugenic policies is seen as a direct violation of individuals' First and Eighth Amendment rights.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights

Jean-Pierre is accused of violating the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by facilitating or endorsing policies that allowed unlawful searches, seizures, and the denial of due process. Her failure to intervene in policies that disproportionately affected marginalized communities is seen as contributing to constitutional violations, particularly in terms of equal protection and due process.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability

Jean-Pierre is accused of failing to intervene in or prevent policies that violated individuals' constitutional rights, particularly those related to eugenics and federal strike force operations. Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, her failure to take action in preventing these violations led to **municipal liability**, exacerbating harm to vulnerable individuals and communities.

## Violations of New York State Constitution

Jean-Pierre is accused of violating the **New York State Constitution** by endorsing policies that led to civil rights violations in the state, particularly through federal strike force operations. Her failure to intervene in discriminatory practices is seen as contributing to a systemic disregard for constitutional rights at the state level, particularly regarding equality and justice.

## False Claim

Jean-Pierre is alleged to have made **false claims** regarding the effectiveness or legality of policies that discriminated against marginalized groups. She is accused of misrepresenting the outcomes of pro-eugenic policies and federal operations, falsely asserting that they were beneficial or lawful, when in fact they caused harm and violated civil rights protections.

## Intentional Infliction of Emotional Distress

caused significant emotional and psychological harm to affected individuals, particularly those subjected to eugenic practices or federal operations. Her actions contributed to an environment that perpetuated fear, trauma, and distress within vulnerable communities.

### Respondeat Superior, Negligent Hiring

Under the doctrine of **respondeat superior**, Jean-Pierre is held responsible for the actions of federal agents and other personnel who implemented discriminatory policies or participated in abusive operations. Additionally, she is accused of **negligent hiring** for failing to ensure that individuals involved in these actions were properly vetted or held accountable for their conduct, thus enabling ongoing constitutional violations.

### Application of Title I of the ADA and the Rehabilitation Act

Jean-Pierre is accused of failing to uphold protections under **Title I of the ADA and the Rehabilitation Act**, which prohibit discrimination against individuals with disabilities. By endorsing policies that disproportionately harmed people with disabilities, particularly under pro-eugenic frameworks, she violated the rights of those individuals to equal protection and non-discriminatory treatment under the law.

### Assault and Battery

Jean-Pierre is alleged to have indirectly supported policies that led to **assault and battery** through federal operations or discriminatory practices. Her failure to intervene in actions that caused harm to individuals, including through the enforcement of pro-eugenic policies, led to physical violence and unlawful conduct against affected parties, violating their rights to personal safety and bodily integrity.

### Civil Rights Act of 1866

Sergeant Pierrier is accused of violating the **Civil Rights Act of 1866** by directly engaging in actions that resulted in discrimination or the denial of equal rights, particularly in relation to race or protected statuses. His involvement in enforcing policies or actions that harmed individuals' rights is seen as a violation of this Act, which was enacted to protect civil rights.

### Civil Rights Act of 1871 (Ku Klux Klan Act)

Sergeant Pierrier is alleged to have violated the **Civil Rights Act of 1871**, also known as the **Ku Klux Klan Act**, by participating in or enabling actions that denied individuals their constitutional rights through intimidation, violence, or discriminatory practices. His role in supporting or carrying out unlawful activities that targeted protected groups led to a violation of this civil rights protection.

### Civil Rights Act of 1964

Sergeant Pierrier is accused of violating the **Civil Rights Act of 1964** by directly participating in discriminatory actions that impacted individuals based on race, sex, or other protected categories. His conduct is seen as enabling systemic inequality, particularly when it comes to public services or employment, thereby violating the fundamental provisions of this law.

### Racketeer Influenced and Corrupt Organization Act (RICO)

Sergeant Pierrier is alleged to have violated the **Racketeer Influenced and Corrupt Organization Act (RICO)** by engaging in a pattern of unlawful conduct through the support or direct involvement in corrupt activities related to eugenics or unconstitutional operations. His actions, in coordination with others, are seen as part of a broader corrupt scheme that perpetuated violations of civil rights.

### 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights

**1983** and **42 U.S.C. § 1985** by suppressing the free speech and religious expression of individuals while also participating in cruel, degrading, or inhumane treatment. His involvement in supporting or enforcing pro-eugenic policies is seen as a violation of fundamental constitutional rights.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights

Sergeant Pierrier is accused of violating the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by engaging in unlawful searches, seizures, and the denial of due process. His role in supporting discriminatory actions and unconstitutional practices undermined individuals' rights to equal protection and due process under the law.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability

Sergeant Pierrier is accused of **failure to intervene** when witnessing or becoming aware of constitutional violations. Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, his failure to prevent or report unlawful conduct contributed to systemic violations, leading to municipal liability for the harm caused by these practices.

## Violations of New York State Constitution

Sergeant Pierrier is accused of violating the **New York State Constitution** by engaging in actions that violated the civil rights of individuals within the state, particularly through involvement in unlawful police operations or discriminatory policies. His actions contributed to the suppression of fundamental rights as guaranteed by the state constitution.

## False Claim

Sergeant Pierrier is accused of making **false claims** about the legality or effectiveness of certain actions that he carried out or endorsed, particularly in relation to discriminatory or abusive practices. These false assertions were used to justify actions that violated civil rights, creating a misleading narrative about their legality.

## Intentional Infliction of Emotional Distress

Sergeant Pierrier is accused of **intentional infliction of emotional distress** by directly participating in or enabling harmful actions that caused significant psychological harm to individuals. His involvement in abusive practices, especially those tied to eugenic policies, led to lasting emotional and mental trauma for the victims involved.

## Respondeat Superior, Negligent Hiring

Under **respondeat superior**, Sergeant Pierrier is held accountable for the actions of subordinates or other personnel under his supervision who were involved in unlawful activities. Additionally, he is accused of **negligent hiring**, as his failure to ensure that personnel were properly vetted or held accountable allowed for harmful actions to take place, further violating constitutional rights.

## Application of Title I of the ADA and the Rehabilitation Act

Sergeant Pierrier is accused of violating **Title I of the ADA** and the **Rehabilitation Act** by participating in discriminatory practices against individuals with disabilities. His actions, particularly in promoting pro-eugenic policies or supporting harmful operations, contributed to the denial of equal protection and opportunities for disabled individuals.

## Assault and Battery

Sergeant Pierrier is accused of **assault and battery** for directly engaging in or supporting actions that involved the physical harm of individuals. Whether through federal operations or discriminatory practices, his involvement in these activities led to unlawful and harmful physical contact with victims, violating their personal safety and constitutional rights.

The **CIA** is accused of violating the **Civil Rights Act of 1866** by facilitating or supporting operations that resulted in discrimination and the denial of equal rights, particularly related to race, citizenship, or protected statuses. Their involvement in implementing policies or actions that perpetuated inequality, especially in the context of pro-eugenic practices, is seen as a direct violation of this Act.

## Civil Rights Act of 1871 (Ku Klux Klan Act)
The **CIA** is alleged to have violated the **Civil Rights Act of 1871** (Ku Klux Klan Act) by participating in or endorsing policies that denied individuals their constitutional rights through unlawful actions, including intimidation or violence. These operations, linked to discriminatory or pro-eugenic practices, are seen as part of a broader effort to suppress rights and maintain systemic inequality.

## Civil Rights Act of 1964
The **CIA** is accused of violating the **Civil Rights Act of 1964** by endorsing or engaging in discriminatory practices that violated individuals' rights in employment, public services, and education. The agency's support of pro-eugenic policies and actions is seen as contributing to systemic discrimination, particularly against marginalized groups.

## Racketeer Influenced and Corrupt Organization Act (RICO)
The **CIA** is accused of violating the **Racketeer Influenced and Corrupt Organization Act (RICO)** by engaging in a pattern of unlawful conduct through the implementation of illegal operations or endorsement of policies aimed at suppressing civil rights. The involvement of the CIA in coordinating with other agencies or entities in these actions has contributed to the ongoing violations of fundamental rights, especially under the guise of national security.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights
The **CIA** is alleged to have violated the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by suppressing free speech and religious expression, while also participating in cruel, inhumane, or degrading treatment. These violations are connected to the agency's support for pro-eugenic practices and operations that silenced dissent or engaged in unethical treatment of individuals.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights
The **CIA** is accused of violating the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by engaging in unlawful surveillance, searches, and seizures while also denying individuals their right to equal protection and due process. These actions are linked to the CIA's operations that were based on discriminatory policies and pro-eugenic practices that infringed on constitutional protections.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability
The **CIA** is accused of failing to intervene in instances of unlawful conduct that violated the constitutional rights of individuals under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**. The agency's failure to act on these violations and its involvement in municipal liability contribute to the overall harm caused by these discriminatory policies and actions.

## Violations of New York State Constitution
The **CIA** is accused of violating the **New York State Constitution** by supporting or implementing unlawful operations that infringed upon the civil rights of individuals in New York. The agency's actions, tied to unconstitutional policies and discriminatory practices, are seen as direct violations of the state's constitutional protections.

**False Claims**

The **CIA** is accused of making **false claims** to justify actions that were harmful and unconstitutional. These false claims, especially related to national security or pro-eugenic policies, were used to perpetuate discriminatory practices and deny individuals their constitutional rights under the guise of government authority.

**Intentional Infliction of Emotional Distress**

The **CIA** is accused of **intentional infliction of emotional distress** through its involvement in abusive and harmful operations. These operations, especially those tied to unethical or pro-eugenic policies, caused lasting psychological harm to individuals who were directly impacted by the agency's actions.

**Respondeat Superior, Negligent Hiring**

The **CIA** is accused under **respondeat superior** for the actions of its employees or agents who carried out discriminatory or unconstitutional practices. The agency is also held accountable for **negligent hiring**, as its failure to properly vet or monitor its personnel allowed for harmful and unlawful actions to take place, resulting in widespread civil rights violations.

**Application of Title I of the ADA and the Rehabilitation Act**

The **CIA** is accused of violating **Title I of the ADA** and the **Rehabilitation Act** by supporting discriminatory policies that negatively impacted individuals with disabilities. The agency's actions, tied to eugenic or unconstitutional practices, resulted in the denial of equal protection and opportunities for disabled individuals within its operations.

**Assault and Battery**

The **CIA** is accused of **assault and battery** for its direct involvement in or endorsement of operations that led to the unlawful physical harm of individuals. Whether through federal operations or unconstitutional practices, the agency is seen as contributing to or enabling actions that violated the personal safety and constitutional rights of those affected.

**Civil Rights Act of 1866**

Audrey Strauss is accused of failing to intervene in actions that violated the **Civil Rights Act of 1866**, which prohibits discrimination based on race, citizenship, or other protected statuses. As U.S. Attorney, Strauss had a responsibility to act against practices that denied individuals equal rights and protections, including those related to pro-eugenic policies that perpetuated discrimination.

**Civil Rights Act of 1871 (Ku Klux Klan Act)**

Strauss is accused of violating the **Civil Rights Act of 1871** (Ku Klux Klan Act) by not addressing or preventing the unlawful actions of government officials or entities that sought to intimidate or deny individuals their civil rights. Her failure to intervene in such discriminatory actions enabled systemic abuse and allowed pro-eugenic policies to be carried out without consequence.

**Civil Rights Act of 1964**

Strauss is alleged to have failed to address violations of the **Civil Rights Act of 1964**, which outlaws discrimination in employment, education, and public accommodations. Her inaction in the face of these violations, including those tied to pro-eugenic practices, contributed to the continued denial of equal rights and the perpetuation of discriminatory treatment against marginalized communities.

**Racketeer Influenced and Corrupt Organization Act (RICO)**

Audrey Strauss is accused of enabling or allowing violations under the **Racketeer Influenced and Corrupt Organization Act (RICO)**. This includes failing to address or take action against

discriminated against protected groups. Her failure to intervene contributed to a broader pattern of unconstitutional actions that promoted corruption and discrimination.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights**
Strauss is accused of failing to intervene in violations of the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**. These violations include the suppression of free speech and cruel treatment that infringed upon individuals' constitutional rights. Her inaction in the face of these violations allowed for the continuation of policies and actions that were harmful and unconstitutional.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights**
Strauss is accused of failing to intervene in violations of the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, including unlawful searches, seizures, and denials of due process. By allowing discriminatory practices to continue, particularly related to pro-eugenic policies, Strauss facilitated systemic violations of constitutional rights.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability**
Strauss is alleged to have violated her duty by **failing to intervene** in unlawful actions that infringed upon individuals' constitutional rights under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**. As U.S. Attorney, Strauss had a responsibility to address these violations and ensure that individuals' rights were protected, but her inaction allowed systemic harm to persist.

**Violations of New York State Constitution**
Strauss is accused of failing to uphold the **New York State Constitution**, allowing violations of state civil rights protections to continue unchecked. This failure contributed to the infringement of rights, particularly those related to race, gender, and other protected characteristics, especially in relation to discriminatory and pro-eugenic practices.

**False Claim**
Strauss is accused of making or allowing **false claims** that justified the continuation of unconstitutional actions or policies, particularly those associated with pro-eugenic practices. These false claims perpetuated harmful narratives and contributed to the ongoing violation of individuals' civil rights.

**Intentional Infliction of Emotional Distress**
Strauss is accused of **intentional infliction of emotional distress** by failing to prevent or address harmful and abusive actions perpetrated under her watch. This includes allowing discriminatory policies to cause psychological harm to individuals, particularly those subjected to pro-eugenic practices.

**Respondeat Superior, Negligent Hiring**
Under **respondeat superior**, Strauss is held accountable for the actions of subordinates who engaged in unconstitutional or discriminatory conduct. Additionally, Strauss is accused of **negligent hiring** for failing to properly vet those under her authority, which allowed harmful actions to occur unchecked.

**Application of Title I of the ADA and the Rehabilitation Act**
Strauss is accused of violating **Title I of the ADA** and the **Rehabilitation Act** by not ensuring that individuals with disabilities were not discriminated against in her operations or policies. Her failure to intervene in discriminatory practices, including those related to eugenics, contributed to the exclusion and mistreatment of disabled individuals.

Strauss is accused of allowing **assault and battery** to occur under her oversight, especially through discriminatory or unlawful actions that physically harmed individuals. By failing to intervene in these harmful actions, Strauss is seen as contributing to the ongoing violation of personal rights and safety.

## Civil Rights Act of 1866

Jacquelyn M. Kasulis is accused of failing to uphold the **Civil Rights Act of 1866**, which guarantees equal rights for all persons, regardless of race, citizenship, or other protected statuses. As a high-ranking official, Kasulis had a responsibility to address and intervene in discriminatory actions, including those linked to pro-eugenic policies that undermined the civil rights of vulnerable communities.

## Civil Rights Act of 1871 (Ku Klux Klan Act)

Kasulis is alleged to have violated the **Civil Rights Act of 1871** (Ku Klux Klan Act) by neglecting to address actions that aimed to intimidate and oppress individuals through government-sponsored discrimination. Her failure to intervene allowed pro-eugenic policies to continue without consequence, enabling systemic abuses that perpetuated racial and social inequalities.

## Civil Rights Act of 1964

Kasulis is accused of allowing violations of the **Civil Rights Act of 1964**, which prohibits discrimination in employment, public accommodations, and education. By not addressing the systemic discrimination, including pro-eugenic practices, she contributed to an environment where marginalized communities continued to face unequal treatment and violation of their civil rights.

## Racketeer Influenced and Corrupt Organization Act (RICO)

Kasulis is implicated in enabling or failing to intervene in violations under the **Racketeer Influenced and Corrupt Organization Act (RICO)**. She is accused of not addressing the illegal practices associated with government and law enforcement corruption that engaged in discriminatory and unconstitutional actions, contributing to a pattern of systemic abuse.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First and Eighth Amendment Rights

Kasulis is accused of violating the **First and Eighth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by allowing actions that suppressed free speech, religious expression, and engaged in cruel and unusual punishment. Her failure to intervene in these violations allowed for the continuation of oppressive policies, including pro-eugenic practices that infringed on these fundamental rights.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights

Kasulis is alleged to have violated the **Fourth and Fourteenth Amendments** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985** by allowing unlawful searches, seizures, and discrimination in due process. Her inaction facilitated the continuation of unconstitutional actions, including pro-eugenic policies that disproportionately impacted marginalized individuals.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Failure to Intervene, Municipal Liability

Kasulis is accused of failing to intervene in violations of civil rights under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, which created a systemic failure to protect individuals' constitutional rights. As Acting U.S. Attorney, she had a duty to ensure accountability, but her failure to intervene resulted in the continued violation of constitutional protections and promoted municipal liability for ongoing abuses.

## Violations of New York State Constitution

Kasulis is accused of failing to uphold and protect individuals' rights under the **New York State**

inaction allowed for discrimination to persist, including practices that disproportionately harmed marginalized groups under the guise of pro-eugenic policies.

## False Claim
Kasulis is accused of enabling or failing to challenge **false claims** used to justify unconstitutional actions, including discrimination. Her failure to expose and correct these falsehoods contributed to the continuation of policies that violated individuals' civil rights and promoted harmful practices that caused lasting harm to vulnerable populations.

## Intentional Infliction of Emotional Distress
Kasulis is accused of **intentional infliction of emotional distress** by allowing harmful actions to continue under her supervision without intervention. Her failure to address the systemic abuses, particularly related to pro-eugenic practices, caused individuals to suffer significant psychological harm, which could have been prevented by appropriate intervention.

## Respondeat Superior, Negligent Hiring
Kasulis, under **respondeat superior**, is held responsible for the actions of subordinates who violated civil rights. Additionally, she is accused of **negligent hiring** by failing to properly vet and oversee the conduct of officials under her authority, which allowed discriminatory and unconstitutional practices to take place under her watch.

## Application of Title I of the ADA and the Rehabilitation Act
Kasulis is accused of failing to apply **Title I of the ADA** and the **Rehabilitation Act**, which prohibits discrimination against individuals with disabilities. By neglecting to address violations of these acts, she allowed for the continued exclusion and mistreatment of disabled individuals, further contributing to the perpetuation of harmful discriminatory policies.

## Assault and Battery
Kasulis is accused of failing to prevent **assault and battery** under her watch, particularly in cases where individuals were subjected to physical harm in violation of their rights. Her failure to intervene in such actions contributed to the continued abuse and violations of individuals' physical safety and constitutional rights.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights
The United States Armed Forces is accused of violating individuals' **Fourth and Fourteenth Amendment** rights under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**. These violations allegedly include unlawful searches, seizures, and detentions, as well as discriminatory actions against certain groups based on race, nationality, or other protected statuses. Their engagement in pro-eugenic policies is said to have disproportionately impacted marginalized communities, denying them equal protection and due process.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First Amendment Rights
The United States Armed Forces is accused of violating the **First Amendment** under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, particularly in suppressing free speech, religious freedom, and the right to assemble. Allegations suggest that military policies, including those related to eugenic practices, were enforced in a manner that restricted individual rights to express dissent, especially in the context of opposing government-sponsored discriminatory actions.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Eighth Amendment Rights
The United States Armed Forces is alleged to have violated the **Eighth Amendment** through actions that inflicted cruel and unusual punishment. Under **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, the armed forces are accused of engaging in harmful practices, including torture or inhumane

violations caused unnecessary suffering and violated individuals' constitutional rights to humane treatment.

## Application of Title I of the ADA and the Rehabilitation Act
The United States Armed Forces is accused of failing to comply with **Title I of the ADA** and the **Rehabilitation Act**, which prohibit discrimination based on disability. By endorsing or failing to address discriminatory practices against individuals with disabilities, including those influenced by pro-eugenic views, the Armed Forces are alleged to have violated federal law, contributing to the marginalization and mistreatment of disabled individuals.

## Gross Negligence Claim
The United States Armed Forces is accused of **gross negligence** in failing to prevent violations of constitutional rights and federal laws. By endorsing pro-eugenic policies and failing to intervene in discriminatory actions, the Armed Forces are said to have allowed widespread harm to occur, exacerbating civil rights abuses and contributing to systemic violations of individuals' fundamental freedoms.

## Civil Rights Act of 1866
Columbia University is accused of violating the **Civil Rights Act of 1866**, which guarantees equal rights under the law. The university allegedly engaged in discriminatory actions through policies and practices that marginalized individuals based on race, disability, and other protected characteristics. These actions reportedly hindered individuals from enjoying the full benefits of their constitutional rights and denied them equal protection and access to education.

## Civil Rights Act of 1871 (Ku Klux Klan Act)
Under the **Civil Rights Act of 1871 (Ku Klux Klan Act)**, Columbia University is alleged to have conspired or acted in a manner that deprived individuals of their civil rights. The university's involvement in pro-eugenic activities is said to have furthered discriminatory practices, including the systematic targeting of marginalized groups, undermining efforts to protect individuals' rights to fair treatment and due process.

## Civil Rights Act of 1964
Columbia University is accused of violating the **Civil Rights Act of 1964**, particularly in its actions that discriminate based on race, color, religion, sex, or national origin. The institution allegedly implemented policies or failed to intervene in practices that excluded or disadvantaged certain students and faculty, reinforcing discriminatory structures and contributing to a culture of inequality within the university.

## Racketeer Influenced and Corrupt Organization Act (RICO)
Columbia University is implicated under the **Racketeer Influenced and Corrupt Organization Act (RICO)** for engaging in a pattern of racketeering activities that furthered discriminatory and pro-eugenic practices. These activities allegedly involved systematic violations of civil rights, including the promotion of policies that targeted vulnerable groups and the use of university resources to perpetuate these practices.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of First Amendment Rights
Columbia University is accused of violating the **First Amendment** by suppressing free speech and the rights of students and faculty to express dissent. Allegedly, the university's policies and actions against those opposing pro-eugenic views or discriminatory practices infringed on their freedom of speech, assembly, and religion, thus violating their constitutional rights.

## 42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Eighth Amendment Rights

cruel and unusual punishment through its discriminatory practices and failure to address harmful conditions. Students and faculty who were part of marginalized communities or opposed to pro-eugenic policies are said to have suffered from undue hardship, contributing to emotional and psychological distress.

**42 U.S.C. § 1983 / 42 U.S.C. § 1985 - Violations of Fourth and Fourteenth Amendment Rights**
Columbia University is alleged to have violated the **Fourth** and **Fourteenth Amendments** by endorsing policies that allowed unlawful searches, seizures, and discrimination based on race, gender, or disability. The university's failure to prevent such violations is said to have perpetuated a systemic pattern of unequal treatment, denying individuals their right to privacy and equal protection under the law.

**Failure to Intervene and Municipal Liability**
As a higher education institution, Columbia University is accused of failing to intervene in discriminatory actions perpetrated by its staff, students, or affiliates, and is held liable for allowing such violations to continue. This failure to intervene exacerbated the harm suffered by affected individuals, and the university's institutional practices allowed these violations to persist unchecked.

**Violations of New York State Constitution**
Columbia University is also accused of violating the **New York State Constitution** by engaging in discriminatory practices that directly contravene the state's commitment to equal rights and protection under the law. These violations allegedly involved both direct and indirect harm to individuals based on race, disability, and other protected characteristics.

**False Claim and Intentional Infliction of Emotional Distress**
The university is accused of making **false claims** about its commitment to diversity and inclusion, while simultaneously engaging in discriminatory practices. Additionally, its actions are alleged to have caused **intentional infliction of emotional distress** on students and faculty who were subjected to harmful and exclusionary policies based on pro-eugenic views.

**Respondeat Superior and Negligent Hiring**
Under the principle of **respondeat superior**, Columbia University is held responsible for the actions of its employees who allegedly violated individuals' rights. Furthermore, the university is accused of **negligent hiring**, allowing individuals with discriminatory views to perpetuate harmful policies and practices on campus.

**Application of Title I of the ADA and the Rehabilitation Act**
Columbia University is accused of failing to comply with **Title I of the ADA** and the **Rehabilitation Act**, which prohibit discrimination based on disability. The university's practices, including pro-eugenic policies, allegedly marginalized students with disabilities and failed to provide adequate accommodations, violating federal law and contributing to a hostile educational environment.

**Assault and Battery**
Columbia University is accused of **assault and battery** in cases where individuals were subjected to physical harm or psychological abuse under the university's policies. This includes instances of unwarranted physical restraint or harassment tied to discriminatory actions, particularly against individuals who were perceived as "undesirable" under pro-eugenic views.

the **First, Fourth, Eighth, and Fourteenth Amendments**, as well as the **Civil Rights Act of 1866, 1871, and 1964**. His involvement in discriminatory practices, including potential racial profiling or excessive force, directly undermines the constitutional protections afforded to individuals. Gomez is also implicated in **gross negligence claims** for failing to intervene in these activities and allowing these constitutional violations to continue within the Fire Department.

These actions, subject to both **42 U.S.C. § 1983** and **42 U.S.C. § 1985**, could result in significant liability for **municipal violations**, including claims under the **New York State Constitution**. His failure to prevent these unlawful activities not only harmed individuals but also exposed him to civil liability under federal law. Additionally, his participation in **intentional infliction of emotional distress** and **assault and battery** claims further compounds the severity of the allegations against him.

Gomez's actions are alleged to have caused widespread emotion, leading to potential claims under **Respondeat Superior** and **negligent hiring**. This highlights the responsibility of his superiors and the **FDNY** for failing to prevent or address these harmful actions. Moreover, his role in violating **Title I of the ADA** and the **Rehabilitation Act** is another avenue for claims related to discrimination against individuals with disabilities.


**EMT Robert Kraft** is accused of participating in pro-eugenic activities that violate the **First, Fourth, Eighth, and Fourteenth Amendments**. His actions, potentially involving discrimination and unjust treatment of individuals based on race, disability, or other protected characteristics, directly infringe upon fundamental civil rights. These actions may also constitute violations under the **Civil Rights Act of 1866, 1871, and 1964**, which prohibits discrimination and ensures equal protection under the law.

Kraft is also implicated in violations of **42 U.S.C. § 1983/42 U.S.C. § 1985**, which address the deprivation of constitutional rights by government officials. His failure to intervene in discriminatory practices and actions that harm individuals could expose him to liability under **municipal liability** and other claims under **New York State Constitution**. The **gross negligence** claim suggests that his inaction or misconduct contributed to further harm, creating the potential for significant legal consequences.

Additionally, Kraft's participation in actions that may cause **intentional infliction of emotional distress**, and potential **assault and battery**, along with the failure of his employers to properly address these issues, could lead to liability under **Respondeat Superior** and **negligent hiring** theories. This could also extend to violations of **Title I of the ADA** and the **Rehabilitation Act**, as any discriminatory actions involving individuals with disabilities further complicate his legal position.

---

William McGee drew inspiration for his ideas on human development from Darwin's theory that humans evolved from ape-like ancestors. Darwin's theory provided a framework for categorizing Africans as biologically inferior. His ideas created a bandwagon effect among scholars on both sides of the Atlantic. Africans were demeaned with terms like "savages" and were often compared to animals. While some comparisons predated Darwin, they increasingly gained the authority of

Darwin argued that the evolutionary break between apes and humans occurred between Africans, Australian Aborigines, and gorillas. In other words, he considered Black people the closest humans to apes. German scientist Ernst Haeckel, a leading German Darwinist of the late 19th and early 20th centuries, helped popularize this idea. Haeckel, who corresponded extensively with Darwin, was known for his racism and anti-Semitism. He created a graphic of human evolution that depicted a Teutonic male at the top and, at the bottom, figures resembling a mix of apes and Jews, with Africans portrayed as the closest to apes. Haeckel argued that the gap between the highest Teutonic male and the lowest human was larger than the gap between the lowest human and the highest ape.

At the St. Louis World Fair, William McGee expressed similar views. He claimed scientists had shown that the structure of the lowest humans more closely resembled the highest apes than the highest humans. McGee regarded non-white peoples as evidence of humanity's evolutionary history, describing them as strikingly close to subhuman species in mentality and physical structure. To dramatize these ideas for the public, McGee organized displays of native peoples in reconstructed villages, which resembled human zoos. More than four million visitors observed these "anthropological exhibits," where indigenous people were prodded and poked by fairgoers. They were also pressured into athletic contests to highlight supposed biological inferiority and subjected to intelligence and physical experiments, including tests for pain thresholds.

Smithsonian anthropologist Aleš Hrdlička sought to collect the brains of deceased native individuals at the fair for scientific study. This macabre effort contributed to his collection of hundreds of embalmed human brains, many of which remain at the Smithsonian.

The indigenous people on display came from around the globe, including the Ainu of Japan, Patagonians from South America, Igorots and Negritos from the Philippines, and pygmies from the Congo. Scientists often described the pygmies as the "missing link" between humans and apes. Samuel Phillips Werner, a former missionary turned explorer, transported several pygmies to the fair, including Ota Benga, whom Werner had purchased at a slave market. Ota Benga was advertised as a genuine African cannibal and displayed for a nickel per viewing.

After the fair, Werner returned Ota Benga to America, eventually placing him on exhibit at the Bronx Zoo alongside a chimpanzee in the Monkey House. This "scientific" display attracted thousands of visitors but also sparked outrage. Reverend Robert Stuart MacArthur of Calvary Baptist Church condemned the exhibition, arguing that Ota Benga should be educated, not degraded. African-American ministers formed a protest committee, denouncing the dehumanizing spectacle and its implicit support of Darwinian evolution.

Zoo director William Temple Hornaday dismissed the criticism, claiming the exhibit was popular and harmless. The New York Times also defended the display, describing pygmies as "very low in the human scale" and dismissing the protests as exaggerated. Despite widespread condemnation from the African-American community and some clergy, the exhibit continued, highlighting the deep-seated racism and scientific biases of the era.

The story of Ota Benga is one of profound injustice. In fact, there were claims that the pygmy was probably enjoying himself. The suggestion that Benga should be placed in a school instead of a cage ignored the high probability that school would have been a place of torture for him, offering no advantage whatsoever. The idea that men are all much alike, except as they have had or lacked opportunities for getting an education out of books, was dismissed as outdated thinking.

After African-American ministers criticized the zoo for using Ota Benga to support Darwinian

> "The reverend colored brother should be told that evolution, in one form or another, is now taught in the textbooks of all the schools and that it is no more debatable than the multiplication table."

As protests escalated, rowdy crowds came to the zoo to see Ota Benga. On Sunday, September 16th, 40,000 people visited the zoo. Press reports described how mobs chased Benga around the grounds, howling, jeering, and yelling. Some poked him in the ribs, others tripped him, and all laughed at him. Benga, overwhelmed, responded by shooting an arrow at his tormentors. Zookeepers caught him and returned him to his cage.

As both the crowds and Ota Benga became more unruly, zoo director William Hornaday defended his actions, claiming:

> "We have no platform that we could place him on, and this big open-air cage was the best place we could find to put him where everybody could see him."

Eventually, continued controversy forced Hornaday to release Ota Benga. He was sent to the Howard Colored Orphan Asylum and later to a seminary in Lynchburg, Virginia. There, nearly ten years later, Ota Benga shot himself to death.

Benga had expressed a desire to return to his native Africa, but by 1916, European powers had devastated the continent in the midst of World War I, making his return impossible. The trauma, hopelessness, and loneliness were unbearable.

> "He had no idea what had become of his people, if his village was still even there. It's not hard to imagine the myriad reasons why he would have sunk into this deep depression that ultimately caused him to take his life."

In one final indignity, the *New York Times* published an obituary assuring readers that during his stay in New York, Ota Benga was "an employee of the Bronx Zoo, hired to feed the apes." According to the obituary, this so-called employment gave rise to the "unfounded" reports that he had been held as an exhibit in the monkey cage.

Ota Benga was largely forgotten until the 1990s. However, the passion of social Darwinists in America for putting humans on display continued. Fifteen years after Ota Benga's tragedy, some of the same individuals involved in his scandal played roles in another human display with even more horrifying consequences.

In September 1921, leading scientists from around the world gathered at the American Museum of Natural History in New York City for the Second International Congress of Eugenics. Eugenics, the so-called "science" of breeding better people, had been coined by Charles Darwin's cousin, Francis Galton. Darwin himself laid its groundwork in *The Descent of Man*, where he discussed the brutal process of natural selection, or "survival of the fittest."

Darwin expressed concern about modern society undermining natural selection:

> "We civilized men do our utmost to check the process of elimination. We build asylums for the imbecile, the maimed, and the sick. We institute poor laws. And our medical men exert their utmost skill to save the life of everyone to the last moment. There is reason to believe that vaccination has preserved thousands who, from a weak constitution, would formerly have succumbed to smallpox. No one who has attended

the race of man."

Darwin's followers believed they could apply these ideas rationally and humanely through eugenics, known as the "self-direction of human evolution." Eugenics was embraced by America's scientific elites and was, for decades, the consensus view of the scientific community.

The Eugenics Congress at the American Museum of Natural History brought together scientists from institutions like Harvard, Yale, MIT, the Smithsonian, Ohio State, UC Berkeley, and the University of Texas. Participants included inventor Alexander Graham Bell and Charles Darwin's son, Leonard, who warned of the threat biological defectives posed to society.

The scientists were welcomed by Henry Fairfield Osborne, then-president of the American Museum of Natural History, who had been involved in the display of Ota Benga at the Bronx Zoo.

---

The year was 1859. Three months after Charles Darwin published *On the Origin of Species*, American promoter P.T. Barnum unveiled a new attraction at his popular museum in New York City. It featured what was described as the "What-Is-It," or man-monkey. Visitors were told that the creature had been captured by hunters in Africa, who had discovered a race of beings roving among the trees and branches like apes and monkeys.

Museum staff declared that scientists had pronounced the creature as a connecting link between African blacks and lower animals. In reality, Barnum's so-called "man-monkey" was an African-American man named William Henry Johnson. Thanks to Barnum, Johnson spent much of his life on public display as an evolutionary missing link, sometimes in a cage.

Many reporters at the time were eager to promote this deception. The *New York Tribune* declared:

> "Barnum's performer seems to be a cross between an ape species and a negro."

Another paper described him as:

> "The head is shaped like that of a monkey, but the face is more like that of an African negro of the lower order. It has been pronounced by naturalists as a specimen of the connecting link between man and monkey."

Many more supposed "missing links" were marketed to the public at freak shows across America. In the 1880s, there was "Crow," promoted as living proof of Darwin's theory of the descent of man. She was described as:

> "A perfect specimen of the step between man and monkey."

In reality, Crow was a young woman from Southeast Asia who suffered from hypertrichosis, a rare genetic condition that produces excessive hair. In the early 1900s, there was "Congo, the Ape Man," who was usually exhibited in a cage next to a chimpanzee.

Most of these early presentations of "missing links" were crude hoaxes created by hucksters, not scientists. However, the quest to dramatize the "lower stages" of human evolution eventually went far beyond freak shows. It involved the most elite members of the scientific community and was

Today, Forest Park in St. Louis is a place for walking, cycling, or spending a quiet Sunday afternoon. But more than a century ago, it was one of the most visited locations in the United States: the site of the 1904 St. Louis World's Fair. Attracting more than 19 million visitors, the fair was known for its lavish neoclassical buildings, its 22-story Ferris wheel, and the public debut of innovations such as the X-ray machine and the ice cream cone.

But the fair had a darker side. Organizers imported thousands of indigenous peoples from around the world to be put on public display in what was essentially a giant human zoo. Unlike freak shows, the human zoo at St. Louis was created with the cooperation of America's scientific establishment.

The man behind this human zoo was anthropologist William McGee, one of the nation's leading scientists and a former acting president of the American Association for the Advancement of Science. In 1903, McGee was asked to head the anthropology department for the World's Fair.

McGee had grand plans to present the story of human evolution by displaying representatives of what he considered to be "lower stages" of the human race. These plans reflected the ideas of mainstream anthropology at the time, which sought to map "civilization" from the highest to the lowest.

As one observer explained:

> "Anthropology was kind of founded on this idea of mapping civilization from the highest to the lowest, with the lowest at that time said to be Africans, and then you sort of move up."

Leading scientists from institutions like Harvard, Princeton, and Columbia University promoted such views. They claimed that Africans were:

> "Midway between an orangutan and a human being."

Like many scientists of his time, McGee's work reflected the racist pseudoscience that dominated mainstream anthropology and reinforced the dehumanization of marginalized groups under the guise of scientific progress.

---

Osborne became one of the most celebrated scientific champions of evolution in America. Soon, he found himself embroiled in a controversy with politician William Jennings Bryan over a fossilized tooth discovered in Nebraska. Osborne insisted the tooth was irrefutable evidence of man-like apes in ancient North America, but it later turned out to be part of an extinct pig.

At the Eugenics Congress, Osborne advocated for eugenics as essential to human evolution, stating, "To know the worst as well as the best in heredity, to preserve and to select the best, these are the most essential forces in the future evolution of human society." He also attacked racial intermarriage, asserting that 500,000 years of human evolution had imprinted distinctive virtues and faults on each race. Osborne claimed that combining races risked uniting their vices instead of their virtues. He further argued that racial groups should be studied to determine their optimal societal roles, noting, "If the Negro fails in government, he may become a fine agriculturalist or a fine mechanic."

The American Museum of Natural History supported the Eugenics Congress with a major

Case 1:22-cv-10957-LGS Document 154 Filed 12/02/24 Page 84 of 259

exhibit ran for ten days. Eugenics accumulated as many as 10,000 people. The exhibit involved participants such as America's top publishers, insurance companies, government agencies, and private groups like the American Red Cross. Although no live humans were displayed, the exhibit functioned as a human zoo, analyzing racial groups under a microscope to judge their societal worth. Displays highlighted racial differences in the womb, mental stamina comparisons, capabilities of immigrants, and equipment for measuring intelligence and other traits.

One section focused on the human brain, with a display by anthropologist Aleš Hrdlička showcasing embalmed brains, gelatin models of ape and human brains, and skulls of Native Americans. These exhibits claimed to show primitive features in Native American brains as remnants of earlier evolutionary stages. Alongside more scientific displays, there were blatantly racist works like Madison Grant's and Lothrop Stoddart's books. Stoddart's *The Rising Tide of Color Against White World Supremacy* argued that white society was under threat from "lower human types" and advocated strict immigration restrictions. Eugenists broadly viewed non-white races and immigrants as evolutionary "throwbacks" and a drain on modern society, justifying these views in the name of Darwinian science.

The eugenics exhibition also promoted a chilling public policy agenda, including forced sterilization, harsh immigration restrictions, and the creation of biological profiles on all Americans to determine their fitness for marriage. The Eugenics Record Office distributed materials to biology teachers nationwide, encouraging students to document their family trees and identify hereditary defects, which were then sent to the office for record-keeping.

The American Museum of Natural History later described the 1921 Eugenics Congress as "perhaps the most important scientific meeting ever held in the museum." A decade later, the museum hosted the third International Congress of Eugenics in 1932, featuring an even more elaborate exhibition. At its entrance were busts of Francis Galton and Charles Darwin, credited as the founding fathers of eugenics.

Although some scientists expressed concerns about eugenics, the strongest opposition came from traditional religious groups. American Christians, including Protestants, Baptists, and Catholics, resisted the movement, emphasizing the intrinsic value of every human being. Nebraska Governor John Morehead, a Presbyterian, vetoed a forced sterilization bill in 1913, arguing it violated both the state's Bill of Rights and "a higher law," stating, "Man is more than an animal."

While many modernist clergy supported eugenics, conservative religious figures were more skeptical. William Jennings Bryan denounced eugenics as an "impossible system for scientific breeding," warning of a world where self-appointed elites controlled human reproduction. The Catholic Church emerged as the most consistent opponent, with Pope Pius XI condemning forced sterilization in 1930, emphasizing the dignity of every human being as a creature made in God's image.

Catholic clergy across America actively resisted eugenics legislation. In Louisiana, the Church played a key role in blocking sterilization laws. This opposition provoked backlash from eugenics groups like the Human Betterment Foundation, whose president, E.S. Gosney, accused the Church of interfering with sterilization bills and suggested Catholics should fund the care of individuals they opposed sterilizing. Gosney even proposed segregating the "feeble-minded" to protect American society from what he considered their detrimental influence.

Osborne had become one of the most celebrated scientific champions of evolution in America. Soon, he would become embroiled in a controversy with politician William Jennings Bryan over a fossilized tooth discovered in Nebraska. Osborne insisted that the tooth supplied irrefutable evidence of the existence of man-like apes in ancient North America. To his embarrassment, the

At the Eugenics Congress, Osborne told scientists that eugenics was essential to the future of human evolution. He stated, "To know the worst as well as the best in heredity, to preserve and to select the best, these are the most essential forces in the future evolution of human society." Osborne also attacked racial intermarriage, arguing, "500,000 years of human evolution have impressed certain distinctive virtues as well as faults on each race. Put three races together, you are likely to unite the vices of all three as the virtues."

Osborne argued that racial groups should be studied to determine what tasks each race is best fitted to accomplish. However, it was clear he already believed he knew the proper place of non-whites: "If the Negro fails in government, he may become a fine agriculturalist or a fine mechanic."

The American Museum of Natural History accompanied the Eugenics Congress with a major museum exhibition designed to sell eugenics to the American public. Participants included America's top publishers, insurance companies, government agencies, and private groups like the American Red Cross. As many as 10,000 people attended the special exhibition.

There were no live humans put on display at the eugenics exhibit, but it was still a kind of human zoo. It put human racial groups under the microscope to judge their worth to society. Displays highlighted differences between black and white babies in the womb, compared the mental stamina of different races, reported on the capabilities of immigrants, and showcased equipment for measuring human intelligence and other features.

There were also displays about the human brain. One compared the brains of criminals and non-criminals. The most extensive brain display was created by anthropologist Aleš Hrdlička from his growing collection of embalmed brains. Hrdlička left his original specimens stored in jars at the Smithsonian but brought gelatin models of the embalmed brains of apes and three races of humans. His presentation filled seven separate display cases and included a series of skulls from Native Americans, purportedly showing that their brains revealed primitive features from earlier stages of evolution.

Among the more sophisticated displays were cruder exhibits featuring the blatantly racist books of Madison Grant and Lothrop Stoddart. Stoddart had published *The Rising Tide of Color Against White World Supremacy*, claiming that whites were in danger of being overrun by the colored races of the world. He argued that immigration from "lower human types" had to be rigorously curtailed.

Eugenists universally viewed immigrants and people of non-white races as a drag on the human race. Blacks, Mexicans, and Hispanics were labeled as "evolutionary throwbacks," considered lower races in evolutionary terms, and viewed as a drain on modern society. Eugenists justified these views in the name of Darwinian science. While racism existed before eugenics, eugenists built on Darwinian biology, claiming a scientific justification for racism.

The eugenics exhibition advocated a chilling public policy agenda, including forced sterilization and harsh new restrictions on immigration. It also promoted a radical proposal from the Eugenics Record Office, which called for assembling biological profiles on all Americans to determine whether they were biologically fit to mate.

The Eugenics Records Office aimed to hold records on everyone in the United States, showing their family trees. People wanting to marry could write to the office to check whether their partner had a fit family tree or bad heredity. Exercises related to this idea were distributed to biology teachers, who asked students to fill out forms with their family trees, noting family "black sheep"

The American Museum of Natural History later called the Eugenics Congress of 1921 "perhaps the most important scientific meeting ever held in the museum." A decade later, the museum hosted the third International Congress of Eugenics in 1932, featuring an even more extensive public exhibition. At the exhibit's entrance were busts of Francis Galton and Charles Darwin, credited as the founding fathers of eugenics.

Although some scientists raised concerns about eugenics, the strongest opposition came from traditional religious groups. Many Christians, Protestants, Baptists, and Catholics opposed the movement, emphasizing the value of every human being. Governor John Morehead of Nebraska, a Presbyterian, vetoed a forced sterilization bill in 1913, stating that it violated both the state's Bill of Rights and a higher moral law. He argued, "This proposed legislation seems more in keeping with the pagan age than with the teachings of Christianity. Man is more than an animal."

While some modernist clergy supported eugenics, theologically conservative religious figures like William Jennings Bryan denounced it as an "impossible system for scientific breeding" directed by self-appointed elites. The most consistent opposition came from Roman Catholics. In 1930, Pope Pius XI condemned forced sterilization for eugenics, criticizing eugenists for asking governments to assume powers they could never legitimately possess.

The Catholic Church emphasized the intrinsic dignity of every human being, asserting that people are valuable as creatures made in the image of God—not for their economic productivity, intelligence, or other qualities. This principle contradicted eugenics' central idea of favoring particular ethnic groups over others. Across America, Catholic clergy actively resisted the eugenics crusade.

In Louisiana, the Catholic Church helped block a sterilization law. Some eugenics groups, like the Human Betterment Foundation, targeted the Catholic Church for attacks. E.S. Gosney, the foundation's president, criticized Catholic efforts to block sterilization laws, suggesting that Catholics should segregate and fund "feeble-minded" individuals themselves, as was done in Nazi Germany. He argued that these individuals burdened society, increased human misery, and diluted American citizenship.

---

---

The eugenics movement and its supporters in the early 20th century actually tried to make an anti-Catholic campaign part of their public argument. On one hand, they claimed their ideas were firmly based on natural science, and yet they ran a public campaign that was anti-religious. This suggests there was more than simple empirical science at stake in the debate.

Despite opposition from Catholics and others, the American eugenics movement continued to flourish in the years leading up to World War II. The movement led to the forced sterilization of more than 60,000 people in America. Compulsory sterilization in the name of eugenics was ultimately upheld by the United States Supreme Court in a decision that declared, "Three generations of imbeciles are enough." Many of those sterilized would not be considered mentally handicapped today.

The eugenics movement also succeeded in passing a draconian immigration law that sharply

Case 1:24-cv-10951-NGR-RW Document 264 Filed 12/2?/24 Page 87 of 259

legislation, the United States Congress invited testimony from a leading eugenicist on the biological aspects of immigration. Starting in the 1920s, there was a massive push for immigration restrictions on people coming from non-Germanic, non-Northern European countries. This included people from Mexico, Africa, and Southern European countries, groups that eugenicists deemed "evolutionarily backward." These groups, according to the eugenicists, had to be stopped because they were supposedly going to destroy society.

The most horrifying implementation of eugenics policies, however, took place not in America but in Nazi Germany. The Nazis sterilized more than 300,000 supposed "hereditary defectives" in the name of eugenics. They then began gassing the disabled at special medical facilities. It was in these killing centers that the Nazis perfected the methods they later used to exterminate Jews.

The sordid history of eugenics and the mainstream scientific community's embrace of it remains unknown to many Americans. The scientific community's involvement in social Darwinism and scientific racism, including human zoos, is a history some people are still trying to cover up.

In 2007, geneticist James Watson, who won the Nobel Prize for co-discovering the structure of DNA, sparked outrage when he suggested that African blacks were genetically inferior to European whites. Echoing arguments of scientific racists from the past, Watson claimed that black inferiority was due to evolution. He stated, "There is no firm reason to anticipate that the intellectual capacities of peoples geographically separated in their evolution should prove to have evolved identically." Watson was widely condemned for his comments, both inside and outside the scientific community, signaling how times have changed. However, while scientific racism no longer receives support from mainstream science, many in the scientific community remain reluctant to honestly discuss the past.

Sharon Weston Broome, mayor of Baton Rouge, Louisiana, was a member of the Louisiana House of Representatives in 2001 when she proposed a resolution encouraging the teaching of the history of scientific racism. The resolution highlighted Darwin's views on race and how his views were exploited by other scientists, such as Ernst Haeckel, to promote racism. It also encouraged teaching students more recent scientific findings supporting racial equality. Broome clarified, "I'm not asking you to take evolution out of the school. I am merely asking that they be made aware that Darwin promoted the justification of racism in his definitive works on *The Origin of Species* and *The Descent of Man.* I certainly understand that racism was in effect before Darwin, but he was the originator of a scientific justification for racism and gave wings to modern racism."

Broome's resolution provoked a firestorm, with supporters of Darwin's theory accusing her of unfairly maligning him. The resolution passed only after all references to Darwin and Haeckel were deleted, as if scientific racism had never happened.

In 2007, the Kansas State Board of Education revised a statewide curriculum standard about the history of science. The original standard called for students to understand both the positive and negative aspects of science on society, including how science could be abused. Examples cited included the eugenics movement, scientific racism, and the infamous Tuskegee syphilis experiment, where government researchers left poor Black men untreated for syphilis to observe the disease's progression. The revised standard eliminated any study of the abuses of science, teaching students only how science had improved society.

Institutions like the American Museum of Natural History, which played significant roles in promoting eugenics and scientific racism, have also tried to suppress their history. In 2005, the museum mounted a major new exhibition on the life and legacy of Charles Darwin. The exhibit, which remains available as a traveling exhibit, contains a section on social Darwinism that fails to

accord to any 1095's of the same will scientific community in the academic scientific circles, the exhibit also omits the museum's own role in promoting these ideologies.

Many leading biologists, including Ernst Haeckel and others, were involved in promoting social Darwinism. By the 1920s and 30s, the idea had become very prominent in fields like anthropology and evolutionary biology. This was not the work of fringe cranks but prominent scientific circles.

Control and domination remain the goal of all power systems. They must be resisted. As one expert notes, "I feel that I'm simply helping people develop intellectual self-defense."

The Bronx Zoo, infamous for its display of Otobenga, has also remained silent on its role in scientific racism. The monkey house where Otobenga was displayed has been closed to the public, and zoo officials refuse to comment, seemingly hoping that both Otobenga and the scientific racism that dehumanized him will remain forgotten.

The resurgence of white supremacist groups in America has raised chilling echoes of the past. Evolutionary arguments for racism, once rejected by the scientific community, are now being resurrected by modern racists. White supremacist James von Braun, for instance, published a manifesto claiming cross-breeding whites with "species lower on the evolutionary scale" diminishes the white gene pool. Similarly, Richard Spencer, a leader of the alt-right, argued that Darwinism offers a "compelling and rational justification" for white supremacy.

In a 2017 study, over 400 self-identified members of the alt-right viewed Blacks, Mexicans, and other racial and ethnic groups as less evolved than whites. The misuse of science to promote racism is not just a relic of history; it is an uncomfortable part of our present.

Remembering the sins of the past helps us avoid repeating them. We must learn from history—not cover it up.

42. Plaintiff was 28 years old at the time of the incident. Plaintiff was falsely admitted on October 6, 2015, at Harlem Hospital, close to the same time as Ms. Kam Brock, who came out publicly on Pix 11 and was sexually assaulted by hospital staff as well. Plaintiff was falsely imprisoned in the month of July 2018 at New York Presbyterian Hospital and Mount Sinai St. Luke's Hospital on February 11, 2020. Mount Sinai St. Luke's discharged Plaintiff without any issues but Plaintiff believes they changed his records recently.

43. Prior to the underlying incident hereof, Defendants DOES #1-10, DOES #11-20, DOES #21-30, DOES #31-40, and DOES #41-50 (hereinafter, collectively referred to as "Defendant DOES") had previously responded to calls involving Plaintiff and were aware of the October 6, 2015, incident at Harlem Hospital because Plaintiff's medical records were on the bed. When the NYPD falsely arrested Plaintiff on February 11, 2020, in his room, they took him to Mount Sinai St. Luke's.

44. On or about October 1, 2021, I was present outside the building of my -residence located at 70 LaSalle Street, New York, New York.

45. Sometime on or about October 1, 2021, upon information and belief, employees of Morningside Heights Housing ("Morningside") contacted NYPD, alleging Plaintiff was causing a disturbance. In truth, Plaintiff was attempting to file a complaint with Morningside Heights Housing management employees, who refused to take Plaintiff's complaint against Montovo and Gilmore—peace officers of Morningside Heights Housing Corporation.

46. Upon information and belief, Morningside Heights Housing Corporation then contacted 911 emergency services.

47. Sometime after the 911 call, Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 arrived at 70 LaSalle Street, New York, New York.

48. At the time Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 arrived, Plaintiff was lawfully present outside the apartment building where he resided.

49. At the time Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 came into contact with Plaintiff, he was not a threat to himself or anyone else.

50. Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 inquired if the Plaintiff Ali Moore. Plaintiff responded in the affirmative and told them he did not want to speak with them.

51. Immediately upon confirming his identity, Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 surrounded Plaintiff, forcibly grabbed him, and placed him in handcuffs. Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 purposefully overtightened the handcuffs, leaving marks and injuries upon Plaintiff's wrists.

52. Plaintiff requested that Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 loosen the handcuffs, but they refused and instead made the handcuffs tighter.

53. At some point, Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 requested that an ambulance be dispatched to 70 LaSalle Street, New York, New York.

54. Upon information, Defendant ROSAS and DOES #11-20 arrived on the scene.

55. At no time on October 1, 2021, did Plaintiff commit any crime or violation of law.

56. At no time on October 1, 2021, did Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 possess probable cause to arrest Plaintiff.

57. At no time on October 1, 2021, did Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 possess information that would lead a reasonable officer to believe probable cause existed to arrest Plaintiff.

58. At no time on October 1, 2021, did Plaintiff present a danger to himself or any other individual upon the premises.

59. Despite Plaintiff's protests and his lack of threat to himself or others, he was forcibly held with handcuffs on at the building complex until the ambulance arrived.

60. At all relevant times, Plaintiff did not display any weapons nor threaten the use of a weapon or force in front of officers or employees at Morningside Heights Housing Corporation, including areas near them. Plaintiff had no ill intent on October 1, 2021, except for attempting to hold individuals accountable for misconduct.

61. While Defendants CASTELLUCIO, MALDONADO, and DOES #1-10 waited for an ambulance to arrive, they, without Plaintiff's consent, searched his personal belongings.

62. Plaintiff was accosted, handcuffed, and humiliated by NYPD officers in full view of his neighbors, causing him embarrassment and humiliation.

63. As a result of Defendants CASTELLUCIO, MALDONADO, and DOES #1-10's unlawful force, Plaintiff suffered severe injuries, extreme pain, and discomfort.

64. Upon the ambulance arriving, Defendants CASTELLUCIO, MALDONADO, and DOES

handcuffs. Plaintiff was then taken to Harlem Hospital by Defendants CASTELLUCIO, MALDONADO, DOES #1-10, ROSAS, and DOES #21-30.

65. Once at Harlem Hospital, Plaintiff requested to be released. Upon information and belief, Plaintiff, while in triage, was told by DOES #31-40, KEMP THANE HERZBER, and/or DOES #41-50 that he was not permitted to leave and would be held at Harlem Hospital for a "psych evaluation" even though Plaintiff was neither a danger to himself nor others.

66. Thereafter, no less than three DOES #31-40 grabbed Plaintiff, restrained his arms behind his back, lifted him by his pants with his head toward the floor, and dragged him to Harlem Hospital's emergency psychiatric department.

67. Upon entering the Harlem Hospital's emergency psychiatric department, DOES #31-40 dropped Plaintiff to the floor facedown, pinned him to the floor, choking him, and pulled his arms behind his back.

68. Despite Plaintiff's cooperation, Defendants DOES #31-40 used unnecessary and excessive physical force to restrain him, causing serious injuries. DOES #31-40 further threatened to medicate Plaintiff against his will.

69. Plaintiff was then taken into a room where he was forced to strip to his underwear and forced to wear a hospital gown and socks.

70. Plaintiff was kept in Harlem Hospital's psychiatric unit against his will. That first night, Plaintiff had to sleep in a plastic chair.

71. Plaintiff was admitted to Harlem Hospital without his consent.

72. Doctors NURUR RAHAM, KALU AGWU, RYAN H. HASHE, and GAUTAM BALASUBRAMANIA were designated Plaintiff's attending physicians.

73. Upon information and belief, Doctors NURUR RAHAM, KALU AGWU, RYAN H. HASHE, and GAUTAM BALASUBRAMANIA all conducted evaluations of Plaintiff without his consent and requested to draw blood as well.

74. All four doctors issued reports and/or recommendations that were the direct cause of Plaintiff's continued confinement at Harlem Hospital.

75. As a result of the Defendants' conduct, Plaintiff remained confined to Harlem Hospital, against his will, until on or about October 2, 2021.

76. To avoid further abuse at Defendant HARLEM, Plaintiff left the hospital to seek a second opinion from St. Luke's Hospital, after which he went to stay with his father in Brooklyn.

77. On or about October 3 or 4, Plaintiff returned to HARLEM with his father to retrieve his belongings. HARLEM only returned Plaintiff's cell phone and keys, claiming they could not locate his clothes or bag.

78. At no time did Defendants possess the authority or privilege to keep Plaintiff confined against his will, nor did the Defendants possess the authority or privilege to provide any treatment to Plaintiff.

79. Defendants' assessments of Plaintiff's status deviated from appropriate and accepted standards of care for medical professionals. Defendants' treatment of Plaintiff deviated from appropriate and accepted standards of care by medical professionals.

80. Defendants failed in exercising the appropriate level of medical judgment.

81. As a result of the foregoing, Plaintiff sustained, inter alia, an unwanted and unwarranted intrusion on his personal integrity, loss of liberty, mental anguish, shock, fright, apprehension, embarrassment, humiliation

**October 1 -5, 2021, Incident**

3. On or about October 1, 2021, I was present outside the building to his then residence located at 70 LaSalle Street, New York, New York.

4. Sometime on or about October 1, 2021, upon information and belief, employees to Morningside Heights Housing ("Morningside") contacted NYPD because Plaintiff was causing a disturbance. In truth, Plaintiff was attempting to file a complaint with Morningside Heights Housing management employees, but these employees were refusing to take Plaintiff's complaint against Montovo and Gilmore - peace officers of Morningside Heights Housing Corporation.

5. Upon information and belief, Morningside Heights Housing Corporations then contacted 911 emergency services.

6. Sometime after the 911 call, Defendants CASTELLUCIO, MALDONADO and DOES  arrived at 70 LaSalle Street, New York, New York.

7.. At the time Defendants CASTELLUCIO, MALDONADO and DOES  arrived, MOORE was lawfully present outside the apartment building in which he resided.

12

Case 1:22-cv-10957-LGS Document 25 Filed 03/29/23 Page 13 of 37

8.. At the time Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, MALDONADO( could have been involved)  and  came into contact with me, I was not a threat to myself or anyone else.

9.. Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO. MALDONADO  (could have been involved)  and DOES , inquired if Plaintiff

them.

10.. Immediately upon confirming his identity, Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, MALDONADO (could have been involved), surrounded me, forcibly grabbed me and placed me in handcuffs. Defendants Sergeant  Brian Stanton,, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, MALDONADO (could have been involved) and DOES purposely over tighten the handcuffs leaving marks and injuries upon my wrists.

11.. I requested that Defendants Sergeant  Brian Stanton,, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, MALDONADO and DOES  loosen the handcuffs but they refused and simply made the handcuffs tighter. . At some point, Defendants Sergeant  Brian Stanton,, OFFICER SANJAY BAJNAUTH ,CASTELLUCIO, MALDONADO and DOES requested that an ambulance be dispatched to 70 LaSalle Street, New York, New York.. Upon information, Defendant ROSAS and DOES arrived on scene.. At no time, on October 1, 2021, did MOORE commit any crime or violation of law intentionally. At no time, on October 1, 2021, did Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTH ,CASTELLUCIO, MALDONADO (could have been involved) and DOES  possess probable cause to arrest me.

12. At no time, on October 1, 2021, did Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTHCASTELLUCIO, MALDONADO ( could have been involved) and DOES possess information that would lead a reasonable officer to believe probable cause existed to arrest me.

13. At no time, on October 1, 2021, did  I present a danger to myself or any other individual upon the premises.

13

14.. Despite  my  protestations and that I was not a danger to myself or others, I  was forcibly held with handcuffs on at the building complex until the ambulance arrived.

15.. At all relevant times, I did not display any weapons nor threaten use of a weapon nor threaten use of force. In front of officers or employees at Morningside Heights Housing Corporation. I had no ill intent on October 1, 2021 - it set out to getting people fired.

16.. While Defendants Sergeant   Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, MALDONADO (could have been involved)   and DOES waited for an ambulance to arrive, Defendants Sergeant   Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO,  MALDONADO( could have been involved)  and DOES, without my consent, searched my personal belongings.

17.. I was accosted, handcuffed and tortured by the NYPD much to my embarrassment and humiliation while my  neighbors were looking on.. As a result of Defendants Sergeant  Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO,  and MALDONADO (could have been involved) and DOES  use unlawful force, I was caused to suffer severe injuries and extreme severe pain and discomfort.

18.. Upon  the ambulance arriving, Defendants Sergeant   Brian Stanton, OFFICER SANJAY BAJNAUTH, CASTELLUCIO, could have been there MALDONADO (could have been  involved) and DOES forcibly held me as they dragged and pushed me to the ambulance by handcuffs. I was then  taken  to Harlem Hospital by Defendants       Sergeant Brian Stanton,

,, ROSAS and DOES.

19.. Once at Harlem Hospital, I requested to be release, upon information and belief, I , while in triage, was told by DOES, KEMP THANE HERZBER, and/or DOES that I was not permitted to leave and would be held at Harlem Hospital for a "psych evaluation" even though I was neither a danger to myself nor others.

20.. Thereafter, no less than three DOES grabbed  me, grabbed my arms behind my back, then lifted me by my pants with my head towards the floor and dragged him to Harlem Hospital's emergency psychiatric department.

21.. Upon entering the Harlem Hospital's emergency psychiatric department, DOES, dropped me to the floor to face down, pinned me to the floor causing me  to be choked, and pulling my arms behind my back.

22.. Despite my  cooperating, Defendants DOES  used unnecessary and excessive physical force to restrain me, causing me serious and severe injuries. DOES  further threatened to have me medicated.

23.. I  was then taken into a room where I was forced to strip mine underwear and forced to wear a hospital gown and socks.

24.. I was kept in Harlem Hospital's psychiatric unit against my will. That first night, I had to sleep in a plastic chair.

25.. I was admitted to Harlem Hospital without my  consent.

26.. Doctors NURUR RAHAM, KALU AGWU, RYAN H. HASHE, and GAUTAM

27.. Upon information and belief, Doctors NURUR RAHAM, KALU AGWU, RYAN H. HASHE, and GAUTAM BALASUBRAMANIA all conducted psychological evaluations of me-without my consent and they asked to draw blood too.

28.. All four doctors issued reports and/or recommendations that were the direct cause of my  continued confinement at Harlem Hospital.

29.. As a result of the Defendant's conduct,I remained confined to Harlem Hospital, against my will, until on or about October 2, 2021.

15

30.. To avoid further abuse at Defendants at  HARLEM, I left(ran) the hospital to get a second opinion from St. Luke's Hospital, after which I  went to stay with Earl in Brooklyn. On or about October 3rd or 4th, I  returned to HARLEM with Earl in order to retrieve my  belongings. HARLEM would only give me back my cell phone and my keys. Supposedly, HARLEM could not find my clothes and/or my bag. They withheld them because they were going to try to  bring me back to Harlem Hospital on October 5 2021.

32.. At no time did the Defendants possess the authority or privilege to keep me confined against my  will, nor did the Defendants possess the authority or privilege to provide any treatment to me.

33.. Defendants' assessments of  my mental health status deviated from inappropriate and un accepted standards of  care for medical professionals. Defendants' treatment of me deviated from  inappropriate and un accepted standards of care by medical professionals.  They retailted against me because I was explaining my 4th and 14th amendments were violated.

34.. Defendants failed in exercising the appropriate level of medical judgment. As a result of the foregoing, I sustained, *inter alia*, an unwanted and unwarranted intrusion on my personal

incarceration, malicious prosecution, anguish, bodily harm, apprehension, harassment, embarrassment, and deprivation of constitutional rights.. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

35.. All of the aforementioned acts deprived me of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth,, Fourteenth Amendment, Eighth Amendment and 1st Amendment to the Constitution of the United States of America and were therefore in violation of 42 U.S.C. §1983.

16

36.. The acts complained of were carried out by the aforementioned Defendants in their official capacities with all the actual and/or apparent authority attendant thereto.

37.. The acts complained of were carried out by the aforementioned individual Defendants in their official capacities pursuant to the customs, usages, practices, procedures, and rules of CITY and NYCHH, all under the supervision of ranking officers of said department.

38.. Defendants, collectively and , while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

 **October 5, 2021, Incident**

39.. On or about October 5, 2021, I was present at my  residence located at 70 LaSalle Street, New York, New York.

40. Sometime on or about October 5, 2021, upon information and belief, an unknown individual from Morningside contacted 911 emergency services again - Morningside Heights Housing Corporation, peace officers most likely.

41.. I was alone and lawfully present at my  residence located at 70 LaSalle Street, New

42. Upon information and belief, Defendants CASTRO, PATRICIO, DOES, VASQUEZ and DOES without probable cause or reason to believe that a crime had been committed or reason to believe that I was a danger to myself or others, they unlawfully entered

my apartment, and most likely did an unlawful search of my property like February 11,2020 , Harassed me, and used intimidations on me instead of using handcuffs like last times before October 5,2021.

43. Upon information and belief, Defendants CASTRO, PATRICIO, DOES, VASQUEZ and DOES #21-30 entered MOORE'S apartment without my permission nor consent of grandmother.

17

44.. I was placed in fear of my life and I informed Defendants CASTRO, PATRICIO, FDNY Lieutenant Alexander Gomez,VASQUEZ and DOES that what they were doing was not according to protocol and demanded that they leave the apartment.

45. Defendants CASTRO, PATRICIO, NYPD Lieutenant Salvatore Ronzino

,DOES, FDNY Lieutenant Alexander Gomez,VASQUEZ and told me that they were not going to leave my apartment unless I came with them. Fearing for my life and not wanting the situation to escalate further, I left my apartment with the Defendants CASTRO, PATRICIO, NYPD Lieutenant Salvatore Ronzino, DOES, FDNY Lieutenant Alexander Gomez, VASQUEZ and DOES..

46. I was taken to St. Luke's Hospital and discharged within an hour. At all relevant times to the instant Complaint, Defendants CASTRO, PATRICIO, NYPD Lieutenant Salvatore

concert, engaged in acts or omissions which constituted deprivation of the Constitutional rights,

privileges, and immunities of mine and, while these acts were carried out under color of law, they

had no justification or excuse in law and were instead gratuitous, illegal, improper, and unrelated

to any activity in which law enforcement officers may appropriately and legally engage in the

course of protecting persons and property ensuring civil order.

47. At all relevant times to the instant Complaint, Defendants CASTRO, PATRICIO,NYPD Lieutenant Salvatore Ronzino, DOES, FDNY Lieutenant Alexander Gomez, VASQUEZ and DOES, and each of them, had the power and duty to restrain the other Defendants and prevent them from violating the law and the rights of mine, but each of the Defendants failed and refused to restrain the other Defendants and thereby became a party to unlawfully subjecting of mine to harm and deny of basic rights.

18

48.. That the injuries I suffered were caused solely by the conduct of Defendants

CASTRO, PATRICIO, NYPD Lieutenant Salvatore Ronzino, DOES , FDNY Lieutenant

Alexander Gomez, VASQUEZ and DOES  and I in no way contributed to or caused the injuries I

suffered.

49. The conduct of Defendants was the proximate cause of my injuries. 101. The

injuries suffered by me are permanent in nature.

**A Custom, Policy, and Practice of Failing to Properly Handle Black freemen**

"Black freemen" specifically refers to a historical context in the United States,

particularly during periods of slavery and its aftermath. The use of the term "freemen"

During those times, there were indeed customs, policies, and practices that resulted in the mistreatment, discrimination, and denial of rights for Black freemen. These practices were rooted in systemic racism and were prevalent in various areas, including employment, housing, education, and the legal system. Some examples include: Segregation and Jim Crow laws: Following the abolition of slavery, Black freemen faced widespread segregation and the implementation of laws that enforced racial discrimination, such as Jim Crow laws. These laws mandated racial segregation and limited the rights and opportunities available to Black individuals.

Discrimination in employment and housing: Black freemen often encountered discriminatory practices when seeking employment or housing. They faced restricted job opportunities, lower wages, and limited access to affordable and quality housing due to systemic racism and bias.

Unequal treatment in the legal system: Black freemen experienced significant disparities in the criminal justice system, including biased arrests, unfair trials, and harsher sentences compared to their white counterparts. They often faced institutionalized racism and systemic biases that violated their rights and undermined equal justice. Voter suppression: Black freemen faced various tactics aimed at suppressing their voting rights, including poll taxes, literacy tests, and other forms of voter intimidation and discrimination. These measures were designed to prevent Black individuals from participating in the political process and exercising their democratic rights. Addressing the historical and systemic failures in handling Black freemen required significant civil rights movements, legislative reforms, and court decisions that challenged and dismantled these discriminatory customs, policies, and practices. The struggle for civil rights and racial equality in the United States continues to this day, as efforts to combat

the legacy of these historical injustices continues to impact communities of color today. Ongoing efforts are necessary to promote equality, justice, and the protection of civil rights for all individuals, irrespective of their race or ethnicity.

Addressing these systemic failures requires comprehensive efforts to reform policies, practices, and cultural norms within organizations, institutions, and society as a whole. It involves advocating for equal rights and opportunities, challenging discriminatory practices, promoting diversity and inclusion, implementing implicit bias training, fostering community engagement, and supporting initiatives aimed at dismantling systemic racism. The goal is to ensure that African Americans are treated with dignity, fairness, and equality, and that their rights and well-being are fully protected and respected. This work often involves collaboration among activists, community leaders, policymakers, and affected individuals to advocate for systemic changes and promote social justice.

**A Custom, Policy, and Practice of Failing to Properly Handle African Americans** A custom, policy, and practice of failing to properly handle individuals who are African American refers to a systemic issue where there is a consistent failure within organizations, institutions, or government agencies to adequately address the needs, rights, and experiences of African Americans. This failure may manifest in various forms of discrimination, inequality, bias, or mistreatment based on race. Custom refers to an established pattern of behavior or practice that is consistently followed within an organization or system. Policy refers to the written guidelines, rules, or protocols that dictate how an organization should handle specific situations or populations. Practice refers to the actual implementation of those policies or the way things are done in

perpetuate a failure to properly handle individuals who are African American, it can

result in significant disparities, injustices, and violations of their rights. Some examples

of such failures include:Racial profiling: The use of biased or discriminatory practices by

law enforcement that disproportionately target African Americans for surveillance,

searches, or stops based solely on their race, without reasonable suspicion of criminal

activity. Disproportionate use of force: The excessive or unwarranted use of force by law

enforcement officers against African American individuals, leading to injury or death,

often in situations where non-African American individuals might have been handled

differently. Discriminatory practices in employment and housing: Custom, policy, and

practice that perpetuate systemic barriers and inequalities in access to employment

opportunities, promotions, housing, and other essential services based on race.

Disparities in the criminal justice system: Policies and practices that result in

disproportionately higher arrest rates, harsher sentencing, and higher rates of

incarceration for African Americans compared to other racial groups, contributing to

racial disparities within the criminal justice system.


**Privacy Act of 1974**:

United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe
Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence
Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn
M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M.
Kasulis, Acting U.S. Attorney for the Eastern District of New York, federal strike force**


Federal Tort Claims Act (FTCA

United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe
Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrie,  Central Intelligence Agency(
CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis,

Acting U.S. Attorney for the Eastern District of New York, Federal strike Force

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021, Incident on april 21, 2023

The United States Armed Forces, Columbia University, Barack Obama, Kamala Harris, Joe Biden, William J. Burns, Karine Jean-Pierre, Sergeant Pierrier, Central Intelligence Agency (CIA), Audrey Strauss, U.S. Attorney for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, Jill Biden, and federal strike forces are accused of participating in pro-eugenic activities that violate constitutional rights under the 3rd, 5th, First, Fourth, Eighth, and Fourteenth Amendments. Allegations suggest actions such as unjust treatment and discriminatory policies that infringe upon individual freedoms, privacy, due process, and protections from cruel or unusual punishment. These violations are compounded by a failure to properly intervene in policies or actions that harm marginalized groups, especially in contexts where constitutional rights were being disregarded.

Under the Federal Tort Claims Act (FTCA), these actions may be subject to government liability, as they involve the neglect or violation of rights that can lead to significant harm to individuals. The gross negligence claim emphasizes the responsibility of these entities and officials in failing to prevent or address actions that led to harm, indicating a failure in oversight, accountability, or intentional misconduct. These violations may also extend to breaches of the New York State Constitution, amplifying the legal consequences for those involved in enabling or perpetrating such actions.

There have been persistent rumors suggesting that the United States government may be attempting to reclassify individuals, echoing actions taken in the past. It is noteworthy that many individuals with the last name "More" are historically linked to Cherokee Freedmen, which could potentially elucidate the events of August 28, 2024, including the reported reclassification efforts and collaboration with dysfunctional families to facilitate such reclassification. Additionally, I have encountered numerous individuals, including federal employees and members of the military, who have expressed unusual interest in my family and heritage. One military individual mentioned the need to examine Native American restorations, particularly one in Maryland, implying covert activities occurring beyond my awareness. Upon investigating, I have discovered credible evidence supporting my descent from Native American ancestry, which appears to validate what I have been told.

I have also observed individuals engaging in derogatory conversations about me without provocation, a behavior that has inexplicably followed me to my current residence. Many individuals of Cherokee Freedmen descent are currently facing significant challenges in accessing benefits, largely due to the intergenerational effects of systemic trauma. This includes family members who exhibit symptoms akin to Post-Traumatic Slavery Disorder—deeply ingrained psychological and social impacts reminiscent of historical enslavement. Such struggles are further exacerbated by what can only be described as modern-day manifestations of societal "Nazification," compounding the burdens these communities endure.

"Currently, I know 100 individuals from distinct families navigating this very situation. One of them bears the surname *Jones*. It appears plausible that the government may be reclassifying individuals who qualify for corrective measures. Interestingly, many older Black Freedmen have demonstrated opposition to such corrective actions, often appearing disorganized or hesitant, as though mishandling or miscommunicating their positions.

I feel compelled to advocate on behalf of all Black Freedmen. Personally, I identify as a Black Freedman, tracing this heritage through my surname, *Moore*. My grandfather, Mr. Moore, recounted that his father frequently spent time in Oklahoma, further doing inquiries .

Additionally, President Joe Biden would likely be familiar with my paternal family, as they originate from Delaware. Considering the criminal allegations surrounding Joe Biden and his family, one might reasonably speculate on their potential involvement in reclassifying individuals. There may even be intersections with efforts to address the experiences of those suffering from Post-Traumatic Slavery Disorder. While this remains speculative, I acknowledge its potential relevance for other families and individuals deserving of corrective actions .

I diligently study my social environment and recognize the critical need for support in uncovering and preserving the histories of families like Cherokee Black Freedmen which I was told I belong to. Moreover, it is an established fact that the U.S. government has reclassified individuals in the past, with profound implications for their identity and entitlements."

## The Civil Rights Act of 1866

 (CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES , STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER, NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT ,EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED),NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST

SERVICE RESIDENTIAL Slewo, NEW YORK CITY HEALTH / HOSPITALS,
Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),
Equagie Ehimwenma (RN),Chang Young Cho (NP) Officer Francis Senaiour)Federal strike forces,
United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe
Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence
Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn
M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M.
Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander
Gomez. EMT Robert Kraft. Badge No. 3502

1-49#
)

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

**Summary of Allegations: Constitutional Violations and Civil Rights Claims under the
Civil Rights Act of 1866**

This case centers on allegations that numerous defendants, including **NYPD officers**, **hospital
staff**, **housing corporations**, **hospital police**, and **EMS personnel**, engaged in coordinated
misconduct resulting in the violation of the plaintiff's **4th Amendment**, **8th Amendment**, **14th
Amendment**, and **1st Amendment** rights. Additionally, the defendants' actions violated
provisions of the **Civil Rights Act of 1866** by depriving the plaintiff of constitutional protections
and due process under the guise of law enforcement.

**Defendants and Specific Actions**

**1. NYPD Officers**

- **Defendants**:
  - **Officer Antonio Castelluccio**, **Officer Sanjay Bajnauth**, **Sgt. David Maldonado**,
    **Officer David Castro**, **Officer Nilsa Patricio**, **Sgt. Joseph Angelone**, **Lieutenant**

Torturo, **Officer David Franklin**, **Sgt. Perrier**, **Officer Stamford**, and unnamed

"John Does."

- **Allegations**:

  ○ **4th Amendment**: Conducted unlawful seizures by detaining the plaintiff without

    probable cause.

  ○ **8th Amendment**: Inflicted cruel and unusual punishment through physical

    restraint and public humiliation.

  ○ **1st Amendment**: Prevented the plaintiff from filing complaints, silencing their

    right to petition for redress.

  ○ **14th Amendment**: Acted in discriminatory and arbitrary ways, denying the

    plaintiff equal protection and due process.

**2. Morningside Gardens Housing Corporation/First Services Residential**

- **Defendants**: Housing management staff.
- **Allegations**:

  ○ Complicity in enabling law enforcement actions by failing to intervene or address

    the plaintiff's complaints.

  ○ Aided in the unlawful detention and mistreatment of the plaintiff.

**3. Harlem Hospital and Mount Sinai St. Luke's Staff**

- **Defendants**:

  ○ **Dr. Nurur Raham**, **Dr. Kalu Agwu**, **Dr. Ryan H. Hashe**, **Dr. Gautam**

    **Balasubramania**, **Dr. Steven J. Carbonaro**, **Dr. Jonathan Deassis**, **Dr.**

    **Benjamin Wyler**, **Dr. Jayenth Mayur**.

  ○ Staff: **Chang Young Cho (NP)**, **Equagie Ehimwenma (RN)**, **Crystal Allman**

- **Allegations**:

  - Provided **false or fabricated diagnoses** to justify the plaintiff's unlawful detention.

  - Acted in coordination with law enforcement to legitimize excessive restraint and confinement.

  - Degraded the plaintiff by restraining and stripping them in hospital settings.

**4. Hospital Police (NYCH+H)**

- **Defendants**:
  - **Officer Georaida Germonse**, **Officer Francis Senajou**, **Officer Terrence Pemberto**, **Captain David Lopez**, **Sgt. Jocl Rivera**.

- **Allegations**:

  - Acted beyond their jurisdiction to unlawfully detain and restrain the plaintiff, violating **4th Amendment protections**.

  - Participated in actions that caused emotional distress and physical harm.

**5. NYC Fire Department EMT/EMS**

- **Defendants**:

  - **Rosas (#2679)**, **Vasquez**, and unnamed EMT/EMS personnel.

- **Allegations**:

  - Acted as **agents of law enforcement** by assisting in the plaintiff's unlawful transport and detention.

  - Failed to provide proper medical care, contributing to the **8th Amendment** violations.

**Legal Violations**

**1. 4th Amendment: Protection Against Unreasonable Searches and Seizures**

- The plaintiff was detained and restrained without probable cause, based on fabricated medical and legal claims.

- Defendants conspired to justify the unlawful seizure of the plaintiff under the pretext of mental health evaluations.

**2. 8th Amendment: Protection Against Cruel and Unusual Punishment**

- The plaintiff endured unnecessary restraint, humiliation, and punitive treatment, constituting excessive and degrading punishment.

**3. 14th Amendment: Due Process and Equal Protection**

- Defendants deprived the plaintiff of the right to contest the unlawful detention and restraint, violating due process.

- Arbitrary and discriminatory actions by the defendants also violated the plaintiff's right to equal protection under the law.

**4. 1st Amendment: Right to Petition for Redress of Grievances**

- Defendants actively suppressed the plaintiff's ability to file complaints or seek redress, infringing on their fundamental rights.

**5. Civil Rights Act of 1866**

- The defendants' actions deprived the plaintiff of equal protection and due process as guaranteed by federal law.

- Conspiracy among multiple parties to fabricate medical diagnoses and enforce unlawful detainment further constitutes a violation under this act.

Morningside Heights Housing Corporations Falsely contacted the police and made up a false story .NYPD went with the lie and falsely arrested me on October 1, 2021 because they were targeting me because I'm a Black Freemen(Native Black American) or African American. Also I was trying to file a complaint with the building complex and they retaliated back at me by falsely calling the police. The police tightened the handcuffs on me and left scar marks. All the public resources and private resources subjugated me and marginalized me. I've been dealing with the NYPD doing this for years since October 6, 2015, July 2018, February 11, 2020 and now October 1-5 2021. Its systematic racism from sub ethnic European groups classified as white. Percinit 26 has a past of racially targeting black people in the community with the Cannibal Cop. I quote CBS NEWS "Gilberto Valle was convicted in 2013 of kidnapping conspiracy, but the judge threw out the verdict. He was instead sentenced to time served on a lower-level charge of using a restricted law enforcement database to secretly look up personal information about women he knew. He was also fired from the NYPD."


I like to point out that the medical industrial complex has replicated Prison leasing from the time of reconstructions in America. Where they would exploit black Freemen for free labor after incarcerating them because of Jim Crow policies or The Black code policies. Medical industrial complex in America but specially in New York City was exploiting Black Freeman/African Americans for free medical insurance. It was a social experiment for people at Morningside Gardens. The Community Morningside Gardens, Grand Housing and Columbia University was pro emasculation of Black Freeman/African Americans in the community. I worked at Columbia University as a temp and two Latino women at their office by the 1 train line. where starting to refer to me as a woman or trans referring to the false imprisonment towards me from percinit 26 -

I'm telling you this because this is public record (page 2 of 6) that was influencing private civilians who are Latinos to target Black Freeman/African Americans in the community - to commit hate crimes locally throughout the community. They were also cutting back door deals with single mothers and Older African Americans to have their children falsely imprisoned throughout the community. Doing the same thing that the Nazis were doing to the Jews with Chaim Rumkowski. Also there are professors and college alumni who live in the building complex like my mother. America has historically always used Black Freewomen/African Americans and families that are pro social status quo, but not pro equal justice to participate in the subjugations and marginalizations of their children for profit. The Nazi talked about how Black Freeman /African Americans would behave in this manner because of generational slavery. My father is also involved but did the switch up later on - I was being made the problem child. Also my neighbors, just like the peace officers, were encouraging my mother to be like this. Everyone knew I had my civil rights and constitutional rights violated for years - never helped get an attorney. Also Mount Sinai St Luke's Hospital was covering for the NYPD - when I told them my story.

I am bringing up Prisons leasing during the time of reconstruction which was unconstitutional during the time of Semi-Slavery- Jim Crow. Jim Crow/black codes were unconstitutional and it was re-enslavement for Black Freeman/African Americans for over Hundred years. My Grandparents and Mother and Father were born and raised in semi slavery in America - I was raised by Semi slaves - Semi slavery ended 58 years ago. Semi slavery is when the United States Government chooses not to enforce the constitution for Black Freeman/African Americans. Where Public resources/State resources choose not to enforce the constitutions or Laws for Black Freeman which was re enslavement - semi-Slavery. State resources/ Public resources targeting and influencing private resources and private citizens to attack and target Black Freeman -

used against Black freemsn. States used Black Codes/Jim Crow, Racial Laws that were racially targeting Black Freeman and shared monopolies with dysfunctional Families - that just got out of Antebellum Slavery. They were exploiting psychological slavery. Including Making up crimes to incarcerate Black Freemen who were pro constitutional - Families where compliances to. The DSM-5, the book that has all mental illnesses known to man, doesn't have anything on psychological slavery and Semi Slavery ended 58 years ago. The Prison industrial complex during that time exploited or recolonized Black Freeman for free labor - Putting Black Freeman back into Antebellum slavery.

Now I would like to bring up current events in today's economy, and talk about the medical industrial complex; practicing and implementing the same form of subjugations and marginalizations of Black Freeman Once again. A renovation of Prison leasing but with the Medical industrial complex. Exploiting Black Freeman for free medical insurance and misdiagnosing them as mentally ill- also using brain altering drugs. This happened multiple times to me on October 6, 2015, July 2018, February 11, 2020 and now October 1 -5 2021.

My Mother Karen Eubanks works for the state as a school teacher, she is a state worker. America has always used Black women as a tool to subjugate and marginalized Black Freeman. The Driver Mama's were the top slaves on plantations If you read and study slave records. They Made women on the plantations historically alfa and made men beta. Slavery in America was a war against Black Freeman because they never wanted Black Freeman/African American men to be men. Medical industrial complex in today's economy has replicated the Prison industrial complex during the time of reconstructions in America - Semi slavery. You have shared monopolies between State and dysfunctional families. State resources in a shared monopoly with dysfunctional families(private citizens) for exploiting their children, young Black Freeman

especially since black freemen are at the bottom of the hierarchy pyramid - a reoccurring them the representation of the social status quo - racking system in America, pecking order. Black Freemen have historically been the number 1 group targeted by the state. State resources committing white collar crime towards Black Freemen/African Americans for amusement and profit - bad side of capitalism. This is what you call systematic white supremacy, state workers and private citizens who are pro social status quo but not pro equal justice aggregating together as a collective to subjugate and marginalize Black Freemen/African Americans mostly and people of other ideologies and social status. Meaning they mostly target Black Freemen but they do this to other groups too. large in the number like Black Freemen/African Americnas not Black Immigrants, they discharge black immigrants in the admissions room. If you were a Black Freemen/African American they would admit you. Most of the Hospital staff were of immigrant backgrounds. It is a shared monopoly between Systematic white supremacy(White Collar Crime) and Sexism from the women, ageism from the older Black Freemen/African Americans males. The Alpha female is the retaliator, by falsely calling the NYPD(law enforcement) and Beta males' role is to misdirect the youth from taking legal action - Modern day form of child abuse. Just like
Prison Leasing that's why all the families affected by Prison Leasing don't like talking about their families - especially the Black Freemen/African Americans who were survivors.


To give an ideal of the social economic environment and a comparison to antebellum slavery . The Format to my community Amsterdam avenue, Broadway, Harlem and Columbia. Morningside Garden(Morningside Heights Housing Corporations) is The Big House(Slave Owners House) and Grant Housing is the Slave quarters(where most of the Slaves lived, including the Slave owners home), NYPD(Overseers) percinit 26 is the headquarters for the overseer's. Most are latino(Sub Ethnic European) in percinit 26 who are the enforcers, not of law but of the punishment - the muscle. The Mothers(Alpha Females) in the community are Driver MaMas. If you didn't know the

wanted men to be men- so they gave women more privilege on the plantations. Most men on the plantations were beta males through social engineering. Making men think with the left side of their brain and making women think with the right side of their brain. State Hospitals have been used as punishment facilities against Black Freeman/African American young men and women - other Racial Ethnics groups go through this, but not as large in the number as Black Freemen/African Americans. It is the mothers(Driver MaMas) mostly implementing this form of subjugation and marginalization - punishment. This form of subjugations and marginalizations is a way to refert man to a childish state under the disguise of mental illness or imposed homosexuality.

I like to talk about Columbia University and its historical past of being founded by Slave owners. Including from a social economic political standpoint in the present time. If you didn't know, Columbia University owns the majority of the real estate in Harlem and in Upper

manhattan - monopoly. If you own and control the majority of your social economic environment, you have a certain level of power over it - you dictate what the norms are. You can play god to a certain level and dictate who will be rewarded for their actions by elevating their financial status. You can punish people locally throughout the community by not offering employment and the businesses that are in a shared monopoly have to take orders from the number 1 entity(monarch);. that owns and controls the majority of the real estate and resources(wealth) in the community - you can be Black listed. You can create a social environment with certain character traits like Slave traits renovated from Antebellum slavery or like Driver Mamas(women) and Overseers(NYPD). Legal terms for buying state resources like law enforcement to do your bidding is giving donations or Public State Hospitals. If I remember correctly Harlem Hospital (State resource) was in a municipal monopoly(shared monopoly/partnership) with Columbia

hospital because law enforcement couldn't believe she owned a BMW and she was sexually assaulted in the hospital. Morningside Gardens(Morningside Heights Housing Corporations) is right underneath Columbia University and a lot of Alumni Live in Morningside gardens like my mother including Professors. There is an old female Anglo Saxon college Professor who I always saw as a kid growing up in building 70 in the complex - she is very friendly to Mr Montovo(Top Peace officer) even after he parently harassed a female Peace officer. She's been teaching there since Obama was a student there. My Mother got in through legacy because of my grandfather, she is also a former alumni of Sara Loriance .

Reason why bring this up is because i like to reference the preface of miseducations of negro by Carter G. woodsen. In His Book, he said educated Black Freemen/African Americans who attended college universities perpetuate the regime of the oppressor. He was talking about social engineering and how social conditioning is socialization which is social indoctrination based off of social engineering , who owns and controls the resource is in charge of the process. In the original book cover of the Mis educations of the negro, there is a Black Freewomen/African American with a chain and lock rapped around her head. The author was sending a message to readers through images about the system of white supremacy during Semi slavery. He was referring to the Driver Mama system from antebellum slavery was still in effect in the Black social economic environment, it explains prison leasing better during the time of reconstruction. Especially when you find out what the Slave Driver Mamas were very good for implementing punishment - such as social Isolation. Think about that after someone who has been deemed as mentally unfit- it's easy to socially excommunicate them with the help of the grape vine. Black Mothers and women in the community and other racial ethnic groups of women who specified as a manufacturer cultural group such as their sex(women); aggregating together to implement

Case 1:22-cv-10019-JSR Document 254 Filed 12/27/24 Page 114 of 259

race through 1000's of sex offenders list a racial ethnic group in America. I'd like to bring up destruction of Black civilizations by Chancellor Williams and compare the review of the book with the preface of the mis educations of the negro by Carter G. woodson. Where in Destruction Black civilization talks about a British man named Licon attending Oxford University. He came from a lower middle class background and attended Oxford University where he became socialized by his environment, where he know longer went back home to his town. He had more in common with fellow college students. They say 80% of educations is based on socializations and 20% is based on

Historical references

**Ivan VI of Russia (1740-1764):**
Ivan VI, born on August 23, 1740, in St. Petersburg, Russia, was the great-nephew of Empress Anna of Russia. At the tender age of two months, following Empress Anna's demise in 1740, Ivan VI was declared the tsar. Given his infancy, a regency was instituted, with his mother, Empress Anna Leopoldovna, assuming the role of regent. However, the Russian court soon became a battleground for power struggles and internal conflicts, plunging the realm into turmoil.

Merely a year into Ivan VI's reign, Empress Elizabeth seized the throne in 1741. This marked the end of Ivan VI's rule, as Empress Anna Leopoldovna was deposed, and he was subjected to severe confinement at various locations.

Ivan VI's life, henceforth, became ensnared in political maneuvering, as different factions aimed to exploit him as a potential contender for the throne. In 1762, during Catherine the Great's ascent to

release and challenge her rule, Catherine ordered Ivan VI to be transferred to the remote Shlisselburg fortress.

In 1764, at the youthful age of 23, Ivan VI met his demise during a thwarted rescue mission. Unaware of Ivan's true identity, a group of army officers attempted to liberate him from Shlisselburg fortress. However, in the chaos of the rescue, Ivan was tragically killed by his own guards. His death marked the conclusion of the direct Romanov lineage that had governed Russia. Subsequent generations of the Romanov family would continue to exert a profound influence on global history. Ivan VI's poignant tale serves as a poignant illustration of the intrigue and power struggles that typified 18th-century Russian history. Despite his brief reign and subsequent obscurity, his story underscores the profound impact of the circumstances that prevented him from exercising effective rule.

**Mustafa:**

Mustafa's narrative unfolds against a backdrop of profound adversity. Notably, his life was marked by the intricate complexities of his existence and the poignant specter of child abuse. This ordeal stemmed from his brother's magnanimous decision to spare him following the Ottoman Empire's acquisition. The tragic chapter in Mustafa's life was initiated by maternal transgressions that subjected him to harsh confinement within the confines of his chamber.

This confinement, which encompassed both physical and psychological dimensions, precipitated a regression in Mustafa's development. It cast him into a state resembling childhood, a transformation that endured even as he transitioned into adulthood. The intricate interplay of familial dynamics and the enduring repercussions of his mother's actions stand as a somber testament to the layered adversities that marred Mustafa's life journey.

**Conclusion**

The coordinated actions of NYPD officers, hospital staff, housing corporations, EMTs, and

hospital police represent a systemic violation of the plaintiff's constitutional rights under the **4th,**

**8th, 14th, and 1st Amendments**, as well as their protections under the **Civil Rights Act of 1866**.

These actions caused severe emotional and psychological harm, justifying claims for damages and

accountability under the law. all to Plaintiff's damage in a sum to be provided at trial but not less

than ( ), plus punitive damages, costs, and attorney's fees pursuant to Title 42 § 1988.

## Racketeer Influenced and Corrupt Organization Act (RICO)

(CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST
LUKES , STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH
MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER
SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S.
MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER
JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT
SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER
CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY
POLICE SERGEANT PERRIER, NEW YORK CITY POLICE STAMFORD,NEW YORK
CITY FIRE DEPARTMENT ,EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT
JOHN DOES(FICTITIOUSLY NAMED),NEW YORK CITY HEALTH + HOSPITALS,
JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H.
HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY
HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS
SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- ,
OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION
FIRST SERVICE RESIDENTIAL, NEW YORK CITY HEALTH + HOSPITALS,Kemp Thane
Herzberg (RN), Emilia G. Okoroma (RN),Crystal Channel Allman (RN),Equagie
Ehimwenma (RN),Chang Young Cho (NP) Officer Francis Senaiour )Federal strike forces,
United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe
Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence
Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York,

biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez., EMT Robert Kraft. Badge No. 3502

, 1#49

## Summary of Allegations

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

Federal Strike Forces
Federal strike forces are alleged to have engaged in pro-eugenic activities that violated individuals' First, Fourth, Eighth, and Fourteenth Amendments. Their actions may have involved discrimination and suppression of constitutional rights, including unwarranted surveillance and undue force. These activities are subject to claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), and the forces are accused of gross negligence for failing to protect citizens' constitutional rights.

United States Armed Forces
The United States Armed Forces is accused of participating in pro-eugenic activities, resulting in violations of the First, Fourth, Eighth, and Fourteenth Amendments. Their involvement allegedly led to unconstitutional practices that deprived individuals of their rights, especially through discriminatory policies and tactics. These actions could be considered violations under RICO, with a gross negligence claim for failing to intervene and protect fundamental rights.

Columbia University
Columbia University is accused of facilitating and endorsing pro-eugenic policies that violated the First, Fourth, Eighth, and Fourteenth Amendments. The institution's participation in these harmful activities, which may have included discriminatory practices, represents a violation of both federal law and the New York State Constitution. The university is also facing claims of gross negligence for not intervening to halt these practices, further violating constitutional protections.

Barack Obama
Former President Barack Obama is alleged to have endorsed and implemented policies promoting pro-eugenic practices that violated the First, Fourth, Eighth, and Fourteenth Amendments. His actions, which allegedly supported discriminatory and unconstitutional practices, are also subject to RICO violations. Additionally, Obama is implicated in a gross negligence claim for failing to prevent these violations while in office, further exacerbating harm to individuals' rights.

Kamala Harris
Vice President Kamala Harris is accused of supporting and promoting pro-eugenic policies,

violating the First, Fourth, Eighth, and Fourteenth Amendments. These policies allegedly discriminated against certain groups and led to systemic harm. Harris is implicated in RICO violations, as well as gross negligence for not intervening or addressing these violations during her time in office.

Joe Biden
President Joe Biden is accused of endorsing pro-eugenic policies that violate the First, Fourth, Eighth, and Fourteenth Amendments. His administration's actions, seen as discriminatory and unconstitutional, contributed to harmful societal practices. Biden is also implicated in RICO violations and gross negligence for failing to prevent or stop these violations of constitutional rights during his presidency.

William J. Burns
William J. Burns, the Director of the CIA, is accused of overseeing pro-eugenic activities that violated the First, Fourth, Eighth, and Fourteenth Amendments. His involvement in supporting such policies represents a clear violation of individuals' rights. Burns faces potential RICO charges and gross negligence claims for failing to prevent or stop unconstitutional actions carried out by the CIA.

Karine Jean-Pierre
Karine Jean-Pierre, as White House Press Secretary, is accused of supporting pro-eugenic policies that violate the First, Fourth, Eighth, and Fourteenth Amendments. Her failure to challenge these policies and speak out against such violations contributes to RICO allegations. Jean-Pierre is also facing a gross negligence claim for not taking action to stop the discriminatory practices endorsed under her watch.

Sergeant Pierrier
Sergeant Pierrier is alleged to have directly participated in actions violating the First, Fourth, Eighth, and Fourteenth Amendments through pro-eugenic practices and discriminatory actions. His role in implementing such policies, which could include unlawful arrests or mistreatment, makes him subject to RICO violations and a gross negligence claim. Pierrier's actions contributed to systemic harm and violated constitutional rights.

Central Intelligence Agency (CIA)
The CIA is accused of engaging in pro-eugenic practices that violate the First, Fourth, Eighth, and Fourteenth Amendments. Their covert operations and policies, allegedly targeting vulnerable groups, are subject to RICOviolations. The agency faces gross negligence claims for failing to intervene and prevent the violations of constitutional rights committed under its watch.

Audrey Strauss, U.S. Attorney for the Southern District of New York
Audrey Strauss is accused of failing to intervene in cases that violated the First, Fourth, Eighth, and Fourteenth Amendments. Her inaction in addressing discriminatory policies, including pro-eugenic practices, subjects her to RICOviolations. Strauss is also implicated in a gross negligence claim for neglecting to uphold her responsibility to protect citizens' constitutional rights under her office.

Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York

Jacquelyn M. Kasulis is accused of failing to address violations of the First, Fourth, Eighth, and Fourteenth Amendments concerning pro-eugenic activities. Her lack of action to intervene and prevent the continuation of these unconstitutional practices subjects her to RICO violations. Kasulis is also facing a gross negligence claim for not fulfilling her duties as a legal authority.

**Defendants**:

1. **New York City Police Department (NYPD)**:
   - Officers Antonio Castelluccio, Sanjay Bajnauth, David S. Maldonado, David Castro, Nilsa Patricio, Christopher Torturo, David Franklin, Gabriela Flores Tapia, Salvatore Ronzino, Joseph Angelone, Sergeant Perrier, Stamford, and other unnamed officers (John Does).

2. **Housing Corporation**:
   - Morningside Gardens Housing Corporation/First Services Residential. 3. **Medical Professionals (Harlem Hospital and Mount Sinai St. Luke's)**: ○ Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania, Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur.
   - Hospital staff: Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN). 4. **Hospital Police (NYC Health + Hospitals)**:
   - Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sergeant Jocl Rivera.

5. **New York City Fire Department EMTs/Paramedics**:
   - EMT Rosas (#2679), EMT Vasquez, and other unnamed EMTs (John Does).

**Alleged Violations of Rights and Laws**

**Constitutional Violations**

1. **Fourth Amendment (Unreasonable Search and Seizure)**:

   ○ Defendants allegedly conducted unlawful searches, seizures, and detention without probable cause or a warrant.

   ○ Excessive use of force during detention, including pinning you down and physical abuse, violated your right to be free from unreasonable searches and seizures. 2. **Eighth Amendment (Cruel and Unusual Punishment)**:

   ○ Physical abuse, such as over-tightened handcuffs and forceful restraint, amounted to cruel and unusual punishment.

   ○ Forced psychiatric detention and false diagnoses inflicted unnecessary harm.

3. **Fourteenth Amendment (Due Process and Equal Protection)**:

   ○ Arbitrary detention and the use of false psychiatric diagnoses deprived you of due process.

   ○ Discriminatory treatment and misuse of medical evaluations violated your right to equal protection under the law.

4. **First Amendment (Free Speech and Right to Petition)**:

   ○ Denied the ability to file complaints against officers and staff, effectively suppressing your freedom of speech and right to seek redress.

**Racketeer Influenced and Corrupt Organizations Act (RICO)**

The RICO Act addresses patterns of racketeering activity carried out by an organization. The following actions suggest a potential RICO claim:

1. **Coordination Among Defendants**:
   - Allegations that NYPD officers, hospital staff, housing corporations, and EMTs acted together to unlawfully detain you, fabricate evidence (false diagnoses), and cover up misconduct.

2. **Systematic Misconduct**:
   - False psychiatric diagnoses and records were allegedly created to shield law enforcement from accountability and to justify their excessive force and detainment.

3. **Pattern of Activity**:
   - The repeated collaboration between law enforcement, hospital staff, and EMTs points to an organized effort to violate your rights.

4. **Cover-Up**:
   - Suppression of complaints and documentation related to the incident demonstrates a conspiracy to obstruct justice and deny you due process.

## Key Incidents (October 2-5, 2021)

1. **Initial Encounter**:
   - NYPD officers allegedly approached and detained you without probable cause, using excessive force.

2. **Collusion with Housing Corporation**:
   - Morningside Gardens Housing Corporation/First Services Residential allegedly

**Medical Diagnoses**:

- ○ Doctors and hospital staff from Harlem Hospital and Mount Sinai St. Luke's allegedly fabricated psychiatric diagnoses to justify your detention, acting under pressure from law enforcement.

4. **Hospital Police and EMT Involvement**:

- ○ NYC Health + Hospitals police and FDNY EMTs/paramedics allegedly facilitated your unlawful detention and helped cover up misconduct by acting in concert with law enforcement.

5. **Suppression of Complaints**:

- ○ You were prevented from filing complaints about the misconduct, violating your First Amendment rights.

## Conclusion

The defendants' actions collectively constitute violations of your Fourth, Eighth, Fourteenth, and First Amendment rights. The allegations suggest a coordinated effort to deprive you of your rights through unlawful detention, excessive force, fabricated medical diagnoses, and suppression of complaints. The involvement of multiple parties—law enforcement, medical staff, housing corporations, and EMTs—points to a potential RICO claim, as their actions reflect a pattern of racketeering activity and conspiracy to cover up misconduct.

This explanation highlights the key points and legal framework for your claims. If you need further assistance drafting or organizing your case, let me know!

**COUNT I**

**42 U.S.C. § 1983 - Violations of First and Eighth Amendment Rights** (against Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED),NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL, NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN),Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP) Officer Francis Senaiour Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)1-49#

October 1, 2021 - October 5, 2021 Incident:

**On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021**

117. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

118. In committing the acts and omissions complained of herein, individual Defendants acted under color of state law to deprive Plaintiff MOORE of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

a. the right to be free from unreasonable search and seizure;
b. the right to be free from excessive force;

22

c. the right to be free from deprivation of life and liberty without due process of law; and
d. the right to freely associate with one's family and loved ones.

119. Individual Defendants personally violated these constitutional rights or failed to intervene to prevent the violations of these rights even though they had the ability and opportunity to do so.

120. The unlawful conduct of individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed. 121. As a proximate result of individual Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great pain and mental anguish,

==October 1, 2021 - October 5, 2021 Incident:==

**Federal Strike Forces**
Federal strike forces are accused of engaging in pro-eugenic activities, violating individuals' rights under the **First, Fourth, Eighth, and Fourteenth Amendments**. Their involvement in these activities allegedly led to discriminatory practices that denied individuals their constitutional protections. These actions also represent a violation of federal law and a gross negligence claim for failing to safeguard citizens' rights under the Constitution.

**United States Armed Forces**
The **United States Armed Forces** is accused of participating in pro-eugenic activities that infringe upon the **First, Fourth, Eighth, and Fourteenth Amendments**. Their actions allegedly involved unjust treatment and suppression of dissenting views, leading to violations of fundamental constitutional rights. The Armed Forces is further implicated in gross negligence for failing to intervene in such harmful practices.

**Columbia University**
Columbia University is accused of endorsing pro-eugenic policies that violate the **First, Fourth, Eighth, and Fourteenth Amendments**. These policies allegedly discriminated against vulnerable groups and allowed harmful practices to flourish within the institution. The university is also

accused of gross negligence for failing to prevent the continuation of these harmful activities which undermined the rights of individuals.

## Barack Obama

Former President **Barack Obama** is accused of supporting pro-eugenic policies that violated the **First, Fourth, Eighth, and Fourteenth Amendments**. His endorsement of such policies is said to have contributed to systemic discrimination and oppression. This also includes a gross negligence claim for not preventing or addressing these harmful practices during his presidency.

## Kamala Harris

Vice President **Kamala Harris** is accused of endorsing pro-eugenic policies, leading to violations of the **First, Fourth, Eighth, and Fourteenth Amendments**. Her participation in such activities allegedly facilitated the continuation of discriminatory practices. Harris is also implicated in a gross negligence claim for failing to prevent or challenge these violations while in office.

## Joe Biden

President **Joe Biden** is accused of supporting pro-eugenic policies that infringe upon the **First, Fourth, Eighth, and Fourteenth Amendments**. His administration's actions are said to have perpetuated discriminatory practices, resulting in harm to marginalized groups. A gross negligence claim is also attached to Biden for failing to intervene and address these constitutional violations.

## William J. Burns

**William J. Burns**, the Director of the CIA, is accused of endorsing pro-eugenic policies that violate the **First, Fourth, Eighth, and Fourteenth Amendments**. His involvement in actions that infringed on individual rights and the use of the CIA's resources for such policies contributes to a gross negligence claim, as he failed to prevent violations of constitutional protections.

## Karine Jean-Pierre

**Karine Jean-Pierre**, as a spokesperson, is accused of endorsing policies that infringe upon the **First, Fourth, Eighth, and Fourteenth Amendments**, particularly regarding pro-eugenic views. Her failure to publicly oppose or address such policies contributes to a gross negligence claim, as she did not act to prevent the violation of constitutional rights.

## Sergeant Pierrier

**Sergeant Pierrier** is accused of participating in actions that violate the **First, Fourth, Eighth, and Fourteenth Amendments**, specifically related to pro-eugenic policies and discriminatory enforcement practices. His direct involvement in these violations contributes to a gross negligence claim for failing to intervene and address constitutional infringements during his duties.

## Central Intelligence Agency (CIA)

The **CIA** is accused of endorsing and implementing pro-eugenic policies that violate the **First, Fourth, Eighth, and Fourteenth Amendments**. The agency's role in facilitating and overseeing such activities is seen as a direct violation of constitutional rights, and the CIA is implicated in a gross negligence claim for failing to prevent these violations during its operations.

## Audrey Strauss, U.S. Attorney for the Southern District of New York

**Audrey Strauss**, as U.S. Attorney, is accused of failing to intervene in violations of the **First, Fourth, Eighth, and Fourteenth Amendments**. Her inaction in addressing the systemic harm

**Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York**
**Jacquelyn M. Kasulis** is accused of failing to address violations of the **First, Fourth, Eighth,
and Fourteenth Amendments**, particularly in the context of pro-eugenic activities. Her failure to
intervene in these unconstitutional practices contributes to a gross negligence claim for neglecting
to protect citizens' constitutional rights under her oversight.

## 1. First Amendment Violations

The **First Amendment** protects individuals' rights to free speech, freedom of assembly, and the

ability to petition the government for redress of grievances. It also shields individuals from

retaliation or punishment for exercising these rights. Plaintiff Moore alleges that actions taken by

**Morningside Gardens Housing Corporation** and named defendants violated his First

Amendment rights in the following ways:

### Suppression of Free Speech

- **Defendants Involved**: **Morningside Gardens Housing Corporation**, potentially acting in
  coordination with law enforcement officers, including **OFFICER ANTONIO
  CASTELLUCCIO, SGT. DAVID S. MALDONADO, LT. SALVATORE RONZINO**,
  and others.

- Allegations:
  - Moore was subjected to unwarranted arrests, public humiliation, and confinement
    as retaliation for exercising his free speech rights.

  - Any prior attempts by Moore to raise concerns, file complaints, or speak out
    against policies or actions by Morningside Gardens or law enforcement may have

● **Legal Violation**: If actions taken against Moore, including arrests, detentions, and public shaming, were motivated by an intent to suppress his free speech, this constitutes a First Amendment violation.

### Retaliation for Protected Activity

● **Defendants Involved**: Officers such as **OFFICER SANJAY BAJNAUTH**, **OFFICER CHRISTOPHER TORTURO**, **OFFICER DAVID FRANKLIN**, and **SGT. JOSEPH ANGELONE**, acting alongside Morningside Gardens Housing Corporation.

● Allegations:

○ Moore may have engaged in protected activities, such as voicing concerns about housing conditions, discriminatory practices, or treatment as a Black Freeman. ○ The response—excessive force, public humiliation, and unjustified psychiatric detentions—constitutes retaliation for engaging in these protected activities. ● **Legal Violation**: Retaliatory actions by state actors or entities collaborating with them to punish individuals for protected speech or advocacy violate the First Amendment.

### Violation of the Right to Petition the Government

● **Defendants Involved**: **NYPD SERGEANT PERRIER**, **OFFICER GABRIELA FLORES TAPIA**, and others involved in Moore's detainment and treatment. ●
Allegations:

○ Moore's ability to petition government entities (e.g., filing complaints, pursuing legal remedies, or voicing grievances) was obstructed by the coordinated actions of

○ Unlawful detentions and psychiatric evaluations were used as tools to deter Moore

from exercising his right to petition.

● **Legal Violation**: Interfering with an individual's ability to petition the government for

redress is a direct violation of the First Amendment.

### Chilling Effect on Free Expression

● **Defendants Involved**: **Morningside Gardens Housing Corporation** in collaboration with

law enforcement officers, including **OFFICER NILSA PATRICIO**, **OFFICER DAVID**

**CASTRO**, and others.

● Allegations:

○ Moore's public arrest, forced confinement, and subsequent treatment created a

chilling effect, deterring him from further engaging in free speech or advocacy out

of fear of retaliation.

● **Legal Violation**: Actions that effectively suppress or intimidate individuals from

exercising their rights to free expression or advocacy constitute First Amendment

violations.

## 2. Role of Morningside Gardens Housing Corporation

The **Morningside Gardens Housing Corporation** could be held liable under **state actor**

**doctrine** if its actions were carried out in collaboration with or at the direction of law enforcement

officers acting under the color of law. Specific claims include:

- **Collaboration with State Actors**: If the housing corporation initiated or supported retaliatory actions by involving law enforcement to silence Moore, it could be deemed a state actor for First Amendment purposes.

- **Targeted Retaliation**: Using housing policies, complaints, or law enforcement intervention to suppress Moore's advocacy or speech constitutes a direct violation of his constitutional rights.

## Legal Nexus

The actions of Morningside Gardens Housing Corporation, in conjunction with named law enforcement defendants, suggest a coordinated effort to suppress Moore's First Amendment rights. This includes:

1. Retaliation for engaging in protected speech or advocacy.

2. Suppression of Moore's ability to petition the government.

3. A chilling effect on his continued free expression and participation in protected activities.

These allegations, if proven, establish a strong basis for First Amendment claims against both Morningside Gardens and individual law enforcement officers.

## 1. Eighth Amendment Violations

The **Eighth Amendment** protects against cruel and unusual punishment, which traditionally applies to conditions of incarceration. However, courts sometimes recognize excessive use of force or treatment amounting to punishment in other contexts, particularly when the person is under state custody or control. Here's how it applies:

- **Excessive Force as Punishment**:
  Plaintiff alleges overtightened handcuffs and refusal to loosen them despite complaints, causing

degrading treatment (e.g., stripping him and forcing him to sleep in a chair). These actions could
be construed as punitive rather than necessary, violating the Eighth Amendment's prohibition on
cruel treatment.

- **Deprivation of Basic Dignity**:
  Forcing Moore to strip to his underwear, confining him unnecessarily in a psychiatric unit, and
  denying him basic accommodations (e.g., making him sleep in a chair) constitute cruel and
  degrading treatment.
- **Mental Anguish and Public Humiliation**:
  Arresting Moore in front of his neighbors, publicly humiliating him, and detaining him without
  cause could qualify as cruel punishment, especially given his mental health vulnerabilities.


# 2. 42 U.S.C. § 1985 Violation

Section 1985 addresses conspiracies to violate civil rights. The allegations suggest:

- **Conspiracy to Punish Without Legal Basis**:
  Defendants acted under color of law in a coordinated effort to target Moore, using excessive force
  and unjustified detention. If this treatment was motivated by racial discrimination or a disregard for
  Moore's status as a Black Freeman, it aligns with § 1985.
- **Failure to Train and Institutional Indifference**:
  Moore asserts systemic failures in handling emotionally disturbed persons. If such failures enabled
  coordinated actions that inflicted cruel and unusual punishment, this supports a § 1985 claim. ● **State
  Custody and Punitive Intent**:
  The Eighth Amendment applies when individuals are effectively in custody. Moore's forced
  confinement in psychiatric units and detention without legal cause places him under state control,
  making the amendment relevant to his claims.


# Legal Nexus

The combination of excessive force, public humiliation, unnecessary confinement, and systemic neglect
suggests a coordinated effort to deprive Moore of his civil rights, potentially amounting to cruel and
unusual punishment. Linking these allegations to **42 U.S.C. § 1985** highlights a conspiracy by state actors
to violate constitutional protections.

## 1. Eighth Amendment Violations: Cruel and Unusual Punishment

Although the **Eighth Amendment** traditionally applies to individuals incarcerated after conviction, courts
may extend its principles to pretrial or custodial settings where individuals are under the control of state
actors. Plaintiff Moore's allegations of mistreatment during interactions with law enforcement and hospital
personnel raise the following concerns:

**Excessive Force as Punishment**

- **Defendants Involved**: OFFICER ANTONIO CASTELLUCCIO, SGT. DAVID S.
  MALDONADO, OFFICER NILSA PATRICIO, OFFICER CHRISTOPHER TORTURO,

- Allegations:
  - ○ Overtightened handcuffs that caused physical pain and injury, coupled with refusal to loosen them despite Moore's complaints.
  - ○ Physical restraint by pinning Moore to the floor and dragging him by his pants at Harlem Hospital and Mount Sinai St. Luke's.
- **Legal Violation**: The use of force in a manner that is excessive, unnecessary, or punitive violates the Eighth Amendment's prohibition on cruel and unusual punishment.

**Deprivation of Basic Dignity**

- **Defendants Involved**: Law enforcement officers and staff at **Harlem Hospital** and **Mount Sinai St. Luke's**, acting under the direction or collaboration of officers like **SGT. MALDONADO** and **LT. SALVATORE RONZINO**.
- Allegations:
  - ○ Moore was stripped to his underwear and forced to wear a hospital gown in public view.
  - ○ He was confined to a psychiatric unit without justification and made to sleep in a plastic chair, depriving him of basic comfort and dignity.
- **Legal Violation**: Conditions that degrade an individual, cause unnecessary suffering, or inflict humiliation violate the Eighth Amendment's standards for humane treatment.

**Mental Anguish and Public Humiliation**
- **Defendants Involved**: **OFFICER DAVID CASTRO**, **OFFICER SANJAY BAJNAUTH**, **OFFICER GABRIELA FLORES TAPIA**, and others present during public detention. ●
  Allegations:
  - ○ Moore was arrested and handcuffed in front of neighbors, subjected to public humiliation, and transported in a manner designed to shame him.
  - ○ The public nature of the detention amplified Moore's distress, especially considering his mental health vulnerabilities.
- **Legal Violation**: Publicly humiliating a vulnerable individual through punitive actions under state custody constitutes cruel and unusual punishment.

## 2. 42 U.S.C. § 1985 Violations: Conspiracy to Violate Civil Rights

Under **42 U.S.C. § 1985**, individuals may be held liable for conspiring to deprive another of their constitutional rights. Moore's allegations suggest coordinated actions among law enforcement officers and hospital staff to deprive him of his rights.

**Conspiracy to Punish Without Legal Basis**

- **Defendants Involved**: **SGT. DAVID S. MALDONADO**, **OFFICER ANTONIO CASTELLUCCIO**, **SGT. JOSEPH ANGELONE**, **LT. SALVATORE RONZINO**, **OFFICER NILSA PATRICIO**, and others acting under state authority.
- Allegations:
  - ○ Defendants worked in concert to detain Moore unlawfully, use excessive force, and confine him to psychiatric facilities without cause.
  - ○ The coordinated nature of their actions, from multiple incidents (October 1, 2, and 5), suggests a shared intent to target and punish Moore.

under color of law, especially if motivated by racial bias, constitutes a violation of § 1985.

### Racial Discrimination

- **Defendants Involved**: All named officers, particularly those present during arrest and psychiatric confinement, such as **SGT. PERRIER**, **OFFICER TORTURO**, and **OFFICER FRANKLIN**. ● Allegations:
    - ○ Moore claims his status as a **Black Freeman** influenced the treatment he received, including excessive force, unlawful detention, and public humiliation.
    - ○ If racial animus motivated the coordinated actions of law enforcement and hospital staff, this supports a § 1985 claim.
- **Legal Violation**: Depriving Moore of equal protection or targeting him based on race violates § 1985(3).

### Failure to Train and Institutional Indifference

- **Defendants Involved**: Supervisory officers like **SGT. JOSEPH ANGELONE**, **LT. SALVATORE RONZINO**, and policymakers within the **NYPD** and hospital systems.
- Allegations:
    - ○ Systemic failures to train officers on interacting with emotionally disturbed persons (EDPs) and addressing racial bias contributed to the violations.
    - ○ Institutional indifference to prior incidents or complaints enabled the coordinated mistreatment of Moore.
- **Legal Violation**: Supervisory and institutional negligence that facilitates rights violations supports claims under § 1985.

### State Custody and Punitive Intent

- **Defendants Involved**: Officers who detained Moore and hospital personnel at **Mount Sinai St. Luke's**, such as those acting under police orders.
- Allegations:
    - ○ Moore was effectively in state custody during his psychiatric confinement, and the punitive nature of his treatment (e.g., being stripped and restrained) aligns with Eighth Amendment protections.
- **Legal Violation**: Punitive actions taken while an individual is under state control qualify as cruel and unusual punishment under the Eighth Amendment and § 1985.

## Legal Nexus

The allegations collectively demonstrate a pattern of constitutional violations involving:

1. **Eighth Amendment**: Excessive force, public humiliation, and degrading treatment under state custody amounting to cruel and unusual punishment.
2. **42 U.S.C. § 1985**: A conspiracy by law enforcement officers and hospital staff to target Moore, deprive him of his rights, and subject him to punitive treatment.

If proven, these claims establish liability for individual officers (**CASTELLUCCIO**, **MALDONADO**,

## Legal Claims Under 42 U.S.C. § 1983 and § 1985

### 1. Eighth Amendment Violations: Cruel and Unusual Punishment

Although traditionally applied to post-conviction incarceration, the Eighth Amendment's prohibition against cruel and unusual punishment can extend to pretrial or custodial settings where individuals are under state control. Plaintiff Moore's allegations reveal egregious treatment, including excessive force and degrading conditions, which violated his constitutional rights.

**Excessive Force as Punishment**

- **Defendants**: Officer Antonio Castelluccio, Sgt. David S. Maldonado, Officer Nilsa Patricio, Officer Christopher Torturo, and others.
- **Allegations**:
  - Use of overtightened handcuffs despite complaints of pain and injury.
  - Physical restraint by pinning Moore to the floor and dragging him by his pants at Harlem Hospital and Mount Sinai St. Luke's.
- **Legal Violation**: Excessive and unnecessary force, particularly when punitive, violates the Eighth Amendment.

**Deprivation of Basic Dignity**

- **Defendants**: Officers and staff at Harlem Hospital and Mount Sinai St. Luke's, including Sgt. Maldonado and Lt. Salvatore Ronzino.
- **Allegations**:
  - Moore was stripped to his underwear, forced to wear a hospital gown in public, and made to sleep in a plastic chair.
  - He was confined to a psychiatric unit without legal justification.
- **Legal Violation**: Actions that degrade an individual or deny basic human dignity violate the Eighth Amendment.

**Mental Anguish and Public Humiliation**

- **Defendants**: Officer David Castro, Officer Sanjay Bajnauth, Officer Gabriela Flores Tapia, and others.
- **Allegations**:
  - Arrested and handcuffed in front of neighbors, causing public humiliation.
  - Transported in a manner designed to shame him, exacerbating his mental health vulnerabilities.
- **Legal Violation**: Public humiliation and punitive treatment of a vulnerable individual under state custody constitute cruel and unusual punishment.

### 2. Violations Under 42 U.S.C. § 1985: Conspiracy to Violate Civil Rights

Section 1985 prohibits conspiracies to deprive individuals of their constitutional rights, particularly when motivated by racial discrimination or intent to harm.

**Conspiracy to Punish Without Legal Basis**

- **Defendants**: Sgt. David S. Maldonado, Officer Antonio Castelluccio, Sgt. Joseph Angelone, Lt. Salvatore Ronzino, Officer Nilsa Patricio, and others.
- **Allegations**:
  - Coordinated actions to unlawfully detain Moore, use excessive force, and confine him to psychiatric facilities.
  - Repeated violations during incidents on October 1, 2, and 5 suggest a shared intent to target Moore.
- **Legal Violation**: Conspiracy to violate Fourth and Eighth Amendment rights, especially if racially motivated, violates § 1985.

**Racial Discrimination**

- **Defendants**: Officers involved in arrests and confinement, including Sgt. Perrier, Officer Torturo, and Officer Franklin.
- **Allegations**:
  - Moore was targeted as a Black Freeman, leading to excessive force, unlawful detention, and public humiliation.
- **Legal Violation**: Racially motivated actions that deprive equal protection violate § 1985(3).

**Failure to Train and Institutional Indifference**

- **Defendants**: Supervisory officers, including Sgt. Angelone and Lt. Ronzino, and policymakers within the NYPD and hospital systems.
- **Allegations**:
  - Lack of training on interacting with emotionally disturbed persons (EDPs).
  - Institutional negligence and indifference to prior complaints facilitated coordinated mistreatment.
- **Legal Violation**: Systemic failures enabling constitutional violations support a § 1985 claim.

**State Custody and Punitive Intent**

- **Defendants**: Officers and hospital personnel acting under police orders.
- **Allegations**:
  - Moore's confinement in psychiatric units and the punitive nature of his treatment align with state custody.
  - Actions like forcing him to strip and restraining him were excessive and degrading.
- **Legal Violation**: Punitive treatment while under state control constitutes cruel and unusual punishment under the Eighth Amendment and § 1985.

# Legal Nexus and Conclusion

The facts support a systemic effort to deprive Plaintiff Moore of his constitutional rights through a

**Key Legal Violations:**

- **Eighth Amendment (42 U.S.C. § 1983)**: Excessive force, degrading conditions, and punitive treatment violated protections against cruel and unusual punishment.
- **42 U.S.C. § 1985**: Coordinated actions among law enforcement and hospital staff, potentially motivated by racial animus, violated Moore's civil rights.

If proven, these allegations establish liability for individual officers (Castelluccio, Maldonado, Angelone, Patricio, and others), supervisory negligence, and systemic institutional failures under federal law.

## Explanation of Allegations under 42 U.S.C. § 1983 for Constitutional Violations

The allegations describe a pattern of **constitutional violations** by multiple parties, including **NYPD officers**, **hospital staff**, **housing management**, and **emergency medical responders**, acting under the color of law. These violations pertain to the **Fourth, Eighth, First, and Fourteenth Amendments** of the U.S. Constitution.

## 1. Fourth Amendment Violations: Unlawful Search, Seizure, and Excessive Force

### A. Unlawful Seizure and Arrest

**October 1, 2021 - October 5, 2021 Incident**:

1. **October 1, 2021 Incident**:
   - **Defendants Involved**:
     **Officer Antonio Castelluccio, Officer Sanjay Bajnauth, Sgt. David S. Maldonado, Officer David Castro, Officer Nilsa Patricio, and other NYPD John Does**.
   - **Allegations**:
     - Moore was detained outside his residence without probable cause or legal justification.
     - He was handcuffed and forcibly transported to Harlem Hospital, violating his Fourth Amendment right against unreasonable seizure.
2. **October 5, 2021 Incident**:
   - **Defendants Involved**:
     **Sgt. Joseph Angelone, Lt. Salvatore Ronzino, Officer Gabriela Flores Tapia, Officer Christopher Torturo, Officer David Franklin, Sgt. Perrier, Officer Stamford, and other NYPD John Does**.
   - **Allegations**:
     - Officers entered Moore's apartment without consent, a warrant, or exigent circumstances.
     - Moore was unlawfully arrested and transported to Mount Sinai St. Luke's Hospital.

### B. Excessive Force

- **Defendants Involved**:

  **Officer Castelluccio, Officer Castro, Sgt. Maldonado, Officer Torturo, Officer Franklin, and John Does**.

- **Allegations**:
  - During both incidents, officers overtightened Moore's handcuffs, causing physical injuries, despite complaints.
  - At Harlem Hospital, Moore was pinned to the floor, dragged by his pants, and forced to strip to his underwear, constituting excessive force and humiliation.

## C. Unlawful Search

1. **Personal Belongings** (October 1):
   - Officers searched Moore's belongings without consent, a warrant, or probable cause.
2. **Apartment Search** (October 5):
   - Defendants entered and searched Moore's residence unlawfully.

# 2. Eighth Amendment Violations: Cruel and Unusual Punishment

- **Defendants Involved**:

  NYPD officers, **Harlem Hospital staff**, **Mount Sinai St. Luke's staff**, and **NYCH+H police**.

- **Allegations**:
  - Moore was subjected to degrading and inhumane treatment, including being forced to strip, physically restrained, and denied basic comfort (e.g., sleeping in a plastic chair). ○ These actions amount to cruel and unusual punishment, violating the Eighth Amendment.

# 3. First Amendment Violations: Suppression of Complaints

- **Defendants Involved**:

  **Sgt. Joseph Angelone, Lt. Salvatore Ronzino, Sgt. Perrier**, and **NYCH+H police**.

- **Allegations**:
  - Defendants actively prevented Moore from filing complaints or seeking accountability for their actions, interfering with his First Amendment right to petition the government for redress of grievances.

# 4. Fourteenth Amendment Violations: Equal Protection and Due Process

## A. Procedural Due Process

- **Defendants Involved**:

  **Harlem Hospital staff** (**Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan H. Hashe, Dr. Gautam Balasubramania**) and **Mount Sinai St. Luke's staff** (**Dr. Steven J. Carbonaro, Dr. Jonathan Deassis, Dr. Benjamin Wyler, Dr. Jayenth Mayur**).

- **Allegations**:

Medical personnel to collaborate with law enforcement to fabricate or exaggerate diagnoses (psychiatric and medical) to justify Moore's detention.

○ These actions were undertaken without proper evaluation or legal justification, denying Moore his right to due process.

## B. Racial Discrimination

- **Defendants Involved**:

  NYPD officers and hospital staff.
- **Allegations**:
  - ○ Moore, as a Black Freeman, alleges racial bias influenced the excessive force, unlawful detention, and discriminatory treatment.
  - ○ This violates the Equal Protection Clause of the Fourteenth Amendment.

# 5. Role of Other Defendants and Agencies

## A. Housing Corporation and Management

- **Defendants**: **Morningside Gardens Housing Corporation/First Services Residential**.
- **Allegations**:
  - ○ Enabled and supported police actions, contributing to unlawful seizures and searches.

## B. Emergency Medical Services (EMS)

- **Defendants**: **FDNY EMT/EMS Rosas (#2679), Vasquez, and John Does**.
- **Allegations**:
  - ○ Acted as agents of law enforcement, assisting in Moore's detention and providing false statements to cover for police misconduct.

## C. Hospital Staff and Security

- **Defendants**: **NYCH+H police officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sgt. Jocl Rivera**, as well as nurses and medical personnel (**Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN)**).
- **Allegations**:
  - ○ Participated in or facilitated the mistreatment, detention, and cover-up of law enforcement misconduct.

# Summary of Violations

Under **42 U.S.C. § 1983**, Moore alleges that the defendants, acting under color of state law, violated his constitutional rights as follows:

1. **Fourth Amendment**:
   - ○ Unlawful seizures and arrests on October 1 and October 5, 2021.

- Excessive force during detention.
   ○ Unlawful searches of personal belongings and his apartment.
2. **Eighth Amendment**:
   ○ Degrading and inhumane treatment amounting to cruel and unusual punishment.
3. **First Amendment**:
   ○ Suppression of his right to petition for grievances and file complaints.
4. **Fourteenth Amendment**:
   ○ Denial of due process through fabricated medical diagnoses and unlawful detentions.
   ○ Racial discrimination violating equal protection rights.

These actions caused **physical, emotional, and reputational harm** to Moore, supporting his claims for relief under **42 U.S.C. § 1983**.

all to Plaintiff's damage in a sum to be provided at trial but not less than ( ), plus punitive

damages, costs, and attorney's fees pursuant to Title 42 § 1988.


## COUNT II
### 42 U.S.C. § 1983/ 42 U.S.C. § 1985- Violations of Fourth and Fourteenth Amendment Rights (against Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES

STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)1#49

**October 1, 2021 - October 5, 2021 Incident:**

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

122. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

123. The unconstitutional conduct of individual Defendants was directly and proximately caused by *de facto* policies, practices, and/or customs devised, implemented, enforced, encouraged, and sanctioned by Defendants CITY, NYPD, FDNY, NYCHH, and HARLEM (hereinafter, collectively referred to as "Municipal Defendants") whereby written policies are ignored in practice in favor of *de facto* policies.

23

Case 1:22-cv-10957-LGS Document 25 Filed 03/29/23 Page 24 of 37

124. Municipal Defendants developed and maintained customs, policies, and practices exhibiting deliberate indifference to the constitutional rights of their citizens, which caused the violations of Plaintiff MOORE'S rights.

125. Municipal Defendants have developed and maintained a culture of indifference with respect to their treatment of Black Freemen(Native Black Americans and/or African Americans. 126. Municipal Defendants failed to properly train their employees in their treatment and interaction with Black Freemen(Native Black Americans and/or African Americans. 127. It is also a custom, policy, and/or practice of Municipal Defendants to conduct inadequate screening in the hiring of employees for their propensity for violence and bias against, and insensitivity toward, Black Freemen(Native Black Americans and/or African Americans issues.

128. Municipal Defendants developed and maintained a culture of indifference with respect to Black Freemen(Native Black Americans and/or African Americans, and have created a *de facto* policy of brute and excessive force which, in many instances, have led to severe and serious physical injuries and sometimes death.

129. The *de facto* policy and the culture of indifference have existed for years. 130. As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies, and Municipal Defendants' deliberate indifference, Plaintiff MOORE'S constitutional rights were violated, because of which he suffered substantial damages at an amount to be determined at trial.

131. As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal

24

expenses and other special damages, and has suffered great pain and mental anguish,

## 1. Violation of Fourth Amendment Rights

- **Unlawful Detention and Arrest**: MOORE was handcuffed and detained despite the absence of probable cause. The Fourth Amendment protects individuals from unreasonable searches and seizures, and any arrest without probable cause constitutes a violation of this right.
- **Excessive Force**: The overtightening of handcuffs, refusal to loosen them, and the physical dragging to the ambulance could be considered excessive force. The Fourth Amendment also protects against the use of force that is unreasonable under the circumstances.

## 2. Violation of Fourteenth Amendment Due Process Rights

- **Deprivation of Liberty Without Due Process**: MOORE was confined to Harlem Hospital against

he posed a danger to himself or others. This constitutes a deprivation of liberty without due process of law, which is a violation of the Fourteenth Amendment.

- **Humiliation and Public Embarrassment**: The public nature of the detention and transport could also infringe upon MOORE's rights to dignity and due process.

## 3. Failure to Follow Established Policies

- If the officers failed to adhere to policies and protocols designed to handle for Black Freemen, as suggested, this could demonstrate a deliberate indifference to MOORE's rights. Deliberate indifference by state actors can establish liability under § 1983.

## 4. State Action Under "Color of Law"

- The police officers (Defendants CASTELLUCIO, MALDONADO, DOES #1-10, and others) were clearly acting under the authority of their official positions as state actors, fulfilling the "color of law" requirement for § 1983 liability.
- Hospital personnel may also qualify as state actors if they collaborated with the police or acted pursuant to a governmental policy or directive.

## 5. Injury Resulting from the Conduct

- MOORE's allegations of physical injuries, emotional distress, and humiliation as a result of the Defendants' actions are sufficient to claim damages under § 1983.

## Summary of § 1983 Application

MOORE's claim under **42 U.S.C. § 1983** is based on the following:

- Defendants acted under color of state law.
- They violated MOORE's federally protected rights (Fourth and Fourteenth Amendments). ● The violations resulted in harm, including physical injuries, loss of liberty, and emotional distress.

These allegations, if proven, establish a strong case under **42 U.S.C. § 1983** for constitutional violations by the involved parties.

### 1. First Amendment Violations

The **First Amendment** protects individuals' rights to free speech, assembly, and the ability to petition the government without fear of retaliation or suppression. Plaintiff Moore alleges the following:

**Suppression of Free Speech**

- **Defendants Involved**: **Morningside Gardens Housing Corporation**, acting with or at the direction of **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER SANJAY BAJNAUTH**, **SGT. DAVID S. MALDONADO**, and others.

- **Allegations**:

    ○ Moore exercised his right to speak out about grievances or perceived injustices regarding his treatment by law enforcement and Morningside Gardens.

    ○ Defendants conspired to silence Moore by targeting him with unwarranted arrests, confinement, and public humiliation.

- **Violation**: If Defendants' actions—such as arresting, publicly humiliating, or detaining Moore—were motivated by an intent to suppress his protected speech, this violates his First Amendment rights.

### Retaliation for Protected Activity

- **Defendants Involved**: **OFFICER CHRISTOPHER TORTURO**, **OFFICER NILSA PATRICIO**, **SGT. JOSEPH ANGELONE**, **LT. SALVATORE RONZINO**, and others. ● **Allegations**:

    ○ Moore engaged in activities protected by the First Amendment, such as voicing complaints or opposing policies, which led to targeted retaliation.

    ○ Arrests, unwarranted psychiatric evaluations, and other degrading treatment were used as tools of intimidation and retaliation.

- **Violation**: Any adverse actions taken against Moore for exercising his First Amendment rights, such as his advocacy or speech, constitute unlawful retaliation.

### Chilling Effect

- **Defendants Involved**: **OFFICER DAVID CASTRO**, **OFFICER GABRIELA FLORES**

- **Allegations**:

  ○ The public and degrading nature of Moore's detention and treatment discouraged him from further exercising his First Amendment rights, including speaking out or petitioning the government.

- **Violation**: Actions that create a chilling effect on an individual's willingness to exercise their free speech rights are constitutionally impermissible under the First Amendment.

## 2. Fourteenth Amendment Violations

The **Fourteenth Amendment** guarantees due process and equal protection under the law. Moore alleges the following violations:

### Deprivation of Liberty Without Due Process

- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER DAVID FRANKLIN**, **SGT. DAVID S. MALDONADO**, and others.

- **Allegations**:

  ○ Moore was involuntarily confined to Harlem Hospital and Mount Sinai Saint Lukes for psychiatric evaluations without evidence that he posed a danger to himself or others.

  ○ These actions lacked procedural safeguards and were undertaken without proper legal justification.

- **Violation**: Arbitrary deprivation of liberty without procedural protections constitutes a violation of due process rights under the Fourteenth Amendment.

### Equal Protection and Discrimination

- **Defendants Involved**: **OFFICER NILSA PATRICIO**, **SGT. JOSEPH ANGELONE**, and

  others.

- **Allegations**:

  ○ Moore, as a Black Freeman, was subjected to discriminatory treatment and targeted

  by law enforcement and Morningside Gardens Housing Corporation based on race.

  ○ Unequal enforcement of policies and unnecessary detention illustrate a systemic

  failure to provide equal protection.

- **Violation**: Discriminatory treatment or targeting based on race violates the Fourteenth

  Amendment's Equal Protection Clause.

### Public Humiliation and Degrading Treatment

- **Defendants Involved**: **OFFICER SANJAY BAJNAUTH**, **LT. SALVATORE RONZINO**,

  and others.

- **Allegations**:

  ○ The public nature of Moore's detention, including handcuffing, physical dragging,

  and forced confinement, was unnecessarily humiliating and degrading.

  ○ These actions violated Moore's dignity and right to fair treatment under the

  Fourteenth Amendment.

- **Violation**: Subjecting Moore to public humiliation and degrading treatment constitutes a

  denial of substantive due process rights.

### 3. Unlawful Detention and Arrest (Fourth and Fourteenth Amendments)

- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER SANJAY**

- **Allegations**:

  - Moore was arrested, handcuffed, and detained without probable cause or evidence that he committed a crime.

  - The overtightening of handcuffs and physical dragging constituted excessive force, violating the Fourth Amendment.

- **Violation**: Any detention without probable cause violates the Fourth and Fourteenth Amendments. Excessive force used during the arrest further underscores the unlawful nature of the detention.

## 4. Collaboration with Morningside Gardens Housing Corporation

- **Defendants Involved**: **Morningside Gardens Housing Corporation**, in concert with law enforcement officers.

- **Allegations**:

  - The housing corporation initiated or encouraged law enforcement actions against Moore, such as unwarranted detentions, in retaliation for Moore's exercise of his First Amendment rights.

  - By collaborating with state actors (law enforcement), the housing corporation's actions are attributable to the state, making it liable for constitutional violations. ● **Violation**: A private entity can be held liable under the Fourteenth Amendment if its actions are taken in collaboration with state actors to violate constitutional rights.

**Legal Nexus**

Moore's claims allege:

1. **First Amendment**: Suppression of free speech, retaliation for protected activities, and the creation of a chilling effect.

2. **Fourteenth Amendment**: Deprivation of liberty without due process, racial discrimination, and violations of equal protection.

3. **Unlawful Detention**: Violations of Fourth and Fourteenth Amendment rights due to unjustified arrest and excessive force.

These allegations, supported by evidence, establish a strong case for violations of Moore's constitutional rights by the named defendants and the Morningside Gardens Housing Corporation under 42 U.S.C. § 1983.

## 1. First Amendment Violations by Morningside Gardens Housing Corporation and Police Officers

**Suppression of Free Speech**

- **Defendants**: Morningside Gardens Housing Corporation, Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, and others.

- **Allegations**: Moore's grievances against mistreatment were met with:
    - Unwarranted arrests.
    - Public humiliation.
    - Forced psychiatric evaluations.

- **Violation**: These actions suppressed Moore's right to free expression.

**Retaliation for Protected Activities**

- **Defendants**: Christopher Torturo, Nilsa Patricio, Joseph Angelone, Salvatore Ronzino, and others.

- **Allegations**: Moore's complaints and advocacy as a Black Freeman led to:
  - Arrests and degrading treatment.

- **Violation**: Retaliation for exercising free speech violates the First Amendment.

**Chilling Effect**

- **Defendants**: David Castro, Gabriela Flores Tapia, and others.

- **Allegations**: Public and degrading detention discouraged Moore from speaking out.

- **Violation**: Actions that deter free speech create a chilling effect, violating the First Amendment.

## 2. Fourteenth Amendment Violations

**Deprivation of Liberty Without Due Process**

- **Defendants**: Antonio Castelluccio, David Franklin, David Maldonado, and others. ● **Allegations**: Moore was confined to psychiatric facilities without evidence of danger or legal justification.

- **Violation**: Arbitrary confinement without due process violates the Fourteenth Amendment.

**Equal Protection and Racial Discrimination**

- **Defendants**: Nilsa Patricio, Joseph Angelone, and others.

- **Allegations**: Moore was unfairly targeted and detained based on race.

● **Violation**: Racial discrimination violates the Equal Protection Clause of the Fourteenth

Amendment.

**Public Humiliation and Degrading Treatment**

● **Defendants**: Sanjay Bajnauth, Salvatore Ronzino, and others.

● **Allegations**: Moore was handcuffed, dragged, and detained in an unnecessarily degrading

manner.

● **Violation**: Degrading treatment infringes on substantive due process rights.

## 3. Collaboration Between Morningside Gardens Housing Corporation and Police Officers

● **Defendants**: Morningside Gardens Housing Corporation and police officers. ●

**Allegations**: The housing corporation conspired with law enforcement to retaliate against

Moore for exercising his First Amendment rights.

● **Violation**: Private entities acting with state actors can be held liable for constitutional

violations under the Fourteenth Amendment.

## 4. Unlawful Detention and Arrest (Fourth and Fourteenth Amendments) ●

**Defendants**: Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, and others.

● **Allegations**:

○ Arrests were made without probable cause.

○ Excessive force, such as overtightened handcuffs, was used.

- **Violations**:

    - Arrests without cause violate the Fourth Amendment.

    - Detentions without justification violate the Due Process Clause of the Fourteenth Amendment.

## Legal Framework and Conclusion

- **First Amendment**: Moore's rights were violated through suppression of speech, retaliation, and a chilling effect on advocacy.

- **Fourteenth Amendment**: Violations included arbitrary confinement, racial discrimination, and degrading treatment.

- **State Actor Liability**: Morningside Gardens Housing Corporation is liable due to collaboration with law enforcement.

- **Unlawful Detention and Excessive Force**: Violations of both the Fourth and Fourteenth Amendments.

**Conclusion**: These actions by Morningside Gardens Housing Corporation and named officers demonstrate clear violations of Moore's constitutional rights under **42 U.S.C. § 1983**.

This situation pertains to a consortium involving the Morningside Heights Housing Corporation, the New York Police Department (NYPD), Harlem Hospital, and Mount Sinai St. Luke's, which includes private individuals, including families, and seeks to establish a shared monopoly over public resources. The primary objective appears to be the exploitation of individuals for insurance purposes while concurrently orchestrating attacks on specific racial or social groups, effectively diverting attention from their actions.

Within this framework, public institutions such as Harlem Hospital seemingly serve as instruments of punitive action against families deemed non-conducive to the prevailing social norms, rather than advocates of equal justice. These families are often subjected to misdiagnosis and prescribed medications that alter their cognitive processes. This practice, in turn, can be employed to suppress individuals with dissenting political views, utilizing brain-altering medications as a means of control.

A critical incident occurred on October 1, 2021, wherein my Fourth and Fourteenth Amendment rights were egregiously violated by the NYPD. This violation transpired under the pretext of false allegations put forth by the Morningside Heights Housing Corporation. Notably, an individual named James, who previously held a position within the Corporation, remained conspicuously silent during this ordeal, likely possessing prior knowledge of my imminent transfer to Harlem Hospital, where the situation escalated further. Disturbingly, I was not afforded the choice of my medical facility.

Furthermore, on October 5, 2021, my Fourth and Fourteenth Amendment rights were once again transgressed when Karen, possibly acting in concert with other parties, permitted the NYPD access to my apartment. This incident signifies an overarching pattern of constitutional violations perpetrated within the framework of a shared monopoly, including encroachments upon my First Amendment rights within the building complex.

I intend to pursue legal action to address these violations in separate complaints, with a view to seeking redress for the infringements upon my constitutional rights and holding the responsible parties accountable.

42 U.S.C. § 1985, often referred to as "Section 1985," is a federal statute that addresses conspiracies to interfere with civil rights. This statute provides individuals with a legal recourse when they have been harmed by conspiracies aimed at depriving them of their rights, often involving two or more persons acting together. Here's an overview of the key aspects of Section 1985:

**Conspiracy to Deprive Rights:** Section 1985 specifically addresses conspiracies that are designed to obstruct or hinder the enjoyment of certain rights, privileges, or immunities secured by the U.S. Constitution. This includes rights guaranteed under the First, Second, Third, and Fourth Amendments, among others.

**Elements of a Claim:** To succeed in a Section 1985 claim, a plaintiff must generally establish the following elements:

- A conspiracy or agreement among two or more individuals.
- The purpose of the conspiracy is to deprive the plaintiff of a federal right or privilege.
- An overt act in furtherance of the conspiracy.
- The plaintiff was injured as a result of the conspiracy.

**Classes of Protected Rights:** Section 1985 contains several subsections, each addressing a different type of protected right. Subsections include:

- Subsection (1): Preventing an officer from performing official duties.
- Subsection (2): Obstructing justice in federal courts.
- Subsection (3): Depriving any person of equal protection of the laws.
- Subsection (4): Preventing an individual from accepting or holding public office.

action under color of state law for a claim to be valid. The conspirators must be acting with the authority or power of the state.

**Private Parties:** Unlike Section 1983, Section 1985 claims can involve private individuals as well as government officials. However, there must still be a state action component.

**Remedies:** If successful, plaintiffs in Section 1985 cases can seek remedies such as injunctive relief, compensatory and punitive damages, and attorney's fees. **Defenses:** Defendants in Section 1985 cases might assert various defenses, including immunity and the lack of the required elements of a conspiracy.

Section 1985 was enacted to address situations in which individuals or groups conspire to undermine or deny civil rights protected by the Constitution. If you believe you have been harmed by a conspiracy aimed at depriving you of your rights, it's important to consult with an attorney who specializes in civil rights law and federal litigation. An attorney can evaluate your situation, help you understand the viability of a Section 1985 claim, and guide you through the legal process.

I have recently become cognizant of a personal association that my mother has cultivated with Officer Sergeant Pierre, a prominent figure entrenched within the New York City Police Department's hierarchy. Officer Sergeant Pierre presides over the Domestic Violence Unit at Precinct 26, a role that accentuates his standing within the law enforcement echelon. References to this connection have surfaced informally on numerous occasions, permeating both my family's discourse and that of others.

It has come to my attention that Officer Sergeant Pierre's influence transcends my mother's immediate circle and encompasses several families within our community. The character of this involvement has cast a pall of suspicion, particularly in regard to its potential for exploitation in

My beliefs and suspicions coalesce around the hypothesis that Officer Sergeant Pierre may be actively involved in the instruction and guidance of single mothers and dysfunctional families within our community, educating them on methodologies for suppressing and marginalizing their sons or dear ones, effecting an emasculation. Unfortunately, this recurrent pattern seems to disproportionately affect Black Freemen within our community, leading me to conjecture that Officer Sergeant Pierre himself may not share African American lineage but may instead hail from Latino or immigrant origins. This supposition arises from his oversight of the Domestic Violence Unit, which implies a perspective distinct from that of a Black Freemen or African American.

Within the confines of the NYPD, a recurring trend emerges, one that favors Black Freewomen or African American women over Black Freemen or African American men. This partiality appears to be swayed by the dynamics of social and racial hierarchies. I harbor suspicions that these practices may have been instigated by Officer Sergeant Pierre, thus serving as testament to the NYPD's propensity to align itself with such hierarchical constructs. In essence, this alignment amounts to an inadvertent endorsement of white-collar crime and, in broader terms, tacit approval of white supremacy. Such alignment strays from the principles embedded in our second constitution, established in 1865, which rest upon the bedrock of equitable justice.

Under Officer Sergeant Pierre's stewardship at Precinct 26, there appears to be an unintentional fomenting of private citizens' inclination toward committing hate crimes against Black Freemen or African American men. This is fueled by a deceptive perception of impunity stemming from the NYPD's historical laxity in upholding constitutional safeguards for my racial ethnic group. This circumstance has personally afflicted me for the past eight years.

Notably, it has been brought to my attention that the officers entangled in these matters are predominantly of Hispanic/Latino and Black immigrant backgrounds, encompassing both male and female personnel. Their collective failure to uphold the law and protect the constitutional rights of Black Freemen or African American men within our community invokes profound consternation.

Officer Sergeant Pierre's sphere of influence extends beyond the confines of the NYPD, encompassing collaborative entanglements involving dysfunctional families and public institutions such as Harlem Hospital, New York-Presbyterian Hospital, and Mount Sinai St. Luke's Hospital. This network appears to perpetuate constitutional rights violations, human rights violations, and a systematic form of child abuse, all seemingly sanctioned by the state itself.

While I have not personally engaged with Officer Sergeant Pierre, our paths unwittingly converged on June 13, 2021, during an event that bore the hallmark of meticulous orchestration. Subsequent to this encounter, I memorialized my thoughts and observations in a voice memo, earnestly articulating my genuine apprehensions regarding these circumstances.

It is of paramount significance to recognize historical parallels that can be drawn between the Civil Law of 1871, often associated with white supremacist organizations like the Klan, and certain movements, including feminist organizations and select Black organizations. These entities appear to align themselves with the prevailing social order and acquiesce to white-collar crime. This historical context underscores the cooperation between such factions and law enforcement, evoking memories of the federal government's support for the Klan during the era marked by Jim Crow policies and Black Codes.

In our community, a parallel phenomenon has manifested, wherein women are elevated above

American women. This alignment mirrors patterns observed in ancient Roman and Greek civilizations, where conquered women were elevated in social status to facilitate the subjugation and marginalization of men. This resonates with the historical concept of "mutes," emblematic of the silencing and disempowerment of the male populace.

## 1. Fourth Amendment Violations

The Fourth Amendment protects individuals from **unlawful searches and seizures** and **excessive use of force**. Plaintiff Moore alleges the following violations involving the named defendants:

**Unlawful Seizure**

- **Defendants Involved**: OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH, SGT. DAVID S. MALDONADO, OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES, SGT. JOSEPH ANGELONE, LT. SALVATORE RONZINO, and others.

- Moore alleges he was handcuffed and forcibly removed from his residence on multiple occasions without committing a crime, posing a threat, or engaging in unlawful activity.

- **Key Legal Violation**: Arrest and detention without probable cause constitute an **unlawful seizure** under the Fourth Amendment.

**Excessive Force**

- **Defendants Involved**: OFFICER ANTONIO CASTELLUCCIO, SGT. DAVID S. MALDONADO, and others present at the scene.

despite complaints, and forceful dragging during transport to Harlem Hospital and Mount Sinai St. Luke's.

- **Key Legal Violation**: These actions qualify as excessive and unnecessary use of force, violating the Fourth Amendment's protection against unreasonable force.

**Unlawful Search**

- **Defendants Involved**: OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, SGT. JOSEPH ANGELONE, and others involved in searching Moore's belongings and apartment. ● Moore alleges his apartment and personal belongings were searched without a warrant or his consent.

  - **Key Legal Violation**: Warrantless searches conducted without consent or exigent circumstances violate the Fourth Amendment.

## 2. 42 U.S.C. § 1985 Violations (Conspiracy to Violate Civil Rights)

Section 1985 prohibits conspiracies to deprive individuals of their civil rights. Plaintiff Moore's allegations suggest the following:

**Deprivation of Rights Under Color of Law**

- **Defendants Involved**: All named officers, including CASTELLUCCIO, MALDONADO, PATRICIO, and others.

- Moore claims a coordinated effort by police officers to unlawfully detain him, use excessive force, and confine him for psychiatric evaluation without proper cause.

- **Key Legal Violation**: If these actions were done as part of a coordinated conspiracy, this constitutes a violation of § 1985.

**Racial Discrimination**

- **Defendants Involved**: All named officers acting under state authority.

- Moore claims his status as a **Black Freeman** influenced the treatment he received, suggesting a racially discriminatory motive for the alleged violations.

- **Key Legal Violation**: Actions motivated by racial bias and designed to deprive constitutional rights, including equal protection under the law, violate § 1985.

### Failure to Train and Supervise

- **Defendants Involved**: Supervisory officers, including **SGT. JOSEPH ANGELONE**, **SGT. PERRIER**, and **LT. SALVATORE RONZINO**.

- Plaintiff alleges systemic failures in NYPD training and supervision regarding the handling of Black Freemen and racial bias.

- **Key Legal Violation**: Supervisory indifference to proper training and policy enforcement can establish liability under § 1985 for creating an environment conducive to rights violations.

## 3. Additional Elements of the Claims

### Racial Discrimination

- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER NILSA PATRICIO**, and hospital staff at **Mount Sinai St. Luke's**.

- Moore alleges that his Civil rights were mishandled, and officers failed to follow established NYPD protocols for people of color , resulting in unnecessary force and detention. ● **Key Legal Concern**: Discrimination or negligence related to racial discrimination , especially if done under state authority, can contribute to constitutional violations under § 1983.

### Involuntary Psychiatric Detention

- **Defendants Involved**: Officers present during transport to **Harlem Hospital** and **Mount Sinai St. Luke's**, including **SGT. MALDONADO**, **CASTELLUCCIO**, and others, as well as hospital staff.

- Moore alleges he was confined for psychiatric evaluation without legal or medical justification and without due process.

- **Key Legal Violation**: Detention without evidence of imminent danger or legal authorization violates due process protections under the **Fourteenth Amendment** and constitutes unlawful seizure under the **Fourth Amendment**.

## Legal Nexus

The actions of the named defendants, if proven, reflect a coordinated effort or systemic indifference resulting in multiple constitutional and statutory violations:

1. **Fourth Amendment**:

   - Unlawful detention and arrest.

   - Excessive force during arrest and transport.

   - Unlawful search of personal belongings and residence.

2. **42 U.S.C. § 1985**:

   - Conspiracy to deprive Moore of his constitutional rights under color of law.

   - Racially motivated treatment as a **Black Freeman**.

   - Supervisory failures in training and policy enforcement.

3. **Additional Allegations**:

   - Discrimination based on mental health.

   - Public humiliation and emotional distress.

   - Systemic failures in handling emotionally disturbed persons (EDPs).

**Conclusion**

The allegations against the named defendants, including **OFFICER ANTONIO CASTELLUCCIO**, **SGT. DAVID S. MALDONADO**, **OFFICER NILSA PATRICIO**, **SGT. JOSEPH ANGELONE**, and others, demonstrate a pattern of constitutional violations and systemic negligence. These claims are actionable under **42 U.S.C. § 1983**, **42 U.S.C. § 1985**, and the Fourth and Fourteenth Amendments, exposing both individual officers and institutional policies to liability

## 1. Fourth Amendment Violations

The Fourth Amendment protects individuals from **unlawful searches and seizures** and **excessive use of force**. Plaintiff Moore alleges the following violations involving the named defendants:

**Unlawful Seizure**
- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER SANJAY BAJNAUTH**, **SGT. DAVID S. MALDONADO**, **OFFICER DAVID CASTRO**, **OFFICER NILSA PATRICIO**, **OFFICER JOHN DOES**, **SGT. JOSEPH ANGELONE**, **LT. SALVATORE RONZINO**, and others.

- Moore alleges he was handcuffed and forcibly removed from his residence on multiple occasions without committing a crime, posing a threat, or engaging in unlawful activity.

- **Key Legal Violation**: Arrest and detention without probable cause constitute an **unlawful seizure** under the Fourth Amendment.

**Excessive Force**

- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **SGT. DAVID S. MALDONADO**, and others present at the scene.

- Plaintiff describes overtightened handcuffs that caused pain and injury, refusal to loosen them

Luke's.

- **Key Legal Violation**: These actions qualify as excessive and unnecessary use of force, violating the Fourth Amendment's protection against unreasonable force.

## Unlawful Search

- **Defendants Involved**: **OFFICER DAVID CASTRO**, **OFFICER NILSA PATRICIO**, **SGT. JOSEPH ANGELONE**, and others involved in searching Moore's belongings and apartment. ● Moore alleges his apartment and personal belongings were searched without a warrant or his consent.
- **Key Legal Violation**: Warrantless searches conducted without consent or exigent circumstances violate the Fourth Amendment.

## 2. 42 U.S.C. § 1985 Violations (Conspiracy to Violate Civil Rights)

Section 1985 prohibits conspiracies to deprive individuals of their civil rights. Plaintiff Moore's allegations suggest the following:

## Deprivation of Rights Under Color of Law

- **Defendants Involved**: All named officers, including **CASTELLUCCIO**, **MALDONADO**, **PATRICIO**, and others.
- Moore claims a coordinated effort by police officers to unlawfully detain him, use excessive force, and confine him for psychiatric evaluation without proper cause.
- **Key Legal Violation**: If these actions were done as part of a coordinated conspiracy, this constitutes a violation of § 1985.

## Racial Discrimination

- **Defendants Involved**: All named officers acting under state authority.
- Moore claims his status as a **Black Freeman** influenced the treatment he received, suggesting a

- **Key Legal Violation**: Actions motivated by racial bias and designed to deprive constitutional rights, including equal protection under the law, violate § 1985.

**Failure to Train and Supervise**

- **Defendants Involved**: Supervisory officers, including **SGT. JOSEPH ANGELONE**, **SGT. PERRIER**, and **LT. SALVATORE RONZINO**.

- Plaintiff alleges systemic failures in NYPD training and supervision regarding the handling of emotionally disturbed persons (EDPs) and racial bias.

- **Key Legal Violation**: Supervisory indifference to proper training and policy enforcement can establish liability under § 1985 for creating an environment conducive to rights violations.

## 3. Additional Elements of the Claims

**Mental Health Discrimination**

- **Defendants Involved**: **OFFICER ANTONIO CASTELLUCCIO**, **OFFICER NILSA PATRICIO**, and hospital staff at **Mount Sinai St. Luke's**.

- Moore alleges that his known mental health conditions were mishandled, and officers failed to follow established NYPD protocols for emotionally disturbed persons (EDPs), resulting in unnecessary force and detention.

- **Key Legal Concern**: Discrimination or negligence related to mental health status, especially if done under state authority, can contribute to constitutional violations under § 1983.

**Involuntary Psychiatric Detention**

- **Defendants Involved**: Officers present during transport to **Harlem Hospital** and **Mount Sinai St. Luke's**, including **SGT. MALDONADO**, **CASTELLUCCIO**, and others, as well as hospital staff.

- Moore alleges he was confined for psychiatric evaluation without legal or medical justification and

● **Key Legal Violation**: Detention without evidence of imminent danger or legal authorization

violates due process protections under the **Fourteenth Amendment** and constitutes unlawful

seizure under the **Fourth Amendment**.

# Legal Nexus

The actions of the named defendants, if proven, reflect a coordinated effort or systemic indifference

resulting in multiple constitutional and statutory violations:

### 42 U.S.C. §1983// 42 U.S.C. § 1985 - Failure to Intervene

(CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES

STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW
YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY
BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID
CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT
JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER
GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER
DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY
POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS
#2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW
YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR
KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA,
NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE ,
OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN
DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING
CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,
Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie
Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour)Federal strike forces, United
States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William
J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA)
Audrey Strauss **U.S. Attorney** for the Southern District of New York,  Jacquelyn M. Kasulis, the

Acting U.S. Attorney for the Eastern District of New York, FDNY Lieutenant Alexander Gomez.
EMT Robert Kraft. Badge No. 3502

)

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

A **42 U.S.C. § 1983** claim for **failure to intervene** arises when officers who have a reasonable opportunity to prevent another officer's unconstitutional conduct fail to do so. Plaintiff Moore's allegations demonstrate that Defendants, acting under color of state law, failed to intervene in multiple instances where his constitutional rights were being violated.

---

# 1. Failure to Intervene in the Use of Excessive Force

- **October 1, 2021 - October 5, 2021  Incident**:
  - Defendants Castellucio, Maldonado, and Does #1-10 allegedly overtightened Moore's handcuffs despite his repeated requests for relief. The excessive force caused physical pain and injuries.
  - The other officers present, including Does #11-20, had a duty to intervene and prevent the overtightening and refusal to adjust the handcuffs but failed to take any action.
  - At Harlem Hospital, Does #31-40 used excessive force by pinning Moore to the floor and dragging him by his pants. Officers present who witnessed these actions but did not intervene are complicit.

---

# 2. Failure to Intervene in Unlawful Seizure

- **October 1, 2021**:
  - Moore was detained and transported to Harlem Hospital without probable cause or justification. Officers who were aware of the unlawful detention, including those who facilitated the transport, had a duty to intervene but failed to stop the seizure.
- **October 5, 2021**:

Defendants Castro, Patricio Vasquez, and Does #1-20 entered Moore's apartment without a warrant or probable cause, unlawfully searched his property, and arrested him. Other officers present had the opportunity to stop the unlawful actions but failed to act.

## 3. Failure to Intervene in Public Humiliation

- During the October 1 arrest, neighbors witnessed Moore being detained and subjected to a search. Officers who allowed this public humiliation to occur without justification also failed to intervene.

## 4. Legal Duty to Intervene

- **Established Precedent**:
  - Courts have consistently held that law enforcement officers have a duty to intervene when they observe another officer violating constitutional rights and have a reasonable opportunity to prevent or mitigate the harm.
  - Here, Defendants were present and had ample opportunity to prevent or mitigate the unconstitutional use of force, unlawful searches and seizures, and other violations.

## Summary

The claim for failure to intervene is supported by:

1. Officers witnessing excessive force and failing to stop it.
2. Officers observing unlawful seizures and searches without intervening.
3. Officers allowing constitutional violations to occur despite having the power to prevent them.

This inaction by Defendants, under color of state law, contributed to Moore's injuries, humiliation, and deprivation of rights, establishing their liability under **42 U.S.C. § 1983**.

## Explanation of Allegations Under 42 U.S.C. § 1983 for Failure to Intervene

The allegations detail how multiple **defendants**, including NYPD officers, hospital police, and other agents acting under color of law, failed to intervene when Plaintiff Moore's constitutional

rights under the Fourth, First, and Fourteenth Amendments. The failure

to act, despite having the opportunity and duty to intervene, establishes liability under **42 U.S.C. §**

**1983**.

---

### 1. Failure to Intervene in the Use of Excessive Force (Fourth and Eighth Amendments)

October 1, 2021 - October 5, 2021  Incident:

- **Defendants Involved**:

  **Officers Antonio Castelluccio, Sgt. David S. Maldonado, Officers John Does #1-10**, and

  others.

- **Allegations**:

  ○ Moore was handcuffed too tightly, causing physical pain and injury, despite his

    repeated pleas for adjustment.

  ○ Officers present, including **John Does #11-20**, had the opportunity to stop this

    excessive force but failed to act.

  Harlem Hospital Incident:

- **Defendants Involved**:

  **Hospital Police Officers Georaida Germonse, Francis Senajou, Terrence Pemberto,**

  **Captain David Lopez, Sgt. Jocl Rivera, and John Does #31-40**.

- **Allegations**:

  ○ Moore was pinned to the floor, dragged by his pants, and forced to strip to his

    underwear, causing humiliation and physical harm.

  ○ Officers and hospital staff present during the incident did not intervene to stop these

## 2. Failure to Intervene in Unlawful Seizures (Fourth Amendment)

**October 1, 2021 - October 5, 2021 Incident:**

- **Defendants Involved**:

  **Officers Castelluccio, Maldonado, and John Does #1-30**.

- **Allegations**:

  - Moore was detained outside his residence and transported to Harlem Hospital without probable cause or justification.

  - Officers involved in his transport and detention failed to intervene despite their awareness of the unlawful seizure.

**October 5, 2021 Incident:**

- **Defendants Involved**:

  **Officers David Castro, Nilsa Patricio, Stamford, Vasquez, and John Does #1-30**.

- **Allegations**:

  - Defendants entered Moore's apartment without a warrant, searched it, and arrested him unlawfully.

  - Officers who observed and facilitated these actions failed to prevent the constitutional violations.

## 3. Failure to Intervene in Public Humiliation (First and Fourteenth Amendments)

**October 1, 2021 Incident:**

- **Defendants Involved**:

  **Officers Castelluccio, Maldonado, and John Does #1-30**.

- **Allegations**:

  - Moore was subjected to a public detention and search in the presence of neighbors, causing humiliation.

  - Officers present who allowed this public humiliation to occur failed in their duty to intervene.

---

## 4. Failure to Intervene by Hospital Staff and EMS Personnel

**False Diagnoses and Unlawful Detentions (Fourteenth Amendment):**

- **Defendants Involved**:

  **Harlem Hospital staff (Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania), Mount Sinai St. Luke's staff (Doctors Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur), NYCH+H hospital police, and EMT/EMS personnel Rosas (#2679), Vasquez, and John Does**.

- **Allegations**:

  - Medical personnel acted on behalf of law enforcement by fabricating or exaggerating diagnoses to justify Moore's detention.

  - Hospital police and EMT/EMS staff witnessed the violations and participated in covering up law enforcement misconduct without intervening.

---

### 5. Legal Duty to Intervene

**Established Precedent:**

Courts consistently recognize that officers and state actors have a **legal duty to intervene** when they:

1. Witness another officer or state actor committing unconstitutional acts, including excessive force, unlawful seizures, and public humiliation.
2. Have a reasonable opportunity to prevent or stop the violation.

**Defendants' Failure:**

- Defendants, including NYPD officers, hospital police, and hospital staff, were present during Moore's alleged unconstitutional treatment.
- They had ample opportunity to prevent excessive force, unlawful searches, seizures, and public humiliation but chose to remain complicit.

---

## 6. Summary of Violations and Legal Basis

The failure to intervene claim under **42 U.S.C. § 1983** is supported by the following actions:

1. **Excessive Force**:
   - Officers failed to stop overtightened handcuffs and physical mistreatment.
   - Hospital police failed to stop acts of force and public humiliation at Harlem Hospital.

2. **Unlawful Seizures**:
   - Officers failed to prevent detentions and arrests without probable cause on October

3. **Public Humiliation**:

   ○ Defendants allowed Moore to be humiliated publicly during his detention and arrest.

4. **Collaboration in Fabricated Diagnoses**:

   ○ Hospital staff and EMT/EMS personnel facilitated the cover-up of law enforcement misconduct by falsifying or exaggerating medical evaluations.

### Conclusion

The failure of the defendants to intervene in these constitutional violations—despite having the authority and opportunity to do so—constitutes a clear breach of Moore's rights under the **Fourth, Eighth, First, and Fourteenth Amendments**. This inaction resulted in **physical, emotional, and reputational harm** to Moore, making the defendants liable under **42 U.S.C. § 1983**.

## Explanation of Allegations Under 42 U.S.C. § 1985 for Conspiracy to Violate Civil Rights

The Plaintiff's claims involve a coordinated effort by various defendants—law enforcement, hospital staff, EMT/EMS personnel, and others acting under state authority—to deprive him of his constitutional rights under the **Fourth, Eighth, Fourteenth, and First Amendments**. These allegations, viewed collectively, support a claim under **42 U.S.C. § 1985** for conspiracy to interfere with civil rights. Below is a structured explanation:

---

## 1. Conspiracy to Deprive Rights

**Coordinated Actions on October 1, 2021:**

- **Defendants Involved**:

  **Officers Antonio Castelluccio, Sgt. David S. Maldonado, Officers Sanjay Bajnauth, Nilsa Patricio, John Does #1-20**, and others.

- **Allegations**:
  - Plaintiff was unlawfully seized, subjected to excessive force (overtightened handcuffs), and publicly humiliated in the presence of neighbors.
  - Multiple officers participated in or stood by during these violations, indicating a tacit agreement or coordinated effort.

**Actions at Harlem Hospital:**

- **Defendants Involved**:

  **Hospital Police Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, Sgt. Jocl Rivera, and John Does #31-40.**

- **Allegations**:
  - Plaintiff was restrained with unnecessary force, dragged by his pants, and forced to strip to his underwear under the guise of a medical evaluation.
  - The presence of multiple hospital police officers and their failure to intervene further suggest coordination and agreement to violate Moore's rights.

**October 5, 2021 Incident:**

- **Defendants Involved**:

  **Officers David Castro, Nilsa Patricio, Stamford, Vasquez, and John Does #1-30.**

- **Allegations**:
  - Defendants unlawfully entered Plaintiff's apartment without a warrant, conducted a

○ The synchronized actions of the officers reflect a coordinated plan to deprive Plaintiff of his Fourth and Fourteenth Amendment rights.

## 2. Racial Animus and Civil Rights Interference

- **Allegation of Racial Animus**:

  ○ Plaintiff claims his rights were violated due to his status as a **Black Freeman**, a protected class under § 1985.

  ○ The coordinated actions of law enforcement and other state actors, motivated by racial bias, support the claim of discrimination and targeted interference with Plaintiff's civil rights.

## 3. Failure to Intervene in the Conspiracy

**October 1, 2021:**

- **Defendants Involved**:

  **Officers Castelluccio, Maldonado, Bajnauth, and John Does #1-30**.

- **Allegations**:

  ○ Defendants who observed or facilitated the excessive force, unlawful detention, and public humiliation but did not act to prevent it are complicit in the conspiracy.

**Harlem Hospital Incident:**

- **Defendants Involved**:

  **Hospital Police Officers Germonse, Senajou, Pemberto, Lopez, Rivera, and John Does**

- **Allegations**:
  - Hospital police and staff failed to intervene while Plaintiff was subjected to physical mistreatment and unjustified confinement.

**October 5, 2021:**

- **Defendants Involved**:

  **Officers Castro, Patricio, Stamford, Vasquez, and John Does #1-30**.

- **Allegations**:
  - Defendants who participated in or failed to stop the unlawful entry, search, and arrest contributed to the conspiracy and resulting constitutional violations.

---

## 4. Role of Hospital Staff and EMT/EMS Personnel

**Fabrication of False Diagnoses:**

- **Defendants Involved**:

  **Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania (Harlem Hospital)**; **Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur (Mount Sinai St. Luke's)**; and **hospital staff Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN)**.

- **Allegations**:
  - Medical personnel conspired with law enforcement by fabricating false diagnoses to justify Plaintiff's unlawful detention and cover up police misconduct.
  - Their actions align with the conspiracy to deprive Plaintiff of his constitutional

**EMS/EMT Participation:**

- **Defendants Involved**:

  **EMS/EMT Rosas (#2679), Vasquez, and John Does**.

- **Allegations**:

  - EMT/EMS personnel acted as agents of law enforcement, aiding in Plaintiff's
    unlawful detention and transport while failing to stop the constitutional violations.

---

## 5. Broader Policy of Conspiracy

- **Customs and Policies**:

  - Plaintiff alleges that the actions of the NYPD, Morningside Gardens Housing
    Corporation/First Services Residential, and Harlem Hospital staff reflect a **broader
    custom or policy** of indifference toward individuals with mental health conditions
    and racial minorities.

  - This systemic failure to address such misconduct supports the claim of an
    institutional conspiracy to violate civil rights.

---

## Summary of Violations and Legal Basis

The claim under **42 U.S.C. § 1985** is supported by evidence of:

1. **Conspiracy**:

   - Coordinated actions among law enforcement, hospital staff, and EMT/EMS
     personnel to unlawfully detain, search, and use excessive force against Plaintiff.

2. **Racial Animus**:

   ○ Targeted deprivation of Plaintiff's rights based on his status as a Black Freeman.

3. **Failure to Intervene**:

   ○ Defendants present during these violations failed to take action to prevent or mitigate the harm, thereby furthering the conspiracy.

4. **Custom and Policy**:

   ○ Systemic practices of the NYPD, hospital systems, and other entities allowed these violations to occur unchecked, reflecting institutional complicity.

**Conclusion**

Defendants' coordinated actions, motivated by racial animus and carried out under state authority, deprived Plaintiff of his constitutional rights under the **Fourth, Eighth, Fourteenth, and First Amendments**. Their collective conduct establishes a clear basis for liability under **42 U.S.C. § 1985** for conspiracy to interfere with civil rights and the failure to intervene in these violations.

As a direct consequence of the intentional and malicious actions of the individual Defendants, I suffered significant humiliation, damage to reputation, incurred attorney's fees, associated legal expenses, and other consequential damages, while enduring profound pain and mental anguish. These damages shall not be less than

to Title 42 § 1988.


### Municipal Liability 42 U.S.C. § 1983// 42 U.S.C. § 1985

((CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES
STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW
YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY
BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID
CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT
JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER
GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER
DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY
POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS
#2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW
YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR
KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA,
NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE ,
OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN
DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING
CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,
Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie
Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United
States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William
J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA)
Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the
Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis,
Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez.
EMT Robert Kraft. Badge No. 3502


) )



October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021



   I hereby reiterates, reaffirms, and realleges each and every assertion delineated in the

preceding paragraphs of the Complaint, investing them with the same potency and legal

significance as if fully expounded upon herein.

It is asserted that the Municipal Defendants qualify as "persons" within the purview of 42 U.S.C. § 1985/42 U.S.C. § 1983. Furthermore, it is contended that throughout the relevant period, the Municipal Defendants, acting through their respective agencies, maintained de facto policies, practices, customs, and usages that directly and proximately contributed to the unconstitutional conduct of Defendant DOES.

It is widely acknowledged that police officers of Defendant CITY routinely engage in arrests, fail to appropriately de-escalate encounters, employ excessive force, and deviate from departmental policies or accepted standards when dealing with Black Freemen (Native Black Americans and/or African Americans). Moreover, it is common knowledge that these officers engage in discriminatory law enforcement practices, utilize excessive force, and exhibit reckless behavior in their interactions with Black Freemen (Native Black Americans and/or African Americans), disregarding their well-being and safety, often resulting in severe injuries.

Defendant CITY has failed to either discipline or adequately train its officers in their interactions with Black Freemen (Native Black Americans and/or African Americans). Moreover, Defendant CITY has neglected to address the ongoing necessity to prevent, restrain, and discipline police officers who violate the constitutional rights of citizens, use excessive force against Black Freemen (Native Black Americans and/or African Americans), and fails to credibly investigate civilian complaints against police officers.

The aforementioned acts, omissions, systemic deficiencies, policies, and customs of Defendants CITY and NYPD have fostered an environment wherein officers believe that brutality and other improper actions will not be thoroughly investigated, leading to the foreseeable result that officers are more likely to use excessive force unnecessarily.

Defendants CITY and NYPD were reckless, negligent, and deliberately indifferent in their

traveling, 1007 U.S.C. §§ 1983, and to monitor all of these individual Defendants, concerning the harassment of Black Freemen (Native Black Americans and/or African Americans), their arrest, and the recognition and protection of their civil and constitutional rights.

This is a **42 U.S.C. § 1983 claim for municipal liability** under the doctrine established in *Monell v. Department of Social Services of the City of New York*, which allows a municipality to be held liable for constitutional violations caused by its policies, practices, or customs.

---

## 1. Municipal Liability Framework

Under *Monell*, a municipality can be held liable for constitutional violations when:

- The violation results from an official **policy**, **custom**, or **practice**.
- There is a failure to **train** or **supervise** employees, demonstrating **deliberate indifference** to constitutional rights.
- A municipal policy or custom is the **moving force** behind the violation.

---

## 2. Allegations Supporting Municipal Liability

- **Failure to Train and Supervise**:
  - Moore alleges that the NYPD failed to train officers adequately on interacting with individuals The repeated violations during the incidents on October 1 and October 5, 2021, suggest systemic deficiencies in officer training and supervision.
  - The officers' inability or refusal to de-escalate, the use of excessive force, and the unlawful detentions indicate deliberate indifference to Moore's rights.
- **Pattern or Custom of Misconduct**:
  - Moore claims that the City of New York and the NYPD have a pattern of unconstitutional treatment of individuals with mental health conditions.
  - The alleged repeated failures to prevent harm during his interactions with law enforcement reflect a broader practice of neglecting to address constitutional violations.
- **Specific Examples of Policy Failure**:
  - **October 1, 2021**: Officers unlawfully detained Moore, used excessive force, and humiliated him publicly, indicating a failure to follow lawful arrest and mental health intervention protocols.
  - **October 5, 2021**: Officers unlawfully entered Moore's home, conducted a warrantless search, and detained him without probable cause, demonstrating systemic disregard for Fourth Amendment rights.

○ Moore asserts that the City and NYPD were aware of similar prior incidents involving myself  but failed to implement necessary reforms.
○ The lack of corrective action following these incidents evidenced deliberate indifference to the risk of future constitutional violations.

---

## 3. Causal Connection

- The City's failures in training, supervision, and addressing known deficiencies were the **direct cause** of the constitutional violations Moore experienced.
- Had proper protocols been in place, the incidents on October 1 and October 5, 2021, could have been prevented.

---

## 4. Summary

The Plaintiff's allegations establish a claim for municipal liability under **42 U.S.C. § 1983** by showing:

- A pattern of unconstitutional practices by the NYPD.
- The City's deliberate indifference to Moore's constitutional rights.
- A causal link between these municipal failings and the violations of Moore's Fourth and Fourteenth Amendment rights.

### Explanation of Municipal Liability Claim Under 42 U.S.C. § 1983

This claim is brought under the legal framework of **Monell v. Department of Social Services of the City of New York**, which allows municipalities to be held liable for constitutional violations resulting from their official policies, customs, or practices. Below is a breakdown of the allegations and how they support municipal liability for violations of the **Fourth, Eighth, Fourteenth, and First Amendments**.

---

## 1. Municipal Liability Framework

Under **Monell**, a municipality can be held liable when:

- The violation stems from an **official policy**, **custom**, or **practice**.
- There is a **failure to train or supervise** employees, showing **deliberate indifference** to constitutional rights.
- The policy, practice, or custom is the **moving force** behind the violation.

---

## 2. Allegations Supporting Municipal Liability

## A. Failure to Train and Supervise:

- **Systemic Deficiencies**:
  The NYPD failed to provide officers with proper training on handling interactions with individuals, including those who are Black Freemen .
- **Repeated Violations**:
  - On **October 1, 2021**, officers engaged in excessive force, public humiliation, and unlawful detention of the Plaintiff.
  - On **October 5, 2021**, officers entered the Plaintiff's apartment without a warrant, conducted a warrantless search, and unlawfully detained him.
- **Deliberate Indifference**:
  These repeated violations demonstrate the City's failure to properly train or supervise its employees, allowing constitutional violations to persist.

---

## B. Pattern or Custom of Misconduct:

- **Constitutional Violations as a Routine Practice**:
  Plaintiff alleges that the City of New York and NYPD exhibit a pattern of unconstitutional treatment, particularly towards individuals with mental health conditions.
- **Neglect to Address Known Issues**:
  The City's failure to correct officers' misconduct and implement necessary reforms reflects a broader practice of constitutional neglect.

---

## C. Specific Examples of Policy Failures:

- **October 1, 2021 Incident**:
  - Officers **Antonio Castelluccio**, **David S. Maldonado**, **Sanjay Bajnauth**, **Nilsa Patricio**, and others unlawfully detained Plaintiff using **excessive force**, including overtightening handcuffs, and subjected him to public humiliation.
  - Officers failed to de-escalate or adhere to lawful arrest procedures, indicating a failure to follow mental health intervention protocols.
- **October 5, 2021 Incident**:
  - Officers **David Castro**, **Nilsa Patricio**, **Stamford**, and others entered Plaintiff's home without a warrant, conducted a **warrantless search**, and detained him without probable cause.
  - This shows a systemic failure to enforce Fourth Amendment protections.

---

## D. Deliberate Indifference by the Municipality:

- **Knowledge of Prior Incidents**:
  Plaintiff claims the City and NYPD were aware of similar past incidents involving unconstitutional conduct but failed to take corrective action.
- **Lack of Reform**:
  Despite knowledge of these violations, the City failed to improve officer training,

supervision, accountability measures, evidencing deliberate indifference to the risk of future harm.

---

## 3. Causal Connection

The City's failure to adequately train, supervise, and address known deficiencies directly caused the violations of the Plaintiff's constitutional rights.

- **Fourth Amendment**: Protection against unlawful search and seizure was violated during the **October 1** and **October 5 incidents**.
- **Eighth Amendment**: Plaintiff alleges excessive force and mistreatment, violating his right to be free from cruel and unusual punishment.
- **Fourteenth Amendment**: Plaintiff's right to due process was ignored during the unlawful detentions and searches.
- **First Amendment**: Plaintiff was prevented from filing a complaint, restricting his right to petition the government for redress.

---

## 4. Summary

The Plaintiff has established a claim for municipal liability under **42 U.S.C. § 1983** by demonstrating the following:

1. **A Pattern of Unconstitutional Practices**:
   NYPD officers, acting under the City's authority, engaged in repeated constitutional violations.
2. **Deliberate Indifference**:
   The City and NYPD knew or should have known about these violations but failed to address them through adequate training, supervision, or policy reforms.
3. **Causal Link**:
   The City's failings directly caused the Fourth, Eighth, Fourteenth, and First Amendment violations experienced by the Plaintiff.

The Plaintiff's allegations provide a strong basis for holding the City of New York liable for the systemic    failures and constitutional violations under **Monell**.

## Explanation of Municipal Liability and Conspiracy Claim Under 42 U.S.C. § 1985(3)

This case involves allegations of a **conspiracy to violate Plaintiff Moore's constitutional rights** under the **Fourth, Eighth, Fourteenth, and First Amendments**, and focuses on the actions of named defendants, hospital staff, and municipal actors under the legal framework provided by **42 U.S.C. § 1985(3)**. Below is a concise and organized explanation of the claims, with references to relevant defendants and constitutional violations.

## 1. Framework for § 1985(3) Claims Against Municipalities

Under **42 U.S.C. § 1985(3)**, liability arises when:

- **Conspiracy**: Two or more individuals agree to deprive someone of their constitutional rights.
- **Invidious Discrimination**: The actions are motivated by racial or class-based discriminatory animus.
- **Action Under Color of Law**: At least one actor operates under state authority.
- **Municipal Liability**: The conspiracy reflects a municipal policy, custom, or deliberate indifference.

For municipal liability to apply, the City's policies, customs, or systemic failures must directly enable or perpetuate the conspiracy and resulting constitutional violations.

---

## 2. Allegations of Conspiracy and Constitutional Violations

### A. Fourth Amendment (Protection Against Unlawful Search and Seizure):

- **October 1, 2021 Incident**:
  - **Defendants Involved**: OFFICERS ANTONIO CASTELLUCCIO, DAVID S. MALDONADO, SANJAY BAJNAUTH, and others.
  - **Actions**: The Plaintiff was forcibly detained without probable cause, subjected to excessive force, and humiliated publicly.
  - **Violation**: The unwarranted detention and excessive force violated Fourth Amendment protections.
- **October 5, 2021 Incident**:
  - **Defendants Involved**: OFFICERS DAVID CASTRO, NILSA PATRICIO, and others.
  - **Actions**: Officers entered the Plaintiff's home without a warrant, conducted a search, and unlawfully detained him.
  - **Violation**: This constitutes a clear violation of Plaintiff's Fourth Amendment rights against warrantless searches and seizures.

---

### B. Eighth Amendment (Protection Against Cruel and Unusual Punishment):

- Plaintiff alleges **excessive force** was used by hospital police and NYPD officers, including physical restraint and overtightened handcuffs, causing pain and humiliation.
- **Hospital Police Involved**: OFFICER GEORAIDA GERMONSE, OFFICER FRANCIS SENAJOU, OFFICER TERRENCE PEMBERTO, CAPTAIN DAVID LOPEZ, and SERGEANT JOCL RIVERA.
- **Violation**: These actions constitute cruel and unusual punishment under the Eighth Amendment, particularly in a non-carceral context.

**C. Fourteenth Amendment (Due Process and Equal Protection):**

- **Discriminatory Animus**: Plaintiff alleges the actions were racially motivated due to his status as a Black Freeman.
- **Hospital Involvement**:
  - **Doctors**: NURUR RAHAM, KALU AGWU, RYAN H. HASHE, GAUTAM BALASUBRAMANIA.
  - **Staff**: CHANG YOUNG CHO (NP), EQUAGIE EHIMWENMA (RN), CRYSTAL CHANNEL ALLMAN (RN), EMILIA G. OKOROMA (RN), and KEMP THANE HERZBERG (RN).
  - **Actions**: Hospital staff and doctors allegedly fabricated false diagnoses to justify law enforcement's excessive force and detentions.
  - **Violation**: This violated Plaintiff's due process rights by using fabricated medical evidence to deny equal protection under the law.

---

**D. First Amendment (Right to Petition and Free Speech):**

- Plaintiff alleges **NYPD and hospital staff** prevented him from filing complaints or reporting the misconduct.
- **Fire Department Involvement**: EMT/EMS ROSAS (#2679), EMT/EMS VASQUEZ, and other unnamed EMTs allegedly acted on behalf of law enforcement by covering up their actions.
- **Violation**: Denying Plaintiff the ability to file grievances or complaints violated his First Amendment rights.

---

## 3. Municipal Liability: City of New York

The Plaintiff's allegations establish a **pattern of systemic failures** by the City of New York, which facilitated or ignored the violations:

**A. Failure to Train or Supervise:**

- The City failed to provide adequate training to NYPD officers and hospital staff on:
  - De-escalation techniques.
  - Proper handling of individuals with mental health issues.
  - Racial sensitivity and anti-discrimination policies.

**B. Custom or Policy of Misconduct:**

- The Plaintiff alleges a broader **pattern of systemic discrimination**, particularly targeting Black individuals.
- The repeated constitutional violations (e.g., excessive force, warrantless searches) indicate a **deliberate indifference** to civil rights violations by municipal actors.

**C. Direct Causation:**

- The failure to address prior incidents or reform policies enabled officers and hospital staff to act without accountability, directly causing the Plaintiff's injuries.

---

## 4. Evidence of Conspiracy

The Plaintiff's allegations point to coordinated efforts among the named defendants to deprive him of constitutional rights:

### A. Coordinated Actions:

- The participation of **multiple NYPD officers** (e.g., CASTELLUCCIO, MALDONADO, CASTRO) and **hospital staff** suggests deliberate coordination.
- False medical diagnoses by **doctors and nurses** at Harlem Hospital and Mount Sinai St. Luke's were allegedly created to cover for NYPD misconduct.

### B. Racial Animus:

- Plaintiff asserts that the actions were motivated by his status as a **Black Freeman**, which is sufficient to establish the **discriminatory intent** required under § 1985(3).

### C. Failure to Intervene:

- Officers, hospital staff, and EMTs who witnessed the constitutional violations and failed to act are complicit in the conspiracy.

---

## 5. Summary of Legal Violations

- **Fourth Amendment**: Unlawful search, seizure, and detention by NYPD officers.
- **Eighth Amendment**: Excessive force and cruel treatment by NYPD and hospital police.
- **Fourteenth Amendment**: Racial discrimination, fabricated medical diagnoses, and denial of due process.
- **First Amendment**: Obstruction of Plaintiff's right to file complaints and report misconduct.

The Plaintiff's allegations support a claim under **42 U.S.C. § 1985(3)** for conspiracy to deprive constitutional rights, with municipal liability arising from the City's policies, customs, and deliberate indifference. The coordinated actions of NYPD officers, hospital staff, and EMTs illustrate a systemic conspiracy enabled by the City's systemic failures.

4o

As a direct and proximate outcome of the intentional and malicious actions of the Defendants, Plaintiff has endured significant humiliation, reputational harm, incurred legal fees, associated legal expenses, and other special damages, as well as substantial pain and mental anguish. These damages shall not be less than [insert amount], in addition to punitive damages, costs, and attorney's fees pursuant to Title 42 § 1988.

## **Violations of New York State Constitution**

((CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

The plaintiff hereby reiterates, reaffirms, and realleges each and every assertion contained in the aforementioned paragraphs of the Complaint, endowing them with the same vigor and legal import as if fully expounded upon herein.

Individual Defendants perpetrated the aforementioned acts and omissions against Plaintiff without affording due process of law, thereby depriving Plaintiff of rights, privileges, and immunities safeguarded by Article 1, Sections 6 and 12 of the New York State Constitution. These include, but are not limited to, the right to due process and the right to be free from unreasonable searches and seizures. All pertinent details are documented at line( ).

As a direct consequence of Defendants' intentional and malicious conduct, Plaintiff has suffered profound humiliation, reputational harm, incurred legal fees, associated legal expenses, and other consequential damages, and has endured significant mental anguish. These damages shall not be less than [insert amount], in addition to punitive damages and attorney's fees, as determined at trial.

## Explanation of Alleged Violations of Constitutional Rights: Federal and New York State Protections

This case involves **alleged violations of the Plaintiff's Fourth, Eighth, Fourteenth, and First Amendment rights under the U.S. Constitution**, as well as similar provisions under the **New York State Constitution**. These violations involve actions taken by New York City Police Department (NYPD) officers, hospital staff, EMTs, and municipal actors, including the alleged

## Federal Constitutional Violations

### 1. Fourth Amendment: Protection Against Unlawful Search and Seizure

- **Key Allegations**:
  - Plaintiff was detained on October 1 and October 5, 2021, **without probable cause** or legal justification.
  - NYPD officers, including **OFFICERS ANTONIO CASTELLUCCIO, SANJAY BAJNAUTH, DAVID CASTRO, NILSA PATRICIO**, and others, allegedly **forcibly entered Plaintiff's home** and detained him unlawfully.
  - **Hospital police** and EMTs acted as agents of law enforcement, restraining and confining Plaintiff under false pretenses.

- **Violation**:

  These actions constitute warrantless seizures and searches, violating the Fourth Amendment's guarantee against **unreasonable searches and seizures**.

### 2. Eighth Amendment: Protection Against Cruel and Unusual Punishment

- **Key Allegations**:
  - Plaintiff was subjected to **excessive force**, including the overtightening of handcuffs, dragging by his pants, and physical restraint by hospital police (e.g., **OFFICER GEORAIDA GERMONSE**, **OFFICER FRANCIS SENAJOU**, and others).

**public humiliation**, occurred during his hospital detentions.

- **Violation**:

  These actions amount to **cruel and unusual punishment**, prohibited under the Eighth

  Amendment, especially given the non-carceral context of Plaintiff's detentions.

---

**3. Fourteenth Amendment: Due Process and Equal Protection**

- **Due Process**:
  - Plaintiff alleges **deprivation of liberty** when forced into psychiatric evaluations at Harlem Hospital and Mount Sinai St. Luke's without proper justification or procedural safeguards.
  - Hospital staff, including **DOCTORS NURUR RAHAM, KALU AGWU, RYAN H. HASHE, and GAUTAM BALASUBRAMANIA**, allegedly fabricated medical diagnoses to justify NYPD actions, further violating due process protections.

- **Equal Protection**:
  - Plaintiff's claim that actions were motivated by his status as a **"Black Freeman"** suggests racial animus. This allegation, combined with systemic failures in training and oversight, reflects a **pattern of discriminatory practices** targeting minority individuals.

- **Violation**:

  The forced confinement and discriminatory actions violated Plaintiff's Fourteenth

  Amendment rights to **equal protection and due process**.

---

**4. First Amendment: Right to Petition and Free Speech**

- **Key Allegations**:

  - Plaintiff alleges that NYPD officers and hospital staff **obstructed his ability to file complaints** or report misconduct.

  - EMTs (e.g., **ROSA #2679**, **VASQUEZ**, and others) and hospital staff acted to **conceal law enforcement misconduct**, further silencing Plaintiff.

- **Violation**:

  Denying Plaintiff the ability to **file grievances** infringes upon his **First Amendment rights**, which protect the right to petition the government for redress of grievances.

---

## New York State Constitutional Violations

**1. Article I, Section 6: Due Process**

- **Violation**:

  Plaintiff was deprived of liberty without due process when confined for psychiatric evaluations under fabricated medical pretenses. Additionally, the unauthorized search and seizure of his property violated his procedural rights.

---

**2. Article I, Section 11: Equal Protection**

- **Violation**:

  Discriminatory animus toward Plaintiff, based on his racial status as a "Black Freeman," supports a claim under New York State's equal protection clause.

**3. Article I, Section 12: Freedom from Unreasonable Search and Seizure**

- **Violation**:

  The baseless arrests, forcible entry into Plaintiff's home, and unlawful detention violated New York's equivalent protections against unreasonable searches and seizures.

---

**4. Article I, Section 5: Prohibition on Cruel and Unusual Punishment**

- **Violation**:

  The use of excessive force and inhumane treatment during Plaintiff's encounters with NYPD and hospital police violated New York State's prohibition on cruel and unusual punishment.

---

## Municipal Liability: Systemic Failures

The Plaintiff's allegations implicate the **City of New York** for its **policies, customs, and failures**, which enabled the constitutional violations:

**1. Inadequate Training and Supervision**

- Failure to train NYPD officers, hospital staff, and EMTs on:
  - Mental health crises.
  - Proper handling of minority individuals.
  - De-escalation techniques.

- A broader pattern of systemic discrimination and misconduct is alleged, particularly against Black individuals.

- The repeated violations suggest a **deliberate indifference** to civil rights.

**3. Facilitation of Conspiracy**

- Coordination between NYPD officers, hospital staff, and EMTs to fabricate diagnoses and obstruct Plaintiff's complaints supports a claim of conspiracy under **42 U.S.C. § 1985(3)**.

---

## Summary of Allegations

1. **Unlawful Search and Seizure**: Forcible detentions and warrantless searches by NYPD officers violated Plaintiff's Fourth Amendment rights.

2. **Cruel and Unusual Punishment**: Excessive force and inhumane treatment violated the Eighth Amendment.

3. **Equal Protection and Due Process**: Racial discrimination and fabricated medical diagnoses violated Fourteenth Amendment protections.

4. **Obstruction of Complaints**: Denial of Plaintiff's ability to file grievances violated his First Amendment rights.

The systemic failures and discriminatory practices of the NYPD and municipal actors also implicate the City of New York under both **federal** and **state constitutional provisions**. These actions, compounded by coordinated efforts among defendants, form the basis for municipal liability.

This case potentially involves **violations of the New York State Constitution**, specifically provisions that mirror federal constitutional protections, including the rights to due process, equal

punishment. Below is a direct explanation of how these claims arise.

---

## Relevant Provisions of the New York State Constitution

1. **Article I, Section 6** - Due Process: Protects individuals from deprivation of life, liberty, or property without due process of law.
2. **Article I, Section 11** - Equal Protection: Prohibits discrimination and guarantees equal protection under the law.
3. **Article I, Section 12** - Freedom from Unreasonable Searches and Seizures: Protects against unlawful arrests and unwarranted searches.
4. **Article I, Section 5** - Prohibition on Cruel and Unusual Punishment: Protects individuals from the use of excessive force and inhumane treatment.

---

## How Plaintiff's Allegations Implicate These Provisions

1. **Unlawful Arrests and Seizures (Article I, Section 12)**:
   - Plaintiff was detained on both October 1 and October 5, 2021, without probable cause or evidence of wrongdoing.
   - The forcible handcuffing, removal from his residence, and transport to the hospital without any legitimate legal basis violated his right to be free from unreasonable seizure.
2. **Excessive Force and Inhumane Treatment (Article I, Section 5)**:
   - The overtightening of handcuffs, refusal to loosen them, and dragging Moore by his pants while pinning him to the floor at the hospital constitute excessive force and inhumane treatment.
   - Forcing Moore to strip, sleep in a chair, and endure public humiliation further exacerbates the claim of cruel and unusual punishment.
3. **Discriminatory Intent and Equal Protection Violation (Article I, Section 11)**:
   - Moore's status as a "Black Freeman" and allegations of racial bias suggest that the Defendants' actions were motivated by discriminatory animus.
   - Systemic failures within the NYPD and the municipality's deliberate indifference to training on mental health and minority interactions reinforce this violation.
4. **Deprivation of Liberty Without Due Process (Article I, Section 6)**:
   - Moore's forced confinement for psychiatric evaluations, despite posing no threat to himself or others, deprived him of liberty without appropriate legal safeguards.
   - The unlawful search of his personal belongings and entry into his apartment without consent also violated his property rights under due process protections.

---

## Connection to Municipal Liability

- **Customs and Practices**: The allegations reflect broader municipal failures to properly train and supervise officers in interactions with minority individuals and people special

needs **Deliberate Indifference**: The City's failure to address prior incidents and systemic problems facilitated the violations of Moore's state constitutional rights.

## Summary

The Plaintiff's allegations demonstrate violations of the New York State Constitution, including:

- **Unlawful seizure** through baseless arrests and detention.
- **Excessive force** and inhumane treatment during his encounters with law enforcement.
- **Racial discrimination**, violating equal protection guarantees.
- **Deprivation of liberty** without due process in both hospital confinements.

These violations are compounded by systemic issues within the City and NYPD, providing a basis for municipal liability.

### False Claim

(**against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York,  Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)

**October 1, 2021 - October 5, 2021 Incident:**

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

  The **False Claims Act (FCA)** primarily addresses fraud against the federal government, involving knowingly submitting false claims for payment or approval, or making false records or statements material to a claim. While your described allegations pertain to civil rights violations,. Below, I explain how elements of the FCA could hypothetically connect to the case if applicable.

---

## False Claims Act Elements

1. **Submission of a Claim**: A request or demand for money or property to the government.
2. **Falsity**: The claim must be false or fraudulent.
3. **Knowledge**: The defendant knowingly submitted or caused the false claim.
4. **Materiality**: The falsity must be material to the government's decision to pay.

---

## Potential FCA Connection

If the defendants or entities involved in Plaintiff Moore's case (e.g., Morningside Heights Housing or NYPD-related and Harlem hospital/Mount Sinai Saint Luke's  programs) submitted claims for government funds under false pretenses, there may be grounds for an FCA violation. Examples include:

1. **False Claims for Government Reimbursement**:
   - If Morningside or associated entities falsely reported incidents or services to justify government funding (e.g., emergency response subsidies, mental health service reimbursement), this could be actionable under the FCA.
   - For example, claiming costs for unnecessary or improper mental health interventions involving Moore.
2. **Misuse of Federal Funds**:
   - If NYPD or related entities received federal funding tied to policies for dealing with mental health (EDPs) and failed to implement those policies while falsely certifying compliance, this could constitute an FCA violation.
3. **False Reporting of Arrest or Incident**:
   - If false reports were made to justify the need for federal funds (e.g., police overtime, ambulance costs), knowing the underlying claims were invalid, this could potentially trigger FCA liability.

---

Based on the provided facts, the focus is on **civil rights violations** under federal and state laws, not fraud or false claims against the government. However, if evidence emerges showing:

- **False certifications** of compliance with mental health protocols,
- Fraudulent claims for reimbursement for emergency services, or
- Misreporting to secure federal funds,

then the FCA could be a relevant basis for liability.

---

## Allegations of Constitutional Rights Violations

The described events focus on alleged violations of **Constitutional rights** under the **1st, 4th, 8th, and 14th Amendments**, involving law enforcement, hospital staff, and associated entities acting as agents of law enforcement. Below is a summary of the claims, organized by constitutional protections:

---

## Constitutional Violations Alleged

**1st Amendment (Freedom of Speech and Right to Petition)**

- Allegation: Defendants, including New York City Police Department (NYPD) officers and hospital staff, **prevented Plaintiff from filing complaints** about misconduct.
- Context: Plaintiff claims interference with their ability to address grievances, constituting a violation of their right to free speech and to petition the government for redress.

**4th Amendment (Protection Against Unreasonable Searches and Seizures)**

- Allegation: NYPD officers, EMT/EMS personnel, and hospital staff unlawfully **seized Plaintiff without probable cause** or proper legal authority.
- Context: Plaintiff asserts that the false diagnoses by medical staff were used to justify the seizure and detention, violating their 4th Amendment rights.

**8th Amendment (Prohibition of Cruel and Unusual Punishment)**

- Allegation: Plaintiff experienced **inhumane treatment** during their detention, including neglect and unnecessary medical interventions.
- Context: This may include improper detention conditions and the use of excessive force or coercive tactics.

**14th Amendment (Equal Protection and Due Process)**

- Allegation: Plaintiff was subjected to **discrimination** and denied due process in how their case was handled by police and medical personnel.

Case Context: False diagnoses and the use of hospital and emergency services are alleged to have been conducted to shield law enforcement from liability, violating Plaintiff's rights to equal protection and fair treatment under the law.

## Parties Allegedly Involved

### Law Enforcement (NYPD and Hospital Police)

- Officers Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, David Castro, Nilsa Patricio, Joseph Angelone, Salvatore Ronzino, Gabriela Flores Tapia, Christopher Torturo, David Franklin, Sergeant Perrier, and other John Does.
- Hospital Police: Officer Georaida Germonse, Officer Francis Senajou, Officer Terrence Pemberto, Captain David Lopez, Sergeant Jocl Rivera.
- Actions Alleged: Unlawful seizure, interference with complaints, collaboration with medical staff to fabricate evidence.

### Medical Staff (Harlem Hospital, Mount Sinai St. Luke's)

- Doctors: Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania, Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur.
- Nurses: Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN).
- Actions Alleged: False diagnoses and fabrication of medical records to justify Plaintiff's detention.

### Emergency Services (NYC Fire Department EMT/EMS)

- EMTs Vasquez, Rosas #2679, and unnamed personnel.
- Actions Alleged: Assisted law enforcement in unlawful seizure and collaborated to cover up misconduct.

## Actions by Morningside Gardens Housing Corporation/First Service Residential

- Allegation: Participated in the orchestration of events leading to the violation of Plaintiff's rights by collaborating with NYPD and medical personnel.

## Key Allegations Against Medical Professionals

- **False Diagnoses:** Medical professionals allegedly created **fabricated or exaggerated medical conditions** to justify the detention of Plaintiff.
- **Collusion with Law Enforcement:** These actions were allegedly coordinated to protect law enforcement from liability.

## Legal Framework Analysis

### Constitutional Claims

- The primary focus is on violations under 42 U.S.C. § 1983, which addresses deprivations of constitutional rights under color of state law.
- Key claims include:
  - **Unlawful Seizure (4th Amendment)**
  - **Cruel and Unusual Punishment (8th Amendment)**
  - **Denial of Free Speech (1st Amendment)**
  - **Violation of Due Process/Equal Protection (14th Amendment)**

### Potential Connection to the False Claims Act (FCA)

While this case primarily involves **civil rights violations**, elements of the **FCA** could apply if the defendants:

1. **Submitted False Claims** to the government for reimbursement (e.g., falsified emergency service costs, mental health services, or medical interventions).
2. **Falsely Certified Compliance** with federally funded policies regarding mental health or emergency protocols.

---

## Summary

Plaintiff alleges systemic violations of their **Constitutional rights** involving coordinated actions by law enforcement, medical professionals, and emergency responders. The actions described—unlawful seizure, fabrication of evidence, denial of the right to file complaints, and discriminatory treatment—constitute serious allegations of 1st, 4th, 8th, and 14th Amendment violations.

While the **False Claims Act** could be relevant if fraudulent claims for government funds were involved, the case primarily focuses on civil rights violations under 42 U.S.C. § 1983.

### Intentional Infliction of Emotional Distress

**(against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES

STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER

GABRIELE FLORES EX NYPD OFFICER CHRISTOPHER TORTURO,
DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY
POLICE STAMFORD,<mark>NEW YORK CITY FIRE DEPARTMENT</mark> EMT/EMS ROSAS
#2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), <mark>NEW
YORK CITY HEALTH + HOSPITALS,</mark> JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR
KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA,
<mark>NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,</mark>OFFICER GEORAIDA GERMONSE ,
OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN
DAVID LOPEZ- , OFFICER SER. JOCL RIVERA <mark>MORNINGSIDE GARDENS HOUSING
CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,</mark>
Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie
Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United
States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William
J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA)
<mark style="background:#7fff7f">Audrey Strauss **U.S. Attorney** for the Southern District of New York,</mark> Jacquelyn M. Kasulis, the
Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis,
Acting U.S. Attorney for the Eastern District of New York,** <mark style="background:#7fff7f">FDNY Lieutenant Alexander Gomez.
EMT Robert Kraft. Badge No. 3502</mark>

)

<mark style="background:#7fff7f">October 1, 2021 - October 5, 2021 Incident:</mark>

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

**CITY POLICE DEPARTMENT, MOUNT SINAI ST. LUKE'S, NEW YORK CITY
POLICE, and INDIVIDUAL DEFENDANTS AS NAMED BELOW,**
Defendants.

**Case No.: [Insert Case Number]**

**COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND
CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983**

## INTRODUCTION

1. Plaintiff brings this action for damages and equitable relief arising out of extreme,
   outrageous, and intentional actions by Defendants, which violated Plaintiff's constitutional
   rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States
   Constitution and caused severe emotional distress.

under color of law and under state law for intentional infliction of emotional distress (IIED).

---

## PARTIES

3. Plaintiff, [Your Full Name], is a resident of [Your Address].
4. Defendants include:
   - **CITY POLICE DEPARTMENT**
   - **MOUNT SINAI ST. LUKE'S**
   - **NEW YORK CITY POLICE DEPARTMENT**
   - **OFFICER ANTONIO CASTELLUCCIO**
   - **OFFICER SANJAY BAJNAUTH**
   - **SGT. DAVID S. MALDONADO**
   - **OFFICER DAVID CASTRO**
   - **OFFICER NILSA PATRICIO**
   - **POLICE SERGEANT JOSEPH ANGELONE**
   - **NYPD LIEUTENANT SALVATORE RONZINO**
   - **NYPD OFFICER GABRIELA FLORES TAPIA**
   - **NYPD OFFICER CHRISTOPHER TORTURO**
   - **NYPD OFFICER DAVID FRANKLIN**
   - **NEW YORK CITY POLICE SERGEANT PERRIER**
   - **NEW YORK CITY POLICE OFFICER STAMFORD**
   - **NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679**
   - **EMT/EMS VASQUEZ**
   - **EMS/EMT JOHN DOES (fictitious names)**
   - **NEW YORK CITY HEALTH + HOSPITALS**
   - **DOCTOR NURUR RAHAM**
   - **DOCTOR KALU AGWU**
   - **DOCTOR RYAN H. HASHE**
   - **DOCTOR GAUTAM BALASUBRAMANIA**
   - **NYC HOSPITAL POLICE OFFICER GEORAIDA GERMONSE**
   - **OFFICER FRANCIS SENAJOU**
   - **OFFICER TERRENCE PEMBERTON**
   - **OFFICER CAPTAIN DAVID LOPEZ**
   - **OFFICER SER. JOCL RIVERA**
   - **MORNINGSIDE GARDENS HOUSING CORPORATION**
   - **FIRST SERVICE RESIDENTIAL**
   - **KEMP THANE HERZBERG (RN)**
   - **EMILIA G. OKOROMA (RN)**
   - **CRYSTAL CHANNEL ALLMAN (RN)**
   - **EQUAGIE EHIMWENMA (RN)**
   - **CHANG YOUNG CHO (NP)**

lawful authority to cause harm to Plaintiff.

---

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 because the claims arise under the Constitution and laws of the United States.
7. Supplemental jurisdiction over state law claims is proper under 28 U.S.C. § 1367.
8. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred within this District.

---

## FACTUAL ALLEGATIONS

9. On or about [specific date(s)], Plaintiff was subjected to extreme, outrageous, and unconstitutional conduct by Defendants, including but not limited to:
   a. Deprivation of Plaintiff's **First Amendment rights** by restricting Plaintiff's freedom of speech, retaliation for exercising free speech, or denying access to information.
   b. Violations of Plaintiff's **Fourth Amendment rights** through unlawful search, seizure, or excessive use of force.
   c. Violations of Plaintiff's **Eighth Amendment rights** through cruel and unusual punishment, deliberate indifference to Plaintiff's medical needs, or inhumane treatment.
   d. Violations of Plaintiff's **Fourteenth Amendment rights** by denying equal protection, due process, or acting with deliberate indifference to Plaintiff's well-being.
10. Defendants' actions included:
   ● Physical , threats, and intimidation.
   ● Unlawful detention or imprisonment without probable cause.
   ● Denial of medical care and other basic necessities while in custody.
   ● Discriminatory treatment and denial of due process rights.
11. Defendants' conduct was intentional, reckless, and performed with the intent to cause harm to Plaintiff emotionally and physically.
12. As a direct and proximate result of Defendants' actions, Plaintiff suffered:
   ● Severe emotional distress, and humiliation.
   ● Physical harm or exacerbation of medical conditions.
   ● Loss of liberty, reputation, and dignity.

---

## CAUSES OF ACTION

**COUNT I** – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
13. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

decency, with the intent to cause or reckless disregard for causing Plaintiff severe emotional distress.

15. As a result, Plaintiff suffered severe emotional distress, entitling Plaintiff to compensatory and punitive damages.

**COUNT II** – VIOLATIONS OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983
16. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

17. Defendants, acting under color of state law, violated Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.
18. Defendants' actions were deliberate, malicious, and in violation of clearly established law, entitling Plaintiff to compensatory and punitive damages.

As a direct consequence of the Defendants' deliberate and malicious behavior, the Plaintiff suffered extensive humiliation, reputational injury, incurred substantial attorneys' fees, related legal expenses, and other special damages, and experienced profound mental anguish, the extent of which will be quantified at trial but not less than [insert desired amount], in addition to punitive damages and attorney's fees.

*Respondeat Superior*

**against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW

KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York,  Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

**I hereby reiterate, reaffirm, and acknowledge each and every allegation articulated in the**

preceding paragraphs of the Complaint, imbuing them with the same force and

significance as if fully expounded upon herein.

Throughout the relevant duration, individual Defendants functioned as agents of the Municipal

Defendants and conducted themselves within the scope of their employment.

Consequently, the Municipal Defendants incur vicarious liability under the doctrine of respondeat

superior for the actions undertaken by individual Defendants as delineated herein.

As a direct consequence of Defendants' intentional and malicious conduct, Plaintiff has endured

profound humiliation, reputational injury, incurred legal fees, associated legal expenses, and other

consequential damages, and has suffered considerable mental anguish. These damages shall not

because that inverts and distorts its normal function and manageable at a feverpitch in a trial.

## Allegations of Constitutional Violations and Application of Respondeat Superior

Plaintiff alleges significant violations of **1st, 4th, 8th, and 14th Amendment rights**, involving law enforcement, medical professionals, and other entities acting under the doctrine of **respondeat superior**, which holds employers accountable for the actions of their employees when those actions occur within the scope of employment.

---

## Alleged Violations of Constitutional Rights

### 1st Amendment

- **Right to Petition and Freedom of Speech**:
  - Plaintiff claims that New York City Police Officers, hospital staff, and others **prevented them from filing complaints** regarding mistreatment, violating their right to petition the government for redress and freedom of expression.
  - These actions obstructed Plaintiff's ability to hold officials accountable.

### 4th Amendment

- **Unlawful Seizure and Detention**:
  - Plaintiff alleges they were unlawfully detained by **NYPD officers, hospital police, EMT/EMS personnel, and hospital staff** without probable cause.
  - False medical diagnoses were allegedly fabricated to justify the detention, constituting an unreasonable seizure.

### 8th Amendment

- **Cruel and Unusual Punishment**:
  - Plaintiff alleges mistreatment during detention, including **excessive force**, inhumane conditions, and unnecessary medical interventions.
  - Such actions, if proven, would violate protections against cruel and unusual punishment.

**14th Amendment**

- **Due Process and Equal Protection**:
  - Plaintiff asserts that law enforcement and medical personnel denied them due process by colluding to fabricate medical evidence and detain them without proper justification.
  - Unequal treatment and discrimination are also alleged, indicating a violation of the Equal Protection Clause.

---

## Defendants and Their Roles

**Law Enforcement (NYPD and Hospital Police)**

- **NYPD Officers and Supervisors**:
  - Officers Castelluccio, Bajnauth, Maldonado, Castro, Patricio, Angelone, Ronzino, Flores Tapia, Torturo, Franklin, Perrier, Stamford, and John Does.
  - Alleged Actions: False arrest, excessive force, and suppression of Plaintiff's complaints.

- **Hospital Police Officers**:
  - Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sergeant Jocl Rivera.

Plaintiff.

**Medical Professionals (Harlem Hospital and Mount Sinai St. Luke's)**

- **Doctors**: Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania, Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, Jayenth Mayur.

- **Nurses**: Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN).
  - Alleged Actions: Fabricated medical diagnoses and false documentation to justify Plaintiff's detention and protect law enforcement.

**Emergency Responders (NYC Fire Department EMT/EMS)**

- **Personnel**: EMT/EMS Vasquez, Rosas #2679, and unnamed John Does.
  - Alleged Actions: Assisted law enforcement in unlawful seizure and covered up misconduct.

**Morningside Gardens Housing Corporation/First Service Residential**

- Alleged Actions: Collaborated with law enforcement and other entities, obstructing Plaintiff's complaints and contributing to the violation of their rights.

---

## Doctrine of Respondeat Superior

Under the doctrine of **respondeat superior**, employers can be held vicariously liable for wrongful acts committed by their employees if those acts occurred within the scope of employment. This doctrine strengthens Plaintiff's case by extending liability to institutions employing the named

**Key Elements of Respondeat Superior**

1. **Employee-Employer Relationship**:
   - Defendants acted as employees of NYPD, Morningside Gardens, NYC Health + Hospitals, Mount Sinai St. Luke's, or NYC Fire Department.

2. **Acts Within Scope of Employment**:
   - Defendants' actions (arresting, detaining, treating, transporting Plaintiff) were directly tied to their professional duties.

3. **Wrongful Acts Alleged**:
   - False arrest, excessive force, fabrication of evidence, and denial of Plaintiff's right to petition are all acts connected to official duties.

**Liability of Employers**

- **City of New York (NYPD and Hospital Police)**:
   - Responsible for the alleged unconstitutional actions of their officers acting under the color of law.

- **NYC Health + Hospitals/Mount Sinai St. Luke's**:
   - Liable for staff who allegedly fabricated medical records and acted in coordination with law enforcement.

- **Morningside Gardens Housing Corporation**:
   - Liable for employees' actions in obstructing Plaintiff's complaints and assisting in the alleged violations.

---

# Strengthening Plaintiff's Case

The doctrine of **respondeat superior** allows Plaintiff to hold institutional defendants (e.g., the City of New York, Morningside Gardens, NYC Health + Hospitals) accountable for their employees' actions. By framing the allegations as violations of **constitutional rights under 42 U.S.C. § 1983**, Plaintiff can pursue claims for:

- Unlawful detention and seizure (4th Amendment).

- Cruel and unusual punishment (8th Amendment).

- Denial of freedom to petition (1st Amendment).

- Discrimination and denial of due process (14th Amendment).

Additionally, the **collaboration between law enforcement and medical personnel** to fabricate evidence could further support claims of systemic misconduct.

The doctrine of **respondeat superior** holds employers liable for the wrongful acts of their employees if those acts occur within the scope of employment. In this case, Plaintiff Moore can invoke this doctrine to assert that the City of New York, the NYPD, or Morningside Heights Housing is liable for the actions of their employees (Defendants) because the employees were acting within the course and scope of their official duties during the alleged incidents.

---

## Application of Respondeat Superior to Moore's Allegations

1. **Employee-Employer Relationship**:
   - The individual Defendants (e.g., officers Castellucio, Maldonado, and Does #1-50) were acting as employees or agents of the NYPD or other city agencies.
   - Employees of Morningside Heights Housing involved in the incidents were agents of that entity.
2. **Acts Within Scope of Employment**:
   - The Defendants responded to emergency calls and engaged in law enforcement activities (arrest, handcuffing, transport) or property management duties (Morningside refusing Moore's complaint).
   - These acts were directly tied to their employment responsibilities.
3. **Alleged Wrongful Acts**:
   - Excessive force, unlawful detention, and failure to adhere to mental health protocols are alleged to have occurred while employees were performing their job functions.
   - Employees also allegedly violated constitutional rights and subjected Moore to public humiliation, further tying their conduct to their employment roles.
4. **Employer's Vicarious Liability**:



Under respondeat superior, the City of New York and Morningside Heights Housing
could be held liable for the wrongful acts of their employees because the actions
were committed while carrying out their official duties.

---

---

## Relevance to Moore's Case

By relying on respondeat superior, Plaintiff Moore can extend liability to the employing entities
(e.g., NYPD and Morningside Heights Housing) for the civil rights violations, excessive force, and
unlawful actions allegedly perpetrated by their employees, strengthening his claim for relief
against institutional

### **Negligent Hiring**

(  **against Defendants** (CITY POLICE DEPARTMENT, ==MOUNT SINAI ST LUKES==
STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, ==NEW
YORK CITY POLICE ,==OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY
BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID
CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT
JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER
GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER
DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY
POLICE STAMFORD,==NEW YORK CITY FIRE DEPARTMENT== EMT/EMS ROSAS
#2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), ==NEW
YORK CITY HEALTH + HOSPITALS,== JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR
KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA,
==NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,==OFFICER GEORAIDA GERMONSE ,
OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN
DAVID LOPEZ- , OFFICER SER. JOCL RIVERA ==MORNINGSIDE GARDENS HOUSING
CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,==
Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie
Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour , Federal strike forces,
United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe
Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence

M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez., EMT Robert Kraft. Badge No. 3502

)

**October 1, 2021 - October 5, 2021 Incident:**

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

**I hereby reiterate, reaffirm, and acknowledge each and every allegation delineated in the preceding paragraphs of the Complaint, investing them with the same gravity and legal significance as if exhaustively expounded upon herein.**

It is alleged, upon credible information and belief, that Municipal Defendants maintained a customary, policy-oriented approach and practice in their employment procedures. This included the recruitment of certain personnel, including individual Defendants, without conducting thorough background checks, investigations, and psychological evaluations.

Additionally, it is alleged, upon credible information and belief, that Municipal Defendants habitually undertook inadequate investigations of potential candidates, as evidenced by their handling of individual Defendants.

Furthermore, it is alleged, upon credible information and belief, that Municipal Defendants demonstrated a consistent pattern of inadequately supervising the actions and behaviors of their employees, including the individual Defendants.

Moreover, it is alleged, upon credible information and belief, that Municipal Defendants persisted in employing individuals, including the individual Defendants, despite awareness of their recurrent violations of constitutional rights, such as mine.

These established customs, policies, and practices served as the impetus, direct cause, or affirmative link behind the actions resulting in my injuries.

Consequently, Municipal Defendants bear liability for the infringements upon my constitutional rights perpetrated by Defendants, as expounded upon in preceding paragraphs, which have inflicted damages upon Plaintiff. All pertinent details are documented at line 1#146.

As a direct consequence of Municipal Defendants' customary, policy-driven practices regarding negligent hiring, inadequate supervision, and improper retention of personnel, Plaintiff has suffered profound humiliation, reputational harm, incurred legal fees, associated legal expenses, and other consequential damages, and has endured significant mental anguish. These damages shall not be less than [insert amount], in addition to punitive damages and attorney's fees, as ascertained at trial.

## Constitutional Violations and Negligent Hiring in Plaintiff Moore's Case

This case involves alleged violations of **1st, 4th, 8th, and 14th Amendment rights**, as well as claims of **negligent hiring** against the City of New York and Morningside Gardens Housing Corporation. Plaintiff Moore asserts that a series of systemic failures, including improper hiring and inadequate vetting, allowed employees and agents to engage in misconduct, leading to constitutional and civil rights violations.

---

## 1st, 4th, 8th, and 14th Amendment Violations

### 1st Amendment – Right to Petition and Freedom of Speech

- Defendants, including NYPD officers and hospital staff, allegedly obstructed Plaintiff's ability to file complaints about mistreatment.
- This denial interfered with Plaintiff's right to petition the government and seek redress for grievances.

**4th Amendment – Unlawful Search and Seizure**

- Plaintiff asserts that law enforcement officers, hospital police, and medical staff unlawfully detained them without probable cause.
- False medical diagnoses were allegedly fabricated to justify the detention, constituting a violation of their protection against unreasonable searches and seizures.

**8th Amendment – Cruel and Unusual Punishment**

- Plaintiff alleges the use of excessive force (e.g., over-tightening handcuffs) and other inhumane treatment during detention and medical interventions.
- Such actions, if proven, amount to cruel and unusual punishment.

**14th Amendment – Due Process and Equal Protection**

- Defendants allegedly denied Plaintiff due process by fabricating medical evidence and detaining them without lawful justification.
- Unequal treatment, possibly influenced by Plaintiff's identity as a Black Freeman, suggests a violation of the Equal Protection Clause.

---

## Negligent Hiring

Under the legal principle of **negligent hiring**, employers are responsible for ensuring that their

Moore's allegations suggest that the **City of New York** and **Morningside Gardens Housing Corporation** failed to exercise due diligence during the hiring and screening process, which contributed to the violation of his rights.

**Elements of Negligent Hiring in This Case**

1. **Failure to Screen Employees**
   - **Defendants Named**: Officer Antonio Castelluccio, Officer Sanjay Bajnauth, Sergeant David Maldonado, EMT/EMS Rosas, and others.
   - Alleged Actions: Excessive force, unlawful detention, fabrication of evidence, and humiliation.
   - Claims suggest the City and Morningside failed to investigate employees' qualifications, temperament, or histories of misconduct.

2. **Inadequate Evaluation of Fitness for Duties**
   - Law enforcement officers, EMT/EMS personnel, and housing employees are required to handle interactions with vulnerable individuals, including those with mental health conditions.
   - The alleged actions—over-tightening handcuffs, fabricating medical diagnoses, and obstructing complaints—indicate these employees were not properly vetted or trained for their roles.

3. **Foreseeable Risk of Harm**
   - Plaintiff alleges Defendants had prior knowledge of his mental health conditions.
   - If employees had documented histories of misconduct or lack of training, their actions were foreseeable risks of harm to Plaintiff.

4. **Employer Responsibility**
   - **City of New York** (NYPD and hospital police) and **Morningside Gardens**

Housing Corporation had duty to its employees would perform their duties responsibly.

- Failure to exercise reasonable care during hiring constitutes negligence, directly contributing to the harm Plaintiff experienced.

---

## Connection Between Negligent Hiring and Plaintiff's Injuries

- **Physical Injuries and Emotional Distress**: Excessive force, mistreatment, and humiliation during detention are direct results of Defendants' actions.
- **Fabrication of Evidence**: Medical staff (e.g., Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania) allegedly falsified diagnoses to justify Plaintiff's detention, indicating systemic failures in hiring practices.
- **Obstruction of Complaints**: Housing staff, law enforcement, and hospital employees allegedly acted together to prevent Plaintiff from reporting misconduct.

---

## Institutional Liability

### City of New York

- Liable for the actions of NYPD officers and hospital police who acted within the scope of their duties.
- Negligence in hiring individuals without proper qualifications or histories of misconduct directly contributed to the alleged violations.

### Morningside Gardens Housing Corporation

- Liable for housing employees who obstructed complaints and collaborated with law enforcement.
- Failure to hire qualified individuals with appropriate training to handle crises, particularly involving mental health, constitutes negligence.

---

**Strengthening Plaintiff's Case**

By asserting negligent hiring, Plaintiff Moore can establish a direct link between the institutional failures of the City of New York and Morningside Gardens Housing Corporation and the harm caused by their employees. This claim complements allegations of constitutional violations, highlighting systemic issues such as:

- **Failure to Train and Supervise Employees**: Employers neglected to ensure their employees could handle situations involving vulnerable individuals.
- **Pattern of Misconduct**: Institutional negligence allowed unqualified employees to engage in unconstitutional and harmful behavior.

Plaintiff can pursue relief under both **negligent hiring principles** and **42 U.S.C. § 1983** for constitutional rights violations, seeking accountability from both individual defendants and the institutions responsible for employing them.

The doctrine of **negligent hiring** applies when an employer fails to exercise reasonable care in the hiring process, resulting in the employment of individuals who pose a risk of harm to others. Plaintiff Moore's allegations suggest that the City of New York and Morningside Heights Housing may have engaged in negligent hiring practices, contributing to the violation of his civil rights and physical injuries.

---

**Application of Negligent Hiring to Moore's Allegations**

1. **Failure to Screen Employees**:

Plaintiff alleges that Defendants Castelluccio, Maldonado, Rosas and others used excessive force, unlawfully detained him, and violated his constitutional rights.

- ○ These actions indicate that the City or Morningside may have failed to adequately screen their employees for qualifications, temperament, or history of misconduct, particularly for roles involving interactions with emotionally disturbed persons (EDPs).

2. **Inadequate Evaluation of Fitness for Duties**:
   - ○ Law enforcement officers and housing employees regularly encounter situations involving vulnerable individuals, such as Black Freemen. Proper hiring requires evaluating candidates' ability to handle such scenarios appropriately.
   - ○ Defendants' actions—over tightening handcuffs, excessive force at the hospital, unlawful detention, and humiliation—suggest they were not adequately vetted for these skills or qualifications.

3. **Foreseeable Risk of Harm**:
   - ○ Defendants had prior interactions with Moore and were aware of his mental health conditions, making the risk of mishandling the situation foreseeable.
   - ○ If Defendants had a documented history of misconduct, violent behavior, or lack of training, it would have been foreseeable that their actions could lead to harm, making their hiring negligent.

4. **Employer Responsibility**:
   - ○ The City and Morningside had a duty to ensure their employees were properly screened and suitable for their roles.
   - ○ Failure to investigate employees' backgrounds or adequately assess their ability to handle complex interactions, such as dealing with individuals in crisis, constitutes negligence.

5. **Connection to Plaintiff's Injuries**:
   - ○ Plaintiff's allegations of physical injuries, emotional distress, humiliation, and civil rights violations stem directly from the actions of employees who may have been inappropriately hired or unsuited for their roles.

---

# Relevance to Moore's Case

By alleging negligent hiring, Plaintiff Moore can argue that the City and Morningside are directly liable for failing to exercise due diligence in the hiring process, which resulted in employing individuals whose actions caused significant harm. This claim complements other assertions of systemic failures, such as lack of training and oversight, further highlighting institutional negligence.

## The Civil Rights Act of 1871

(( **against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT

GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

)


October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021



## Constitutional Violations and the Civil Rights Act of 1871

The following outlines alleged violations of the **4th, 8th, 14th, and 1st Amendments** and claims

under the **Civil Rights Act of 1871** (codified as **42 U.S.C. § 1983**), which provides a remedy for

individuals whose constitutional rights have been violated by those acting under the color of law.

---

## 1. Fourth Amendment Violations – Unlawful Search, Seizure, and Detention

**Defendants Involved**:

David Castro, Nilsa Patricio, Joseph Angelone, Salvatore Ronzino, Gabriela Flores Tapia, Christopher Torturo, David Franklin, Perrier, Stamford, and John Does.

- **Fire/EMS**: EMT/EMS Rosas (#2679), EMT/EMS Vasquez, and John Does.
- **Housing Entity**: Morningside Gardens Housing Corporation / First Services Residential.

**Key Allegations:**

- **Unlawful Detention**: Plaintiff Moore alleges that on **October 1, 2021**, NYPD officers unlawfully detained him without probable cause, using excessive force.
- **Illegal Home Entry and Search**: On **October 5, 2021**, Officers Castro, Patricio, Vasquez, and John Does entered Moore's home without a warrant or legal justification, conducted a search, and forcibly removed him.
- **EMS Involvement**: EMTs Rosas, Vasquez, and others allegedly acted as agents of law enforcement, assisting in the unlawful detention and failing to act independently.

These actions constitute a violation of Moore's **Fourth Amendment** rights, which protect individuals from unreasonable searches and seizures without a warrant or probable cause.

---

## 2. Eighth Amendment Violations – Cruel and Unusual Punishment

**Defendants Involved**:

- **Hospital Police**: Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sgt. Jocl Rivera.
- **Hospital Staff**: Doctors Nurur Raham, Kalu Agwu, Ryan H. Hashe, Gautam Balasubramania, Steven J. Carbonaro, Jonathan Deassis, Benjamin Wyler, and Jayenth

- **Nurses and Staff**: Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), Kemp Thane Herzberg (RN).

**Key Allegations:**

- **Physical Abuse**: Plaintiff was subjected to physical restraint, including being forcibly pinned down, dragged by his pants, and stripped against his will by hospital staff and police.
- **Fabricated Diagnoses**: Doctors at Harlem Hospital and Mount Sinai St. Luke's allegedly created false or unsupported diagnoses to justify Plaintiff's involuntary psychiatric confinement.
- **Degrading Treatment**: Hospital personnel participated in degrading and punitive treatment of Plaintiff, causing physical and emotional harm.

These actions violate the **Eighth Amendment**, which prohibits cruel and unusual punishment, particularly when excessive force is used, or medical care is manipulated for punitive purposes.

---

## 3. Fourteenth Amendment Violations – Equal Protection and Due Process

**Defendants Involved**:

- **Law Enforcement**: Officers Castelluccio, Bajnauth, Maldonado, Castro, Patricio, Angelone, Ronzino, Tapia, Torturo, Franklin, Perrier, Stamford, and John Does.
- **Medical Staff**: Doctors and nurses at Harlem Hospital and Mount Sinai St. Luke's.
- **Housing Entity**: Morningside Gardens Housing Corporation / First Services Residential.

**Key Allegations:**

- **Racial Discrimination**: Plaintiff, a Black individual, alleges that discriminatory actions by law enforcement, housing staff, and medical personnel were racially motivated. Examples include Morningside Gardens refusing to address his complaints and escalating the situation to police, and disparate treatment during his hospital confinement.

- **Denial of Due Process**: Plaintiff's involuntary confinement was allegedly carried out without proper legal justification or an opportunity to contest the false diagnoses.

These allegations highlight violations of the **Fourteenth Amendment**, including its guarantees of equal protection under the law and due process before depriving a person of liberty or property.

---

## 4. First Amendment Violations – Suppression of Speech

**Defendants Involved**:

- **Hospital Police and Staff**: Officers Germonse, Senajou, Pemberto, Lopez, Rivera, and others.

**Key Allegations:**

- Plaintiff was allegedly prevented from filing complaints or seeking legal recourse due to intimidation, confinement, and suppression of speech by hospital police and other personnel.

These actions violate the **First Amendment**, which protects the right to petition the government for redress of grievances and guarantees freedom of speech without interference.

---

**5. Civil Rights Act of 1871 (42 U.S.C. § 1983) – Violations Under Color of Law**

The **Civil Rights Act of 1871** provides individuals the right to sue government officials and entities for violations of constitutional rights.

**How It Applies to Plaintiff's Case:**

- **Excessive Force**: Officers Castelluccio, Bajnauth, Maldonado, and others used excessive force during Moore's detention, violating his constitutional rights under the **4th and 8th Amendments**.
- **Racial Discrimination**: Defendants' actions, including those by Morningside Gardens and hospital staff, reflect systemic racial discrimination, violating Moore's **14th Amendment** rights to equal protection.
- **Collaboration Under Color of Law**: Hospital staff, including doctors and nurses, acted in concert with law enforcement to fabricate medical diagnoses and justify Plaintiff's confinement, constituting a misuse of their authority under color of law.

Section 1983 is the primary legal vehicle for addressing these violations and holds all listed defendants accountable for their roles in depriving Plaintiff of his constitutional rights.

---

**Conclusion**

The allegations in this case demonstrate systemic violations of Moore's constitutional rights:

1. **Fourth Amendment**: Unlawful search, seizure, and detention.
2. **Eighth Amendment**: Cruel and unusual punishment, including excessive force and fabricated medical diagnoses.

process.

4. **First Amendment**: Suppression of Moore's right to file complaints and seek redress.

These actions also fall under the **Civil Rights Act of 1871**, as they involve violations of constitutional rights by individuals acting under the color of law. The defendants' conduct, if proven, demonstrates a coordinated effort across multiple entities—law enforcement, housing authorities, and medical institutions—to deprive Moore of his rights and liberties.

The Civil Rights Act of 1871, commonly known as the Ku Klux Klan Act, is a federal statute crafted to safeguard the civil liberties of individuals against encroachments by state and local authorities, encompassing law enforcement agencies such as the New York City Police Department (NYPD). Initially enacted to counteract the rampant violence and intimidation perpetrated by the Ku Klux Klan during the tumultuous Reconstruction Era, this legislation has since found application in addressing instances of civil rights transgressions involving the NYPD in a variety of contexts. Herein lie illustrative instances of how the Civil Rights Act of 1871 has been invoked in matters implicating the NYPD:

**Police Brutality and Excessive Use of Force:** This statute has been wielded in cases where NYPD officers stand accused of deploying excessive force or engaging in acts of police brutality against individuals, with a notable emphasis on those hailing from marginalized communities. Plaintiffs have initiated legal actions pursuant to Section 1 of the Act (42 U.S.C. § 1983), contending that their constitutionally protected rights, specifically the prohibition against unreasonable seizures or unwarranted use of force, were transgressed.

**Racial Profiling and Discriminatory Policing:** Instances wherein the NYPD has been alleged to engage in racial profiling or discriminatory policing practices have prompted the

under Section 1 (42 U.S.C. § 1983) and Section 2 (42 U.S.C. § 1985), asserting a conspiracy within the NYPD to deprive individuals of their civil rights predicated upon their racial or ethnic backgrounds.

**Violations of First Amendment Rights:** The Act has been invoked in cases where individuals have asserted that the NYPD infringed upon their First Amendment rights, encompassing the freedoms of speech and peaceful assembly. Lawsuits have been initiated under Section 1 (42 U.S.C. § 1983) as a means of seeking redress for alleged encroachments upon these constitutional prerogatives.

**Failure to Prevent Civil Rights Violations:** Section 3 of the Civil Rights Act of 1871 (42 U.S.C. § 1986) has been referenced in instances where the NYPD faced allegations of neglecting its duty to forestall civil rights infractions committed by its officers. Plaintiffs have argued that the NYPD possessed knowledge pertaining to a conspiracy or recurrent pattern of civil rights abuses and failed to take requisite measures to forestall or terminate such transgressions.

**Unlawful Arrests and False Imprisonment:** The Act has been deployed in scenarios where individuals have alleged unlawful arrests or false imprisonment at the hands of NYPD personnel. Legal actions have been initiated under Section 1 (42 U.S.C. § 1983), with claimants contending that their Fourth Amendment rights safeguarding against unreasonable searches and seizures were violated.

It is imperative to acknowledge that the application of the Civil Rights Act of 1871 in cases involving the NYPD or any law enforcement entity necessitates a meticulous scrutiny of the specific circumstances and evidentiary facets inherent to each case. Each legal claim is intrinsically distinct, and the prospects of success therein hinge upon the merits of the allegations and the evidential substratum available.

The Civil Rights Act of 1871 endures as an indispensable instrument for the preservation of individual civil rights and the imposition of accountability upon government functionaries, including law enforcement, in instances where such rights are purportedly infringed upon. It remains a substantial legal foundation for the pursuit of justice and redress in matters entailing alleged violations of civil rights by the NYPD and analogous law enforcement agencies.

On the morning of October 1, 2021, MorningSide Heights Housing Corporation purportedly perpetrated the deplorable act of falsely notifying the New York Police Department (NYPD) with ostensible designs to orchestrate my unwarranted and unsubstantiated incarceration. This egregious incident gave rise to a patent transgression of my constitutional rights, particularly those enshrined within the Fourth and Fourteenth Amendments, which serve as bulwarks against unjustified searches and seizures while ensuring due process and equal protection under the law.

The unfolding sequence of events raises profound concerns regarding the integrity of the law enforcement process. Subsequent to my apprehension, I found myself subjected to unjust handcuffing, exacerbating my distress as the handcuffs were deliberately tightened, needlessly intensifying my discomfort. This unwarranted physical restraint was imposed without justifiable cause, flagrantly infringing upon my rights and compounding the violation that had already been set in motion.

The violation of my liberties extended to my unwarranted transfer to Harlem Hospital against my explicit and unequivocal wishes. This relocation occurred without my informed consent, further eroding my autonomy over my own well-being. Within the confines of Harlem Hospital, my treatment deviated from established hospital policies and protocols, creating an unsettling

Furthermore, the atmosphere within Harlem Hospital became one marked by threat and aggression, perpetuated by individuals designated as hospital police. This unwarranted intimidation escalated into outright assault, thereby compounding the injustices I had already endured. My rights as a patient and as an individual were egregiously violated, underscoring the imperative need for accountability within institutions entrusted with the well-being and safety of individuals seeking medical care.

Throughout this harrowing ordeal, my attempts to navigate the situation and exercise my rights as a patient were met with systemic obstacles. Efforts to seek assistance through provided contact numbers yielded unproductive results, as the lines directed me towards the jurisdiction of hospital police, bypassing the anticipated channels for addressing my concerns.

In light of the sequence of events that transpired on that fateful day, it is evident that a grave miscarriage of justice occurred. My rights, both as a citizen and as an individual seeking medical attention, were callously disregarded and trampled upon. This narrative raises profound questions about the intersection of institutional responsibility, patient autonomy, and the imperative to uphold constitutional safeguards, underscoring the pressing need for comprehensive reform and accountability within the realms of law enforcement and medical care.

On the 2nd of October, 2021, in pursuit of assistance and solace, I hurried to Mount Sinai St. Luke's Hospital, firmly believing that its halls would provide the aid I sought. Regrettably, this hope was gradually replaced by a disillusioning reality, as it became apparent that the hospital's intentions appeared to align with obscuring the actions of the New York Police Department (NYPD), despite my sound state of being. The conviction that the hospital would offer refuge from the events of the prior day was gradually supplanted by the suspicion that a cover-up might

had been present during the events of October 1st, 2021, conspicuously within the precincts of Mount Sinai St. Luke's on October 2nd.

Fast forward to the 5th of October, 2021, a date marked by a coordinated effort among residents and personnel associated with MorningSide Heights Housing Corporation. Their collective actions materialized in a deceptive summoning of the NYPD, a ruse executed with cunning while I had returned home to retrieve my personal belongings. To my astonishment, the NYPD entered my residence without prior consent, egregiously overstepping their bounds and intruding upon my abode without just cause or authorization. My explicit directive for them to vacate my apartment went unheeded, and they persisted in remaining within the premises until I was coerced into accompanying them, an action that exuded an unsettling aura of intimidation. The lack of a cogent rationale for their entry, coupled with their refusal to depart upon my request, underscores a stark violation of my Fourth and Fourteenth Amendment rights, emblematic of their disregard for due process and equal protection.

Compounding this narrative of encroachment and constitutional infringement is the episode that unfolded on the 5th of October, 2021—a forced repetition of events eerily reminiscent of a prior occurrence on the 11th of February, 2020, at the same Mount Sinai St. Luke's Hospital. The parallels between these occurrences are stark: a coerced evaluation against my volition, seemingly at the behest of external actors. The events of February 11, 2020, remain particularly vivid—a scenario wherein I was led to believe that discharge was imminent without any accompanying diagnosis, resulting in a disconcerting semblance of capriciousness.

The occurrences of the 5th of October, 2021, and the preceding dates—February 11, 2020, and October 2, 2021—attest to an alarming pattern, one fraught with not only an unjust invasion of personal sovereignty but also a departure from medical best practices. The unwarranted

speaks to a blatant instance of medical malpractice, undermining the principles of ethical medical care and patient autonomy. In scrutinizing these events collectively, a mosaic of transgressions emerges, underscored by a dire need for transparency, accountability, and the unwavering adherence to both legal and medical principles.

I found myself compelled to undergo a psychiatric evaluation on two distinct occasions, once on February 11, 2020, and again on October 5, 2021. During the latter event, I was subjected to an involuntary psychiatric assessment within the confines of Mount Sinai St. Luke's Hospital. Remarkably, this déjà vu-like scenario had also unfolded on the 11th of February, 2020, within the very same hospital premises.

These instances stand as poignant examples of a disconcerting pattern, whereby my agency and autonomy were wrested from me, compelling me to undergo psychiatric evaluations against my volition. Both occurrences transpired within the environment of Mount Sinai St. Luke's, raising questions about the hospital's protocols, practices, and respect for patients' autonomy in seeking or refusing medical procedures.

In scrutinizing the parallels between these two events, it becomes evident that the hospital's actions carried forth an unsettling sense of repetition and an unwarranted departure from standard medical procedures. This juxtaposition underscores the significance of examining the practices and ethics of medical institutions, particularly when it comes to the imperative of securing informed consent and safeguarding patient autonomy.

The comparison drawn between the feminist movement and the Ku Klux Klan, particularly in the context of historical discussions involving Black Freemen, introduces a contentious viewpoint. Margaret Sanger, a prominent figure associated with the feminist movement, was also affiliated with the eugenics society and notably engaged in meetings and gatherings with the Ku Klux Klan.

intricacy of her associations.

When delving into the historical consequences of the feminist movement on the Black Freemen community, a nuanced perspective emerges—one that leans predominantly towards negative repercussions. Parallel to the activities of the Ku Klux Klan and the eugenics society during a period that coincided with semi-slavery, feminist actions appeared to mirror the hate-driven crimes targeting Black Freemen. These organizations, it is asserted, were interconnected through shared affiliations, yielding a confluence of discriminatory practices.

An intriguing facet in this discourse is the tendency of certain feminists to prioritize their gender identity over their racial or ethnic affiliations. This manifests in the deliberate alignment with their female identity, relegating their racial background to a secondary consideration. A shift in cultural dynamics unfolded during the post-1960s era, when the identity of "women" assumed the role of a crafted cultural group, ushering in the second wave of feminism during the 1970s.

It has recently come to my attention that my mother has cultivated a personal relationship with Officer Sergeant Pierre, a prominent figure within the New York City Police Department. Officer Sergeant Pierre holds the distinguished position of overseeing the Domestic Violence Unit at Precinct 26, indicating his role within law enforcement management. This connection has been casually mentioned on several occasions, both in my interactions and those of other family members.

It appears that Officer Sergeant Pierre has played a role in assisting not only my mother but also several other families within the community. The nature of this assistance has raised certain suspicions, particularly concerning the potential exploitation of this association to unjustly incarcerated individuals, possibly their own family members.

It is my belief and suspicion that Officer Sergeant Pierre may be actively involved in educating and advising single mothers and dysfunctional families within our community on methods to subjugate and marginalize their sons or loved ones, effectively emasculating them. This unfortunate phenomenon appears to predominantly affect Black Freemen throughout the community, leading me to conclude that Officer Sergeant Pierre himself may not be of African American descent but rather of Latino or immigrant origins. This inference is drawn from his management of the Domestic Violence Unit, which suggests a perspective divergent from that of a Black Freemen or African American.

A recurring pattern has emerged within the NYPD, where a bias seems to exist in favor of Black Freewomen or African American women over Black Freemen or African American men. This preference appears to be influenced by the hierarchy of social or racial status. Such practices, I believe, have been instigated by Officer Sergeant Pierre and serve as a testament to the NYPD's inclination to align with social or racial hierarchies, effectively endorsing white-collar crime or, in broader terms, white supremacy, rather than upholding the principles of equal justice as enshrined in our second constitution made in 1865. .

Precinct 26, under Officer Sergeant Pierre's oversight, has seemingly encouraged private citizens to commit hate crimes against Black Freemen or African American men, emboldened by a perception of impunity, given the NYPD's historical leniency in enforcing constitutional protections for my racial ethnic group. This situation has had a personal impact on me for the past eight years.

Notably, it has been observed that the officers involved in this issue are predominantly of Hispanic/Latino and Black immigrant backgrounds, including both males and females. Their collective failure to uphold the law and protect the constitutional rights of Black Freemen or

Officer Sergeant Pierre's influence extends beyond the NYPD and encompasses shared alliances involving dysfunctional families and public institutions like Harlem Hospital, New York-Presbyterian Hospital, and Mount Sinai St. Luke's Hospital. This alliance appears to perpetrate constitution rights violations, human rights violations, and a systematic form of child abuse sanctioned by the state itself.

While I have not had the privilege of a direct encounter with Officer Sergeant Pierre, our paths crossed on June 13, 2021, during what appeared to be a carefully orchestrated event. Following this encounter, I documented my thoughts and observations in a voice memo, expressing my genuine concerns regarding these matters.

Furthermore, it is worth noting that historical parallels can be drawn between the Civil Law of 1871, often associated with white supremacist organizations like the Klan, and certain movements, including feminist organizations and certain Black organizations, that align with the social status quo and white-collar crime. This historical context highlights the collaboration between such groups and law enforcement, a pattern reminiscent of the support the Klan received from the federal government during the era of Jim Crow policies and Black Codes.

In our community, a similar phenomenon has emerged, wherein women are elevated above men, and the law is selectively enforced in favor of Black Freewomen or African American women, aligning with a pattern observed in ancient Roman and Greek civilizations, where conquered women were elevated in social status to participate in the subjugation and marginalization of men—a practice that bore resemblance to the historical concept of mutes.

## Application of Title I of the ADA and the Rehabilitation Act

( **against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES ,STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT ,JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez.

EMT Robert Kraft. Badge No. 3502


)


**October 1, 2021 - October 5, 2021 Incident:**

**On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021**


## Application of Title I of the ADA and the Rehabilitation Act to Plaintiff's Allegations

Title of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 protect individuals with disabilities from discrimination, including unjust treatment based on leaconditions, by public entities, law enforcement, and medical facilities such as Harlem Hospital and Mount Sinai St. Luke's.

---

## Relevant Violations in Moore's Case

1. **Failure to Provide Reasonable Accommodations for Moore's disability but mental health Conditions**:
   - **Law Enforcement**: Defendants were aware of Moore's mental health conditions but failed to implement reasonable accommodations in their interactions. For example, instead of utilizing de-escalation techniques or specialized mental health crisis teams, they resorted to excessive force and public humiliation.
   - **Medical Facilities**: Both Harlem Hospital and Mount Sinai St. Luke's confined Moore in psychiatric units and subjected him to alleged mistreatment (e.g., excessive force, confinement in unsuitable conditions) without accommodating his needs or addressing his medical condition appropriately.

2. **Discrimination Based on Disability**:
   - **Law Enforcement**: Moore's detention and transport to hospitals were not based on criminal activity or a legitimate public safety threat but appear to be rooted in discriminatory perceptions of his mental health condition.
   - **Medical Facilities**: The decision to subject Moore to psychiatric evaluations and confinement, despite the lack of evidence that he was a danger to himself or others, reflects potential discriminatory practices tied to his mental health condition.

3. **Violations of Section 504 by Medical Providers**:
   - Harlem Hospital and Mount Sinai St. Luke's, as recipients of federal funding, are bound by Section 504 of the Rehabilitation Act. Any failure to provide appropriate mental health care, accommodations, or non-discriminatory treatment would directly violate the Act. This includes allegations that Moore was forcibly stripped, restrained, and humiliated without medical justification or appropriate care plans.

4. **Failure to Train Personnel**:
   - Both NYPD and hospital staff are required to undergo training to interact with individuals with disabilities, including those with mental health conditions. The allegations indicate a systemic failure by the City, Harlem Hospital, and Mount Sinai St. Luke's to adequately train personnel to avoid discriminatory or excessive actions against individuals like Moore.

5. **Denial of Access to Proper Services**:
   - By failing to assess and address Moore's mental health needs in a manner consistent with ADA and Rehabilitation Act standards, the Defendants effectively denied him access to appropriate care and subjected him to harmful and discriminatory practices.

---

## Conclusion

The allegations against NYPD, Harlem Hospital, and Mount Sinai St. Luke's demonstrate potential violations of Title I of the ADA and Section 504 of the Rehabilitation Act. These violations stem from discriminatory treatment, the denial of reasonable accommodations for Moore's mental health conditions, and the systemic failure to train staff to interact appropriately with individuals with disabilities. These factors collectively deprived Moore of his civil rights and contributed to his physical and emotional harm.

## Constitutional and Statutory Violations in Moore's Case

The Plaintiff, Moore, alleges significant violations of his **1st, 4th, 8th, and 14th Amendment rights**, as well as violations of the **Americans with Disabilities Act (ADA)** and **Section 504 of the Rehabilitation Act**. These violations stem from actions by law enforcement officers, hospital staff, EMT personnel, and housing corporations. The key allegations include **unlawful detention, excessive force, public humiliation, and discriminatory treatment** based on Moore's mental health condition.

---

## Constitutional Violations

### 1st Amendment – Right to Petition and Retaliation

- **Defendants**: NYPD Officers Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, and NYCH+H Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, Sgt. Jocl Rivera.
- **Allegations**:
    - Moore was **prevented from filing complaints** about mistreatment, violating his right to petition for redress.
    - Retaliatory actions by law enforcement inhibited his ability to hold them accountable.

### 4th Amendment – Unlawful Search and Seizure

- **Defendants**: NYPD Officers, Harlem Hospital staff, Mount Sinai St. Luke's staff, EMTs Rosas (#2679) and Vasquez, and EMT/EMS John Does.
- **Allegations**:
    - Moore's detention was **unlawful**, based on **fabricated psychiatric diagnoses** and **discriminatory perceptions** of his mental health.
    - Forced psychiatric evaluations and confinement without probable cause or valid warrants constituted an **unreasonable seizure**.

### 8th Amendment – Cruel and Unusual Punishment

- **Defendants**: Officers Castelluccio, Bajnauth, Maldonado, and medical staff including Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan Hashe, and Dr. Gautam Balasubramania.
- **Allegations**:

Excessive use of force, including **forcible stripping and restraining** and confinement in unsuitable conditions caused **unnecessary physical and emotional suffering**.

- ○ Public humiliation during detention further compounded the **cruel and unusual punishment**.

## 14th Amendment – Due Process and Equal Protection

- **Defendants**: All named parties, including housing staff and medical professionals.
- **Allegations**:
  - ○ Moore was denied **due process** during his detention, including **failure to provide legal justification** for confinement.
  - ○ Discriminatory treatment based on his mental health condition violated the **Equal Protection Clause**.

---

# ADA and Rehabilitation Act Violations

## Failure to Provide Reasonable Accommodations

- **Defendants**: NYPD, Harlem Hospital, Mount Sinai St. Luke's, EMT Rosas, EMT Vasquez.
- **Allegations**:
  - ○ Law enforcement failed to use **de-escalation techniques** or involve mental health crisis teams during interactions with Moore.
  - ○ Medical facilities confined Moore without addressing his mental health needs or providing appropriate accommodations.

## Discrimination Based on Disability

- **Defendants**: All named parties.
- **Allegations**:
  - ○ Law enforcement and medical staff exhibited **discriminatory behavior**, including unnecessary psychiatric confinement and public humiliation.
  - ○ Actions were rooted in **biased assumptions** about Moore's mental health condition, rather than any objective evidence of risk.

## Section 504 Violations by Medical Providers

- **Defendants**: Harlem Hospital and Mount Sinai St. Luke's.
- **Allegations**:
  - ○ These federally funded institutions failed to provide **non-discriminatory care** and reasonable accommodations.
  - ○ Staff engaged in **forcible restraint and stripping** without medical necessity, violating Moore's rights under **Section 504**.

---

# Systemic Failures and Institutional Negligence

1. **Failure to Train Personnel**

**Defendants**: NYPD, Harlem Hospital, Mount Sinai St. Luke's.

- ○ **Allegations**: Inadequate training in handling individuals with disabilities led to discriminatory practices and excessive use of force.

2. **Denial of Access to Proper Services**
   - ○ **Defendants**: All named parties.
   - ○ **Allegations**:
     - ■ Failure to assess Moore's mental health needs.
     - ■ Denial of proper medical care, violating ADA and Rehabilitation Act standards.

3. **Collusion to Cover Misconduct**
   - ○ **Defendants**: Medical staff, EMTs, and law enforcement.
   - ○ **Allegations**:
     - ■ Harlem Hospital, Mount Sinai staff, and EMTs colluded to fabricate diagnoses and justify unlawful detentions.
     - ■ Diagnoses were created to **protect law enforcement** from accountability.

---

## Key Actors and Allegations

- **Law Enforcement**:
  - ○ NYPD Officers and NYCH+H Hospital Police used **excessive force**, unlawfully detained Moore, and prevented him from filing complaints.
- **Medical Professionals**:
  - ○ Doctors (e.g., Raham, Agwu, Hashe) and hospital staff (e.g., Ehimwenma, Herzberg) fabricated psychiatric diagnoses to justify Moore's detention.
- **EMTs**:
  - ○ EMT Rosas and Vasquez acted as **agents of law enforcement**, enabling unlawful actions and covering for police misconduct.
- **Housing Staff**:
  - ○ Morningside Gardens Housing Corporation and First Services Residential contributed to discriminatory actions against Moore.

---

## Conclusion

The coordinated actions by law enforcement, medical staff, EMT personnel, and housing staff violated Moore's civil rights and statutory protections. These include:

- **Unlawful detention and excessive force** in violation of the **4th and 8th Amendments**.
- **Discriminatory treatment and denial of accommodations** in violation of the **ADA and Rehabilitation Act**.
- **Suppression of complaints** in violation of the **1st Amendment**.
- **Denial of due process and equal protection** under the **14th Amendment**.

Moore's case highlights systemic failures, including lack of training, collusion, and institutional negligence, that deprived him of his constitutional and statutory rights.

## Assault and Battery

 ( **against Defendants** (CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES ,STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT ,JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS,, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney for the Southern District of New York,** Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York**
 ⟩

**October 1, 2021 - October 5, 2021 Incident:**

**On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021**

## Application of Assault and Battery to Plaintiff Moore's Allegations

**Assault** and **battery** are distinct but related intentional torts. **Battery** involves harmful or offensive physical contact without consent, while **assault** involves actions that create a reasonable apprehension of imminent harmful or offensive contact.

---

## Instances of Assault and Battery in Moore's Case

1. **Excessive Force by Law Enforcement**:
   - On October 1, 2021, Defendants Castellucio, Maldonado, and Does #1-10 forcibly grabbed Moore, placed him in handcuffs, and allegedly overtightened the restraints, causing injuries to his wrists. This constitutes **battery** due to the physical harm inflicted without legal justification.
   - The act of surrounding Moore in a threatening manner could constitute **assault**, as it would create a reasonable fear of harm.
2. **Public Humiliation and Forceful Detention**:
   - Defendants subjected Moore to public humiliation by forcibly detaining him in front of his neighbors. The use of force during his removal, particularly without probable cause, reinforces claims of **battery**.
   - The refusal to loosen the handcuffs despite Moore's repeated requests escalates the excessive force and demonstrates intentional harm.
3. **Actions at Harlem Hospital**:
   - Upon arrival at Harlem Hospital, Does #31-40 allegedly pinned Moore to the floor, dragged him by his pants, and forced him to strip. These actions constitute **battery** due to the offensive physical contact and lack of consent.
   - The manner in which Moore was handled (e.g., pinning him down) could also create **assault**, as it instilled fear of further harm.
4. **October 5, 2021 Incident**:
   - Defendants Castro, Patricio, Vasquez, and Does #1-30 allegedly entered Moore's apartment without permission, unlawfully searched his belongings,. This physical confrontation constitutes **battery**.
   - Their actions in forcing Moore to leave his apartment and accompany them to St. Luke's Hospital, without probable cause or consent, could also be considered **assault** if Moore feared imminent harm during the incident.

---

## Conclusion

The described incidents involve multiple acts of **assault** and **battery**:

- **Battery**: Unlawful physical contact (e.g., overtightened handcuffs, pinning Moore to the floor, dragging him by his pants, and forced stripping).

... **Assault:** Actions creating a reasonable apprehension of harm (e.g., surrounding Moore in a threatening manner, forcibly entering his home, and the public nature of the incidents).

The allegations against law enforcement, Harlem Hospital, personnel illustrate repeated violations of Moore's rights through the use of unnecessary and excessive physical force, making a strong case for claims of **assault and battery**.

## Allegations of Assault and Battery in Moore's Case

**The Plaintiff, Moore, alleges multiple instances of assault and battery committed by named Defendants, including NYPD officers, hospital staff, and EMT personnel. Assault involves actions creating a reasonable apprehension of imminent harmful or offensive contact, while battery entails actual harmful or offensive physical contact without consent. Below is a structured analysis of the allegations.**

---

## 1. Excessive Force by Law Enforcement (October 1, 2021)

**Defendants Involved: Officer Antonio Castelluccio, Sgt. David Maldonado, and John Does (#1-10).**

- **Battery:**
  - **Moore was forcibly grabbed, placed in handcuffs, and subjected to overtightened restraints that caused injuries to his wrists. The use of unnecessary physical force constitutes battery, as it inflicted harm without legal justification.**
- **Assault:**
  - **The act of surrounding Moore in a threatening manner created a reasonable fear of imminent harm, establishing grounds for assault.**

**Additional Allegations:**

- **Public humiliation during the arrest in front of neighbors exacerbated the harm and constituted an unnecessary display of force.**

---

## 2. Public Humiliation and Forceful Detention (October 2, 2021)

**Defendants Involved: Officers David Castro, Nilsa Patricio, and Does (#1-30).**

- **Battery:**
  - **During the forced removal from his apartment, Moore alleges that physical force was used without consent. The refusal to adjust overtightened handcuffs despite repeated requests worsens the claim of excessive force.**

**Assault and Battery Combined:**

- **The aggressive entry into Moore's apartment, combined with physical confrontations,**

## 3. Physical Confrontation at Harlem Hospital

**Defendants Involved: Hospital Police Officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, Sgt. Jocl Rivera, and Harlem Hospital staff.**

- **Battery:**
  - Moore was pinned to the floor, dragged by his pants, and forcibly stripped upon arrival at Harlem Hospital. These actions involved offensive physical contact without consent, constituting battery.
- **Assault:**
  - The manner in which Moore was subdued and handled created a fear of imminent harm, meeting the threshold for assault.

**Impact:**

- The physical and emotional harm caused by these actions demonstrates a disregard for Moore's dignity and safety, aggravating the assault and battery claims.

## 4. Incident at Mount Sinai St. Luke's Hospital (October 5, 2021)

**Defendants Involved: Officers David Castro, Nilsa Patricio, Vasquez, Rosas (#2679), and John Does (#1-30).**

- **Battery:**
  - Moore alleges that he was forcibly removed from his apartment, unlawfully transported to St. Luke's Hospital, and subjected to physical handling during the process.
- **Assault:**
  - The act of forcibly entering Moore's residence and using aggressive measures instilled a reasonable fear of further harm.

## Key Elements of Assault and Battery in Moore's Case

**Battery**

1. **Physical Harm: Unlawful contact, including:**
   - **Overtightened handcuffs.**
   - **Forcible removal from his home.**
   - **Pinning, dragging, and forced stripping at Harlem Hospital.**
2. **Offensive Contact: The actions taken were unwarranted and harmful, violating Moore's bodily autonomy.**

**Assault**

1. **Threat of Harm: The threatening manner of the arrests and detentions instilled fear of further harm.**
2. **Public Nature: Public humiliation during detentions added emotional harm and amplified the assault claims.**

---

## Conclusion

The Defendants' actions demonstrate repeated violations of Moore's rights through both assault and battery, including:

- **Unlawful physical contact: Excessive force, overtightened handcuffs, and humiliating treatment at medical facilities.**
- **Creation of fear: Aggressive and threatening actions caused Moore to apprehend further harm.**

The combined allegations against law enforcement, hospital staff, and EMT personnel illustrate a systemic pattern of unnecessary force and abuse, supporting Moore's claims of assault and battery. These actions also reflect broader constitutional violations (1st, 4th, 8th, and 14th Amendments), further compounding the legal basis for his claims.

The Civil Rights Act of 1964

**(against Defendant s**CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW

YORK CITY HEALTH + HOSPITALS , JOHN DOES , DOCTOR MUR RAHMAN DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

),

**OTHER PARTIES),** 1#200

October 1, 2021 - October 5, 2021 Incident:

On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021

## Violations of Constitutional Rights and the Civil Rights Act of 1964

The allegations in this case detail extensive violations of Plaintiff Moore's constitutional rights under the **4th Amendment** (protection against unlawful searches and seizures), **8th Amendment** (protection against cruel and unusual punishment), **14th Amendment** (equal protection and due process), and **1st Amendment** (freedom to petition and speak). These constitutional violations, combined with discriminatory practices, invoke the **Civil Rights Act of 1964**, which prohibits discrimination based on race, color, or national origin in any program or activity receiving federal

---

## 1. Fourth Amendment Violations – Unlawful Search and Seizure

**Defendants Involved**:

- Officer Antonio Castelluccio, Officer Sanjay Bajnauth, Sgt. David Maldonado, Officer David Castro, Officer Nilsa Patricio, Sgt. Joseph Angelone, Lt. Salvatore Ronzino, Officer Gabriela Flores Tapia, Officer Christopher Torturo, Officer David Franklin, Sgt. Perrier, Officer Stamford, and John Does (#1-50).

**Key Allegations:**

- On **October 1, 2021**, Moore was forcibly detained without probable cause.
- On **October 5, 2021**, Officers Castro, Patricio, Vasquez, and John Does unlawfully entered Moore's home, searched his belongings, and detained him without a warrant or justification.
- These actions directly violate Moore's **4th Amendment** right to be free from unreasonable searches and seizures.

---

## 2. Eighth Amendment Violations – Cruel and Unusual Punishment

**Defendants Involved**:

- Harlem Hospital staff: Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan H. Hashe, Dr. Gautam Balasubramania, and New York City Health + Hospitals officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sgt. Jocl Rivera.

Wyler, and Dr. Jayenth Mayur.

**Key Allegations:**

- **Physical Abuse**:
  - At Harlem Hospital, Moore was forcibly pinned down, dragged by his pants, and stripped against his will, causing unnecessary physical harm and emotional distress.
- **Unjustified Medical Confinement**:
  - Hospital staff at both Harlem Hospital and Mount Sinai St. Luke's allegedly fabricated psychiatric diagnoses to justify Moore's detention, despite the absence of clinical criteria.
- These actions constitute cruel and unusual punishment, prohibited by the **8th Amendment**.

---

## 3. Fourteenth Amendment Violations – Equal Protection and Due Process

**Defendants Involved**:

- Officers Castelluccio, Bajnauth, Maldonado, Castro, Patricio, Angelone, Ronzino, Tapia, Torturo, Franklin, Perrier, Stamford, and John Does.
- Morningside Gardens Housing Corporation and First Services Residential staff.

  **Key Allegations:**

- **Racial Discrimination**:
  - Moore, as a Black individual, alleges he was treated differently based on his race. Examples include:
    - Refusal of Morningside Gardens staff to accept Moore's complaints and

- ■ Use of excessive force and public humiliation by NYPD officers during detainment.

- ■ Differential treatment by medical staff at Harlem Hospital and Mount Sinai St. Luke's, leading to fabricated diagnoses and punitive confinement.

- **Denial of Due Process**:
  - ○ Law enforcement and medical personnel acted without probable cause, denying Moore his right to due process under the **14th Amendment**.

---

## 4. First Amendment Violations – Right to Petition and Free Speech

**Defendants Involved**:

- New York City Health + Hospitals staff and officers: Germonse, Senajou, Pemberto, Lopez, and Rivera.

   **Key Allegations:**

- **Preventing the Filing of Complaints**:
  - ○ Officers and hospital staff allegedly blocked Moore from filing formal complaints about his treatment.

- **Suppression of Speech**:
  - ○ By unlawfully detaining Moore and intimidating him, the defendants violated his right to petition the government and seek redress, protected by the **1st Amendment**.

---

**5. Civil Rights Act of 1964 Violations**

The **Civil Rights Act of 1964**, particularly Title VI, prohibits discrimination on the basis of race, color, or national origin in any federally funded program or activity.

**Discrimination in Federally Funded Programs:**

- **New York City Police Department (NYPD)**: Officers' use of excessive force and public humiliation of Moore, allegedly influenced by racial bias, violates Title VI.

- **Harlem Hospital and Mount Sinai St. Luke's**: These institutions receive federal funding yet subjected Moore to differential treatment and fabricated medical diagnoses based on his race.

- **Morningside Gardens Housing Corporation and First Services Residential**: Their refusal to address Moore's complaints and subsequent escalation to law enforcement suggest racial discrimination, prohibited under Title VI.

---

## Conclusion

The allegations detail systemic violations of Moore's constitutional rights:

- **Fourth Amendment**: Unlawful search, seizure, and detainment without probable cause.

- **Eighth Amendment**: Cruel and unusual punishment through excessive force and fabricated diagnoses.

- **Fourteenth Amendment**: Racial discrimination and denial of equal protection and due process.

- **First Amendment**: Suppression of free speech and the right to petition.

the **Civil Rights Act of 1964**. Moore's claims highlight systemic failures across law enforcement, housing management, and healthcare institutions to ensure equal treatment and constitutional protections.

involved in this situation. Two public hospitals, Harlem Hospital and Mount Sinai St. Luke's, are public facilities that have not only violated these constitutional amendments but have also been complicit in assisting the NYPD in violating my rights and covering up their actions. Additionally, Morningside Heights Housing Corporations retaliated against me when I attempted to file a complaint. They threatened me, implying that more peace officers would come and harm me if I didn't leave. I also heard that Montovo allegedly followed a female peace officer back home, resulting in a lawsuit against the building corporations for $250,000, yet he was allowed to remain. I was attempting to file a complaint against him and Gilumore.

Upon my attempt to register a complaint with the management at Morningside Heights Housing Corporations, a distressing turn of events unfolded as they chose to retaliate against me by making false contact with law enforcement authorities.

Most peace officers lied about their roles, claiming to be security guards within the building complex. My family and I were unaware of the incident involving the female peace officer.

The Civil Rights Act of 1964 is a federal law designed to prohibit discrimination based on various factors such as race, color, religion, sex, or national origin in different aspects of American society, including employment, public accommodations, and federal programs. Although it primarily addresses discrimination in general, it can also be applied to law enforcement agencies like the NYPD if they engage in discriminatory practices or violate individuals' civil rights.

For instance, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on the aforementioned characteristics. This means that the NYPD, as an employer, cannot discriminate against individuals in hiring, promotions, or any other employment-related decisions based on these protected characteristics.

Title VI of the Act further prohibits discrimination in any program or activity receiving federal financial assistance based on race, color, or national origin. Since the NYPD receives federal funding, it is subject to Title VI. If the NYPD is alleged to engage in discriminatory policing practices, such as racial profiling, it may face legal challenges under Title VI.

Addressing such violations typically involves legal action in federal court, where evidence is gathered to demonstrate that the NYPD engaged in discriminatory practices or violated individuals' civil rights based on the protected characteristics covered by the Act.

**federal Funding and Programs:** The act prohibits discrimination in any program or activity receiving federal financial assistance, thus extending its reach to various federally funded entities, including state and local governments.

**Protections Against Retaliation:** The act includes provisions to protect individuals who exercise their rights under the law from retaliation or adverse actions by employers, institutions, or others.

The Civil Rights Act of 1964 was a major step forward in the ongoing struggle for civil rights and equality in the United States. It played a pivotal role in dismantling the legal framework of racial segregation and discrimination that had been deeply entrenched in American society for many years. While it addressed several forms of discrimination, it also set the stage for subsequent civil rights legislation that further expanded protections and aimed to ensure equal rights and

Plaintiff's damage in a sum to be provided at trial but not less than ( ), plus punitive damages, costs, and attorney's fees pursuant to Title 42 § 1988

**the Civil Rights Act of 1968 ,**

**(against Defendant s** CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MOUNT SINAI ST LUKES STEVEN J. CARBONARO ,JONATHAN DEASSIS, BENJAMIN WYLER, JAYENTH MAYUR, NEW YORK CITY POLICE ,OFFICER ANTONIO CASTELLUCCIO, OFFICER SANJAY BAJNAUTH,NEW YORK CITY POLICE SGT. DAVID S. MALDONADO,,OFFICER DAVID CASTRO, OFFICER NILSA PATRICIO, OFFICER JOHN DOES ,POLICE SERGEANT JOSEPH ANGELONE,NYPD LIEUTENANT SALVATORE RONZINO,NYPD OFFICER GABRIELA FLORES TAPIA, NYPD OFFICER CHRISTOPHER TORTURO, NYPD OFFICER DAVID FRANKLIN ,NEW YORK CITY POLICE SERGEANT PERRIER ,NEW YORK CITY POLICE STAMFORD,NEW YORK CITY FIRE DEPARTMENT EMT/EMS ROSAS #2679,,EMT/EMS VASQUEZ, EMS/EMT JOHN DOES(FICTITIOUSLY NAMED), NEW YORK CITY HEALTH + HOSPITALS, JOHN DOES ,,DOCTOR NURUR RAHAM, DOCTOR KALU AGWU, DOCTOR RYAN H. HASHE, DOCTOR GAUTAM BALASUBRAMANIA, NYCH+H/ NEW YORK CITY HOSPITAL POLICE ,OFFICER GEORAIDA GERMONSE , OFFICER FRANCIS SENAJOU ,OFFICER TERRENCE PEMBERTO ,OFFICER CAPTAIN DAVID LOPEZ- , OFFICER SER. JOCL RIVERA MORNINGSIDE GARDENS HOUSING CORPORATION FIRST SERVICE RESIDENTIAL NEW YORK CITY HEALTH + HOSPITALS, Kemp Thane Herzberg (RN),Emilia G. Okoroma (RN), Crystal Channel Allman (RN),Equagie Ehimwenma (RN),Chang Young Cho (NP),Officer Francis Senaiour, Federal strike forces, United States Armed Forces, Columbia University, Barack Obama, Kamala Harras, Joe Biden,William J. Burns , KARINE JEAN-PIERRE, Sergeant Pierrier,  Central Intelligence Agency( CIA) Audrey Strauss **U.S. Attorney** for the Southern District of New York, Jacquelyn M. Kasulis, the Acting U.S. Attorney for the Eastern District of New York, jill biden, **Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York,** FDNY Lieutenant Alexander Gomez. EMT Robert Kraft. Badge No. 3502

**), OTHER PARTIES),** 1#200

<mark style="background-color: #00FF00">October 1, 2021 - October 5, 2021 Incident:</mark>

**On august 26 2021 - august 29, 2021  august  31st 2021  to september 1st 2021**

### Constitutional Violations and the Civil Rights Act of 1968

This case alleges a series of constitutional violations committed by law enforcement, housing entities, hospital staff, and emergency responders, coupled with discriminatory practices in violation of the **Civil Rights Act of 1968**. Below is a structured explanation of the claims regarding the **4th, 8th, 14th, and 1st Amendments** and the Civil Rights Act of 1968.

---

## 1. Fourth Amendment Violations – Unlawful Search and Seizure

**Defendants Involved**:

- Officers Antonio Castelluccio, Sanjay Bajnauth, David Maldonado, David Castro, Nilsa Patricio, Joseph Angelone, Salvatore Ronzino, Gabriela Flores Tapia, Christopher Torturo, David Franklin, Perrier, Stamford, and John Does.
- Morningside Gardens Housing Corporation / First Services Residential.
- New York City Fire Department EMTs Rosas (#2679), Vasquez, and John Does.

**Key Allegations:**

- On **October 1, 2021**, Plaintiff Moore was unlawfully detained without probable cause by NYPD officers, who allegedly used excessive force during the arrest, violating his right against unreasonable searches and seizures.

Moore's apartment without a warrant, searched his belongings, and forcibly detained him.

- EMTs Rosas, Vasquez, and John Does acted as agents of law enforcement, aiding and covering for these illegal actions.

These actions constitute direct violations of the **4th Amendment**, which protects against warrantless searches and seizures conducted without probable cause or exigent circumstances.

---

## 2. Eighth Amendment Violations – Cruel and Unusual Punishment

**Defendants Involved**:

- Harlem Hospital staff: Dr. Nurur Raham, Dr. Kalu Agwu, Dr. Ryan H. Hashe, Dr. Gautam Balasubramania, and hospital police officers Georaida Germonse, Francis Senajou, Terrence Pemberto, Captain David Lopez, and Sgt. Jocl Rivera.
- Mount Sinai St. Luke's staff: Dr. Steven J. Carbonaro, Dr. Jonathan Deassis, Dr. Benjamin Wyler, and Dr. Jayenth Mayur.
- Hospital nurses and staff: Chang Young Cho (NP), Equagie Ehimwenma (RN), Crystal Channel Allman (RN), Emilia G. Okoroma (RN), and Kemp Thane Herzberg (RN).

**Key Allegations:**

- **Physical Abuse**:
  - At Harlem Hospital, Moore was forcibly restrained, dragged by his pants, and stripped against his will by hospital police and staff.
- **Fabrication of Diagnoses**:
  - Doctors at Harlem Hospital and Mount Sinai St. Luke's allegedly fabricated or misrepresented medical diagnoses to justify Moore's involuntary confinement and

- **Degrading Treatment**:
  - The actions of hospital staff caused unnecessary physical harm and emotional distress, amounting to cruel and unusual punishment.

These acts violate the **8th Amendment**, which prohibits unnecessary and wanton infliction of pain or punishment.

---

## 3. Fourteenth Amendment Violations – Equal Protection and Due Process

**Defendants Involved**:

- Officers Castelluccio, Bajnauth, Maldonado, Castro, Patricio, Angelone, Ronzino, Tapia, Torturo, Franklin, Perrier, Stamford, and John Does.
- Morningside Gardens Housing Corporation / First Services Residential.
- Harlem Hospital and Mount Sinai St. Luke's staff.

**Key Allegations:**

- **Racial Discrimination**:
  - Moore, a Black individual, was subjected to unequal treatment by law enforcement and housing staff. Examples include:
    - Morningside Gardens staff escalating complaints to law enforcement instead of addressing them fairly.
    - Disparate treatment by hospital staff leading to confinement based on fabricated medical criteria.
- **Denial of Due Process**:
  - Law enforcement and medical personnel detained Moore without legal justification

These allegations highlight violations of the **14th Amendment**'s guarantees of equal protection and procedural due process.

---

## 4. First Amendment Violations – Suppression of Speech

**Defendants Involved**:

- New York City Health + Hospitals staff and officers: Germonse, Senajou, Pemberto, Lopez, Rivera, and John Does.

**Key Allegations:**

- Moore alleges that law enforcement and hospital staff actively prevented him from filing complaints or reporting his mistreatment.
- The actions of hospital police and other personnel, who used intimidation and confinement to suppress Moore's ability to seek redress, violated his **First Amendment** rights to free speech and petition the government.

---

## 5. Civil Rights Act of 1968 – Protection from Discrimination in Housing and Other Activities

The **Civil Rights Act of 1968** (also known as the Fair Housing Act) prohibits discrimination in housing and federally funded programs.

**Key Allegations Under the Act:**

- **Housing Discrimination**:
  - Morningside Gardens Housing Corporation and First Services Residential refused to address Moore's complaints and escalated the matter to law enforcement, allegedly based on racial bias.
- **Discrimination in Public Institutions**:
  - Harlem Hospital and Mount Sinai St. Luke's staff engaged in discriminatory practices by fabricating diagnoses to justify Moore's confinement, which may have been motivated by his race or perceived socioeconomic status.

These actions violate the Civil Rights Act's protections against racial discrimination in housing and public services.

---

## Conclusion

The described events outline systematic violations of Moore's constitutional and civil rights:

1. **Fourth Amendment**: Unlawful search, seizure, and detention without probable cause.

2. **Eighth Amendment**: Cruel and degrading treatment, including excessive force and fabricated medical confinement.

3. **Fourteenth Amendment**: Racial discrimination and denial of equal protection and due process.

4. **First Amendment**: Suppression of Moore's right to petition and report misconduct.

The actions also constitute violations of the **Civil Rights Act of 1968**, specifically regarding housing discrimination and unequal treatment in federally funded institutions. Together, these allegations demonstrate systemic failures across law enforcement, healthcare, and housing systems

If a housing complex attempts to obstruct the pursuit of a complaint by falsely involving law enforcement, such a maneuver could potentially be interpreted as an effort to impede the rights safeguarded under the provisions of the Fair Housing Act of 1968. The Fair Housing Act is designed to prevent discriminatory practices in housing, encompassing prohibitions against retaliatory actions targeting individuals who exercise their rights in accordance with the act, such as filing grievances or asserting their entitlements. This legal framework inherently provides protections against reprisals aimed at those who expose violations of the act.

Instances of retaliation or interference with the rights granted by the Fair Housing Act can take various forms, including actions designed to intimidate, harass, or discourage individuals from conscientiously exercising their rights. The act of making a false report to the police with the intent to hinder your pursuit of a complaint could be seen as a maneuver aimed at obstructing your rights, potentially constituting a violation of the Fair Housing Act.

The New York Police Department (NYPD) engaged in a practice of racial profiling against me, resulting in my unjustified apprehension and confinement through the utilization of the Driver system. This strategy was employed by making false claims about my mother, highlighting a clear misuse of information. This incident occurred immediately after I left building 80, where my intention was to lodge a formal complaint against a Peace officer. Unfortunately, my attempt to submit my complaint to management was thwarted as I was prevented from doing so.

In a concerning turn of events, the NYPD proceeded to subject me to increased levels of restraint by tightening the handcuffs on my wrists. This escalation in restraint occurred simultaneously

Remarkably, this occurred just before I was expected to return to my residence after a trip.

Essentially, the conduct of the NYPD indicates a troubling pattern, where my experience was marred by discriminatory treatment and an arbitrary exercise of authority. This incident serves as a stark reminder of the necessity for accountability, transparency, and equitable treatment within law enforcement operations.

Morningside Gardens not only denied me the opportunity to file a complaint against the peace officers but also falsely reported me to the police. This occurred because I am both a resident of the building complex and a Black Freeman. These events transpired on October 1, 2021 - October 5, 2021

Morningside Heights Housing Corporation (MHHC) retaliated against me for my attempt to file a complaint. An alarming incident unfolded when the New York Police Department (NYPD) seemingly collaborated with MHHC to openly exhibit discriminatory behavior in front of Building 70. This display was captured by security cameras, witnessed by the surrounding neighborhood.

Upon my return home on October 5, 2021, after the distressing events had transpired, MHHC continued their harassment. They once again contacted the NYPD as I arrived to retrieve my belongings, utilizing the involvement of Karen Eubanks in this concerning affair.

**Harassment:** A landlord engages in a pattern of harassment or intimidation against a tenant

**Retaliation:** A tenant files a fair housing complaint against their landlord for discriminatory practices, and in response, the landlord attempts to evict or takes adverse actions against the tenant in retaliation for filing the complaint.

**Advertising Discrimination:** An online listing platform allows property owners to specify that they only want to rent to individuals of a certain race or religion, which is a violation of fair housing laws.

### Federal Strike Forces

Federal strike forces are accused of participating in pro-eugenic activities that violate the **First, Fourth, Eighth, and Fourteenth Amendments**, as well as the **Civil Rights Act of 1968**, which protects individuals' rights against discrimination and excessive force. Their operations, allegedly involving unlawful arrests and racial discrimination, violated the rights of vulnerable populations. These actions are also subject to gross negligence claims for failure to protect citizens' rights and address unconstitutional practices.

### United States Armed Forces

The **United States Armed Forces** are alleged to have engaged in pro-eugenic policies, infringing upon the **First, Fourth, Eighth, and Fourteenth Amendments**, and violating the **Civil Rights Act of 1968**. Their discriminatory actions, potentially involving racial or ethnic targeting, undermined the protections provided by the Act and the Constitution. The Armed Forces also face gross negligence claims for failing to intervene and halt these unconstitutional practices.

### Columbia University

**Columbia University** is accused of endorsing and facilitating pro-eugenic policies, violating the **First, Fourth, Eighth, and Fourteenth Amendments**, as well as the **Civil Rights Act of 1968**.

contributed to violations of federal law. Columbia is facing gross negligence claims for not taking action to prevent these violations, which continue to harm individuals' rights and freedoms.

**Barack Obama**

Former President **Barack Obama** is accused of supporting pro-eugenic policies that violated the **First, Fourth, Eighth, and Fourteenth Amendments** and the **Civil Rights Act of 1968**. His actions, which allegedly allowed discriminatory and unlawful practices to persist, are subject to scrutiny under both the Act and the Constitution. Obama is also facing gross negligence claims for failing to address or prevent these harmful activities during his administration.

**Kamala Harris**

Vice President **Kamala Harris** is accused of endorsing pro-eugenic policies that violated the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. Her failure to intervene in discriminatory practices or support efforts to address such violations makes her liable for gross negligence. These actions also violate both federal and state laws intended to protect individuals from harm and unequal treatment.

**Joe Biden**

President **Joe Biden** is alleged to have endorsed pro-eugenic policies that violated the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. His administration is accused of failing to address or halt these discriminatory practices, contributing to the systemic harm faced by marginalized communities. Biden is also facing gross negligence claims for neglecting his duty to protect constitutional rights.

**William J. Burns**

**William J. Burns**, Director of the CIA, is accused of overseeing pro-eugenic activities that violated the **First, Fourth, Eighth, and Fourteenth Amendments** and the **Civil Rights Act of**

groups. Burns is also implicated in gross negligence claims for not intervening to stop these violations of individuals' civil rights.

**Karine Jean-Pierre**

**Karine Jean-Pierre**, White House Press Secretary, is accused of supporting pro-eugenic policies that violate the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. Her endorsement of policies that allowed such activities to continue subjects her to gross negligence claims. Jean-Pierre's failure to intervene or advocate for those impacted by these practices further implicates her in these violations.

**Sergeant Pierrier**

**Sergeant Pierrier** is directly accused of participating in pro-eugenic activities that violate the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. His involvement in discriminatory enforcement actions is subject to gross negligence claims for failing to protect individuals from harm and for engaging in unlawful practices. These violations of civil rights include the use of excessive force and illegal surveillance of marginalized groups.

**Central Intelligence Agency (CIA)**

The **CIA** is accused of endorsing and participating in pro-eugenic policies that violated the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. These covert operations, which may have involved racial profiling and unlawful surveillance, violated citizens' constitutional rights and federal protections. The CIA faces gross negligence claims for failing to intervene and stop the unlawful activities.

**Audrey Strauss, U.S. Attorney for the Southern District of New York**

**Audrey Strauss** is accused of failing to intervene in actions that violated the **First, Fourth, Eighth, and Fourteenth Amendments**, and the **Civil Rights Act of 1968**. Her inaction regarding

U.S. Attorney, Strauss had a responsibility to address these violations but failed to protect the constitutional rights of affected individuals.

**Jacquelyn M. Kasulis, Acting U.S. Attorney for the Eastern District of New York**

**Jacquelyn M. Kasulis** is accused of neglecting her duty to address violations of the **First, Fourth, Eighth, and Fourteenth Amendments**, as well as the **Civil Rights Act of 1968**. Her failure to act against unlawful, discriminatory practices leaves her exposed to gross negligence claims. As Acting U.S. Attorney, Kasulis had a responsibility to uphold civil rights but allowed these violations to persist.

Plaintiff's damage in a sum to be provided at trial but not less than (), plus punitive damages,

Plaintiff's damage in a sum to be provided at trial but not less than ( ), plus punitive damages, costs, and attorney's fees pursuant to Title 42 § 1988

**BenchTrial by DEMAND**

182. Plaintiff demands a Bench Trial of all causes of action so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against

Defendants as follows: A. in the amount of () plus punitive damages and

B. in the amount of () plus punitive damages and attorney's fees;

C. in the amount of () plus punitive damages and attorney's fees;

D. in the amount of () plus punitive damages and attorney's fees;

E. in the amount of () plus punitive damages and attorney's fees;

F. in the amount of () plus punitive damages and attorney's fees;

G. in the amount of () plus punitive damages and attorney's fees;

H. the amount of () plus punitive damages and attorney's fees;

I. Under the Ninth Count, in the amount of () plus attorney's fees; and
J. in the amount of () plus attorney's fees;

I'm a modern day Semi Slave literal and it's unacceptable.

Total 8.8 billion = 8.800000000

K. For costs and disbursements; and

L. Such other and further relief as the Court deems just and proper.

Dated: 6, 13, 2024 BALTIMORE MARYLAND

12, 23, 2024

Respectfully submitted,

*Ali Moore*

By: ALI MOORE

2506 OVERLAND AVENUE BALTIMORE MARYLAND

Tel: 9178214909